FILED
Clerk
District Court

JUN 12 2009

For The Northern Mariana Islands
By_____
(Deputy Clerk)

MARK B. HANSON, ESQ.
Second Floor, Macaranas Building
Beach Road, Garapan
PMB 738 P.O. Box 10,000
Saipan, Mariana Islands 96950
Telephone:    (670) 233-8600
Facsimile:    (670) 233-5262
E-Mail Address:    mark@saipanlaw.com

Attorney for *Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

RANDALL T. FENNELL,

                Plaintiff,

vs.

MATTHEW T. GREGORY, former Attorney
General, GREGORY BAKA, Acting Attorney
General, ANTHONY WELCH, Assistant Attorney
General, TOM J. SCHWEIGER, Assistant Attorney
General and DOES 1-20, in their official and
individual capacities,

                Defendants.

CASE NO. CV

# CV 09 - 0019

COMPLAINT

DEMAND FOR JURY TRIAL

## I. JURISDICTION

1. Plaintiff brings this action for monetary damages under 42 U.S.C. §§ 1983, 1985 and 1986 for Defendants' willful and malicious violations of and conspiracy to violate Plaintiff's First Amendment right to free speech and Plaintiff's Fifth and Fourteenth Amendment rights to due process and equal protection of laws.

2. Jurisdiction over this matter is vested in this Court pursuant to 28 U.S.C. §1343 (a)(deprivation of rights) and 28 U.S.C. §1331 (general federal question jurisdiction).

3. Venue is invoked pursuant to 28 U.S.C. §1391. Venue is properly placed in the United States District Court for the Northern Mariana Islands in that all the parties reside in the Commonwealth of the Northern Mariana Islands.

## II. PARTIES

4. Plaintiff Randall T. Fennell ("Mr. Fennell") is a United States citizen currently residing in Saipan, Commonwealth of the Northern Mariana Islands.

5. Defendant Matthew T. Gregory ("Gregory") is an individual residing in Saipan, Commonwealth of the Northern Mariana Islands and was, at times relevant to Mr. Fennell's claims herein an attorney for the Marianas Public Lands Authority and the Attorney General for the Commonwealth of the Northern Mariana Islands.

6. Defendant Gregory Baka ("Baka") is an individual residing in Saipan, Commonwealth of the Northern Mariana Islands and was, at times relevant to Mr. Fennell's claims herein, an the Deputy Attorney General and Acting Attorney General for the Commonwealth of the Northern Mariana Islands.

7. Defendant Anthony Welch ("Welch") is an individual residing in Saipan, Commonwealth of the Northern Mariana Islands and was, at times relevant to Mr. Fennell's claims herein, an Assistant Attorney General for the Commonwealth of the Northern Mariana Islands.

8. Defendant Tom J. Schweiger ("Schweiger") is an individual residing in Saipan, Commonwealth of the Northern Mariana Islands and was, at times relevant to Mr. Fennell's claims herein, an Assistant Attorney General for the Commonwealth of the Northern Mariana Islands.

9. Upon information and belief, there exists one or more additional defendants (the "Doe Defendants") who's identities are not presently known to Mr. Fennell, including individuals acting within the scope of their employment as Commonwealth government officials during times relevant to the claims herein and private individuals acting in concert with persons acting under color of state law with respect to the actions and omissions and the conspiracy of the Defendants described herein. Upon ascertaining the true identities of the Doe Defendants, Mr. Fennell intends to file an amended complaint which will identify them more specifically.

10. All acts and omissions of Defendants alleged herein were acts or omissions of Defendants acting within the scope of their official duties as officials of the Commonwealth of the Northern Mariana Islands, its agencies and instrumentalities and/or in conspiracy with said officials.

11. All acts and omissions of Defendants alleged herein, including those of the Doe Defendants, were acts or omissions of Defendants acting under color of state law and/or in conspiracy with Commonwealth officials acting under color of state law.

