1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Braddock J. Huesman, F#0367
Assistant Attorney General
Hon. Juan A. Sablan Memorial Bldg., 2nd Fl.
Caller Box 10007, Capital Hill
Saipan, MP  96950-8907
Telephone:      (670) 664-2341
Fax:                (670) 664-2349

Attorney for Defendants Matthew T. Gregory, Gregory
Baka, Anthony Welch and Tom Schweiger.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

RANDALL T. FENNELL,

    Plaintiff,

    vs.

MATTHEW T. GREGORY, former
Attorney General, GREGORY BAKA,
Acting Attorney General, ANTHONY
WELCH, Assistant Attorney General,
TOM J. SCHWEIGER, Assistant Attorney
General, and DOES 1-20, in their official
and individual capacities,

    Defendants.

CIVIL ACTION NO. 09-0019

**DEFENDANTS' MOTION TO DISMISS
AND INCORPORATED MEMORANDUM
OF POINTS AND AUTHORITIES
[FED. R. CIV. P. 12(b)(6)]**

Date:          Aug. 27, 2009
Time:          9:00 a.m.
Judge:        Hon. Alex R. Munson

# TABLE OF CONTENTS

**MOTION** ............................................................................................1

**FACTS** ...............................................................................................1

**STANDARD OF REVIEW** ..............................................................2

**OVERVIEW** ....................................................................................3

**ARGUMENT** ..................................................................................5

I.  Mr. Fennel's Fourteenth Amendment due process claim must be dismissed ...........................................................................................6

 A.  Mr. Fennell has no statutory basis for his claim.............................7

 B.  As the Judiciary was the sole entity cable of granting or denying Mr. Fennell's request, he was not deprived of any right protected by the Constitution or laws of the United States ...........10

 C.  Mr. Fennell had no right to have the Attorney General Defendants refrain from taking adverse positions to him ...................13

 D.  Mr. Fennell's attempts to claim rights under CELRTA are misplaced............15

II.  Fourteenth Amendment Equal Protection claims must be dismissed ...................15

 A.  Equal Protection is not a substantive right .....................................16

 B.  Mr. Fennell failed to allege which of his rights were violated and, therefore, his equal protection claims must be dismissed...............................17

III.  Fifth Amendment does not apply to state claims ..................................18

IV.  First Amendment must be dismissed..................................................18

V.  Without an Underlying §1983 Violation, Plaintiff May Not Allege a §1985 (or 1986) Action on the Same Pled Facts.  Therefore, Mr. Fennell's remaining claims should be dismissed.........................................21

VI.  Mr. Gregory and Mr. Baka are absolutely immune from suit ...........................22

VII.  The Facts Alleged Do Not Show a Violation of Constitutional Rights. Therefore, the Attorney General Defendants are entitled to Qualified Immunity ...............................24

**CONCLUSION**...............................................................................25

LA/576564v1

# TABLE OF AUTHORITIES

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) .................................................................................3

*Azul-Pacifico, Inc. v. City of Los Angeles*,
973 F.2d 704, 705 (9th Cir. 1992).......................................................5, 16

*Baird v. Lefor*,
201 N.W. 997 (N.D. 1924) ......................................................................4

*Basile v. Elizabethtown Area Sch. Bd. of Sch. Dirs.*,
61 F.Supp.2d 392 (E.D.Pa.1999) ...........................................................18

*Blum v. State*,
51 A. 26 (1902) .......................................................................................4

*Board of Regents v. Roth*,
408 U.S. 564, 577 (1972) ...........................................................7, 10, 12

*Brosseau v. Haugen*,
543 U.S. 194 (2004) ...............................................................................25

*Buckley v. Fitzsimmons*
509 U.S. 259 (1993) ...............................................................................23

*Burns v. Reed*,
500 U.S. 478 (1991) ...............................................................................23

*Butz v. Economou*,
438 U.S. 478 (1978) ...............................................................................23

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336, 337-338 (9th Cir.1996)........................................................2

*Cassettari v. Nevada County, Cal.*
824 F.2d 735, 739 (9th Cir.1987)...........................................................21

*Clegg v. Cult Awarness Network*,
18 F.3d 752, 754 -55 (9th Cir. 1994) ......................................................3

*City of Cleburne v. Cleburne Living Cntr.*,
473 U.S. 432, 439 (1985) .......................................................................17

*City of York v. Penn. Public Utility Comm.*,
295 A.2d 825 (Pa. 1972)........................................................................14

LA/576564v1

*Commonwealth ex rel. Hancock v. Paxton,*
  516 S.W.2d 865 (Ky.1974) ......................................................................14

*Colney v. Gibson,*
  355 U.S. 41 (1957) ...................................................................................3

*Connecticut Comm'n on Special Revenue v. Conn. Freedom of Info. Comm'n,*
  387 A.2d 533 (Conn. 1978) .....................................................................14

*Curley v. Village of Suffern,*
  268 F.3d 65 (2d Cir. 2001) ......................................................................19

*Daniels v. Williams,*
  474 U.S. 327 (1986) ...........................................................................6, 16

*Davis v. Vill. Park II Realty Co.,*
  578 F.2d 461 (2d Cir. 1978)....................................................................19

*Doe I v. The Gap, Inc.,*
  2001 WL 1842389 .....................................................................................3

*E.P.A. v. Pollution Control Bd.,*
  372 N.E.2d 50 (Ill. 1977)........................................................................14

*Freeman v. City of Santa Ana,*
  68 F.3d 1180 (9th Cir.1995) ..............................................................16, 17

*Feeney v. Commonwealth,*
  366 N.E.2d 1262 (Mass. 1977) ...............................................................14

*Galbraith v. County of Santa Calara,*
  307 F.3d 1119, 1126 (9th Cir. 2002)........................................................22

*Gerena v. Puerto Rico Legal Services, Inc.,*
  697 F.2d 447 (1st Cir.1983).....................................................................18

*Hafer v. Melo*
  502 U.S. 21 (1991) ...................................................................................23

*Harris v. McRae,*
  448 U.S. 297 (1980) .................................................................................17

*Harris v. Roderick,*
  126 F.3d 1189 (9th Cir. 1997)..................................................................22

*Hester v. Lowndes County Comm'n,*
  2006 U.S. Dist. LEXIS 63084; 2006 WL 2547430 (M.D.Ala. Sept. 1, 2006)...............18

*Hewes v. Rhode Island Dep't of Corrections,*
    2003 U.S. Dist. LEXIS 3256, 2003 WL 751027 (D.R.I. Feb. 11, 2003) ......................18

*Humphrey ex rel. State v. McLaren,*
    402 N.W.2d 535 (Minn.1987) ...................................................................14

*Imbler v. Pachtman,*
    424 U.S. 409 (1976) ...............................................................................23

*Ivey v. Bd of Regents of Univ. of Alaska,*
    673 F.2d 266 (9th Cir. 1982) ........................................................... 3, 19, 22

*Jackson v. Elrod,*
    655 F.Supp. 1130 (N.D.Ill.1987) ..............................................................18

*Kentucky Dept. of Corrections v. Thompson,*
    490 U.S. 454 (1989) ...............................................................................11

*Kluckhuhn v. Ivy Hill Ass'n, Inc.,*
    461 A.2d 16 (Md. App. 1983) ....................................................................4

*Knoetze v. U.S. Dep't of State,*
    634 F.2d 207 (5th Cir.1981) .....................................................................18

*Laird v. Tatum,*
    408 U.S. 1 (1972) ...................................................................................19

*Learnard v. Inhabitants of Van Buren,*
    164 F.Supp.2d 35 (D.Me.2001) ................................................................18

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir.2001) ............................................................ 6, 17, 18

