December 8, 2005

Honorable Robert C. Naraja
Presiding Judge
Commonwealth Superior Court
House of Justice, Guma Husticia Building
Saipan, MP  96950

Re:    **Payment of Defense of Former Receiver in Bank of Saipan Lawsuit Reconsidered**

Dear Presiding Judge Naraja:

On August 26, 2005, I was informed by Attorney General Pamela Brown that you had authorized my indemnification in the lawsuit of *The Bank of Saipan, Inc. v. Randall T. Fennell, Richard Pierce, White, Pierce, Mailman & Nutting, David W. Axelrod, Schwabe, Williamson & Wyatt*, CNMI Superior Court Civil Action No. 04-449A. The same letter indicates that with respect to my request for defense costs, you denied this request as conflicts do not prevent the Attorney General from representing me in this matter. I believe that as this case has developed over the past three months, conflicts have begun to arise that were not anticipated before. For that reason, I am asking that you reconsider your denial and grant my request for private counsel.

I recognize that the decision whether to provide a defense through the Attorney General or through separate counsel is committed to the entity that was the employer by the PELDIA statute. 7 CMC § 2304(a) ("at the public entity's discretion"). This discretion, however, must be guided by the ethical rules governing lawyers addressing actual and potential conflicts of interest which may arise in the course of representing multiple clients. Rule 1.7 of the Model Rules of Professional Conduct provides that a lawyer should not engage in multiple representation of

Honorable Robert C. Naraja
December 8, 2005
Page 2

---

clients if "there is a significant risk that he representation of one or more clients will be materially limited by the lawyer's responsibilities to another client" unless "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client" and "each affected client gives informed consent, confirmed in writing." *See also, Eriks v. Denver*, 824 P.2d 1207, 1212 (Wash. 1992).

The potential conflict of interest in this case arises from the Attorney General's representation of the Secretary of Commerce, the plaintiff who petitioned the Bank of Saipan into receivership, presently and for the past 3 ½ years. Initially, I was willing to accept your decision based upon the belief that there would be no potential conflict in the same office representing both the Secretary and myself. Since then, conflicts have begun to arise between the Secretary's position and mine on several issues. In particular, a critical issue in this case has been whether the receivership of the Bank should continue or be terminated. The position of the Secretary of Commerce, acting as the Director of Banking, on this issue is crucial, particularly since the Secretary is the plaintiff in the receivership. This issue has been repeatedly reevaluated by the Secretary. We are informed that as Secretary Andrew Salas has recently returned to the job, this issue is once again being examined.

It is very much in my interest that the receivership continue. In receivership, the Bank Directors' decision to use the Bank to sue me is subject to the review and authorization of the receivership court. In fact, this issue was raised as one of the first issues we raised. On October 14, 2005, Judge Lizama, sitting as the receivership judge, ordered that the prosecution could continue only once the Directors comply with certain cost restrictions in order to protect the

Bank's depositors from a lawsuit which could result in the Bank's failure. This decision benefits me in two ways. It provides a fund to ensure that I will ultimately be able to recover my own fees and costs from the Bank, which might not be possible if the Bank is left to its own resources. Also, if the Directors are unable to meet the conditions, the lawsuit may come to an end. If the receivership ends, I may lose these benefits.

Judge Lizama's decision has been appealed to the Commonwealth Supreme Court. On December 7, 2005, Justice Castro ruled that I do not have standing to brief and argue this matter as an appellee. This means I have to rely on the Attorney General to defend Judge Lizama's order. At this point, it is unclear whether Mr. Salas will choose to defend the appeal. It is unclear whether he will change the policy of his department and agree to terminate the receivership unconditionally. Furthermore, with a change of administration scheduled to occur next month, these issues will be up for reconsideration once again.

I do not see how the Attorney General could advise the Secretary of Commerce on these issues, when he may want to terminate the receivership, and represent me at the same time in opposing any move to terminate the receivership. Thus, the potential for a conflict of interest has now arisen in the Office of the Attorney General. Under Rule 1.7, I would have to consent in writing to multiple representation. I am not willing to do so.

I am aware that the Attorney General's Office has argued that it could insulate itself from such conflicts, but I have found no authority which states that in such a situation an ethical wall may be used. Indeed, courts have held government attorneys up to stricter scrutiny in these circumstances: "Due to the sensitivity of their roles, attorneys for governmental bodies are

Honorable Robert C. Naraja
December 8, 2005
Page 4

subject to closer scrutiny under the appearance-of-propriety standard than non-governmental attorneys." *In re Petition for Review*, 507 A.2d 233, 238 (N.J. 1986). In sum, I believe that my representation by the same office which represents and advises the Secretary of Commerce is not acceptable.

I understand the government's legitimate desire to avoid the financial burden of my private representation. For the very same reason, I also desire to avoid that burden. I agreed to assist the government in an emergency by acting as a temporary receiver for only one month. Due to motions and writs brought by the Directors, I was forced to remain as receiver for five months. I now find myself being sued for my service. I have a policy of insurance which pays for my defense, but its fund will soon be depleted. At that point, I only have PELDIA and a claim against the Bank for indemnification if I prevail in my defense, as I believe I ultimately will. The PELDIA statute was passed into law to ensure that persons who serve the government are not required to exhaust their own resources defending themselves against lawsuits based upon alleged acts done while government servants.

I ask that you reconsider your decision to not pay for my defense based upon recent events which have now created conflicts and make future conflicts much more likely. I also ask that you consider these facts in granting my PELDIA request for the new MPLA intervention in this lawsuit.

Thank you very much for your kind consideration. I look forward to your reply.

Very truly yours,

Randall T Fennell

cc: Attorney General