1

2   MARK B. HANSON, ESQ.
    Second Floor, Macaranas Building
3   Beach Road, Garapan
    PMB 738 P.O. Box 10,000
    Saipan, Mariana Islands 96950
4   Telephone:    (670) 233-8600
    Facsimile:    (670) 233-5262
5   E-Mail Address:    mark@saipanlaw.com

6   Attorney for *Plaintiff*

7            IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN MARIANA ISLANDS

8   RANDALL T. FENNELL,                    )    CASE NO. CV 09-0019
                                           )
9                          Plaintiff,      )
                                           )
10              vs.                        )
                                           )    PLAINTIFF'S OPPOSITION TO
11  MATTHEW T. GREGORY, former Attorney)        MOTION TO DISMISS
    General, GREGORY BAKA, Acting Attorney)
12  General, ANTHONY WELCH, Assistant Attorney)
    General, TOM J. SCHWEIGER, Assistant Attorney)
13  General and DOES 1-20, in their official and)
    individual capacities,                 )
14                                         )
                           Defendants.     )    Date:  September 10, 2009
15                                         )    Time:  9:00 a.m.
                                           )    Judge: Hon. Alex R. Munson
16

17

18           COMES NOW, Plaintiff Randall T. Fennell, by and through his attorney of record

19  with the following Opposition to Defendants' Motion to Dismiss.  For the reasons stated

20  herein, Plaintiff's Complaint is adequately pled.  Plaintiff has stated cognizable claims for

21  violations of 42 U.S.C. §§ 1983 (deprivation of constitutional rights), 1985(2) (conspiracy to

22  obstruct justice), 1985(3) (conspiracy to deprive plaintiff of constitutional rights) and 1986

23  (failure to prevent deprivation of constitutional rights).  Defendants' motion should be denied.

24

25

26

27

28

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

  A.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

  B.  MR. FENNELL HAS PROPERLY STATED CLAIMS
     PURSUANT TO 42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

  C.  PLAINTIFF HAS ADEQUATELY PLED CONSPIRACY CLAIMS
     PURSUANT TO 42 U.S.C. § 1985 and 1986. . . . . . . . . . . . . . . . . . . . . . . . . . 12

  D.  NONE OF THE DEFENDANTS ARE ENTITLED
     TO ABSOLUTE IMMUNITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

  E.  NONE OF THE DEFENDANTS ARE ENTITLED
     TO QUALIFIED IMMUNITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

  F.  LEAVE TO AMEND SHOULD BE GRANTED IF NECESSARY. . . . . . . . . . . . 17

III  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

APPENDIX:

- *Bradshaw v. Commonwealth of the Northern Mariana Islands*, Order Regarding
  Motions at 16 (D.N.M.I. Sept. 8, 2006)

- Public Employee Legal Defense and Indemnification Act, 7 C.M.C. §§ 2301, *et seq.*

1

TABLE OF AUTHORITIES

2

3

CASES:

4   *American Family Ass'n, Inc. v. City and County of San Francisco,*
      277 F.3d 918 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5   *Anderson v. Davila*, 125 F.3d 148 (3rd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

6   *Bradshaw v. Commonwealth*, Order Regarding Motions
7       (D.N.M.I. Sept. 8, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 5 n.1, 12, 14-17

8   *Carepartners LLC v. Lashway*, 545 F.3d 867 (9th Cir. 2008) . . . . . . . . . . . . . . . . . 10, 17

9   *Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

10  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987) . . . . . . . . . . . . . . . . . 17-18

11  *Deukmejian v. Brown*, 624 P.2d 1206 (Cal. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . 8-9, 16

12  *Dunton v. County of Suffolk*, 729 F.2d 903 (1984) *amended*, 748 F.2d 69 . . . . . . . . 7, 16

13  *Flood v. Harrington*, 532 F.2d 1248 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . 14

14  *Foman v. Davis*, 371 U.S. 178, 182 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

15  *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . 15

16  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

17  *Imbler v. Pachtman*, 424 U.S. 409 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18  *Inouye v. Kemna*, 504 F.3d 705 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

19  *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.,*
20      12 F. Supp. 2d 1035 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

21  *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580 (6th Cir. 2008) . . . . . . . . . . . . . . 12

22  *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 109 S. Ct. 1909 (1989) . . . . 7

23  *Laird v. Tatum*, 408 U.S. 1, 92 S. Ct. 2318 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

24  *Mangiafico v. Blumenthal*, 471 F.3d 391 (2nd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . 14-15

25  *Mendocino Envtl. Ctr. v. Mendocino County*, 14 F.3d 457 (9th Cir. 1994) . . . . . . . . . . . 11

26  *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283 (9th Cir. 1999) . . . . 11-13, 16

27  *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc) . . . . . . . . . . . . . . . . . . . . 14

28  *Mir v. Little Co. of Mary Hospital*, 844 F.2d 646 (9th Cir. 1988) . . . . . . . . . . . . . . . . . 4

*Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274,
97 S. Ct. 568 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Olim v. Wakinekona*, 461 U.S. 238, 103 S. Ct. 1741 (1983) . . . . . . . . . . . . . . . . . . . . . . 8

*Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808 (2009) . . . . . . . . . . . . . . . . . . . . . . 15

*Public Utility Comm'n of Texas v. Cofer*, 754 S.W.2d 121 (Tex. 1988) . . . . . . . . . . . 8 n.5

*Smiley v. Office of Workers' Compensation Programs*, 984 F.2d 278 (9th Cir. 1993) . 7, 16

*Sloman v. Tadlock*, 21 F.3d 1462 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310 (9th Cir. 1989) . . . . . . . . . . . . . . . 10, 17