12. All claims against Defendants herein are claims against Defendants in the official and individual capacities.

### III.  FACTS

13. In 2001, the large majority of the common shares in the Bank of Saipan, Inc. (the "Bank") were owned and controlled by the Saipan based Tan family, the JLH Pacific Trust managed by Bank Board members David Lujan and Barry Israel, and members of the Guam based Calvo family who also held positions on the Bank's Board of Directors.

14. These three shareholder groups constituted the Major Shareholders of the Bank collectively holding approximately 88% of the issued and outstanding shares of common stock of the Bank which had been historically mismanaged and unprofitable.

15. Beginning sometime in 2001 and continuing up until their arrest by federal authorities in April of 2002, a group of purported investors including Bert Douglas Montgomery, DuSean Berkich and Michael T. Wilson then Bank Chief Executive Officer Thomas B. Aldan (the "Montgomery Group") were attempting to purchase a controlling interest in the Bank.

16. As a result of the negotiations with the Montgomery Group and after months of discussions in meetings of the Bank's Board of Directors, in November 2001, the Major Shareholders of the Bank entered into agreements with the Montgomery Group to sell B. Douglas Montgomery all of the shares of the Major Shareholders — a controlling interest in the Bank.

17. Upon the federal indictment and arrest of the Montgomery Group in April of 2002 on charges conspiracy to defraud the Bank, public confidence in the Bank was shaken.

18. On or about the month of April 2002, the Bank was unable to honor obligations to repay over 6 million dollars ($6,000,000.00) to the Marianas Public Land Authority ("MPLA") under the terms of a certificate of deposit.

19. When it became public that the Bank was unable to repay its obligation to MPLA, that fact, along with arrest of the Montgomery Group, led to a full blown run on the Bank as depositors frantically sought to withdraw funds on deposit.

20. In April of 2002 the Bank requested the CNMI Director of Banking and Secretary of Commerce to place the Bank in receivership, as the Bank was unable to fulfill its obligation to depositors.

21. In April of 2002, the CNMI Attorney General and the CNMI Secretary of Commerce approached Mr. Fennell and requested that he act as Receiver for the Bank, as he had previously experience as receiver for the Commonwealth Bank of the Northern Marianas, Inc.

22. Mr. Fennell agreed to act as a temporary receiver only until a permanent receiver could be located.

23. On April 30, 2002, the Commonwealth Secretary of Commerce placed the Bank of Saipan, Inc. (the "Bank") in receivership.

24. Mr. Fennell, at the request of the Secretary of Commerce and without objection by the attorneys for the Bank's Board of Directors, was appointed by the Presiding Judge of the Superior Court for the Commonwealth of the Northern Mariana Islands as the temporary receiver ("Temporary Receiver") for the Bank.

25. Mr. Fennell initially agreed to act as the Bank's Temporary Receiver only for a period not to exceed 30 days, which appointment was later extended due to actions of the attorneys for the Bank's Board of Directors displaced by the Receivership.

26. In the Receivership Proceedings, the Secretary of Commerce was represented by

the Commonwealth's Office of Attorney General.

27. From April 30, 2002 until September 27, 2002, working closely with the Attorney General and various attorneys from that office, and under the supervision of the Commonwealth Superior Court, Mr. Fennell acted as the court appointed Temporary Receiver for the Bank.

28. As Temporary Receiver with Court instructions, and with the assistance of his counsel the Law Office of Brian McMahon, the Portland, Oregon law firm of Schwabe, Williamson and Wyatt, and attorney Richard Pierce, Mr. Fennell undertook a preliminary investigation to determine the condition of the Bank and the causes of its failure.

29. What the investigation uncovered was shocking.

30. For example, in an attempt convince the Marianas Public Land Authority ("MPLA") and the Northern Mariana Islands Retirement Fund ("Retirement Fund") that their deposits with the Bank were secure — deposits of almost $ 14 million with the Bank ($8,152,533 of MPLA's and $5,570,397 of the Retirement Fund's) — on March 15, 2002 and April 8, 2002, Benigno Fitial ("Fitial"), as Acting President and Chief Executive Officer and the Chairman of the Bank's Board of Directors, signed and sent identical letters to both the Retirement Fund and MPLA, respectively, purporting to pledge the same $5,390,480.00 in United States securities held by the Bank as security for each of the entities' said deposits. *See* Exhibits "A" and "B," attached hereto.