*Leer v. Murphy,*
    844 F.2d 628 (9th Cir. 1988) ............................................................... 6, 16

*Lockary v. Dayfetz,*
    587 F.Supp. 631 (N.D. Cal. 1984) .............................................................21

*Mangiafico v. Blumenthal,*
    471 F.3d 391 (2d. Cir. 2006) .............................................................. 23, 24

*McCalden v. California Library Ass'n,*
    955 F.2d 1214 (9th Cir.1990) ...................................................................21

*Mendocino Environmental Cntr. v. Mendocino County,*
    14 F.3d 457 (9th Cir.1994) ......................................................................22

*Millender v. County of Los Angeles,*
  564 F.3d 1143 (9th Cir. 2009)...........................................................................24

*Miller v. Continental Airlines,*
  260 F.Supp.2d 931 (N.D. Cal. 2003)...................................................................3

*Navarro v. Block,*
  250 F.3d 729 (9th Cir. 2001) ..............................................................................3

*Olim v. Wakinekona,*
  461 U.S. 238, 250 (1983) .....................................................................................7

*Olsen v. Idaho State Bd. of Medicine,*
  363 F.3d 916 (9th Cir.2004) ...............................................................................22

*Paul v. Davis,*
  424 U.S. 693 (1976) ...........................................................................................15

*Pearson v. Callahan,*
  --- U.S. ----, ----, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) ..............24, 25

*Public Util. Comm'n v. Cofer,*
  754 S.W.2d 121 (Tex.1988)................................................................................13

*Roberts v. Corrothers,*
  812 F.2d 1173 (9th Cir.1987)...............................................................................3

*Robertson v. Dean Witter Reynolds, Inc.,*
  749 F.2d 530, 534 (9th Cir. 1984).......................................................................3

*Saucier v. Katz,*
  533 U.S. 194 (2001) ...........................................................................................24

*Seed v. Hudson,*
  1994 WL 229096 (D.N. Mar. I. May 11, 1994)..........................6, 7, 8, 10, 16

*State v. Klattenhoff,*
  801 P.2d 548 (Haw. 1990)..................................................................................14

*State v. Whitehurst,*
  193 S.E. 657 (N.C. 1937) .....................................................................................4

*State ex rel. Allain v. Mississippi Pub. Serv. Comm'n,*
  418 So.2d 779 (Miss.1982).................................................................................14

LA/576564v1

*State ex rel. McLeod v. Snipes,*
    223 S.E.2d 853 (S.C. 1976) ........................................................................14

*Suffolk County Patrolmen's Benevolent Ass'n, Inc., v. Suffolk County,*
    595 F.Supp 1471 (D.D.N.Y. 1984) ....................................................... 10, 11

*Thornton v. City of St. Helens,*
    425 F.3d 1158 (9th Cir. 2005).....................................................................16

*Ventura Mobile Home Communities Owners Ass'n v. City of San Buena Ventura,*
    371 F.3d 1046 (9th Cir.2004)......................................................................17

*Vernon v. City of Los Angeles,*
    27 F.3d 1385 (9th Cir.1994) .......................................................................24

*Washington State Med. Disciplinary Bd. v. Johnston,*
    663 P.2d 457 (Wash. 1983).........................................................................14

*Williams v. Vidmar,*
    367 F.Supp.2d 1265, (N.D.Cal.2005)...........................................................16

*Woodrum v. Woodward County,*
    866 F.2d 1121 (9th Cir. 1989).....................................................................21

## CONSTITUTIONAL & STATUTORY AUTHORITY

NMI CONST. ART III § 11 .................................................................................13

1 CMC § 2153(h) ............................................................................................13

7 CMC § 2304(a).......................................................................................8, 11

## RULES OF CIVIL PROCEDURE

Fed. R. Civ. Pro. 12(b)(6) .................................................................................1

## OTHER RULES

ABA MODEL RULES OF PROFESSIONAL CONDUCT, PREAMBLE AND SCOPE......................14

**MOTION**

Defendants Matthew T. Gregory ("Mr. Gregory"), Gregory Baka ("Mr. Baka"), Anthony Welch ("Mr. Welch"), and Tom J. Schweiger ("Mr. Schweiger") (collectively, the "Attorney General Defendants") move to dismiss the Complaint of Plaintiff Randall Fennell ("Mr. Fennell") in the above-entitled action on the ground that Mr. Fennell has failed to state a claim upon which relief can be granted. Defendants submit this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**FACTS**

On April 30, 2002, Mr. Fennell was appointed to act as the Receiver for the Bank of Saipan.[1] Although the initial appointment was for thirty days, by his own admission, his term as the Receiver lasted until September 27, 2002.[2] Mr. Fennell had a substantial insurance policy in place for his defense should he be sued for his time as the Receiver for the Bank of Saipan.

In 2004 Mr. Fennell was sued by the Bank of Saipan, and at the time he was sued, the Commonwealth's public employee indemnification statute was the Public Employee Legal Defense and Indemnification Act ("PELDIA"). Almost immediately, Mr. Fennell requested indemnification from his insurance provider and the government.[3] Mr. Fennell, or his insurance company, retained the Law Office of Rexford C. Kosack.

According to Mr. Fennell's own pleading, Presiding Judge Naraja approved Mr. Fennell's request for representation.[4] Pursuant to a letter dated 2004, then-Attorney General Pamela S. Brown acknowledged that the Superior Court for the Northern Mariana Islands had made a

---

[1] COMPLAINT DEMAND FOR JURY TRIAL AT ¶ 27.
[2] COMPLAINT DEMAND FOR JURY TRIAL AT ¶ 27.
[3] COMPLAINT DEMAND FOR JURY TRIAL AT ¶ 44.
[4] COMPLAINT DEMAND FOR JURY TRIAL AT ¶ 44, *see also* COMPLAINT DEMAND FOR JURY TRIAL AT EXHIBIT H 10-11.

finding that Mr. Fennell was a public employee of the Judicial Branch.[5]  Attorney General Pamela S. Brown confirmed this by providing Assistant Attorney General David W. Lochabay for Mr. Fennell's defense under the PELDIA statute.[6]  Attorney General Brown indicated that Presiding Judge Naraja denied a request for public funds to be used to pay Mr. Kosack's bills.[7]

Under PELDIA, the government agency employer has the sole discretion regarding whether or not to provide a government attorney or pay for a private defense.  Mr. Fennell sent a letter to Presiding Judge Naraja not only confirming that the Presiding Judge had the discretion to make the choice, but acknowledging that the Judicial Branch had chosen to provide Mr. Lochabay.[8]

Mr. Fennell has continued to request that the Government pay for Mr. Kosack's services even though he was initially turned down in 2005.[9]  Mr. Fennell renewed this request when the Legislature repealed PELDIA and replaced it with the Commonwealth Employees' Liability Reform and Tort Compensation Act of 2006 ("CELRTA"), two years after he was sued for his services as the Bank of Saipan's Receiver.  The CELRTA statute, however, contained a savings clause providing that the new law would not be construed as affecting any existing right.

## STANDARD OF REVIEW

In reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the court must assume the truth of all factual allegations and must construe them in the light most favorable to the non-moving party.[10]  Legal conclusions, however, need not be taken as true "'merely because

---

[5]  COMPLAINT DEMAND FOR JURY TRIAL AT EXHIBIT H10-11

[6]  *Id.*

[7]  *Id.*

[8]  LETTER TO PRESIDING JUDGE NARAJA ATTACHED HERETO AS EXHIBIT "1".

[9]  COMPLAINT DEMAND FOR JURY TRIAL AT EXHIBIT H10-11.