*State v. Klattenhoff*, 801 P.2d 548 (Haw. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Suffolk County Patrolmen's Benevolent Ass'n, Inc.*,
595 F. Supp. 1471 (E.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539 (1989) . . . . . . . 13

*Uribe v. Mainland Nursery, Inc.*, 2007 WL 4356609 (E.D. Cal.) . . . . . . . . . . . . . . . . . . . 4

*Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977 (9th Cir. 2002) . . . . . . . . . . . . 4

STATUTES:

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12, 14, 16

42 U.S.C. § 1985 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

42 U.S.C. § 1986 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Commonwealth Employees' Liability Reform and Tort Compensation Act
of 2006, 7 C.M.C. § 2201 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6 n.2, 8 n.5

Public Employee Legal Defense and Indemnification Act,
7 C.M.C. §§ 2301, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 n.1, 7

RULES and REGULATIONS:

Comm. Discip. R. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 n.4

Fed. R. Civ. P. 8(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Model Rules of Professional Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

TREATISES:

Miriam-Webster's Online Dictionary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 n.7

3 *Moore's Federal Practice* §15.15[2], at 15-43-44 (3d ed. 1997) . . . . . . . . . . . . . . . . . 18

Webster's New World Dictionary, Third College Ed. . . . . . . . . . . . . . . . . . . . . . . . 10 n.7

5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1216 . . . . . 4

# I. INTRODUCTION

Defendants, in their Motion to Dismiss, demonstrate their complete lack of understanding of their ethical and legal obligations to Plaintiff and how their actions alleged in the Complaint equate to a violation of Mr. Fennell's civil rights.

It was the CNMI Attorney General acting on behalf of the Secretary of Commerce who in April 2002 requested that Mr. Fennell act as a temporary receiver for the Bank of Saipan (the "Bank"). The Office of the Attorney General ("OAG") worked hand in glove with Mr. Fennell during the pendency of the Bank of Saipan Receivership in 2002.   Then, when Mr. Fennell was sued by the Bank's Board of Directors in an attempt to discredit Mr. Fennell and to divert attention from the Board's own mismanagement and self dealing, it was the OAG that agreed to represent him in *Bank of Saipan, Inc. v. Randall T. Fennell, et al.*, Civil Action No. 04-0449, CNMI Superior Court (the "Bank Lawsuit").

The complaint brought by Defendant Gregory on behalf of the Marianas Public Lands Authority ("MPLA") was more of the same intentional disparagement of Mr. Fennell.  Mr. Gregory should never have been representing MPLA in the first place due to his lengthy representation of various interest of the Tan Family which held a significant position in the Bank and its Board including that of Chairman through then Tan Family employee now Commonwealth Governor Benigno T. Fitial.  Even a cursory review of that complaint filed by Defendant Gregory shows that it makes no material allegations and alleges no specific harm to MPLA.  The Complaint, by design, merely maligns Mr. Fennell in what Mr. Fennell alleges in this case was an attempt to chill his speech and to retaliate against him for speaking out against the Bank's shareholders and members of the Bank's Board of Directors.

Defendants do not refute, nor can they, that the OAG provided and is obligated to continue to provide Mr. Fennell representation in the Bank Lawsuit, and that in reliance on that attorney-client relationship, Mr. Fennell shared legal confidences not only with Mr. Lochabay, but with numerous attorneys within the OAG including Defendant Gregory's immediate predecessor.

While Mr. Fennell frankly believed the OAG to be out gunned by the numerous law firms retained by the well financed Bank Board of Directors, and as a result hired the Kosack firm to act as lead counsel with limited insurance funds available to him, Mr. Fennell advised the OAG that if the initial motions to dismiss the Bank Lawsuit were unsuccessful (there are at least eight motions that have been pending for over four years in the CNMI Superior Court), Mr. Fennell would need the further assistance of the OAG, and possibly require the OAG to substitute in, and the OAG agreed.  At no time was Mr. Fennell advised of any "Chinese Wall."  At no time was Mr. Fennell instructed to limit his conversations or communications to Mr. Lochabay.

Mr. Fennell's relationship with the once cooperative OAG changed when Defendant Gregory became the Attorney General and Department of Public Lands ("DPL") was substituted as the a plaintiff in place of MPLA in the Bank Lawsuit.  While arguably there had been a growing conflict due to changing views within the Department of Commerce which was being represented by the OAG, it was Benigno T. Fitials' election as Governor and Defendant Gregory's appointment as Attorney General that spawned the OAG's active hostility towards its client Mr. Fennell at which time the OAG ran head on into a conflict for which there could be no "Chinese Wall."

Mr. Fennell alleges that the hostility originated with Defendant Gregory and that Defendants Baka, Welch and Schweiger and others actively participated in Defendants' concerted efforts to undermine Mr. Fennell's position in the Bank Lawsuit, to chill his free speech and to retaliate against Mr. Fennell for the positions he had taken against Defendant Gregory's clients and their partners in the Bank of Saipan fiasco, one of whom is now the Commonwealth's Governor.

## II.  ARGUMENT

Despite the clarity of Plaintiff's Complaint, Defendants have fundamentally misunderstood the basis for Mr. Fennell's claims of constitutional deprivations therein.  Mr. Fennell is claiming that Defendants' various actions and inaction were intentional and

concerted efforts by Defendants (1) to deny Mr. Fennell independent, conflict-free counsel, (2) to frustrate and to hinder Mr. Fennell's exercise of his First Amendment rights to free speech and the right to access to the courts, and (3) to retaliate against Mr. Fennell for his actions in defending himself in the Bank Lawsuit which also implicates Mr. Fennell's First and Fourteen Amendment rights to Free Speech and due process of law.