31. In his "pledge letters," Fitial also fraudulently represented to MPLA and to the Retirement Fund that certain Bank of Saipan loans, know by the Bank to be "bad loans," were being pledged along with the United States securities held by the Bank as "100% collateral" for the respective loans when in fact, notwithstanding that the securities and the bad loans were being pledged twice to the depositors, the sum total of the United States securities and the bad loans held by the Bank were substantially less than the total deposits of MPLA and the Retirement Fund with the Bank.

32. At the time Fitial issued the pledge letters, Fitial was employed not only by the

Bank, but he was also employed by the Tan Group who were Major Shareholders of the Bank.

33. Also during the time that the Tan Group was attempting to sell its shares to the Montgomery Group and Tan Group employee Benigno Fitial was misrepresenting to MPLA the security for MPLA's certificate of deposit, Defendant Gregory was acting as attorney for the Tan Group and their related companies and as counsel for MPLA with regard to Bank matters.

34. Several times during that period, Gregory approached Mr. Fennell, then the Bank's Temporary Receiver, purporting to act on behalf of the Tan Group with regard to Bank matters. Gregory became angry that Mr. Fennell would not deal with Gregory because Mr. Fennell believed that Gregory's dual representation of the Tan Group and of MPLA in Bank matters was in conflict.

35. The investigation conducted by Mr. Fennell and the Temporary Receiver's attorneys also revealed that, prior to their entering into agreements to sell their shares in the Bank to the Montgomery Group, the Major Shareholders and the law firm of Calvo & Clark, attorneys for the Bank, suspected that the Montgomery Group were money launderers and, despite urging by Bank management, refused to conduct any due diligence on the purported purchasers in their rush to profit from the sale of shares in the unprofitable and unsound Bank.

36. Further investigation by the Temporary Receiver and his attorneys uncovered evidence that the Board of the Bank, and in particular Benigno Fitial, had actual knowledge of the involvement of the Montgomery Group in a fraud perpetrated on the First International Bank of Grenada, and that Board members had lied to federal investigators about this knowledge prior to the arrest of the Montgomery Group.

37. The investigation also revealed that Bank had suppressed a report by its own attorneys on the liability of the Directors and Major Shareholders of the Bank for their roles in the purported sale of shares to the Montgomery Group. *See* Share Purchase/Loan Controversy — Opinion and Recommendations of Independent Counsel dated March 12, 2002; Exhibit "C" hereto.

38. There is credible evidence that the Calvo shareholders and the representative of the JLH Pacific Trust had planned to sell the shares to the Montgomery Group, take the money for the shares, and only then reveal the Montgomery Group's intended fraud, all as part of the Calvo's plan to keep the Bank shares and pocket the purchase money paid by the Montgomery Group a part of which was actually paid to the JLH Pacific Trust from the Bank itself.

39. The Temporary Receiver's investigation revealed that MPLA's attorneys, including Gregory, while claiming a security interest in the US securities and certain bad loans held by the Bank, had done no due diligence with regard to Fitial's claims of the pledge of the Bank assets as security for the government deposits — due diligence which would have revealed Fitial's fraud on MPLA and the Retirement Fund.

40. Further, neither MPLA nor its attorneys, including Gregory, took any action whatsoever to perfect a security interest in the Bank's US securities nor in the bad loans proposed as collateral, in effect committing legal malpractice.

41. Additionally, an August 13, 1997 letter from the Federal Deposit Insurance Corporation regarding the Bank's application for FDIC insurance, a May 28, 2002 report by the Acting Secretary of Commerce, and several audits by the accounting firm of Deloitte & Touche during the period between those two reports, reflect a long-history of patent neglect, self-dealing and misappropriations by the Bank's Board of Directors and Major Shareholders that hugely impacted the Bank's financial stability to the substantial detriment to the Bank's depositors and the Bank's minority shareholders — both reports recognizing the "significant" potential civil and criminal liability of the Bank's Board of Directors. *See* FDIC letter dated August 13, 1997, Exhibit "D" hereto; Report of the Acting Secretary of Commerce dated May 28, 2002, Exhibit "E" hereto.