[10]  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir.1996).

they are cast in the form of factual allegations.'"[11]

Thus, dismissal under Rule12(b)(6) is appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[12] Dismissal is warranted where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory.[13] In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged."[14]  "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."[15]  While only requiring a short and plain statement of the claim, FRCP 8(a)(2) is not such a liberal requirement that purely conclusory statements can survive a motion to dismiss under Rule and 12(b)(6).[16]

## OVERVIEW

The Bank of Saipan and the Marianas Public Land Authority (now the Department of Public Lands) sued Mr. Fennell for acts taken while he was the Receiver for the Bank of Saipan. In his capacity as the Receiver, Mr. Fennell was, apparently, heavily insured.  The insurance

---

[11]   *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987) (quoting *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)) (in parenthesis); *see also Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

[12]   *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

[13]   *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *Doe I v. The Gap, Inc.*, No. CV-01-0031, 2001 WL 1842389 *1 (D.N.Mar. I. Nov. 26, 2001).

[14]   *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

[15]   *Ivey v. Bd of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

[16]   *Miller v. Continental Airlines*, 260 F.Supp.2d 931, 935 (N.D. Cal. 2003).

allowed Mr. Fennell to procure excellent legal counsel with the Law Offices of Rexford C.

Kosack (hereinafter sometimes referred to as "Mr. Kosack").  Despite this insurance, Mr. Fennell

sought and, somehow, [17] obtained PELDIA coverage from the Commonwealth of the Northern

Mariana Islands as a government employee of the Judicial Branch.

According to his pleading,[18] however, the PELDIA coverage was limited.  Mr. Fennell

was given a government attorney, David Lochabay, but was told the Government would not pay

for Mr. Kosack's services.[19]  This was in 2005, and under PELDIA it is all Mr. Fennell was

entitled to.  The PELDIA statute specifically provides for this procedure, and the Government

followed the PELDIA statute to the letter.

Mr. Fennell, however, never acknowledged this answer.  Since 2005, Mr. Fennell has

embarked on a campaign to force the Commonwealth to pay for his private legal fees instead of

utilizing his government appointed attorney.  The latest attempt is the instant lawsuit which

accuses several officers of this Court of ignoring their professional and ethical obligations.

Because of the high profile nature of this case and the scurrilous accusations contained

within Mr. Fennell's pleading, the Attorney General Defendants wish to make it clear that they

deny every allegation contained within the Petition.  As they are attorneys, however, they realize

---

[17]    As this Court is aware, a court appointed receiver does not exercise a public trust, *Kluckhuhn v. Ivy Hill Ass'n, Inc.*, 55 Md. App. 41, 461 A.2d 16 (1983), *cert. granted*, 297 Md. 317, 466 A.2d 38 (1983) *judgment aff'd*, 298 Md. 695, 472 A.2d 77 (1984); *State v. Whitehurst*, 212 N.C. 300, 193 S.E. 657, 113 A.L.R. 740 (1937), or assert public rights on behalf of the people of a state or municipality, *Kluckhuhn v. Ivy Hill Ass'n, Inc.,* 461 A.2d at 16, even when the receiver is a state official. *Id* .  Moreover, a receiver is not considered a representative of the state, *Blum v. State*, 94 Md. 375, 51 A. 26 (1902), and does not possess the receivership property in a sovereign capacity. *Kluckhuhn v. Ivy Hill Ass'n, Inc.,* 461 A.2d at 16.  Importantly, a receiver is not generally considered a public officer within the meaning of constitutional and statutory provisions relating to public officers. *State v. Whitehurst*, 212 N.C. 300, 193 S.E. 657, 113 A.L.R. 740 (1937); *Baird v. Lefor*, 52 N.D. 155, 201 N.W. 997, 38 A.L.R. 807 (1924).

[18]    COMPLAINT DEMAND FOR JURY TRIAL AT EXHIBIT H-10-11.

[19]    COMPLAINT DEMAND FOR JURY TRIAL AT EXHIBIT H-10-11.

that all allegations contained in the Petition must be construed as true for the purposes of this Motion to Dismiss.  Assuming then, that the allegations are true, Mr. Fennell has utterly failed to state a claim.

Mr. Fennell brought four causes of action against the Attorney General Defendants. These include: violations, through 42 U.S.C § 1983, of the First, Fifth, and Fourteenth Amendments of the U.S. Constitution; and conspiracy under 42 U.S.C §§ 1985(2), 1985(3), and 1986.

Mr. Fennell's due process and equal protection claims do not identify a single right or guarantee that he was denied.  Even without enumerating the rights of which he was deprived, it is apparent that Mr. Fennell believes that he has the right to have the Office of the Attorney General: (1) make a determination that he is entitled to have the CNMI government pay his independent legal bills; and (2) refrain from taking an adverse position to him.  Mr. Fennell is wrong, and he knows it.  Worse, Mr. Fennell pled equal protection as a substantive right: it is not and his claims must be dismissed.  Moreover, the absence of a section 1983 deprivation of rights precludes a section 1985 and 1986 conspiracy claim predicated on the same allegations; therefore, his claims must be dismissed.  Finally, because none of his constitutional rights were violated, the Attorney General Defendants are entitled to qualified immunity while Mr. Gregory and Mr. Baka are entitled to absolute immunity.

## ARGUMENT

Federal law requires that "a litigant complaining of a violation of a constitutional right . . . utilize 42 U.S.C. § 1983."[20]  Section 1983 requires that plaintiff prove that: "(1) a person acting under the color of state law committed the conduct at issue; and (2) the conduct

---

[20]  *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992).

deprived the Plaintiff of some right protected by the Constitution or laws of the United States."[21]
In this case, Mr. Fennell's allegations cannot and do not allege that he was deprived of any "right
protected by the Constitution or laws of the United States." [22]   Therefore, his 1983 claims
complaining of the violation of his constitutional rights must be dismissed.

**I.  Mr. Fennel's Fourteenth Amendment due process claim must be dismissed.**

Mr. Fennell claims that he is entitled to have the Office of the Attorney General declare
him a public employee and to have the Commonwealth of the Northern Mariana Islands pay for
his private attorney.  According to his own pleading, however, Mr. Fennell was aware that, as
early as 2005, the Commonwealth's Judiciary, Mr. Fennell's purported "employer," in accordance
with its authority, declined to pay for Mr. Kosack's services and instead provided Mr. Fennell
with a government lawyer.[23]  Moreover, Mr. Fennell admitted, in writing, that the only entity able
to grant his request was the Commonwealth Judiciary.[24]   After receiving his answer, Mr. Fennell
ignored it and turned his attention to the Office of the Attorney General.  He has attempted to
claim his "rights" by renewing his request under a 2006 law, the Commonwealth Employees'
Liability Reform and Tort Compensation ("CELRTA").  This law: was passed two years after Mr.
Fennell was sued; contains a savings clause reiterating his rights under PELDIA; and has no *ex
post facto* provisions.  Therefore, CELRTA does not entitle Mr. Fennell to any new rights.  His
claims, therefore, must be dismissed.

---

[21]    *Seed v. Hudson*, No. CIV. A. 93-00081994, 1994 WL 229096 at *6 (D.N. Mar. I. May 11, 1994) (citing *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir.1988)); *see also Daniels v. Williams*, 474 U.S. 327, 330-31 (1986) (holding that mere negligence cannot form the basis of a Fourteenth Amendment violation actionable under § 1983).

[22]    *Leer,* 844 F.2d at 632-33.

[23]    COMPLAINT DEMAND FOR JURY TRIAL AT EXHIBIT H10-11.

[24]    EXHIBIT 1.