In his Complaint, Mr. Fennell alleges the various actions and inactions of Defendants in furtherance of Defendants' plan, including, *inter alia*:  (1) the institution of and continued pursuit of the meritless claims of MPLA (now DPL) in the Bank Lawsuit; (2) Defendants' patently conflicted representation of Mr. Fennell in the Bank Lawsuit;  (3) the use by Defendants of confidential information gained by Defendants through the OAG's representation of Mr. Fennell, (4) the failure of Defendants to take actions in the lawsuit to protect Mr. Fennell's interests in the Bank Lawsuit; (5) the deliberate delay of decisions from the OAG to the detriment of Mr. Fennell and his position in the Bank Lawsuit; and (6) purposely conspiring with the attorneys for the Bank's Board of Directors to further undermine Mr. Fennell's position in the Bank Lawsuit.  *See* Complaint at ¶¶ 46, 55-56.

There can be no doubt that when the Office of the Attorney General undertook the representation of Mr. Fennell in August 2005, Mr. Fennell, as a matter of due process, was entitled to conflict-free representation and the confidentiality of his communications. Whether the Office of the Attorney General adequately "screened" its representation of Mr. Fennell from its representation of DPL in the Bank Lawsuit is a matter of dispute.  Mr. Fennell has alleged the opposite — that Defendants as Attorneys General and Assistant Attorneys General actively conspired to undermine Mr. Fennell's defense in the Bank Lawsuit.

In any case, the myriad of issues raised by Defendants in their Motion to Dismiss are baseless.  The claims clearly pled in the Complaint make out a case for violations of Mr. Fennell's First and Fourteenth Amendment rights under the United States Constitution. Defendants' actions were intentional and were not actions in the capacity of prosecutors in any case; none of the Defendants are entitled to absolute immunity.  Further, Mr. Fennell's rights

to conflict-free representation, confidentiality of information, his rights to not have his attorneys undermine his defense in a pending lawsuit, and his rights to exercise free speech free from intimidation and retaliation are all clearly established. None of the Defendants, all of whom are attorneys, are entitled to qualified immunity. Defendants' Motion to Dismiss should be denied.

A.      STANDARD OF REVIEW.

For purposes of a Fed. R. Civ. P. 12(b)(6) motion to dismiss, review is limited to the contents of the complaint. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). All allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *See American Family Ass'n, Inc. v. City and County of San Francisco*, 277 F.3d 918 (9th Cir. 2002). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *See Van Buskirk*, 284 F.3d at 980.

> [T]he complaint, and other relief-claiming pleadings need not state with precision all elements that give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided. However, the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.

5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1216 (1990) (citations omitted).

It should also be noted that it is inappropriate on a motion to dismiss to consider extrinsic evidence and factual statements such as that contained in and attached to Defendants' Memorandum. In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hospital*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998). *See also Uribe v. Mainland Nursery, Inc.*, 2007 WL 4356609 (E.D.

Cal.) at * 3 ("[D]efendant's factual assertions regarding the nature of their business are irrelevant to the current motion before the court.").

B.     MR. FENNELL HAS PROPERLY STATED CLAIMS PURSUANT TO 42 U.S.C. § 1983.

As stated above, Defendants have grossly misstated and/or misunderstood Plaintiff's claims under 42 U.S.C. § 1983.  Plaintiff's claims arise out of the effective chilling of his First Amendment rights to free speech by Defendants' actions and inaction with regard to Plaintiff's representation in the Bank Lawsuit, and out of Mr. Fennell's due process rights to conflict-free representation and the confidentiality of his communications to the OAG and the due process rights to not have Mr. Fennell's government attorneys purposely undermine his position in litigation.

Many of the factual circumstances discussed by Defendants in their motion are certainly indicative of Defendants' actions, inactions and their conspiracy to deny Mr. Fennell his constitutional rights — evidence that will be fleshed out in discovery in this case.  However, those facts are not the basis for the claimed constitutional deprivations as Defendants would have this Court believe.

For example, Defendants argue that Plaintiff has attempted to claim he was deprived of a constitutional right when Defendants refused to comply with the provisions of the Commonwealth Employees' Liability Reform and Tort Compensation Act of 2006, 7 C.M.C. § 2201 *et seq.* ("CELRTCA").  That is not Plaintiff's claimed basis for a constitutional deprivation; it is evidence of one.[1]

CELRTCA was the successor of the Public Employee Legal Defense and Indemnification Act, 7 C.M.C. §§ 2301, *et seq.* ("PELDIA").  Mr. Fennell was initially represented by the OAG pursuant to PELDIA.  Defendants argue that CELRTCA did not

---

[1] Plaintiff would note, however, that this Court has held in at least one prior case that the Attorney General and other government attorneys could be sued pursuant to 42 U.S.C. § 1983 for violations of their obligations under the Public Employee Legal Defense and Indemnification Act, the predecessor to CELRTCA.  *See Bradshaw v. Commonwealth of the Northern Mariana Islands*, Order Regarding Motions at 16 (D.N.M.I. Sept. 8, 2006).

1  provide Mr. Fennell with any new rights and therefore, Defendants argue, Mr. Fennell's due

2  process claims must fail.  *See, e.g.*, Motion at 6.

3       Notwithstanding that Defendants are absolutely wrong on their reading of CELRTCA,[2]

4  it is Plaintiff's position that Defendants' refusal for years to make a determination under

5  CELRTCA and Defendants' refusal to cause the Commonwealth government (presumably

6  the Commonwealth Superior Court) to substitute in for Mr. Fennell in the Bank Lawsuit was

7  deliberate inaction by Defendants, the intent of which was to continue to undermine Mr.

8  Fennell's position in the Bank Lawsuit and to continue to retaliate against Mr. Fennell for the

9  past exercise of Mr. Fennell's First Amendment rights.