42. When the Bank's Major Shareholders and their attorneys and MPLA and its attorneys discovered that Mr. Fennell, as the Bank's Temporary Receiver, was reporting to the Commonwealth Superior Court the various misdeed of those parties and the civil and possibly

criminal liability of the Bank's Directors, including Fitial, and that of the Bank's Major Shareholders, the liable parties in the Bank, through their attorneys, and MPLA by its attorney Defendant Gregory, embarked on plan to discredit the Office of the Attorney General, Mr. Fennell and Presiding Judge Edward Manibusan of the Commonwealth Superior Court.

43. On September 27, 2004, the Bank sued Mr. Fennell and others in the Commonwealth Superior Court for, *inter alia*, acts Mr. Fennell took as the Temporary Receiver. The case is entitled *The Bank of Saipan, Inc. v. Mr. Fennell, et al.*, Civil Action No. 04-049A (the "Lawsuit").

44. Mr. Fennell timely requested representation and indemnification from the Commonwealth government under the Public Employees Legal Defense and Indemnification Act, 7 C.M.C. §§ 2301, *et seq.* and on about August 26, 2005, Mr. Fennell was advised by then Commonwealth Attorney General Pamela Brown that the Presiding Judge of the Commonwealth Superior Court had approved the request.

45. Attorney General Brown, in her August 26, 2005 letter to Mr. Fennell, indicated that the Office of the Attorney General would represent Mr. Fennell in the Lawsuit and that she had assigned an Assistant Attorney General from the Office of the Attorney General to represent Mr. Fennell in the Lawsuit.

46. After receiving confirmation from the Attorney General that the Office of the Attorney General would represent Mr. Fennell in the Lawsuit, Mr. Fennell met and conferred on several occasions with Attorney General Brown and other assistant attorneys general and provided them with confidential information relating to his defenses in the Lawsuit.

47. In August 2005, MPLA sought to intervene in the Lawsuit as a depositor of the Bank.

48. The Superior Court granted MPLA's motion to intervene and on October 12, 2005, MPLA, through its attorney Defendant Gregory, filed a separate complaint against Mr. Fennell and others also based, *inter alia*, on various alleged acts taken by Mr. Fennell in his capacity as the Temporary Receiver for the Bank.

49. On January 9, 2006, Benigno Fitial was sworn in as the Governor of the Commonwealth of the Northern Mariana Islands.

50. Fitial is a former Chairman of the Board of Directors for the Bank, President and Chief Executive Officer of the Bank, and a former executive of Tan Holdings Corporation, a major shareholder of the Bank prior to and during Mr. Fennell's term as Temporary Receiver of the Bank.

51. On January 13, 2006, Fitial appointed Defendant Gregory as Attorney General for the Commonwealth of the Northern Mariana Islands.

52. Prior to becoming the Attorney General, Defendant Gregory was an attorney for MPLA and Tan Holdings Corporation, its various subsidiaries, and the Tan Group of shareholders in the Bank.

53. By Public Law 15-2, signed into law by Fitial on February 22, 2006, the Commonwealth Legislature dissolved MPLA and transferred the powers and duties of that agency to the Commonwealth Department of Public Lands ("DPL"), an agency within the executive branch of the Commonwealth government.

54. Subsequent to MPLA's dissolution, the Office of the Attorney General, headed by Defendant Gregory, took over representation of MPLA in its lawsuit against Mr. Fennell despite the fact that the Office of the Attorney General was then representing Mr. Fennell in the Lawsuit in which Mr. Fennell was being sued by MPLA.