LA/576564v1

1

**A.  Mr. Fennell has no statutory basis for his claim.**

2

In what can only be described as a transparent attempt to find different pockets to fund his

3

private defense, Mr. Fennell has brought a lawsuit against the Attorney General Defendants that

4

has no basis in law and is counter to well-established precedent.  For example, there appear to be

5

two due process claims contained in the pleading: (1) some of the Attorney General Defendants

6

failed to make a determination as to whether Mr. Fennell should be indemnified; and (2) the

7

Attorney General Defendants took positions that were adverse to him.  Even assuming that every

8

allegation contained in Plaintiff's Complaint is true, there can be no cause of action against the

9

Attorney General Defendants for violations of the due process clause of the U.S. Constitution.

10

"Process is not an end in itself.  Its constitutional purpose is to protect a substantive

11

interest to which the individual has a legitimate claim of entitlement."[25]  Due process merely

12

requires that the state provide a fair procedure before depriving an individual of a protected

13

liberty or property interest.  But, "to have a property interest in a benefit, a person clearly must

14

have more than an abstract need or desire for it.  He must have more than a unilateral expectation

15

of it.  He must, instead, have a legitimate claim of entitlement to it."[26]  A due process claim under

16

section 1983 requires that a plaintiff prove: "(1) a person acting under the color of state law

17

committed the conduct at issue; and (2) the conduct deprived the Plaintiff of some right protected

18

by the Constitution or laws of the United States."[27]

19

Thus, Mr. Fennell must plead that the complained of conduct deprived him of "some right

20

protected by the Constitution or laws of the United States."[28]  Mr. Fennell alleges that he was

21

deprived his right of due process when the Attorney General Defendants failed or "declined" to

22

23

24

25

26

[25]  *Olim v. Wakinekona,* 461 U.S. 238, 250 (1983).

27

[26]  *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972).

[27]  *Seed*, 1994 WL 229096 at *6 (citing *Leer*, 844 F.2d at 632-33).

28

[28]  *Id.*

make a decision on whether or not he is a public employee. In other words, Mr. Fennell is claiming he had a constitutional right to have the Attorney General make a decision on paying his legal bills.  He has made such a claim without resorting to any legal authority beyond "due process."  Mr. Fennell's claims are improper because he was not employed by the Office of the Attorney General or the Executive Branch and thus they had no duty to him under the law.

The Public Employee Legal Defense and Indemnification Act ("PELDIA"), 7 CMC §§ 2301, *et seq.*, was the public indemnification statute in place at the time Mr. Fennell was sued in his capacity as a receiver.  To state a claim for violation of his due process rights, Mr. Fennell must allege "that the conduct [at issue] deprived the Plaintiff of some right protected by the Constitution or laws of the United States."[29]  Thus, Mr. Fennell can only be claiming his rights under PELDIA were violated by the Attorney General Defendants.  PELDIA, however, allows the CNMI to self-insure its costs in defending employees against legal claims arising out of their official acts.  Although this self-insurance law does provide employees with some rights, having the Office of the Attorney General make a decision on whether or not to provide private counsel is not one of those rights.

PELDIA provides that: "[a]t the ***public entity's discretion,*** either a public entity shall pay for an employee's defense by an attorney accepted by the employee and the Attorney General . . ., or the public entity shall defend the employee . . ...."[30]  Thus, it is completely within the public employer's discretion as to whether or not to provide the employee a government or private attorney.  Moreover, the public entity that "employed" Mr. Fennell was the Judicial Branch of the Commonwealth.[31]  Thus, the entity that has the discretion on paying for Mr. Fennell's defense or

---

[29]  *Seed*, 1994 WL 229096 at *6 (citing *Leer*, 844 F.2d at 632-33).
[30]  7 CMC § 2304(a) (emphasis added).
[31]  COMPLAINT DEMAND FOR JURY TRIAL AT H-11

LA/576564v1

1    providing an attorney was the Judicial Branch.  Notably, the Judicial Branch made this

2    determination in 2005.[32]

3        According to Mr. Fennell's own pleading, the Judicial Branch, in August of 2005, declined

4    to pay Mr. Fennell's legal bills.[33]  Instead of paying for a private attorney, the Judicial Branch,

5    through Attorney General Brown, informed Mr. Fennell that David Lochabay would be his

6    government appointed counsel.[34]  Under PELDIA-- and that is assuming Mr. Fennell is even a

7    government employee-- he was only entitled to the Judicial Branch making a decision on how to

8

9    conduct his defense, and nothing more.

10        Not being one to accept Presiding Judge Naraja's determination, however, Mr. Fennell

11    renewed his request in December of 2005.[35]  In his renewed request to Presiding Judge Naraja,

12    Mr. Fennell stated that he: "recognize[d] that the decision whether to provide a defense through

13    the Attorney General or through separate counsel is committed to the entity that was the

14    employer by the PELDIA statute.  7 CMC § 2304(a) ("at the public entity's discretion")."[36]  In

15    other words, Mr. Fennell, an attorney, understood that it was completely within the Judicial

16    Branch's discretion on whether to provide Mr. Lochabay, as had been done, or to pay for Mr.

17

18    Kosack.  The Judiciary chose Mr. Lochabay.  Again, this was all Mr. Fennell was entitled to.

19        That Mr. Fennell continued to use Mr. Kosack at that time is not the fault of the Judicial

20    Branch or the Office of the Attorney General.  In fact, that he continued to use and pay for Mr.

21    Kosack's services indicates that he was not interested in his rights under PELDIA; but only

22    interested in the possibility of the Judicial Branch paying for Mr. Kosack.  Under the PELDIA

23

24

25    [32] COMPLAINT DEMAND FOR JURY TRIAL AT EXHIBIT H-11

26    [33] COMPLAINT DEMAND FOR JURY TRIAL AT EXHIBIT H-10.

27    [34] COMPLAINT DEMAND FOR JURY TRIAL AT EXHIBIT H-10.

28    [35] EXHIBIT 1.

    [36] *Id.*

statute, however, Mr. Fennell has no right to have his legal bills paid.  Thus, due process was not implicated.  Even if he did have a right to have the Commonwealth pay his independent legal bills, however, the agency to make that determination was the Judiciary, not the Office of the Attorney General.

**B.  As the Judiciary was the sole entity cable of granting or denying Mr. Fennell's request, he was not deprived of any right protected by the Constitution or laws of the United States.**

Mr. Fennell's Fourteenth Amendment due process claim, that some of the Attorney General Defendants failed to make a determination that Mr. Fennell was entitled to have his legal fees reimbursed or paid for is without merit.  Again, Mr. Fennell must allege "that the conduct [at issue] deprived the Plaintiff of some right protected by the Constitution or laws of the United States."[37]  Remember: "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."[38]  Mr. Fennell has no such claim as it pertains to payment of his incurred legal fees, and this is clear when one examines his letter to Presiding Judge Naraja.  Even if Mr. Fennell wasn't aware of his rights, case law precludes actions just like this one.

For example, *Suffolk County Patrolmen's Benevolent Ass'n, Inc., v. Suffolk County*[39]  is a case that is similar to the one at bar.  In that case, the plaintiffs (police officers) who were defendants in a civil action brought a 1983 action against the county alleging that representation by the county attorney of both the county and police officers in the original action created a potential conflict of interest entitling the officers to counsel of their choice at county expense.

---

[37]  *Seed*, 1994 WL 229096 at *6 (citing *Leer*, 844 F.2d at 632-33).

[38]  *Roth,* 408 U.S. at 577.

[39]  595 F.Supp 1471 (D.D.N.Y. 1984).