10       Similarly, it is not necessarily Mr. Fennell's position that the OAG can never represent

11  opposing parties in litigation, nor is that a basis for Mr. Fennell's claim of a constitutional

12  deprivation as Defendants argue.  *See, e.g.*, Motion at 7.  Case law cited by Defendants shows

13  that some jurisdictions with large, diverse Attorney General offices, allow such representation

14  where particular safeguards are in place.  *Id.*, at 13.n 52 and 14 n. 54.  Those safeguards must,

15  at a minimum, ensure conflict-free representation, the maintenance of confidences and client

16  loyalty and otherwise adhere to the Model Rules of Professional Conduct.[3]

17

18       Mr. Fennell's claim is that the Defendants in this case, acting with the authority of the

19  OAG and using confidential information obtained from Mr. Fennell in its representation of

20  Mr. Fennell, took positions against Mr. Fennell to deliberately undermine his defense in the

21       [2]  Section 7 of CELRTCA provides for the retroactivity of the new act.  That
22  retroactivity provision provides that the new CELRTCA provisions "shall apply to every claim
     or action for tort liability which has not been reduced to judgment as of [July 24, 2006],
23  regardless of when the action was filed."  *See* CNMI P.L. 15-22, Exhibit 5 to Defendants
     Motion.  The savings clause in Section 14 saved existing rights and preserved existing
24  liabilities, but it did not negate the express retroactivity provision of CELRTCA that provided
     new rights and new government obligations. CELRTCA certainly applies to the Bank Lawsuit
25  and Mr. Fennell's continued representation therein.

26       [3]  Defendants refer to these safeguards as "long used settled mechanisms," but
     Defendants wholly fail to inform the Court of what exactly those settled mechanisms are in
27  this jurisdiction and what mechanisms were actually employed in this case to ensure Mr.
     Fennell's fair and independent representation by the OAG suing him in the same lawsuit.
28  Motion at 13.

1   Bank Lawsuit, to chill Mr. Fennell's ability to speak freely, and to retaliate against Mr. Fennell

2   for his revelations about the Bank's Board's misdeeds and the Governor's participation therein.

3   The OAG was not acting independently with regard to its representation of Mr. Fennell

4   behind a "Chinese Wall" as alleged by Defendants.

5           The case of *Suffolk County Patrolmen's Benevolent Ass'n, Inc.*, 595 F. Supp. 1471

6   (E.D.N.Y. 1984) cited by Defendants in their Motion is inapposite and demonstrative of

7   Defendants' misunderstanding of the nature of Plaintiff's case.  Plaintiff is not claiming that

8   he is entitled to and has been deprived of the counsel of his choice.

9           One could argue that PELDIA, under which Mr. Fennell has vested rights to

10  representation, requires that Mr. Fennell consent to the attorney provided pursuant to

11  PELDIA and that Mr. Fennell has maintained that any attorney within the OAG is conflicted.

12  *See* 7 C.M.C. § 2304(a).

13          Fundamentally, however, Plaintiff is claiming that he is entitled to conflict-free counsel

14  that does not have the malicious intent to undermine his representation.  *See, e.g., Dunton v.*

15  *County of Suffolk*, 729 F.2d 903, 907-908 (1984) *amended*, 748 F.2d 69 (County Attorney's

16  multiple representation in case was inconsistent with professional and ethical obligations to

17  police officer defendant).  *See also Smiley v. Office of Workers' Compensation Programs*, 984

18  F.2d 278, 282 (9th Cir. 1993) (rule against concurrent representation based on the duty of

19  undivided loyalty attorney owes to client).

20

21          From a due process standpoint, the Model Rules of Professional Conduct,[4] *inter alia*,

22  provide limitations on the actions of Defendants and the OAG and on any discretion they may

23  have.  The Model Rules provide the "substantive predicates" intended to avoid conflicted

24  representation, protect confidential communications and protect attorneys' duties of loyalty

25  to a client that are the basis for Mr. Fennell's protected liberty interest and the Defendants'

26  denial thereof by their wrongful actions.  *See, e.g., Kentucky Dept. of Corrections v. Thompson*,

27

28          [4]  The Model Rules are the law of the Commonwealth pursuant to Rule 2 of the
    Commonwealth Disciplinary Rules and Procedures.

490 U.S. 454, 462, 109 S. Ct. 1909 (1989) (a protected liberty interest is created by placing substantive limitations on official discretion, citing *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S. Ct. 1741, 1747 (1983)).[5]

PELDIA itself also provides a "substantive predicate" with regard to the exercise of the Attorney General's discretion. Section 2304(a) of PELDIA states that the Attorney General cannot unreasonably withhold approval of the appointment of any attorney acceptable to the public employee. Mr. Fennell can and will argue that he had a liberty interest in conflict-free representation and, therefore, an attorney of his choosing outside of the Office of the Attorney General, and that Defendants deprived him of that right.[6]

In any case, as the cases cited by Defendants make clear, when Defendants took on the dual representation of Plaintiff and then later DPL in the Bank Lawsuit, Defendants were obligated to ensure conflict-free representation and to maintain confidentiality and the duty of loyalty Defendants owed to Mr. Fennell — if that was even possible. *See, e.g.*, *State v. Klattenhoff*, 801 P.2d 548, 552 (Haw. 1990) (dual representation okay so long as staff of the AG can be assigned in such a manner as to afford independent legal counsel and not result in prejudice); *but see Deukmejian v. Brown*, 624 P.2d 1206, 1209 (Cal. 1981) (applying the attorney ethics rules equally to the Attorney General, California Supreme Court finding that Attorney General may not take a position adverse to a present or former client).