55. From at least the inception of its representation of MPLA in the Lawsuit, attorneys within the Office of the Attorney General led by Gregory, in concert with the other Defendants herein, took and continue to take various actions against the interests of Mr. Fennell with regard to the Lawsuit, including, but not limited to:

    a.    Appearing on behalf of MPLA in the Lawsuit in which they also represent Mr. Fennell;

    b.    Opposing the dismissal of the claims of MPLA in the Lawsuit against Mr. Fennell;

c.      Failing and refusing to advocate on behalf of Mr. Fennell with regard to various motions filed in the Lawsuit;

d.      Taking positions in the Lawsuit adverse to Mr. Fennell notwithstanding the patent conflict of interest that exists;

e.      Failing to certify that Mr. Fennell was acting within the scope of his employment as the court-appointed Temporary Receiver of the Bank with regard to the claims in the Lawsuit;

f.      Delaying for over two years a decision to "decline" to make a such a determination so that Mr. Fennell could request that the Superior Court make the determination;

g.      Failing and refusing to acknowledge patent conflicts of interest in Defendants' dual representation of Mr. Fennell and MPLA;

h.      Failing and refusing to obtain un-conflicted counsel to represent Mr. Fennell and MPLA in the Lawsuit; and

i.      Conspiring with counsel for the Bank in the Lawsuit to the detriment of Mr. Fennell.

56. When finally making its decision to "decline" to make a determination after years of requests therefor by Mr. Fennell, in their "Notice of Declination to Act on Defendant Fennell's Request for Certification" and in Defendants' subsequent filing of "CNMI's Joinder in Request for Scheduling Conference," Defendants took the opportunity to further poison the well by interposing inapplicable, inaccurate and prejudicial "legal precedent" to the Commonwealth Superior Court in the Lawsuit and again advocating a position against Mr. Fennell despite its concurrent representation of Mr. Fennell. *See* Notice of Declination to Act, Exhibit "F"; CNMI Joinder in Request for Scheduling Conference, Exhibit "G"; and Letter from Rexford C. Kosack to Gregory Baka dated March 9, 2009; Exhibit "H" hereto.

57. Defendants intended and continue to intend that their concerted actions and inaction intimidate, frustrate and hinder Mr. Fennell's defense in the Lawsuit for, among other

purposes, the purpose of inhibiting Mr. Fennell from further divulging what he knows (among other things) about:

a.     Fitial's long-time involvement with the Bank as one of its directors, particularly with regard to the substantial reports that have been issued on the historical inadequacy of the Bank's Board of Directors, its derelict oversight of the Bank's management, and the Board's self-serving actions and inaction in breach of its duties to the minority shareholders of the Bank and the Bank's depositors;

b.     Fitial's involvement as a Bank director and a Tan Holdings official in failing to perform the necessary due diligence with regard to the Montgomery Group's intended purchase of the Major Shareholders' shares in the Bank, particularly given the warnings to the Board by Bank officials and other directors;

c.     Fitial's role in allowing the Major Shareholders of the Bank, the Bank's Board of Directors and their attorneys to defraud the depositors and minority shareholders of the Bank; and

d.     Fitial's misrepresentations to MPLA and the Retirement Fund with regard to the security of those agencies' deposits with the Bank prior to the Bank being placed in receivership.

58. Defendant Gregory, as Fitial's Attorney General, and also the former attorney for MPLA, Tan Holdings Corporation and the Tan shareholders, was in a unique position to facilitate and did in fact facilitate Defendants' conspiracy to obstruct justice and to sabotage Mr. Fennell's defense in the Lawsuit thereby depriving Mr. Fennell of due process and equal protection of laws and preventing Mr. Fennell from exercising his rights to free speech guaranteed him by the First Amendment to the United States Constitution.

59. Defendant Baka, as Gregory's Deputy Attorney General, a lead attorney for the Commonwealth Government in MPLA's participation in the Lawsuit against Mr. Fennell, and now the Acting Attorney General, knowingly and intentionally participated in and furthered, and continues to participate in and further, Defendants' conspiracy to obstruct justice and to

deny Mr. Fennell his constitutional rights.

60.  Defendants Welch and Schweiger, also at various times related to the allegations herein, knowingly and intentionally participated in and furthered, and continue to participate in and further, Defendants' conspiracy to deny Mr. Fennell his constitutional rights by, concertedly, taking actions and failing to take action in order to obstruct justice and to frustrate and to hinder Mr. Fennell's defense in the Lawsuit.