LA/576564v1

Specifically, plaintiffs argued that, due to a conflict of interest, they were entitled to choose an attorney that the county then had to pay for.[40]  The court, however, found that the plaintiffs were not entitled to select counsel of their choice at county expense.[41]

Under PELDIA, *it is the public entity's discretion* to either: "pay for an employee's defense by an attorney accepted by the employee and the Attorney General . . ., or the public entity shall defend the employee."[42]  A benefit is not a protected entitlement if government, in this case Judiciary, officials may grant or deny it in their discretion.[43]  Thus, Mr. Fennell has no claim to being able to choose his own attorney because it was the Judiciary's decision on how to proceed.  Moreover, PELDIA doesn't give the employee any input or rights regarding whether the employee receives a private attorney or a government attorney.  Mr. Fennell, under the statute, had no rights to force the government to provide for private counsel.  The Judiciary, not the Attorney General Defendants, was allowed to grant a benefit, but at its discretion.  Moreover, the Judiciary was the only entity able to make a choice in this matter.  As a result, Mr. Fennell's suit is particularly without merit.

Even if it was the Attorney General Defendants' choice on whether or not to indemnify, like the plaintiffs in *Suffolk County*, Mr. Fennell has no right to choose whether or not he receives private counsel, let alone the power to choose who his counsel will be.  And although it is not alleged anywhere in his complaint, the Attorney General Defendants assume that the determination Mr. Fennell was "denied" was his "right" to chose, at CNMI's expense, his own counsel.[44]  The problem with this argument, as illustrated by *Suffolk County,* is that, absent any

---

[40]  *Suffolk County Patrolmen's Benevolent Ass'n, Inc.,* 595 F.Supp at 1480.

[41]  *Id.*

[42]  7 CMC § 2304(a).

[43]  See, *e.g., Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 462-463 (1989).

[44]  *See* EXHIBIT 1.

LA/576564v1

state law giving him that power, any right claimed by Mr. Fennell is too speculative to be considered a right. Rather, it is just something he would like. But, "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."[45] Nowhere in the PELDIA statute is there an indication that the employee may complain about the government's choice of public or private attorney or allow the employee to choose his own defense.

As noted in Mr. Fennell's own pleading,[46] Mr. Lochabay was made available to Mr. Fennell as early as 2005 and Mr. Fennell has not demonstrated that his access to Mr. Lochabay was infringed in any way or that Mr. Lochabay impermissibly conferred with anyone in the Office of the Attorney General. Indeed, Mr. Lochabay isn't even mentioned in the suit. Moreover, this assumes that Mr. Fennell, a court appointed receiver, is a public employee in the first place.[47]

It is clear that Mr. Fennell understood he had no rights to the attorney of his choice, or even a private attorney. Moreover, according to his own letter to Presiding Judge Naraja, his only complaint, at the time he was denied reimbursement, was that ABA Model Rule 1.7 precluded the Office of the Attorney General from representing parties with competing interests. But, as discussed below, Mr. Lochabay did not represent any parties who had direct conflicts with Mr. Fennell. Thus, as long as Mr. Lochabay was walled off from conflicted attorneys in the Office, there was no conflict of interest. Because of these reasons, Mr. Fennell's due process was not violated.

---

[45] *Roth,* 408 U.S. at 577.
[46] COMPLAINT DEMAND FOR JURY TRIAL AT EXHIBIT H-11.
[47] *See* Note 17, *supra.*

**C. Mr. Fennell had no right to have the Attorney General Defendants refrain from taking adverse positions to him.**

Another complaint contained in Mr. Fennell's lawsuit[48] is that the Attorney General Defendants took positions that were adverse to his interests.[49]  Mr. Fennell, however, has no Constitutional right to have attorneys within the Office of the Attorney General refrain from taking positions that are adverse to his.

The NMI Constitution states that: "The Attorney General shall be responsible for providing legal advice to the governor and executive departments, representing the Commonwealth in all legal matters, and prosecuting violations of Commonwealth law."[50] Moreover, Commonwealth law provides that one of the duties of the Attorney General is to: "act, upon request, as counsel to all departments, agencies and instrumentalities of the Commonwealth, including public corporations . . ...."[51]  Thus, the only entity that may litigate on behalf of the CNMI and its employees, absent authorization, is the Office of the Attorney General (sometimes referred to as the "Office").

Mr. Fennell's complaints that attorneys within the Office took positions adverse to him is irrelevant because there are settled mechanisms, long used in public attorneys' offices, that shield particular attorneys within those offices from conflicts.[52]  In other words, it is common knowledge

---

[48]   Again, Mr. Fennell has alleged that the Attorney General Defendants in general and Mr. Gregory in particular violated their oaths of office, professional responsibility and their duties as officers of the court.  He has done so in generic, nonspecific ways that contradict public and internal Office of the Attorney General documents.  There is a time and a place for dealing with demonstrably false claims, but a Motion to Dismiss is, unfortunately, not one of them.  Again, the Attorney General Defendants deny that they breached any ethical duties, but for the purposes of this Motion the facts are assumed true.

[49]   COMPLAINT DEMAND FOR JURY TRIAL at p. 9-10 lns. 21-28 & 1-17; P. 11-12 lns. 18-28 & lns. 1-10.

[50]   NMI CONST. ART III, §11 (emphasis added).

[51]   1 CMC § 2153(h).

[52]   *See Public Util. Comm'n v. Cofer,* 754 S.W.2d 121, 125 (Tex.1988) (finding state attorneys

---

that the Attorney General's office is not bound by the same restrictions as a private law firm when

representing parties with adverse interests; even the ABA Model Rules allow for this.[53]  In fact,

"[a] majority of states have permitted ... the AG to concurrently represent conflicting interests

when the AG can ensure independent representation for the competing parties."[54]   In the case at

bar, there is not a single allegation contained in Mr. Fennell's entire lawsuit that indicates that the

government lawyer provided to him, Mr. Lochabay, has in any way taken an adverse position to

Mr. Fennell or had a single conversation regarding Mr. Fennell's interests with any of the

Attorney General Defendants.  In fact, the Office has taken steps to insure, from the beginning of

this case, that, if needed, Mr. Lochabay could act on behalf of Mr. Fennell.[55]

        At any rate, the alleged facts, if true, do not amount to any type of state claim, let alone a

constitutional one, and even if they did, the Supreme Court has been reluctant to label as a

constitutionally protected property right a claim that would be adjudicated as a matter of state law

_____

who represent opposing agencies may be "screened off" from each other); *Washington State Med. Disciplinary Bd. v. Johnston*, 663 P.2d 457, 465 (1983) ("When the performance of any legal duties required of the attorney general presents actual conflicts of interest, a different assistant attorney general can, and should, be assigned to handle those inconsistent functions.").

[53]  AMERICAN BAR ASSOCIATION MODEL RULES OF PROFESSIONAL CONDUCT, PREAMBLE AND SCOPE at 18 ("Also, lawyers under the supervision of [Attorney General] may be authorized to represent several government agencies in intragovernmental legal controversies in circumstances where a private lawyer could not represent multiple private clients. These Rules do not abrogate any such authority.")

[54]  *State v. Klattenhoff*, 71 Haw. 598, 801 P.2d 548, 551 (1990), *citing Superintendent of Ins. v. Attorney Gen.*, 558 A.2d 1197, 1202-03 (Me. 1989); *Connecticut Comm'n on Special Revenue v. Connecticut Freedom of Information Comm'n*, 174 Conn. 308, 387 A.2d 533, 537 (1978); *Feeney v. Commonwealth*, 373 Mass. 359, 366 N.E.2d 1262, 1266 (1977); E.*P.A. v. Pollution Control Bd.*, 69 Ill.2d 394, 14 Ill.Dec. 245, 372 N.E.2d 50 (1977); *Commonwealth ex rel. Hancock v. Paxton*, 516 S.W.2d 865 (Ky.1974); *Humphrey ex rel. State v. McLaren,* 402 N.W.2d 535 (Minn.1987); *State ex rel. Allain v. Mississippi Pub. Serv. Comm'n*, 418 So.2d 779 (Miss.1982); *State ex rel. McLeod v. Snipes*, 266 S.C. 415, 223 S.E.2d 853, 855-56 (1976); *Contra, City of York v. Pennsylvania Public Utility Commission*, 444 Pa. 136, 295 A.2d 825 (1972).