Here, the conspiracy within the OAG to purposefully undermine its client Mr. Fennell's

---

[5] In this context, Defendants' citation to *Public Utility Comm'n of Texas v. Cofer*, 754 S.W.2d 121 (Tex. 1988) is inapposite. In that case, the Attorney General was statutorily mandated to represent both government agencies on appeal notwithstanding that the agencies were on opposing sides. *Id.* at 122. Here, CELRTCA, § 9 (7 C.M.C. § 2209) gives the Attorney General discretion to hire outside counsel "as may be appropriate."

[6] Defendants repeatedly suggest in their Motion that the decision on unconflicted, outside counsel for Mr. Fennell was out of their hands. *See, e.g.*, Motion at 8-9. However, it was Judge Naraja of the Commonwealth Superior Court, the "public entity" agreeing to provide Mr. Fennell with a defense, that deferred the issue of a conflict of interest and the proper procedures to address any conflict to the Attorney General — Defendant Gregory. *See* Letter from Presiding Judge Naraja to Rexford C. Kosack dated August 7, 2006; Exhibit "A" to Declaration of Counsel.

defense in the Bank Lawsuit is one very large step removed from "potentially conflicting" representation.  Defendants in their official capacities as government attorneys actively engaged in a conspiracy, *inter alia*, to deprive Mr. Fennell of conflict-free representation.

There is also no merit to Defendants' factual contentions that they effectively set up a "screen" within the OAG related to its admittedly adverse representation in the Bank Lawsuit and various related cases, nor to the legal contentions that such "screening" is all that was required to protect Mr. Fennell's due process rights.

Notwithstanding that such fact based arguments are inappropriate in this Rule 12(b)(6) motion, Plaintiff expects to be able to prove that Defendants did not screen personnel, did not protect confidential communications, did not represent Mr. Fennell as attorneys must represent their client, that Defendants assigned one attorney and no support staff to represent Mr. Fennell while allocating several attorneys and support staff and sufficient other resources to sue Mr. Fennell in the same Bank Lawsuit, and that Defendants took a myriad of other actions in violation of its duties to remain independent and conflict-free, to protect client confidences and to honor Defendants' ethical obligations and their duty of loyalty to Mr. Fennell as an OAG client.

In short, there is no law — no screening — that could shield Defendants from liability for the wrongs committed here.  As the court recognized in *Deukmejian v. Brown*, 624 P.2d 1206, 1207 (Cal. 1981), there is no constitutional, statutory or ethical authority allowing the Attorney General  to represent a client one day, give him legal advice with regard to pending litigation, then sue the same client the next day on a purported cause of action arising out of the identical controversy.

Here, Mr. Fennell was represented in the Bank Lawsuit by the OAG.  It was only later that the OAG embarked on its representation of the claims of MPLA in the Bank Lawsuit and began taking positions adverse to Mr. Fennell.  Contrary to Defendants' arguments in their Motion, it is that very adverse position that is disallowed.

Moreover, as Plaintiff alleges in his Complaint, the motivating factor for the illegal

actions taken by Defendants were to undermine Mr. Fennell's position in the Bank Lawsuit, to stifle Mr. Fennell's ability to speak out against the Governor and his Bank cronies, and to retaliate against Mr. Fennell for defending his actions as the Bank's receiver by revealing unflattering information about the activities of the Governor and others within the Bank.[7]

"In recognizing one's protected interest in commenting on government officials' actions, we have stated that "[i]t is clear that '[s]tate action designed to retaliate against and chill political expression strikes at the heart of the First Amendment.'" *Carepartners LLC v. Lashway*, 545 F.3d 867, 877 (9th Cir. 2008) (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)).

In 1989, the Ninth Circuit Court of Appeals decided *Soranno's Gasco* in which the court held that it is unlawful for the government to deliberately retaliate against a citizen for exercising his right to comment on (and publicly criticize) government officials' actions and his right to access the courts and administrative appeals process for redress of grievances. *Id.* at 883 (citing *Soranno's Gasco*, 874 F.2d at 1314-15).

The United States Supreme Court has explicitly held that an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendments rights. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S. Ct. 568 (1977).

> Under *Mt. Healthy* and its progeny, an otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech. This doctrine demonstrates that, at least where the First Amendment is concerned, the motives of government officials are indeed relevant, if not dispositive, when an individual's exercise of speech precedes government action affecting that individual.

---

[7] Plaintiff would like to note that he did not make any "salacious" allegations about anyone in his Complaint. According to Miriam-Webster's Online Dictionary, the adjective "salacious" means: "arousing or appealing to sexual desire or imagination." In Webster's New World Dictionary, Third College Ed., salacious is defined as lecherous, lustful, obscene or pornographic. As unflattering as the allegations regarding Benigno T. Fitial's fraudulent actions are, they are certainly not "salacious."

1   *Anderson v. Davila*, 125 F.3d 148, 161 (3rd Cir. 1997) (footnotes omitted).

2          In the Ninth Circuit, in order to make out a claim for a First Amendment violation, a

3   plaintiff must show that "by his actions [the defendant] deterred or chilled [the plaintiff's

4   political speech and such deterrence was a substantial or motivating factor in [the defendant's]

5   conduct." *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999)

6   (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994).

7          The court in *Mendocino Envtl.* clarified that a plaintiff does not have to demonstrate

8   that his speech was actually inhibited or suppressed, only that defendants "*intended* to

9   interfere" with the plaintiffs' First Amendment rights.  192 F.3d at 1300 (quoting *Mendocino*

10  *Envtl. Ctr. v. Mendocino County*, 14 F.3d 457, 464 (9th Cir. 1994) and adding the emphasis).

11
12              Because it would be unjust to allow a defendant to escape
                liability for a First Amendment violation merely because an
                unusually determined plaintiff persists in his protected activity,
13              we conclude that the proper inquiry asks "whether an official's
                acts would chill or silence a person of ordinary firmness from
14              future First Amendment activities."