61.   Upon information and belief, various Doe Defendants, which likely include attorneys representing various parties in the Lawsuit including the Bank and its Board of Directors, were material participants and continue to be material participants in Defendants' ongoing conspiracy to obstruct justice and to deny Mr. Fennell his constitutional rights.

IV.  CAUSE OF ACTION FOR VIOLATIONS
OF 42 U.S.C. § 1983

62.  Mr. Fennell repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 61 above with the same force and effect as if herein set forth.

63.  Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

64.  Defendants, and each of them, acting under color of state law and/or conspiring with those acting under color of state law, have caused Mr. Fennell to be deprived of the constitutional rights guaranteed him by the First, Fifth and Fourteenth Amendments to the United States Constitution.

65.  As a result of Defendants' concerted, unlawful and malicious actions, Mr. Fennell has been damaged by Defendants, and each of them, in an amount to be determined at trial.

1
2

## V.  CAUSE OF ACTION FOR CONSPIRACY
## IN VIOLATION OF 42 U.S.C. § 1985(2)
### (Obstruction of Justice)

3
4

66.  Mr. Fennell repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 65 above with the same force and effect as if herein set forth.

5

67.  Title 42 U.S.C. § 1985(2) provides, in relevant part:

6
7
8
9

> [I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; . . .

10

> * * *

11
12
13
14

> if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

15
16
17

68.  As described herein, each of the Defendants hereto entered into a plan — a conspiracy — to represent Mr. Fennell and MPLA in such a way as to impede, hinder, obstruct and defeat Mr. Fennell's defense of the claims of the Bank and MPLA in the Lawsuit.

18
19
20

69.  Defendants' purpose for their conspiracy was to obstruct the course of justice in the Lawsuit.

21
22
23

70.  All acts and omissions of Defendants alleged herein, including those of the Doe Defendants, were acts and omissions of Defendants acting under color of state law and/or in conspiracy with Commonwealth officials acting under color of state law.

24
25

71.  Defendants have taken a substantial number of acts in furtherance of their conspiracy.

26
27
28

72.  By conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Mr. Fennell due process and equal protection of laws, Defendants have, thereby, deprived Mr. Fennell of his rights, privileges, and immunities as guaranteed by the

1   First, Fifth, and Fourteenth Amendments to the United States Constitution.

2   73.  As a result of Defendants' concerted, unlawful and malicious conspiracy, Mr.

3   Fennell has been damaged by Defendants in an amount to be determined at trial.

4

5   VI.  CAUSE OF ACTION FOR CONSPIRACY
    IN VIOLATION OF 42 U.S.C. § 1985(3)
6   (Deprivation of Rights)

7   74.  Mr. Fennell repeats and re-alleges and incorporates by reference the allegations in

8   paragraphs 1 through 73 above with the same force and effect as if herein set forth.

9   75.  Title 42 U.S.C. § 1985(3) provides, in relevant part:

10
        If two or more persons in any State or Territory conspire . . . for
11      the purpose of depriving, either directly or indirectly, any person
        or class of persons of the equal protection of the laws, or of equal
12      privileges and immunities under the laws;  or for the purpose of
        preventing or hindering the constituted authorities of any State
13      or Territory from giving or securing to all persons within such
        State or Territory the equal protection of the laws; . . .

14
        *   *   *
15
        if one or more persons engaged therein do, or cause to be done,
16      any act in furtherance of the object of such conspiracy, whereby
        another is injured in his person or property, or deprived of
17      having and exercising any right or privilege of a citizen of the
        United States, the party so injured or deprived may have an
18      action for the recovery of damages occasioned by such injury or
        deprivation, against any one or more of the conspirators.
19
20  76. As described herein, each of the Defendants hereto entered into a plan — a

21  conspiracy — to represent Mr. Fennell and MPLA in such a way as to deny Mr. Fennell due

22  process and equal protection of the laws and to prevent and to hinder the Office of the

23  Attorney General from providing Mr. Fennell due process and equal protection of the laws.

24  77. Defendants' purpose for their conspiracy was to deprive Mr. Fennell of due process,

25  equal protection, and the privileges and immunities guaranteed by the First, Fifth, and

26  Fourteenth Amendments to the Constitution of the United States.

27  78. All acts and omissions of Defendants alleged herein, including those of the Doe

28  Defendants, were acts and omissions of Defendants acting under color of state law and/or in

conspiracy with Commonwealth officials acting under color of state law.