[55]  *See* CONFLICT MEMO (REDACTED FOR WORK PRODUCT) ATTACHED AS EXHIBIT 2 (Counsel is willing to provide complete memo for *in camera* inspection); CONFLICT MEMO FROM MATTHEW T. GREGORY DETAILING CONFLICTS ATTACHED AS EXHIBIT 3.

LA/576564v1

but for the fact that the defendant is a public official acting under color of law.[56]

### D. Mr. Fennell's attempts to claim rights under CELRTA are misplaced.

Public Law 15-22 the Commonwealth Employees' Liability Reform and Tort Compensation Act of 2006 (sometimes referred to as "CELRTA") repealed PELDIA. Mr. Fennell's pleading indicates that he has also attempted to claim rights through CELRTA. This is folly.

To begin with, CELRTA contains a saving clause providing that the: "Act and any repealer contained herein shall not be construed as affecting any existing right acquired under contract or acquired under statutes repealed or under any rule, regulation or order adopted under the statutes. ***Repealers contained in this Act shall not affect any proceeding instituted under or pursuant to prior law***. The enactment of the Act shall not have the effect of terminating, or in any way modifying, any liability, civil or criminal, which shall already be in existence on the date this Act becomes effective."[57] Again, Mr. Fennell was sued two years prior to the enactment of CELRTA and it contains no *ex post facto* clauses. In other words, Mr. Fennell has no rights in the implementation of CELRTA because all of his rights flow from PELDIA, and as expressed in the savings clause, CELRTA did not terminate or modify the Commonwealth's duties toward Mr. Fennell. Thus, Mr. Fennell's due process Fourteenth Amendment claim must be dismissed.

## II. Fourteenth Amendment and Equal Protection

Mr. Fennell's equal protection claim is nearly impossible to identify. Specifically, Mr. Fennell claims that "Defendants . . . have caused Mr. Fennell to be deprived of the constitutional rights guaranteed him by the . . . Fourteenth Amendment[]." Mr. Fennell also claims, in his

---

[56] *Paul v. Davis*, 424 U.S. 693, 698 (1976) (respondent's allegations of deprivation of property and liberty did not rise to a constitutional level where he would have had only a state action for defamation were petitioner not a state actor).

[57] PUBLIC LAW 15-22, §14, attached hereto as EXHIBIT 4

1  section for conspiracy, that Defendants intended "to deny Mr. Fennell due process and equal

2  protection of the laws."  Putting aside the fact that it is impossible to have conspired to deprive

3  Mr. Fennell's right to equal protection without actually depriving him his right to equal

4  protection, Mr. Fennell has pled equal protection as a substantive right: it is not and those claims

5  must be dismissed as well.

6

7  **A. Equal Protection is not a substantive right.**

8      Again, Federal law requires that "a litigant complaining of a violation of a constitutional

9  right . . . utilize 42 U.S.C. § 1983."[58]  Section 1983 requires that plaintiff prove that: "(1) a

10  person acting under the color of state law committed the conduct at issue; and (2) the conduct

11  deprived the Plaintiff of some right protected by the Constitution or laws of the United States."[59]

12  In this case, Mr. Fennell cannot, and did not allege that he was deprived of any "right protected by

13  the Constitution or laws of the United States."[60]  Instead, he asserted that he was deprived of

14  equal protection.  The guarantee of equal protection, however, is not a source of substantive

15  rights or liberties, but rather "a right to be free from discrimination in statutory classifications and

16  other governmental activity."[61]  "[D]iscrimination cannot exist in a vacuum; it can only be found in

17  the unequal treatment of people in similar circumstances."[62]  Thus, to prove an equal protection

18  violation, a plaintiff must show that the defendant acted with an intent or purpose to discriminate

19  against the plaintiff based upon membership in a protected class.[63]

20

21

22

23  ───────────────

[58]    *Azul-Pacifico,* 973 F.2d at 705.

24  [59]    *Seed*, WL 229096 at *6 (citing *Leer*, 844 F.2d at 632-33; *see also Daniels v. Williams*, 474 U.S. 327, 330-31 (1986) (holding that mere negligence cannot form the basis of a Fourteenth Amendment violation actionable under § 1983).

25

26  [60]    *Leer,* 844 F.2d at 632-33.

27  [61]    *Williams v. Vidmar*, 367 F.Supp.2d 1265, 1270 (N.D.Cal.2005).

[62]    *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir.1995).

28  [63]    *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir.2005).

LA/576564v1

-16-

**B. Mr. Fennell failed to allege which of his rights were violated and, therefore, his equal protection claims must be dismissed.**

Mr. Fennell has to allege the specific right of which he was denied equal protection; not just that he was denied "equal protection." This is, of course, problematic for Mr. Fennell. There is a significant difference between this suit and that of a normal section 1983 equal protection suit. In the usual case, section 1983 requires a plaintiff to allege that similarly situated persons, who are not in the same protected class as the plaintiff, were treated differently.[64] Mr. Fennell has not attempted to allege he was similarly situated in any way. Because he has not, his claims for equal protection must fail.

Inexplicably, Mr. Fennell has brought a lawsuit alleging violations of equal protection arising out of the Attorney General Defendants' taking adverse positions to his own and for their failure to pay for Mr. Kosack's attorneys' fees. This is inexplicable because neither the failure to pay Mr. Kosack or taking positions adverse to Mr. Fennell are violations of state law or the failure to enforce the law. But, *even if they were*, an equal protection challenge requires some evidence that similarly situated persons were treated differently. "Discrimination cannot exist in a vacuum; it can be found only in the unequal treatment of people in similar circumstances."[65] Again, there is no similar situation alleged in Mr. Fennell's complaint (for example, that another bank receiver received indemnification and was, therefore, treated differently). Because Mr. Fennell's equal protection cause of action fails to allege the specific right of which he was denied equal protection, and instead treats equal protection, impermissibly, as a substantive right,[66] his

---

[64] *See Ventura Mobile Home Communities Owners Ass'n v. City of San Buena Ventura,* 371 F.3d 1046, 1055 (9th Cir.2004); *Lee,* 250 F.3d at 687; *see also City of Cleburne v. Cleburne Living Cntr.,* 473 U.S. 432, 439 (1985)

[65] *See, e.g., Freeman v. City of Santa Ana,* 68 F.3d 1180, 1187 (9th Cir.1995) (citing *Attorney General v. Irish People, Inc.,* 684 F.2d 928, 946 (D.C.Cir.1982)

[66] *Harris v. McRae,* 448 U.S. 297, 322 (1980) (Equal protection guarantees no substantive rights

equal protection claims must be dismissed.

## III. Fifth Amendment

Mr. Fennell's Fifth Amendment claim is without merit. Presumably, Mr. Fennell is complaining that his rights to due process via the Fifth Amendment were violated. The Fifth Amendment, however, only addresses due process violations made by federal officials.[67] Plaintiffs' complaint contains no allegations against the federal government or a federal government official and must be dismissed.