15  *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d at 1300 (citation omitted).

16         Citing to the Second Circuit, Defendants in this case argue that Plaintiff has failed to

17  allege any "actual chilling" of his free speech.  Defendants' authority is misplaced.  The

18  Supreme Court in *Laird v. Tatum*, 408 U.S. 1, 92 S. Ct. 2318 (1972), to which Defendants'

19  Second Circuit case cites, considered claims in a class action that the Army's surveillance

20  activities were chilling the free speech of civil activists, generally. The *Laird* Court held that

21  the mere existence of surveillance activity did not constitute a justiciable controversy where

22  there is no showing of objective harm or the threat of specific future harm to the particular

23  plaintiffs in the case.  *Id.*, at 14; 2326.  The Court did not state that "actual chilling" must be

24  shown.

25         In any case, the facts of *Laird* are not the facts here.  Plaintiff has alleged that it was the

26  specific intent of Defendants' actions to chill his free speech and impede his access to the

27  courts.  In this case, the proper examination is whether Defendants' actions "would chill or

28

1  silence a person of ordinary firmness from future First Amendment activities." *See Mendocino*

2  *Envtl. Ctr. V. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (citation omitted);

3  *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 585-86 (6th Cir. 2008) ( issue is whether the

4  defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a

5  person of ordinary firmness from continuing to engage in that activity).

6      Here, Plaintiff submits that the actions taken by Defendants in retaliation against Mr.

7  Fennell for defending himself with constitutionally protected speech would likely chill even

8  the most firm of individuals from standing up to a strong, well supported politician, his cadre

9  of attorneys and his political benefactors.

10     In any case, in another lawsuit previously before this Court with some of its facts

11  strikingly similar to the facts of this case, this Court ruled that at this stage of the litigation all

12  that is required to state a claim for violations of 42 U.S.C. § 1983 are allegations that the

13  defendants were acting under color of state law and that the defendants violated plaintiff's due

14  process and equal protection rights under the Fourteenth Amendment.  *See Bradshaw v.*

15  *Commonwealth of the Northern Mariana Islands*, Order Regarding Motions at 16 (D.N.M.I.

16  Sept. 8, 2006) (attached to the Appendix hereto).

17

18     Here, Plaintiff has properly and adequately pled a violation of 42 U.S.C. § 1983.

19  Plaintiff has alleged that all of the Defendants were acting in their capacities as attorneys for

20  the Commonwealth of the Northern Mariana Islands and that Defendants took concerted

21  actions to deny Plaintiff his Fourteenth Amendment due process rights to unconflicted,

22  ethical representation and his First Amendment rights to free speech and access to the courts.

23  Defendants' motion to dismiss should be denied.

24  C.   PLAINTIFF HAS ADEQUATELY PLED CONSPIRACY CLAIMS PURSUANT TO
        42 U.S.C. § 1985 and 1986.

25     To establish Defendants' liability for a conspiracy, Mr. Fennell must ultimately

26  demonstrate the existence of an agreement or "meeting of the minds" of the Defendants to

27  violate his constitutional rights.  *See, e.g., Mendocino Envtl. Ctr. v. Mendocino County*, 192

28

1   F.3d 1283, 1301 (9th Cir. 1999).  Defendants must have, by some concerted action, intended

2   to accomplish some unlawful objective for the purpose of harming Mr. Fennell which results

3   in damage.  *Id.*

4        What Defendants misunderstand in their present Motion is that such an agreement

5   need not be overt, but may be inferred on the basis of circumstantial evidence such as the

6   actions of Defendants.  *Mendocino Envtl. Ctr.*, 192 F.3d at 1301.  "For example, a showing

7   that the alleged conspirators have committed acts that 'are unlikely to have been undertaken

8   without an agreement' may allow a jury to infer the existence of a conspiracy." *Id.*, at 1301.

9   Further, "the ability and opportunity to conspire, while insufficient alone, constitute

10  circumstantial evidence of actual participation in the conspiracy." *United Steelworkers of*

11  *America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1574 (1989).

12        Here, Plaintiff has alleged a long series of facts regarding Plaintiff's, the OAG's,

13  Defendant Gregory's, Governor Begnigno T. Fitial's and various other government officials'

14  activities with regard to the Bank of Saipan Receivership, the Bank Lawsuit, the OAG's past

15  representation of Mr. Fennell in these various matters, including its dealings with Mr. Fennell

16  regarding PELDIA and CELRTCA.

17

18        All of the Defendants are (or where at all relevant times) attorneys within the OAG

19  which represents both Mr. Fennell and DPL in the Bank Lawsuit.  All Defendants, as

20  attorneys, have distinct ethical obligations for which each of them is responsible, personally.

21  Defendants Baka, Welch and Schweiger all worked under Defendant Gregory and all three

22  have participated in the Bank Lawsuit knowingly taking positions adverse to an OAG client,

23  Mr. Fennell, and making decisions and representations in the Bank Lawsuit that have adversely

24  affected an OAG client, Mr. Fennell, and his defense in the Bank Lawsuit.

25        While Plaintiff believes that discovery in this matter will reveal substantial additional

26  evidence of the conspiracy of the Defendants and others (Doe Defendants) to violate Mr.