79. Defendants have taken a substantial number of acts in furtherance of their conspiracy.

80. By conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Mr. Fennell due process and equal protection of laws, Defendants have, thereby, deprived Mr. Fennell of his rights, privileges, and immunities as guaranteed by the First, Fifth, and Fourteenth Amendments to the Constitution of the United States.

81. As a result of Defendants' concerted, unlawful and malicious conspiracy, Mr. Fennell has been damaged by Defendants in an amount to be determined at trial.

## VII. CAUSE OF ACTION FOR
## VIOLATIONS OF 42 U.S.C. § 1986

82. Mr. Fennell repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 81 above with the same force and effect as if herein set forth.

83. Title 42 U.S.C. § 1986 provides, in relevant part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . .

84. Defendants herein, and each of them, at times relevant and material to Mr. Fennell's claims herein, brought pursuant to 42 U.S.C. § 1985, had knowledge of the conspiracy to deprive Mr. Fennell of his constitutional rights and, prior to various acts taking place, had knowledge that one or more of the Defendants intended to take acts that deprived Mr. Fennell of his constitutional rights.

85. Defendants herein, and each of them, had the power, duty and authority to prevent or to aid in the prevention of the concerted acts of the Defendants that deprived Mr. Fennell of his constitutional rights.

86. As a result of the concerted unlawful and malicious conspiracy of Defendants, which conspiracy Defendants, and each of them, knew of the conspiracy, had the power to prevent the wrongs conspired to be done, and failed and refused to prevent the wrongs, Mr. Fennell was deprived of due process of law and his right to equal protection, privileges and immunities of the laws and the due course of justice were impeded, all in violation of Mr. Fennell's First, Fifth and Fourteenth Amendments rights under the United States Constitution.

87. As a result of Defendants' failure to prevent and/or aid in the prevention of Defendants' concerted, unlawful and malicious conspiracy, Mr. Fennell has been damaged by Defendants in an amount to be determined at trial.

PRAYER FOR RELIEF:

WHEREFORE, Plaintiff demands judgment against all the Defendants, jointly and severally, for:

1. actual, general, special, compensatory damages in the amount to be determined at trial;

2. punitive damages for Defendants' intentional, wanton and malicious conduct in an amount to be determined at trial;

3. Attorneys' fees paid and insurance proceeds expended in defending claims by MPLA and in seeking action from the Office of the Attorney General;

4. A temporary and permanent injunction against the Office of the Attorney General from representing parties in or otherwise participating in the Lawsuit;

5. Attorneys' fees and costs of this suit pursuant to 42 U.S.C. § 1988;

6. Any other legal and equitable relief the Court deems just and proper.

DATED this 12th day of June, 2009.

MARK B. HANSON

Second Floor, Macaranas Building
Beach Road, Garapan
PMB 738, P.O. Box 10,000
Saipan, MP 96950
Telephone:     (670) 233-8600
Facsimile:     (670) 233-5262
E-Mail Address:     mark@saipanlaw.com

Attorney for Plaintiff

DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 58(b), Plaintiff hereby demands a trial by jury on all of Plaintiff's causes of actions and claims for relief stated in the above-Complaint.

DATED this 12th day of June, 2009.

MARK B. HANSON

Second Floor, Macaranas Building
Beach Road, Garapan
PMB 738, P.O. Box 10,000
Saipan, MP 96950
Telephone:     (670) 233-8600
Facsimile:     (670) 233-5262
E-Mail Address:     mark@saipanlaw.com

Attorney for Plaintiff