## IV. First Amendment

The first cause of action includes a claim that the Attorney General Defendants violated Mr. Fennell's First Amendment rights. The substance of this complaint is in paragraph 57 where Mr. Fennell claims that the Attorney General Defendants: "intended and continue to intend that their concerted actions and inaction intimidate, frustrate and hinder Mr. Fennell's defense in the Lawsuit for, among other purposes, the purpose of inhibiting Mr. Fennell from further divulging what he knows among other things about: [salacious allegations about Governor Fitial.]"[68] This

---

or liberties.).

[67]  *Lee*, 250 F.3d at 687, *citing Schweiker v. Wilson*, 450 U.S. 221, 227 (1981); *see also Jackson v. Elrod*, 655 F.Supp. 1130, 1134 (N.D.Ill.1987); *Gerena v. Puerto Rico Legal Services, Inc.*, 697 F.2d 447, 449 (1st Cir.1983); *Knoetze v. U.S. Dep't of State*, 634 F.2d 207, 211 (5th Cir.1981) ("[F]ifth amendment protection attaches only when the federal government seeks to deny a liberty or property interest."); *Hester v. Lowndes County Comm'n*, No. 2:06cv572-WHA (WO), 2006 U.S. Dist. LEXIS 63084, at *9, 2006 WL 2547430 (M.D.Ala. Sept. 1, 2006) ("[T]he Fifth Amendment's Due Process Clause applies only to the federal government, not to state governments and state or local officials."); *Hewes v. Rhode Island Dep't of Corr.*, No. 00-205 S, 2003 U.S. Dist. LEXIS 3256, at *10, 2003 WL 751027 (D.R.I. Feb. 11, 2003) ("The Fifth Amendment due process clause 4 applies to the actions of the federal government and its agents, and not the state government or its agents."); *Learnard v. Inhabitants of Van Buren*, 164 F.Supp.2d 35, 41 n. 3(D.Me.2001) ("The Fifth Amendment Due Process Clause applies to the federal government rather than a state government ...."); *Basile v. Elizabethtown Area Sch. Bd. of Sch. Dirs.*, 61 F.Supp.2d 392, 403 (E.D.Pa.1999) ("The due process clause of the Fifth Amendment is limited to acts of the federal government and has no application to state government actions.").

[68]  *See* COMPLAINT DEMAND FOR JURY TRIAL, P. 10-11, lns. 27-28 & lns. 1-18.

1   free speech claim must fail.

2          To prevail upon a First Amendment free speech claim, a plaintiff must plead and prove

3   that: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were

4   motivated or substantially caused by his exercise of that right; and (3) defendants' actions

5   effectively chilled the exercise of his First Amendment right."[69]  Mr. Fennell's claims fail to allege

6   that the Attorneys' General Defendants' actions effectively chilled the exercise of Mr. Fennell's

7   First Amendment rights.

8

9          Assuming, *arguendo*, that plaintiff alleged facts to satisfy the first and second prongs of

10  the test, there are no facts that indicate that the exercise of Mr. Fennell's rights were chilled in any

11  way.  This is so because a plaintiff must show that his First Amendment rights were "actually

12  chilled."[70]  There is not a single factual allegation, beyond Mr. Fennell's conclusory statement,

13  that his past, present, or future speech has been chilled, that demonstrates or alleges *how* Mr.

14  Fennel was deprived of his right to free speech.   "Vague and/or conclusory allegations of official

15  participation in civil rights violations, however, are not sufficient to withstand a motion to

16  dismiss."[71]  Moreover, the Supreme Court has held that "allegations of a subjective 'chill' are not

17  an adequate substitute for a claim of specific present objective harm or a threat of specific future

18  harm."[72]

19          In the case at bar Mr. Fennell hasn't plead that he was stopped from writing a letter to the

20  editor, posting on the internet, printing flyers, taking out an advertisement in a local newspaper,

21  raising these issues in the underlying Bank of Saipan litigation, or enclosing these facts in e-mails

22  to attorneys around the Commonwealth.  Moreover, since at least 2005, Mr. Fennell has been

---

[69]   *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir.2001).

[70]   *Davis v. Vill. Park II Realty Co.*, 578 F.2d 461, 464 (2d Cir.1978).

[71]   *Ivey*, 673 F.2d at 268.

[72]   *Laird v. Tatum*, 408 U.S. 1, 13-14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).

adequately represented by the Law Offices of Rexford Kosack. Mr. Kosack was not, as Mr. Fennell complains, paid for by the Commonwealth. Moreover, Mr. Kosack, according to Mr. Fennell's own pleading never alleged a free speech infringement. In fact, the entire First Amendment claim, as currently plead, is little more than an attack on Governor Fitial, and Matthew Gregory. This is apparent when one examines the "demand e-mail" sent on Mr. Fennell's behalf to a lawyer working in the Department of Labor with a request to forward the threat to the Governor. The e-mai indicates that Mr. Fennell was only too happy to exercise his First Amendment rights.

Attached hereto as Exhibit "5" is an e-mail sent from Mr. Fennell's attorney. This threat: was addressed to an individual who is not the Governor's counsel; threatened a lawsuit that contained "not so nice" allegation about the Governor (even though the e-mail indicated that the Governor would not be a named defendant); indicated the same demand and offer had been relayed to a private attorney who was also not the Governor's counsel; and requested that the Governor interfere with the fiduciary duties of both the Office of the Attorney General and the Department of Public Lands. In other words, if the Governor would just take actions that very well would have breached his oath of office, Mr. Fennell would be generous enough not to sue *somebody else*. Putting aside the myriad of problems that spring to mind when examining such a threat, the problem most pertinent to this litigation is that Mr. Fennell's free speech claim only exists to smear the Governor. But for a First Amendment claim that fails to indicate or allege how the Attorney General Defendants chilled Mr. Fennell's speech, there is absolutely no need for the salacious accusations regarding the Governor. Thus, the First Amendment claim only serves as a foil to plead salacious allegations against the Governor. Moreover, and more importantly, the e-mail demonstrates that Mr. Fennell was only too happy to exercise his First Amendment right when it came to threatening the Governor and telling whoever would listen that Mr. Fennell

was in possession of some "not so nice" information.

Because of this, the First Amendment claim must be dismissed because it contains only vague and conclusory allegations of misconduct and does nothing more than publish salacious allegations.  Mr. Fennell has failed to show the deprivation of any First Amendment right and his First Amendment claim under 42 U.S.C. § 1983 fails as a matter of law.

**V.  Without an Underlying §1983 Violation, Plaintiff May Not Allege a §1985 (or 1986) Action on the Same Pled Facts.  Therefore, Mr. Fennell's remaining claims should be dismissed.**

As demonstrated above, Mr. Fennell has no right to have members of the Office of the Attorney General refrain from taking adverse positions to him and he has no right to have the Attorney General or any Assistant Attorney General make a determination on his PELDIA claim.  Thus, he has failed to state due process or an equal protection claim.  The Ninth Circuit precludes plaintiffs from bringing conspiracy claims for violating equal protection and due process when there is no underlying violation of equal protection and due process.[73]  Moreover, because a valid 42 U.S.C. § 1986 claim only exists where there is a valid claim under section 1985,[74] this Court should dismiss the section 1986 claim as well. Further, even if the Ninth Circuit allowed Mr. Fennell to state a claim for conspiracy, and it does not, he has failed to properly plead them.

When pleading a conspiracy a "plaintiff must make some showing of an agreement or a meeting of the minds on the part of defendants to violate his constitutional rights."[75] Conspiracy allegations must be supported by material facts and not merely conclusory statements.[76]  "Vague and conclusory allegations are not sufficient to support a claim for

---

[73]  *Cassettari v. Nevada County, Cal.,* 824 F.2d 735, 739 (9th Cir.1987).