27  Fennell's First and Fourteenth Amendment rights, at this stage of the litigation, Plaintiff's

28  Complaint contains sufficient allegations to infer the existence of a conspiracy between

1   Defendants to violate Mr. Fennell's constitutional rights.

2         As Mr. Fennell demonstrated above, he has properly pled claims for violation of § 1983.

3   Accordingly, Mr. Fennell's § 1985 claims should not be dismissed.   Additionally, as

4   Defendants' only argument regarding Mr. Fennell's § 1986 claim was that the claim should fail

5   because there are no allegations of a conspiracy.  Because the Court can infer a conspiracy from

6   Mr. Fennell's Complaint, his § 1986 claim should survive.

7   D.     NONE OF THE DEFENDANTS ARE ENTITLED TO ABSOLUTE IMMUNITY.

8         Defendants first argue that Defendants Gregory and Baka, by their very position as

9   Attorney General, are entitled to absolute prosecutorial immunity.  Motion at 23.  However,

10  the liability of Defendants Gregory and Baka in this case is not predicated on their positions

11  as Attorney General, but upon their personal actions and their active participation in a

12  conspiracy to deprive Mr. Fennell of his constitutional rights.  "[I]t is only the specific function

13  performed, and not the role or title of the official, that is the touchstone of absolute

14  immunity." *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003) (en banc).

15        Moreover, as related to the allegations of Mr. Fennell, Defendants Gregory's and Baka's

16  conduct was not "prosecutorial conduct 'intimately associated with the judicial phase of the

17  criminal process.'"  *See Bradshaw v. Commonwealth of the Northern Mariana Islands*, Order

18  Regarding Motions at 8 (D.N.M.I. Sept. 8, 2006) (citing *Flood v. Harrington*, 532 F.2d 1248,

19  1251 (9th Cir. 1976) quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

20

21        Here, the conduct of Gregory and Baka was direct and related to Mr. Fennell's defense

22  in the Bank Lawsuit, the adverse representation of DPL in the Bank Lawsuit, decisions and

23  inaction related to Mr. Fennell's PELDIA and CELRTCA representation and substitution

24  requests, and intentional conduct intended to stifle free speech and to retaliate against Mr.

25  Fennell for his revealing the fraudulent conduct of Governor Benigno T. Fitial and others in

26  his defense in the Receivership and Bank Lawsuit proceedings.

27        Defendants' reliance on *Mangiafico v. Blumenthal*, 471 F.3d 391 (2nd Cir. 2006)  is

28  misplaced and again demonstrates Defendants' fundamental misunderstanding of the facts

- 14 -

1   and the claims in this case.

2       Mr. Fennell *was* granted representation under PELDIA.  Thereafter, Defendants

3   embarked on a concerted effort to undermine that representation, including taking on the

4   representation of DPL against Mr. Fennell, denying Mr. Fennell conflict-free representation,

5   failing to provide security of communications and the loyalty Mr. Fennell was owed as a client,

6   refusing to have the government substitute in for Mr. Fennell under CELRTCA, and

7   withholding such a CELRTCA determination for years after it was requested, among other

8   various egregious actions.  The facts of this case have nothing in common with the facts of

9   Second Circuit case of *Mangiafico v. Blumenthal*.

10      In any case, this Court has at least once before decided that the Attorney General's

11  actions with regard to a PELDIA defense request violated a clearly established statutory or

12  constitutional right which a reasonable person would have know, rejecting both an absolute

13  and a qualified immunity defense.  *Bradshaw v. Commonwealth of the Northern Mariana*

14  *Islands*, Order Regarding Motions at 9-14 (D.N.M.I. Sept. 8, 2006).

15      In short, "State executive officials are not entitled to absolute immunity for their

16  official actions." *Hafer v. Melo*, 502 U.S. 21, 30, 112 S. Ct. 358, 364 (1991).  Gregory and Baka

17  have the burden to show that they are entitled to absolute judicial immunity and have

18  presented no evidence or other justification for such a finding.  Neither Gregory nor Baka is

19  entitled to such immunity.

20

21  E.      NONE OF THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

22      Plaintiff agrees with Defendants that the issue of qualified immunity is a two-pronged

23  analysis and that the Court may review the two prongs in any order. *See Pearson v. Callahan*,

24  ___ U.S. ___, 129 S. Ct. 808, 816 (2009).  However, Plaintiff disagrees with Defendants'

25  conclusion regarding the availability of qualified immunity in this case.

26      Reviewing the issue of qualified immunity in any order leads to the conclusion that Mr.

27  Fennell has pled a violation of his statutory and constitutional rights and that the rights were

28  clearly established at the time of the violations.  No qualified immunity is available to

1  Defendants here.

2      As discussed above, Defendants' actions were violations of Plaintiff's constitutional

3  rights to First Amendment free speech and to Fourteenth Amendment due process, actionable

4  under 42 U.S.C. § 1983.

5      Further, those rights were clearly established at the time of Defendants' actions and

6  it was particularly unreasonable for the four licensed attorney Defendants here — bound

7  legally and professionally by rigorous ethical obligations to existing and former clients — to

8  believe that their actions to deny Mr. Fennell proper, unconflicted representation, to take

9  positions adverse to Mr. Fennell in the same litigation, to undermine Mr. Fennell's defense

10 in the litigation and to retaliate against Mr. Fennell for speaking out against Governor Benigno

11 T. Fitial and his Bank of Saipan cronies, were in any way proper and legal.  *Cf. Bradshaw v.*

12 *Commonwealth of the Northern Mariana Islands*, Order Regarding Motions at 9 (D.N.M.I.