[74]  *See McCalden v. California Library Ass'n,* 955 F.2d 1214, 1223 (9th Cir.1990).

[75]  *Woodrum v. Woodward County,* 866 F.2d 1121, 1126 (9th Cir. 1989).

[76]  *Lockary v. Dayfetz,* 587 F.Supp. 631 (N.D. Cal. 1984).

civil rights violations based on conspiracy."[77]  This heightened pleading standard no longer applies to civil rights actions in general,[78] but it does still apply to conspiracy claims.[79]

The heightened pleading standard requires that a conspiracy claim must be pled with particularity as to which defendants conspired, how they conspired and how the conspiracy led to a deprivation of plaintiff's constitutional rights.[80]  Mr. Fennell's pleadings fail to meet this standard.

All Mr. Fennell has pled are conclusory facts, or facts that do not indicate a violation of a right.  For example, Mr. Fennell alleges that: the Attorney General Defendants formed a conspiracy;[81] impeded or obstructed his defenses;[82] and obstructed justice.[83]  These are all conclusory allegations which assume the ultimate issue.  Mr. Fennell has not alleged how justice was obstructed.[84]  Moreover, as pointed out above, Mr. Fennell has no interest in having the Attorney General Defendants refrain from taking positions that are adverse to his.  For these reasons, he has failed to state a claim for conspiracy.

**VI.  Mr. Gregory and Mr. Baka are absolutely immune from suit.**

Though 42 U.S.C. § 1983 is broadly worded, the Supreme Court "has consistently

---

[77]  *Ivey,* 673 F.2d at 268.

[78]  *see Galbraith v. County of Santa Calara,* 307 F.3d 1119, 1126 (9th Cir. 2002)

[79]  *Olsen v. Idaho State Bd. of Medicine,* 363 F.3d 916, 929 (9th Cir.2004).

[80]  *See Harris v. Roderick,* 126 F.3d 1189, 1196 (9th Cir. 1997).

[81]  *See* COMPLAINT DEMAND FOR JURY TRIAL at ¶ 68.

[82]  *See* COMPLAINT DEMAND FOR JURY TRIAL at ¶ 69.

[83]  *See* COMPLAINT DEMAND FOR JURY TRIAL at ¶ 70.

[84]  *See, e.g., Mendocino Environmental Cntr. v. Mendocino County,* 14 F.3d 457 (9th Cir.1994) (citing how plaintiffs' petition claimed that law enforcement officials intentionally released false information to the press that was made to smear them and other [organization] members as terrorists and violent fanatics.  The complaint also alleged that the plaintiffs were arrested without probable cause and that the agents supplied false information to the magistrate, leading to the issuance of a search warrant.).

recognized" that it "was not meant 'to abolish wholesale all common-law immunities.'"[85] Instead, the Supreme Court has held that section 1983 must be "read in harmony with general principles of tort immunities and defenses," and the Court has recognized that for some "special functions,"[86] "it is better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation."[87]

That said, it is the "official seeking absolute immunity [who] bears the burden of showing that it is warranted for the function in question, against a presumption that qualified immunity affords sufficient protection."[88]  Admittedly, the Supreme Court "has refused to extend absolute immunity beyond a very limited class of officials . . . 'whose special functions or constitutional status requires complete protection from suit.'"[89]  Generally, however, government attorneys are entitled to absolute immunity when they function within the confines of their role as advocates of the government in activities or functions that are intimately or integrally associated with the judicial (or administrative) process.[90]  In this case, Mr. Gregory and Mr. Baka are entitled to absolute immunity.[91]

For example, in *Mangiafico v. Blumenthal,* the Second Circuit Court of Appeals held that the Attorney General of Connecticut was absolutely immune from a 1983 suit stemming from the Attorney General's denial of indemnification.[92]  In deciding the issue, the Second Circuit likened

---

[85]   *Burns v. Reed*, 500 U.S. 478, 484, (1991).

[86]   *Butz v. Economou*, 438 U.S. 478, 508, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978),

[87]   *Imbler v. Pachtman*, 424 U.S. 409, 428, (1976) (internal quotation and citations omitted).

[88]   *Burns,* 500 U.S. at 486-87, 111 S.Ct. 1934.

[89]   *Hafer v. Melo,* 502 U.S. 21, 29, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

[90]   *See, e.g., Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

[91]   *Mangiafico v. Blumenthal,* 471 F.3d 391 (2d. Cir. 2006).

[92]   *See, id.*

the decision on when to indemnify akin as to when to initiate litigation on behalf of the state.[93]

In the case at bar, the only way for Mr. Gregory or Mr. Baka to have violated Mr. Fennell's rights to be certified an employee of the Commonwealth is if Mr. Fennell was entitled to the protections of CELRTA (PL 15-22). As conclusively demonstrated, however, he has no rights via CELRTA because he was sued prior to its enactment. Even if he did have rights, (i.e. he was sued after CELRTA became law in 2006) the Attorney General has absolute immunity in making, or declining to make a decision regarding indemnification. For these reasons, Mr. Gregory and Mr. Baka are immune from suit.

**VII. The Facts Alleged Do Not Show a Violation of Constitutional Rights. Therefore, the Attorney General Defendants are entitled to Qualified Immunity.**

The Supreme Court in *Saucier v. Katz*,[94] outlined a two-step approach to qualified immunity. The first step requires the court to ask whether taking the facts "in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[95] "If the answer to the first inquiry is yes, the second inquiry is whether the right was clearly established: in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"[96] In *Pearson v. Callahan*,[97] the Supreme Court held that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[98]

---

[93]  *See, id* at 396.

[94]  533 U.S. 194 (2001)

[95]  *Saucier*, 533 U.S. at 201.

[96]  *Millender v. County of Los Angeles*, 564 F.3d 1143, 1148 (9th Cir. 2009)

[97]   --- U.S. ----, ----, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009).

[98]  *Id*. at 818.

As demonstrated frequently in earlier sections of the brief, Mr. Fennell has failed to allege he was denied equal protection of any right protected by the U.S. Constitution. Therefore, as the Plaintiff's own alleged facts fail to show the Attorney General Defendants violated any of Mr. Fennell's constitutional rights, the Attorney General Defendants are immune and the suit must be dismissed. In this case, however, even if Mr. Fennell could demonstrate a constitutional right was violated he cannot demonstrate that his rights were clearly established.

In determining whether Mr. Fennell's rights were clearly established, the parties are to refer the court to cases on point.[99] Mr. Fennell cannot provide this court with a case that is similar to his, a receiver being denied public employee indemnification or that similar actions had chilled free speech, because the idea that a receiver is a public employee has little legal merit. Thus, it is clear Mr. Fennell's "rights" were not clearly established.

## CONCLUSION

WHEREFORE, based upon the foregoing, this honorable Court should grant, in whole or in part, Attorney General Defendants' Motion to Dismiss and that all costs be taxed to Mr. Fennell.

Respectfully submitted
Friday, July 31, 2009
OFFICE OF THE ATTORNEY GENERAL


_____/S/_____
Braddock Huesman, F#0367

---

[99]    *See generally Brosseau v. Haugen,* 543 U.S. 194, 199-200, 125 S.Ct. 596, 599 - 600 (2004) (The parties point us to only a handful of cases relevant to the "situation [Brosseau] confronted").

CERTIFICATE OF SERVICE

I certify that a copy of Defendants' Motion to Dismiss was served on Mark Hanson who is the attorney in charge for plaintiff, Mr. Fennell, and whose address is PMB 738, PO Box 10000, Saipan, MP 96950, (670) 233-8600, by electronic filing on July 31, 2009.


_____/S/_____
Braddock Huesman


_____