13 Sept. 8, 2006) ("In determining whether an official has qualified immunity, the court

14 examines the 'objective legal reasonableness' of a government official's conduct," quoting

15 *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

16      As cited above, there are particular standards of behavior applicable to all attorneys —

17 government attorneys are not exempt from the application of the Model Rules, the provision

18 of independent, unconflicted services, and the duty of loyalty to present and former clients

19 *See, e.g., Dunton v. County of Suffolk*, 729 F.2d 903, 907-908 (1984) *amended*, 748 F.2d 69

20 (County Attorney's multiple representation in case was inconsistent with professional and

21 ethical obligations to police officer defendant); *Smiley v. Office of Workers' Compensation*

22 *Programs*, 984 F.2d 278, 282 (9th Cir. 1993) (rule against concurrent representation based on

23 the duty of undivided loyalty attorney owes to client); *Deukmejian v. Brown*, 624 P.2d 1206,

24 1209 (Cal. 1981) (applying the attorney ethics rules equally to the Attorney General,

25 California Supreme Court finding that Attorney General may not take a position adverse to

26 a present or former client); *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300

27 (9th Cir. 1999) (intent to interfere with constitutional protected speech is actionable);

28

1  *Bradshaw v. Commonwealth of the Northern Mariana Islands*, Order Regarding Motions at 16

2  (D.N.M.I. Sept. 8, 2006) (allegations of failure of government attorneys to comply with

3  PELDIA and to properly represent government employee in lawsuit stated a cause of action

4  under 42 U.S.C. § 1983).

5      With regard to Defendants' retaliatory conduct for Plaintiff's exercise of his

6  constitutional protected speech, the Ninth Circuit in *Carepartners LLC v. Lashway*, 545 F.3d

7  867, 877 (9th Cir. 2008) found that the unconstitutionality of such conduct has been clearly

8  established for purposes of qualified immunity claims since at least 1989, citing the Ninth

9  Circuit Court of Appeals case of *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314-15 (9th

10 Cir. 1989).

11     Notwithstanding that the four Defendants here are licensed attorneys and are charged

12 with a heightened obligation to know and to understand the laws applicable to their actions,

13 and particularly their dealing with present and former clients, to show that a violation is

14 "clearly established," it is enough to show that in the light of pre-existing law, the unlawfulness

15 of Defendants actions is apparent.  *See Inouye v. Kemna*, 504 F.3d 705, 714-15 (9th Cir. 2007).

16 Additionally, lack of complete unanimity between jurisdictions does not mean that a legal

17 principle has not been clearly established.  *Id.*, at 716.

18

19     Plaintiff makes out valid claims in this case for Defendants' unconstitutional conduct

20 in violation of Plaintiff's First and Fourteenth Amendment rights.  At the time of the illegal

21 conduct, the unconstitutionality of the conduct was clearly established.  Accordingly,

22 Defendants are not entitled to qualified immunity.

23 F.  LEAVE TO AMEND SHOULD BE GRANTED IF NECESSARY.

24     Notwithstanding the legal sufficiency of Plaintiff's Complaint and the viability of his

25 causes of action and claims for relief therein, if this Court should find Plaintiff's Complaint

26 or any portion thereof insufficiently pled as a matter of law, the Court should allow Plaintiff

27 time to amend the Complaint and correct such perceived deficiency. *See, e.g., DCD Programs,*

28 *Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (Federal Rule of Civil Procedure 15's "policy

1  of favoring amendments to pleadings should be construed with 'extreme liberality.'"); 3

2  *Moore's Federal Practice* §15.15[2], at 15-43-44 (3d ed. 1997) (undue prejudice resulting to

3  non-moving party from amendment is key factor, but delay in amending is insufficient to

4  demonstrate such prejudice).  *Cf. Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend

5  may be denied for "*repeated* failure to cure deficiencies by amendments previously allowed")

6  (emphasis added).

7      Additionally, Fed. R. Civ. P. 8(f) provides that "[a]ll pleadings should be so construed

8  as to do substantial justice."  A pleading may not be dismissed with prejudice "unless it

9  appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which

10 would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (emphasis added).

11                            III.  CONCLUSION

12      In his Complaint, Plaintiff has, through detailed allegations of fact, stated claims

13 against Defendants for violations of Plaintiff's rights under the First and Fourteenth

14 Amendments to the United States Constitution.  Defendants acted and conspired to act to

15 deny Plaintiff conflict-free counsel, to deny Plaintiff the guaranties of confidentiality, loyalty

16 and the proper representation and advocacy of an attorney, to stifle and to impede Mr.

17 Fennell's continued exercise of constitutional protected speech and access to the courts, and

18 to retaliate against Mr. Fennell for his past statements in the Bank of Saipan Receivership and

19 the Bank's Lawsuit that followed.

20      Plaintiff's allegations of constitutional violations are actionable under 42 U.S.C. §§

21 1983, 1985 and 1986.  Defendants are not entitled to any immunity from Plaintiff's claims.

22 Defendants' Motion to Dismiss should be denied.

23      Notwithstanding the foregoing, should the Court determine that any of Plaintiff's

24 claims are inadequately pled, the Court should grant Plaintiff leave to file an amended

25 Complaint to correct or clarify the allegations against Defendants in this case.

26

27

28

1   DATED this 27th day of August, 2009.

2                                                    /s/ Mark B. Hanson

3                                                    MARK B. HANSON

4                                                    Second Floor, Macaranas Building
                                                     Beach Road, Garapan
5                                                    PMB 738, P.O. Box 10,000
                                                     Saipan, MP 96950
6                                                    Telephone:     (670) 233-8600
                                                     Facsimile:     (670) 233-5262
7                                                    E-Mail Address:     mark@saipanlaw.com

8                                                    Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

CERTIFICATE OF SERVICE

2

I hereby certify that the following attorneys were served with a copy of the foregoing

3

through the Court's electronic case filing system:

4

5

Braddock J. Huesman, Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL

6

Commonwealth of the Northern Mariana Islands
Hon. Juan A. Sablan Memorial Bldg., Second Floor

7

Caller Box 10,007, Capitol Hill
Saipan, Mariana Islands 96950

8

Attorney for Defendants

9

10

11

DATED: _____       August 27, 2009          /s/ Mark B. Hanson
                                                           _____

12

MARK B. HANSON

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 20 -