1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPENDIX

F I L E D
Clerk
District Court

SEP – 8 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT D. BRADSHAW,<br><br>Plaintiff,<br><br>vs.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, et. al.,<br><br>Defendants. | Case No. CV-05-0027<br><br>**ORDER REGARDING MOTIONS HEARD ON AUGUST 10, 2006** |

**THIS MATTER** came before the court on August 10, 2006 for hearing of motions to dismiss filed by defendants Commonwealth of the Northern Mariana Islands ("CNMI" or "Commonwealth"), Forelli, Bush, Brown, and Cotton. The following parties appeared: Plaintiff *pro se* by telephone; defendant Sorensen *pro se* by telephone; and defendants Commonwealth of the Northern Mariana Islands, Forelli, Bush, Brown, and Cotton by and through Assistant Attorney General Kristin D. St. Peter.

**THE COURT**, having considered the arguments of the parties, **GRANTS IN PART and DENIES IN PART** the moving defendants' motion to dismiss. Plaintiff shall file an amended complaint in conformity with this order within twenty days.

## I. BACKGROUND

The factual basis for plaintiff's complaint stems from a series of actions by defendants in conjunction with *Bisom v. Commonwealth*, CV-95-42 (D.N. Mar. I. 1996), *Bisom v. Commonwealth*, CV-96-0052 (D.N. Mar. I. 1997), *remanded to Bisom v. Commonwealth,* No. 96-1320 (N. Mar. I. Commw. Super. Ct. 2000), *Bisom v. Commonwealth*, CV-95-00042-ARM (9th Cir. 1998), *Bisom v.*

*Commonwealth*, CV-98-0002 (D. N. Mar. I. 1998), *remanded to Bisom v. Commonwealth,* No. 96-1320 (N. Mar. I. Commw. Super. Ct. 2000), and *Bisom v. Commonwealth,* No. 96-1320 (N. Mar. I. Commw. Super. Ct. 2000) [collectively Bisom case].

In regards to the moving defendants, plaintiff alleges that defendants Commonwealth and Nicole C. Forelli, William C. Bush, and Douglas D. Cotton (collectively "AG defendants") injured plaintiff by violating his federal constitutional right to equal protection, due process, and a fair trial by: (1) failing to defend him in the Bisom case in violation of the Commonwealth Constitution, Commonwealth statute, and plaintiff's employment contract; (2) committing legal malpractice by failing to give plaintiff notice of the intent of the Office of the Attorney General ("AG's office") to withdraw as plaintiff's counsel in the Bisom case; and (3) committing legal malpractice by disclosing a letter plaintiff sent to defendant Bush that was protected by attorney-client privilege.

In addition, plaintiff alleges that defendant Forelli conspired to injure plaintiff because plaintiff is not of Chamorro or Carolinian decent. Plaintiff alleges that the conspiracy was to defraud plaintiff by not opposing defendant Bisom's filing of documents that defendant Forelli knew were fraudulent so a default would be entered against plaintiff in the Bisom case.

Plaintiff also alleges that defendant Pamela S. Brown injured plaintiff by hiding, losing, or destroying key documents, *i.e.* two receipts for Certified Mail and two return receipts for the Certified Mail, in the Bisom file and by failing to investigate plaintiff's complaints in regards to the Bisom case.

Plaintiff alleges that the AG defendants and unnamed persons, as agents for the Commonwealth, an enterprise engaged in interstate and foreign commerce, colluded against plaintiff by preparing two fraudulent return U.S. postal receipts, and illegally withdrawing as counsel for plaintiff in the Bisom case so that a default could be entered against plaintiff in the Bisom case.

Plaintiff prays for damages he incurred for defending the Bisom case, damage to his livelihood and reputation, and damages for emotional and mental distress.

//

# II. ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), "[a] complaint should not be dismissed . . . 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Id.* In reviewing the sufficiency of the complaint, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Accordingly, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (1996). Furthermore, because a *pro se* litigant is generally not held to the stringent standards and formal pleadings required by lawyers, the court will dismiss the complaint only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 596 (1972) (quoting *Conley*, 355 U.S. at 45-46 (internal quotes omitted). "All pleadings shall be so construed as to do substantial justice." Fed. R. Civ. P. 8(f).

Defendants make several arguments, both general to the complaint as a whole and specific to each claim in the complaint. Accordingly, the court will review each in turn, beginning with the general arguments.

## A. Mootness

The moving defendants first argue that plaintiff's claims are moot as a result of Judge Lizama's December 29, 2005, order vacating the default judgment against plaintiff in the Bisom case. "Whenever an action loses its 'character as a present live controversy' during the course of litigation, [the court is] required to dismiss the action as moot." *In re Di Giorgio*, 134 F.3d 971, 974 (9th Cir. 1998).

3

The case, however, is not moot as to the CNMI because, as alleged, the CNMI breached its fiduciary duty under the CNMI statute and plaintiff's employment contract by failing to defend plaintiff in the Bisom case. The CNMI's alleged failure to defend plaintiff in the Bisom case allegedly resulted in additional monetary expense, emotional distress, damage to plaintiff's professional reputation, and loss of enjoyment of life. Furthermore, Judge Lizama's order deals with the dispute between defendant Bisom and plaintiff regarding defendant Bisom's termination of employment and does not resolve the dispute between plaintiff and the CNMI. Accordingly, there is a live controversy as to whether the CNMI did breach this duty and whether plaintiff was damaged.

The case is also not moot as to the AG defendants because, as alleged, the AG defendants violated plaintiff's due process rights by knowingly permitting falsified documents to be entered into evidence, thereby defrauding plaintiff in the Bisom case, by failing to defend plaintiff in the Bisom case, or alternatively, by failing to provide plaintiff notice of their intent to withdraw as plaintiff's counsel in the Bisom case and by disclosing confidential information. Accordingly, there is a live controversy as to whether the AG defendants violated plaintiff's due process rights.

**B. Statute of Limitations**

Defendants assert that the relevant statute of limitations bars plaintiff's claims against them. In support of this, they contend that either a two or four year statute of limitations applies to plaintiff's claims and that this action accrued more than four years ago.

Finding no relevant precedent set by the Supreme Court of the Commonwealth of the Northern Mariana Islands ("CNMI Supreme Court") on the issue of when a claim accrues, the court believes that the CNMI Supreme Court would look to federal law on this issue. "Under federal law, a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action." *Gibson v. United States*, 781 F.2d 1334, 1344 (9th Cir. 1986) (quoting *Cline v. Brusett*, 661 F.2d 108, 110 (9th Cir. 1981)).

//

Defendants argue that all the claims against them are time barred because plaintiff's injuries occurred no later than in 2000, when judgment in the Bisom case was entered. Defendants claim that even though plaintiff allegedly was not aware of any injury until 2004, plaintiff had reason to know of the injury because plaintiff was aware of the Bisom case as early as 1996.

Defendants' arguments fail on two grounds. First, the injury plaintiff claims against defendant Brown occurred sometime between September 12, 2004, and the summer of 2005. *See* Second Amended Complaint ¶¶ 175 - 196, at 35 - 39, No. 83 (Mar. 30, 2006). Accordingly, the statute of limitations does not bar plaintiff's claim against defendant Brown.

Second, regardless of whether plaintiff was aware of the Bisom case as early as 1996, plaintiff had no reason to know that the AG defendants failed to represent him or withdrew as counsel for plaintiff in the Bisom case until he received an April 6, 2004, letter from the AG's office addressed to him. *See* Letter from Benjamin Sachs to Robert Bradshaw (Apr. 6, 2004), *in* Second Amended Complaint, exh. A12. The basis for plaintiff's claim against the AG defendants is that they either failed to represent him, represented him improperly, or failed to notify him that they withdrew as his counsel in the Bisom case.

Plaintiff was allegedly not aware that the AG's office withdrew as counsel, the withdrawal of which occurred less than a week before trial, until he received the April 6, 2004 letter. Absent leave of court, it is counsel's affirmative duty to serve notice of his withdrawal as counsel to his client. *See* N. Mar. I. Commw. Super. Ct. R. Practice 5(d). Furthermore, because defendant Bush, in his June 30, 1999, letter to plaintiff, implied that he was currently representing plaintiff in the Bisom case and that if plaintiff answered his questions he would continue to represent plaintiff in the Bisom case, plaintiff had every reason to believe that the AG's office would continue to represent him in the Bisom case. *See* Letter from William C. Bush to Robert D. Bradshaw (June 30, 1999), *in* Second Amended Complaint, exh. A10 (stating "Do you want to have the Office of the Attorney General continue to represent you?" and "If you wish to have us continue to provide your defense, then please answer the remaining questions. Your answers will be protected under the attorney-client

privilege."); Letter from Robert D. Bradshaw to William C. Bush (July 14, 1999), *in* Second Amended Complaint, exh. B6-9 (asking for limited representation and answering defendant Bush's questions).

Accordingly, simply being aware that the Bisom case was pending would not put plaintiff on notice that his attorney withdrew as counsel, and, therefore, the statute of limitations does not bar plaintiff's claims against the moving defendants.

## C. Younger Abstention

Defendants claim that under *Younger v. Harris*, 401 U.S. 37 (1971), the court must abstain from this case. *Younger* abstention is based on equity and comity. *Attorney General v. Torres*, 419 F.3d 1017, 1022 (9th Cir. 2005). Accordingly, "[a]bsent 'extraordinary circumstances,' *Younger* abstention is proper when the following three conditions have been met: (1) There are ongoing state judicial proceedings; (2) The proceedings implicate important state interests; and (3) The state proceedings provide the plaintiff with an adequate opportunity to raise the federal claim." *Id.* The essence of *Younger* abstention is to prevent "duplicative legal proceedings [that] may be interpreted to reflect negatively on the District's ability to enforce constitutional principles." *Id.* at 24.

Defendants claim that Bisom's appeal of Judge Lizama's December 29, 2005, order vacating the default judgment is an "ongoing state judicial proceeding" that invokes *Younger* abstention. However, as stated above, Judge Lizama's order deals with the dispute between plaintiff and defendant Bisom regarding plaintiff's liability to defendant Bisom for termination of defendant Bisom's employment.  Because the proceedings by Judge Lizama will not allow plaintiff the opportunity to raise his claim against the moving defendants for their alleged failure to represent him in the Bisom case, Bisom's appeal of Judge Lizama's order is not an "ongoing state judicial proceeding" in the *Younger* abstention sense. Accordingly, this case does not result in duplicative legal proceedings and, therefore, *Younger* abstention does not apply.

//

**D. Rooker-Feldman Doctrine**

Defendants urge the court to dismiss the case based on the Rooker-Feldman doctrine because this case is a *de facto* appeal of the Bisom case. Defendants' Motion to Dismiss Second Amended Complaint and Incorporated Memorandum of Points and Authorities at 12, No. 149 (July 10, 2006); *see D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Under the Rooker-Feldman doctrine, the court lacks subject matter jurisdiction to review final determinations of the CNMI Superior Court. *See Feldman*, 460 U.S. at 476.

The Rooker-Feldman doctrine does not apply because plaintiff is not requesting the court to review the CNMI Superior Court's ruling in the Bisom case. The Bisom case dealt with whether plaintiff was liable to Bisom for damages. Here, plaintiff is seeking damages from defendants for violating his legal right to have received representation from the AG's office and the resulting monetary and emotional expense he incurred in defending the Bisom case.

Furthermore, because defendants do not articulate exactly what they believe the court would be reviewing in regards to the CNMI Superior Court ruling in the Bisom case, defendants have not met their burden of demonstrating that the Rooker-Feldman doctrine applies. Accordingly, this case is not a *de facto* appeal of the Bisom case and, therefore, the Rooker-Feldman doctrine does not apply.

**E. Second Claim Against Defendants Forelli, Cotton, and Bush**

The AG defendants argue that the second claim should be dismissed because: (1) they have absolute immunity; (2) they have qualified immunity; (3) gross incompetence is not a recognized federal cause of action; (4) there was no attorney-client relationship between the AG's office and plaintiff to support a claim for legal malpractice; (5) the Fifth and Ninth Amendment do not provide plaintiff a cause of action in this case; and (6) plaintiff fails to state a claim under 42 U.S.C. § 1983.

//

//

## 1. Absolute Judicial Immunity

The AG defendants claim that they have absolute judicial immunity. "Government officials sued in their individual capacities under § 1983 may raise the affirmative defenses of qualified or absolute immunity." *Butler v. Elle*, 281 F.3d 1014, 1021 (9th Cir. 2002). "The [government] official seeking immunity bears the burden of showing that such immunity is justified for the function in question." *Fry v. Melaragno*, 939 F.2d 832, 836 n.6 (9th Cir. 1991).

Defendants cite to *Flood v. Harrington*, 532 F.2d 1248, 1250-51 (9th Cir. 1976), for the proposition that the AG defendants have absolute judicial immunity in this case. In *Flood v. Harrington*, the Ninth Circuit held that absolute judicial immunity extends to "damages allegedly caused by the initiation of prosecution and the presentation of the state's case" and to "prosecutorial conduct 'intimately associated with the judicial phase of the criminal process.'" *Flood*, 532 F.2d at 1251 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

Here, plaintiff alleges that the AG defendants conspired against him in the Bisom case. In the Bisom case, the AG defendants were not performing the role of a prosecutor. Rather, they were performing the role of defense counsel in a civil case. Furthermore, the AG defendants were not opposing plaintiff's position in the Bisom case but, instead, were allies and were allegedly defending plaintiff from Bisom's claims. Accordingly, because the AG defendants were not performing the function of a prosecutor and did not initiate prosecution of the Bisom case and their conduct was not associated with the judicial phase of a criminal process, *Flood* does not support defendants' argument.

"[I]t is only the specific function performed, and not the role or title of the official, that is the touchstone of absolute immunity." *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003) (en banc). Regardless of their title as attorneys general or assistant attorneys general, the court looks to the function they performed in the Bisom case. Defendants were functioning like any attorney would when defending a client. Accordingly, because a defense attorney is not shielded by absolute judicial immunity, the AG defendants do not have absolute judicial immunity in this case.

## 2. Qualified Immunity

Defendants also claim that they have qualified immunity in this case because their actions "[did] not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity generally protects government officials in the course of performing the discretionary duties of their offices." *Butler*, 281 F.3d at 1021. In determining whether an official has qualified immunity, the court examines the "objective legal reasonableness" of a government official's conduct. *Id.* (quoting *Harlow*, 457 U.S. at 818). Accordingly, the court must first determine whether the official violated a statutory or constitutional right. If the court finds that the official violated a statutory or constitutional right, the court must then determine: "(1) whether the violated right was clearly established [at the time the action occurred], and (2) whether a reasonable public official could have believed that the particular conduct at issue was lawful." *Id.*

Plaintiff alleges that the AG defendants violated his statutory right to be defended and indemnified in the Bisom case and his U.S. constitutional right to due process and equal protection.[1] *See* Second Amended Complaint ¶ 253, at 48. In response, defendants claim that plaintiff did not submit a request for defense and indemnification as required by the Public Employee Legal Defense and Indemnification Act of 1986 ("P.E.L.D.I.A."), P.L. 5-12, and therefore plaintiff did not have a right to be defended and indemnified.

Under P.E.L.D.I.A., plaintiff must have requested the AG's office to "defend him against any claim against him for an injury arising out of an act that he reasonably and in good faith believes has occurred within the scope of his employment as an employee of [the Commonwealth] (whether or

---

[1] Plaintiff also claims that his rights under the Constitution of the Northern Mariana Islands, art. III, § 11 were violated. Section 11 states, in relevant part: "The Attorney General shall be responsible for providing legal advice to the governor and executive departments, representing the Commonwealth in all legal matters, and prosecuting violations of Commonwealth law." Because § 11 does not provide plaintiff with a personal right, the AG defendants could not have violated his Commonwealth constitutional rights by not defending him in the Bisom case.

not the employee is sued in an official or private capacity)." P.E.L.D.I.A. § 3(a)(1). This request must

be made in writing not less than five days before an answer must be filed. P.E.L.D.I.A. § 3(a)(4).

Because, as alleged, plaintiff has never had to file an answer to Bisom's claims in the

Commonwealth Superior Court, as long as plaintiff made a request to be defended from Bisom's

claim in the Commonwealth Superior Court, then plaintiff's statutory right, and possibly his

constitutional right to due process, may have been violated.

  If an attorney-client relationship had ever existed between plaintiff and the AG's office, then

there is a strong implication that plaintiff requested to be defended in the Bisom case. While the AG

defendants claim that no attorney-client relationship ever existed, numerous allegations and exhibits

attached to the Second Amended Complaint suggest that the AG's office and plaintiff had some form

of attorney-client relationship.[2] First, defendant Cotton sent at least five letters to plaintiff in regards

to the Bisom case. Many of them updated plaintiff on the Bisom case and expressed an interest in

whether plaintiff had been served.[3] In one letter, defendant Cotton inferred that he would submit a

response once it was due. *See* Letter from D. Douglas Cotton to Robert Bradshaw (Apr. 17, 1997), *in*

---

[2] Throughout their brief, defendants cite to *Bisom v. Commonwealth*, 2002 MP 19 (N. Mar. I.), to suggest that the issue of whether an attorney-client relationship existed was already decided. However, because the moving defendants did not articulate why issue preclusion should apply against plaintiff - a party who did not participate in the litigation - defendants fail to meet their burden. *See Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.*, 114 F.3d 848, 850 (9th Cir. 1997) ("The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment.").

[3] In relevant part, they state: (1) "[I]f you are served with a Summons and Complaint, please call me immediately because service starts the time running for your response[,]" Letter from D. Douglas Cotton to Robert Bradshaw (Dec. 6, 1996), *in* Second Amended Complaint, exh. A3, No. 83 (Mar. 30, 2006); (2) "Please let me know immediately if any attempt is made to serve you with the Summons and Complaint. In addition, please let me know your new telephone number and a fax number, if available, where I can send documents if necessary[,]" Letter from D. Douglas Cotton to Robert Bradshaw (Jan. 22, 1997), *in* Second Amended Complaint, exh. A4; (3) "Please let me know when you are served so that we will be able to determine when our response is due[,]" Letter from D. Douglas Cotton to Robert Bradshaw (Apr. 17, 1997), *in* Second Amended Complaint, exh. A7; and (4) "Please let me know when you are served[,]" Letter from D. Douglas Cotton to Robert Bradshaw (June 2, 1997), *in* Second Amended Complaint, exh. A8.

Second Amended Complaint, exh. A7 ("Please let me know when you are served so that we will be able to determine when our response is due." ). In that same letter, defendant Cotton explained to plaintiff that he told defendant Bisom that he would not accept service on plaintiff's behalf.[4] *Id.*

The most conspicuous expression that an attorney-client relationship existed until at least June 30, 1999, is contained in defendant Bush's June 30, 1999, letter to plaintiff. *See* Letter from William C. Bush to Robert D. Bradshaw (June 30, 1999). In that letter, defendant Bush indicated that he is now in charge of handling the defense in the Bisom case. Defendant Bush also disclosed his legal perspective on the Bisom case, information that he would not be permitted to disclose to plaintiff had plaintiff not been a client as it would be protected by the attorney-client privilege held by the other defendants in the Bisom case. In addition, he asks:

> Do you want to have the Office of the Attorney General continue to represent you? All claims against you in case 96-1320 are now listed as being in your individual capacity. We will defend if you will cooperate. I have not yet filed an answer to the claims directed only toward you. If you do not wish to have this office represent you further, I will transmit that information to the Superior Court, and I will ask to have the Attorney General withdrawn as your representative. If we withdraw, then no information previously provided by you to this office as your attorney in this litigation could be used by this office to your detriment. If you wish to have us continue to provide your defense, then please answer the remaining questions. Your answers will be protected under the attorney-client privilege.

Defendant Bush closed his letter by asking plaintiff for his contact information, such as a phone number or email address, so that he could "exchange information regarding [plaintiff's] defense."

The strongest evidence to support that an attorney-client relationship had existed are the numerous representations that defendants Cotton and Bush, as officers to the court, made to the

---

[4] Defendant Cotton may have been referring to his letter to defendant Sorensen, defendant Bisom's counsel during the Bisom case. *See* Letter from D. Douglas Cotton to Jay H. Sorensen (Dec. 31, 1996), *in* Second Amended Complaint, exh. A5-6 ("Should plaintiff still desire to serve the Summons in this action after reading this letter, I will agree to accept service on behalf of Scott Tan. I am checking on whether Robert Bradshaw would like us to accept service on his behalf.").

court. Upon taking judicial notice of all the files to the Bisom case,[5] the court found at least forty-six representations indicating that the AG's office was plaintiff's counsel in the Bisom case. *See* App. I. These representations were made by defendants Cotton and Bush. Accordingly, they are considered admissions by a party-opponent. *See* Fed. R. Evid. 801(d)(2).

Thus, an attorney-client relationship between the AG's office and plaintiff existed at some point. Furthermore, the court cannot find any reason why an attorney-client relationship would have existed without plaintiff's request, either written, oral, or by inference, to be defended. Accordingly, construing the facts in the light most favorable to the non-moving party, plaintiff has properly pled that he was eligible to be defended and was being defended by the AG's office. Furthermore, because plaintiff pled that the AG's office failed to notify plaintiff of its intention to withdraw as plaintiff's counsel, plaintiff has properly pled that the AG defendants violated plaintiff's rights under P.E.L.D.I.A.

Second, the AG defendants claim that even if plaintiff's constitutional or statutory right was violated, it was not clearly established at the time the violation occurred because plaintiff's request in his July 14, 1999, letter was equivocal. *See* Letter from Robert D. Bradshaw to William C. Bush (July 14, 1999).

Plaintiff's July 14 letter was four full pages, single spaced and typed. It was written in response to defendant Bush's June 30 letter. *See* Letter from William C. Bush to Robert D. Bradshaw (June 30, 1999). In it, plaintiff explains that he has not been personally served, that he has no knowledge of facts that may result in constructive service, and that he has not authorized the AG's office to accept service. He then spends two full pages explaining what he knows about Bisom's claims.

In regards to the authority plaintiff was willing to grant the AG's office in regards to the Bisom case, plaintiff reiterated that "[a]s I said to Doug Cotton, if I am served I will contact the AG

---

[5] Upon the moving defendants' suggestion and upon the consent of all the parties, the court took judicial notice of all files to the Bisom case.

to make the answer." Letter from Robert D. Bradshaw to William C. Bush at 1 (July 14, 1999).

Plaintiff also stated:

> . . . . Should you file a motion to strike my name individually from the suit? Since you have suggested it, it seems like a good idea although I don't know that it is necessary other than if this thing goes to trial and Bisom tries to later claim service on me; thus, a pre-trial motion as you suggest would flush out whatever case he might try to make[ ].
>
> Accordingly, if you wish to file a motion to have me removed individually from the CNMI case, you have my permission and agreement. If you don't feel that such a motion will benefit your case, fine and I understand. . . .
>
> As for [] cooperating with you, I feel that I have went the extra mile to cooperate with the AG on this case. If you have knowledge otherwise, please advise me as I would like to hear about it.
>
> Since the [federal] case is now history, I don't see that I have any role in anything further. However, I am anxious to help you and the CNMI case in any way possible. In that sense, I will supply whatever information I can. . . .
>
> Should you represent me further? Again, I don't think I am a party to that CNMI case and if that is true, the answer is no (if the answer is yes then of course I would need representation; although I cannot perceive how it could be yes.) I suppose if Bisom appealed the Circuit Court decision to the Supreme Court, I will continue to need help on the 95-0042 case. As [far] as the CNMI [case], your office has never and should never have represented me on this at all that I am aware of. As I was never served, I never asked for any assistance and the CNMI [superior court] never should have been told that the AG represents me. Hence, why is there now a need to contact them to have the AG withdrawn as my attorney?

*Id.*

Plaintiff's last paragraph quoted above, which the AG defendants argue is an equivocal request for a defense, must be construed in light of the entire letter and defendant Bush's June 30 letter, to which plaintiff was replying. In defendant Bush's June 30 letter, he stated: "If you do not wish to have this office represent you further, I will transmit that information to the Superior Court, and I will ask to have the Attorney General withdrawn as your representative." *See* Letter from William C. Bush to Robert D. Bradshaw at 2 (June 30, 1999). Because plaintiff repeatedly expressed

1  to defendants Cotton and Bush that he would not authorize the AG's office to accept service, his

2  statement, "As I was never served, I never asked for any assistance and the CNMI [Superior Court]

3  never should have been told that the AG represents me," would mean to a reasonable attorney who

4  read the letter that the AG's office should never have appeared in court on plaintiff's behalf.

5  Construing this in the light most favorable to the nonmoving party, plaintiff, in his July 14

6  letter, expressed that he does not authorize the AG's office to accept service but that he does

7  authorize the AG's office to file a motion to remove him individually from the Bisom case and to

8  represent him in the event that the court deemed that he was a party to the case. Thus, plaintiff's

9  request for a defense from the AG's office was not equivocal and plaintiff has alleged a violation of a

10  "'clearly established' statutory or constitutional right of which a reasonable person would have

11  known." Accordingly, the AG defendants do not have qualified immunity in this case.

12

13  **3. Gross Incompetence**

14  The AG defendants contend that plaintiff's allegations based on the theory of gross

15  incompetence should be dismissed because it is not a recognized federal cause of action. Because a

16  *pro se* litigant is not generally held to the stringent standards and formal pleadings required by

17  lawyers, *Haines*, 404 U.S. at 596, the court understands plaintiff's second claim as alleging: (1) that

18  the AG defendants failed to represent plaintiff in the Bisom case in violation of his due process and

19  equal protection rights, Commonwealth and malpractice laws, and in breach of his employment

20  contract; and (2) that despite the fact that defendant Forelli knew that Bisom had submitted one or

21  two sets of postal documents that she knew were fraudulent, defendant Forelli did not disclose this

22  fact to the court but instead approved the withdrawal of the AG's office as counsel for plaintiff in the

23  Bisom case. Accordingly, the court need not consider whether gross incompetence is a recognized

24  cause of action because plaintiff has not pled such theory. *See Karim-Panahi v. Los Angeles Police*

25  //

26

14

*Dept.*, 839 F.2d 621, 623 (9th Cir. 1988) ("In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt.").

**4. Legal Malpractice**

The AG defendants urge the court to dismiss plaintiff's claim for legal malpractice on the basis that an attorney-client relationship never existed. For plaintiff's theory of legal malpractice to withstand the AG defendants' motion to dismiss, plaintiff must have alleged that either he had an attorney-client relationship with the AG's office or that he was a non-client that the AG's office owed a duty of care. *See* 7 N. Mar. I. Code § 3401 (2004) (In the absence of local law, the Restatement governs.); Restatement (Third) of Law Governing Lawyers § 50 ("[A] lawyer owes a client the duty to exercise care . . . in pursuing the client's lawful objectives in matters covered by the representation."); Restatement (Third) of Law Governing Lawyers § 51 (listing circumstances in which an attorney owes a duty to a prospective client or other non-clients). As explained above, in construing the allegations of material fact in the light most favorable to the non-moving party, an attorney-client relationship is properly pled. Accordingly, because the AG defendants did not challenge any other aspect of plaintiff's malpractice claim, the court **DENIES** the AG defendants' motion to dismiss plaintiff's malpractice claim.

**5. Fifth and Ninth Amendment**

The AG defendants argue that the court should dismiss portions of plaintiff's second claim to the extent that it alleges a violation of the Fifth and Ninth Amendments because the Fifth Amendment does not limit the conduct of the Commonwealth and no individual right exists under the Ninth Amendment. The AG defendants are correct. *See Barron v. City of Baltimore*, 32 U.S (7 Pet.) 243, 248 (1833) ("[T]he fifth amendment must be understood as restraining the power of the general government, not as applicable to the states."); *Strandberg v. City of Helena*, 791 F.2d 744, 748 (1986) ("[T]he Ninth Amendment has never been recognized as independently securing any

constitutional right, for purposes of pursuing a civil rights claim."). While section 501 of the

Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the

United States of America, 48 U.S.C. § 1801 (1976) [hereinafter Covenant], does provide that the

Fifth and Ninth Amendments apply within the Commonwealth, it specifies that they will only be

applicable  "as if the [Commonwealth] were one of the several States[,]" Covenant § 501.

Accordingly, the court **DISMISSES WITH PREJUDICE** any allegation within the second claim

that the AG defendants violated plaintiff's Fifth and Ninth Amendment rights.


**6. 42 U.S.C. § 1983**

The AG defendants also urge the court to dismiss plaintiff's allegations that his due process

and equal protection rights under the Fourteenth Amendment were violated. The AG defendants

suggest that plaintiff has not asserted a claim under 42 U.S.C. § 1983, and because a due process or

equal protection violation may only be asserted under § 1983, the court must dismiss plaintiff's

allegations of due process and equal protection violations. While the court agrees that plaintiff may

only utilize § 1983 for these types of claims, the court is not persuaded that plaintiff failed to assert

his due process and equal protection claims under § 1983.

For a claim to fall under § 1983, plaintiff must allege: "(1) that a person acting under color of

state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some

right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v.*

*Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). Plaintiff alleges that the AG defendants were acting

as members of the AG's office in connection with the Bisom case. Accordingly, plaintiff satisfied the

first prong that the AG defendants were acting under color of state law. In addition, plaintiff also

alleges that the AG defendants violated his due process and equal protection rights under the

Fourteen Amendment. At this stage of the proceedings, that is all that is required. Accordingly, the

court **DENIES** the AG defendants' motion to dismiss the second claim.

//

**F. Third Claim Against Defendant Brown**

Defendant Brown asserts that the third claim[6] should be dismissed because: (1) she is shielded by absolute quasi-judicial immunity; (2) she is shielded by qualified immunity; (3) obstruction of justice is not a civil cause of action; (4) an action to hide and cover up criminal actions is not a civil cause of action; (5) plaintiff's conspiracy allegation fails to state a claim; (6) plaintiff's 42 U.S.C. § 1983 allegation fails to state a claim; and (7) there was no attorney-client relationship between defendant Brown and plaintiff to support a claim for legal malpractice.

**1. Absolute Quasi-Judicial Immunity**

Defendant Brown asserts that she is shielded by absolute quasi-judicial immunity against plaintiff's allegation that she injured plaintiff by hiding, losing, or destroying key documents, *i.e.* two receipts for Certified Mail and two return receipts for the Certified Mail, in the Bisom file and by failing to investigate plaintiff's complaints in regards to the Bisom case.

"Quasi-judicial immunity completely shields covered officials when they perform the functions which give rise to the need for absolute protection, even when the officials make egregious mistakes in carrying out these duties." *Anderson v. Boyd*, 714 F.2d 906, 909 (9th Cir. 1983). Accordingly, like absolute judicial immunity, the court looks to the function performed, rather than the role or title of the official.

Defendant Brown cites the Eleventh Circuit's decision in *Roland v. Phillips*, 19 F.3d 552, 557 (11th Cir. 1994), for the proposition that she has absolute quasi-judicial immunity in this case because she was relying on a facially valid court order while acting in furtherance of official duties.

---

[6] Unlike plaintiff's allegations against the AG defendants, plaintiff's allegations against defendant Brown relate to two distinguishable roles she performed in her capacity as a member of the AG's office. Plaintiff's allegations that defendant failed to properly investigate his criminal complaint relate to defendant Brown's capacity as a criminal investigator. Plaintiff's allegations that defendant Brown improperly disregarded his request for a defense in the Bisom case relate to defendant Brown's capacity as a civil defense attorney. *See, e.g.*, Letter from Pamela Brown to Robert D. Bradshaw (Feb. 15, 2005), *in* Second Amended Complaint, exh. A14-16.

*See* Defendants' Motion to Dismiss Second Amended Complaint and Incorporated Memorandum of Points and Authorities at 8, No. 149 (July 10, 2006). Defendant Brown's assertion, however, fails both on a factual basis and on a legal basis.

First, plaintiff does not allege that his injury stems from defendant Brown's reliance on a valid court order. Rather, plaintiff alleges that on September 12, 2004, plaintiff made a criminal complaint to the AG's office regarding the use of fraudulent U.S. Postal Service documents in connection with the Bisom case but defendant Brown failed to investigate the complaint. Second Amended Complaint ¶¶ 175 - 196, at 35-39; *see id.* at Exh. F. Plaintiff also alleges that defendant Brown injured plaintiff by hiding, losing, or destroying key documents, *i.e.* two receipts for Certified Mail and two return receipts for the Certified Mail, in the Bisom file. Accordingly, it is immaterial whether defendant Brown was or was not relying on a facially valid court order.

Second, defendant Brown misapplies *Roland* to this case. In *Roland*, the Eleventh Circuit deemed that a law enforcement official is shielded by absolute immunity for executing a valid judicial order because "[a]bsolute immunity for officials assigned to carry out a judge's orders is necessary to insure that such officials can perform their function without the need to secure permanent legal counsel." *Roland*, 19 F.3d at 556. Defendant Brown, however, was not carrying out the judge's orders. Instead, defendant Brown's function was investigatory, and therefore not protected by absolute immunity. *See Butler*, 281 F.3d at 1022 (holding that officials do not have absolute immunity when their function is investigatory).

Accordingly, defendant Brown does not have absolute quasi-judicial immunity.

**2. Qualified Immunity**

Defendant Brown also makes an assertion that qualified immunity protects her in this case. Defendant Brown, by simply stating a legal conclusion, does not meet her "burden of showing that such immunity is justified for the function in question." *Fry v. Melaragno*, 939 F.2d at 836 n.6. Accordingly, qualified immunity does not shield defendant Brown from potential liability.

**3. Obstruction of Justice**

Defendant Brown claims that plaintiff's obstruction of justice claim should be dismissed because it is a criminal charge and no private cause of action exists. Defendant Brown is correct. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1482 (9th Cir. 1997). Accordingly, the court **DISMISSES WITH PREJUDICE** plaintiff's claim to the extent that plaintiff alleges a liability theory based on obstruction of justice.

**4. Actions to Hide and Cover Up Criminal Actions**

Defendant Brown claims that plaintiff's allegation that she hid and covered up criminal actions, *i.e.* she hid the existence of allegedly fraudulent postal receipts, should be dismissed because it is a criminal charge and no private cause of action exists. Whether or not this is a criminal charge and whether or not there is a private cause of action, plaintiff's allegations that defendant Brown hid and covered up the existence of fraudulent postal receipts is a factual allegation to support his legal theory of due process and equal protection violations under § 1983. Accordingly, the court **DENIES** defendant Brown's motion to dismiss plaintiff's allegation that she hid and covered up criminal actions.

**5. Conspiracy**

Defendant Brown also moves the court to dismiss plaintiff's conspiracy theory in the third claim for failure to state a claim upon which relief can be granted. A conspiracy allegation, however, was not made in plaintiff's third claim. Instead, plaintiff alleges that defendant "Brown or others under her influence" hid, lost, or destroyed key documents in the Bisom case file, Second Amended Complaint ¶ 268 at 51, and failed to investigate plaintiff's criminal complaint either personally or by influencing others to avoid the investigation, *id.* ¶ 266 at 50. Accordingly, because plaintiff does not allege a conspiracy theory in his third claim, defendant Brown's motion to dismiss the conspiracy theory is **DENIED**.

### 6. 42 U.S.C. § 1983

Defendant Brown's argument that plaintiff's § 1983 action should be dismissed is substantially the same as the arguments posed by the AG defendants. Accordingly, the court **DENIES** defendant Brown's motion to dismiss for the same reasons as stated above. *See infra* Part II.E.6.

### 7. Legal Malpractice

Defendant Brown's contention that plaintiff cannot sustain a legal malpractice claim against her is substantially similar to the AG defendants' argument, that no attorney-client relationship existed between plaintiff and the AG's office. Accordingly, the court denies defendant Brown's motion to dismiss for the same reasons as stated above. *See infra* Part II.E.4.

### 8. Failure to Investigate

While defendant Brown does not argue this point, the court is aware that a complainant does not have a right to have a criminal investigation initiated. Thus, plaintiff was not injured by defendant Brown's alleged failure to properly investigate plaintiff's criminal complaint. Accordingly, the court **STRIKES** all allegations in the complaint regarding defendant Brown's failure to investigate plaintiff's criminal complaint. Plaintiff's allegation that defendant Brown hid, lost, or destroyed key documents in the Bisom case and any other allegation regarding defendant Brown shall remain in the complaint.

### 9. Existence of the Allegedly Lost or Destroyed Documents

During oral argument, defendant Brown asserted that the two receipts for Certified Mail and two return receipts for the Certified Mail do exist, negating plaintiff's allegation that she lost or destroyed these documents. Plaintiff acknowledged that copies of the two receipts do exist in the file. Plaintiff, however, reiterated that he alleged that defendant Brown hid, lost or destroyed the originals

of these documents. Upon taking judicial notice of the entire Bisom case, the court found two copies

of the documents that are allegedly lost or destroyed. Many sections of the copies, however, are

illegible.

Defendant Brown claims that these copies are sufficient to show that she did not violate

plaintiff's due process rights because the Commonwealth Superior Court's Rules of Evidence

provides that duplicates are admissible to the same extent as an original. *See* Commw. R. Evid. 1003.

Commonwealth Rule of Evidence 1003, however, has two exceptions to this general rule: "(1) a

genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be

unfair to admit the duplicate in lieu of the original." Here, plaintiff's allegations raise both

exceptions.

First, plaintiff alleges that the documents are fraudulent, that Manny, the person who signed

these documents, does not exist, and that defendant Bisom submitted to the Commonwealth Superior

Court a copy of an envelope that indicates that the envelope and its contents was not received by the

intended recipient although these postal receipts suggest that it had. Accordingly, a genuine question

is raised as to the authenticity of the documents.

Second, plaintiff asserts that the original documents are unavailable because defendant

Brown hid, lost, or destroyed the original documents. Furthermore, the duplicates are illegible,

resulting in spoilage of key information. Thus, plaintiff has sufficiently alleged that it would be

unfair in these circumstances to admit the duplicate in lieu of the original.

Accordingly, plaintiff has sufficiently pled that defendant Brown violated his due process

rights by hiding, losing, or destroying these two postal receipts.


**G. Seventh Claim Against Defendants Commonwealth and Forelli**

Defendants Commonwealth and Forelli contend that because plaintiff has not alleged any set

of facts to support the existence of a conspiracy or class-based animus, the court must dismiss

plaintiff's seventh claim for violation of 42 U.S.C. § 1985.

> In order to prove a claim for relief under 42 U.S.C. § 1985, [plaintiff] must show: (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of a right or privilege of a United States citizen.

*Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1181 (9th Cir. 1998).

Here, plaintiff fails to allege facts to support the existence of a conspiracy. A mere conclusory allegation of conspiracy is insufficient to withstand a motion to dismiss. *See Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929 (9th Cir. 1004) (quoting *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989)). Accordingly, plaintiff's seventh claim against defendants Commonwealth and Forelli is **DISMISSED WITHOUT PREJUDICE**. The court will allow plaintiff leave to amend his seventh claim. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (quoting *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam)) ("A pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.").

## H. Eighth Claim Against Defendants Commonwealth, Forelli, and Brown

Defendants Commonwealth, Forelli, and Brown urge the court to dismiss plaintiff's eighth claim[7] on the basis that: (1) defendants Commonwealth and Forelli committed no wrongdoing; (2) all defendants have absolute and qualified immunity; and (3) the statute of limitations apply. For the reasons stated above, the court does not find these arguments persuasive. *See infra* Part II.B & II.E. Furthermore, because the moving defendants make no other arguments, the court **DENIES** defendants motion to dismiss plaintiff's eighth claim.

---

[7] Plaintiff's eighth claim alleges a violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"). "To prevail on a civil RICO action, [ ] plaintiff must prove that [ ] defendant[s] engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) [ ] defendant[s] caused injury to plaintiff's business or property." *Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1086 (9th Cir. 2002).

**I. Ninth Claim Against Defendant Commonwealth**

The Commonwealth argues that the court should dismiss plaintiff's ninth claim because plaintiff did not satisfy the requirements of P.E.L.D.I.A. and was not entitled to a defense and, thus, plaintiff's employment contract with the Commonwealth was not violated.[8] For the reasons stated above, the court does not find the Commonwealth's argument persuasive. *See infra* Part II.E.2. Accordingly, defendant Commonwealth's motion to dismiss the ninth claim is **DENIED**.

**J. Tenth Claim Against Defendants Commonwealth, Forelli, Bush, Cotton, and Brown**

In plaintiff's tenth claim, he alleges that the Commonwealth, through its agents, defendants Forelli, Bush, Cotton, and Brown, discriminated against him in violation of the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359 (codified as amended in scattered sections of 8 U.S.C.). The moving defendants urge the court to dismiss plaintiff's tenth claim because the Covenant excludes the application of the Immigration Reform and Control Act of 1986 to the Commonwealth. The moving defendants are correct. *See* Covenant §503 & 506. Accordingly, plaintiff's tenth claim against the moving defendants is **DISMISSED WITH PREJUDICE**.

**K. Eleventh Claim Against Defendants Commonwealth, Forelli, Bush, Cotton, and Brown**

The theory of liability in claim eleven parallels that of plaintiff's second claim against the AG defendants and plaintiff's third claim against defendant Brown. Although plaintiff entitles his eleventh claim as "Violation of the Civil Rights Act of 1870," it is the substance of the claim and not the title that controls. Accordingly, to the extent that it is a separate claim, plaintiff's eleventh claim is **DISMISSED WITH PREJUDICE**. To the extent that plaintiff makes additional factual

---

[8] Based on the allegations plaintiff makes in his ninth claim for breach of employment contract, the court does not find that plaintiff alleges an injury by defendants Cotton, Brown, Bush, and Forelli in their individual capacity.

allegations in ¶¶ 356 to 362, plaintiff is allowed leave to amend his complaint to include those factual allegations, if and where appropriate.

**L. Twelfth Claim Against Defendants Commonwealth, Forelli, Bush, Cotton, and Brown**

Plaintiff's twelfth claim against the moving defendants is for a violation of the Civil Rights Act of 1871, 17 Stat. 13 (1871) (codified as amended at 42 U.S.C. § 1983). Because plaintiff asserted a § 1983 claim against the moving defendants in his second and third claims on substantially the same facts, claim twelve is redundant. Accordingly, to the extent that it is a separate claim, plaintiff's twelfth claim is **DISMISSED WITH PREJUDICE**. To the extent that plaintiff makes additional factual allegations in ¶¶ 363 to 370, plaintiff is allowed leave to amend his complaint to include those factual allegations, if and where appropriate.

**M. Thirteenth Claim Against Defendant Commonwealth**

While plaintiff labels paragraphs 371 to 374 as his thirteenth claim based on principal and agent relationship, no such claim for damages exist. Accordingly, to the extent that it is a separate claim, plaintiff's thirteenth claim is **DISMISSED WITH PREJUDICE**. To the extent that plaintiff makes additional factual allegations in ¶¶ 371 to 374, plaintiff is allowed leave to amend his complaint to include those factual allegations, if and where appropriate.

**N. Fourteenth Claim Against Defendants Commonwealth, Forelli, Bush, Cotton, and Brown**

While the moving defendants assert that plaintiff fails to allege a cause of action in his fourteenth claim for an intentional tort,[9] they do not explain why. Without more than a mere legal

---

[9] Plaintiff alleges in his fourteenth claim that the moving defendants, with the exception of the Commonwealth, "have acted recklessly, deliberately, maliciously and with intent and foreknowledge to bring hurt, damage and injury on [plaintiff]." Second Amended Complaint ¶ 376, at 68.

conclusion that plaintiff fails to allege a cause of action, the moving defendants fail to meet their

burden. Accordingly, the court **DENIES** their motion to dismiss plaintiff's fourteenth claim.

**O. Fifteenth Claim Against Defendants Commonwealth, Forelli, Bush, Cotton, and Brown**

In his fifteenth claim, plaintiff alleges that defendants Commonwealth, Forelli, Bush, Cotton,

and Brown slandered plaintiff in connection with the Bisom case and have intentionally inflicted

emotional distress upon plaintiff. "An attorney at law is absolutely privileged to publish defamatory

matter concerning another in communication preliminary to a proposed judicial proceeding, [and] . .

. during the course, and as part of, a judicial proceeding." Restatement (Second) of Torts § 586

(1977); *see* N. Mar. I. Code § 3401. Accordingly, defendants are absolutely privileged for any

communications within any judicial proceeding. On the other hand, defendants are not privileged to

publish or utter defamatory matters outside of any judicial proceedings.

Because plaintiff does not allege that the slander occurred outside of any judicial proceeding

and because his allegations seem to suggest that the slander occurred in connection with a judicial

proceeding, the court **GRANTS** the moving defendants' motion to dismiss. Accordingly, plaintiff's

fifteenth claim is **DISMISSED WITHOUT PREJUDICE**. The court will allow plaintiff leave to

amend his fifteenth claim. *See Noll*, 809 F.2d at 1448.

**P. Sixteenth and Seventeenth Claim Against Defendants Commonwealth, Forelli, Bush, Cotton, and Brown**

While plaintiff labels paragraphs 383 to 397 as his sixteenth and seventeenth claims for loss

of enjoyment of life and extra expense placed on plaintiff, respectively, no such causes of action

exist. Accordingly, to the extent that they are considered separate causes of action, plaintiff's

sixteenth and seventeenth claims are **DISMISSED WITH PREJUDICE**. However, because the

substance of the paragraphs explain the damages plaintiff seeks, plaintiff is allowed leave to amend

his complaint to include those factual allegations, if and where appropriate.

**III. CONCLUSION**

> **FOR THE FORGOING REASONS, THE COURT:**

> **GRANTS** defendants Forelli, Cotton, and Bush's motion to dismiss with prejudice the Fifth and Ninth Amendment theories contained in plaintiff's second claim;

> **GRANTS** defendant Brown's motion to dismiss with prejudice plaintiff's obstruction of justice theory contained in plaintiff's third claim;

> **STRIKES** any allegation in plaintiff's third claim that defendant Brown failed to investigate plaintiff's criminal complaint;

> **GRANTS** defendants Commonwealth and Forelli's motion to dismiss plaintiff's seventh claim without prejudice;

> **GRANTS** the moving defendants' motion to dismiss plaintiff's tenth claim with prejudice;

> **GRANTS** the moving defendants' motion to dismiss plaintiff's eleventh, twelfth, thirteenth, sixteenth, and seventeenth claim but allowing plaintiff leave to amend the complaint to include the facts alleged in these claims, if and where appropriate;

> **GRANTS** the moving defendants' motion to dismiss plaintiff's fifteenth claim without prejudice;

> **ALLOWS** plaintiff leave to amend his seventh and fifteenth claims;

> **DENIES** all other motions; and

> **ORDERS** that plaintiff file an amended complaint in conformity with this order within twenty days.

> **IT IS SO ORDERED.**

> **DATED** this _____ 8TH day of September, 2006.

_Alex R. Munson_

ALEX R. MUNSON
Judge

**Appendix I**

The following forty-six documents contain representations by either defendant Cotton or defendant Brown that the AG's office was plaintiff's attorney in the Bisom case.

*Bisom v. Commonwealth*, CV-95-0042 (D.N. Mar. I. 1996)

1.      Answer to Complaint, No. 5 (Jan. 8, 1996).
2.      Stipulation and Order to Continue Case Management Conference, No. 11 (Feb. 21, 1996).
3.      Pre-Discovery Disclosure Statement, No. 15 (Apr. 1, 1996).
4.      Conference Statement, No. 16 (Apr. 1, 1996).
5.      Defendants' Motion to Extend Production Request Response Time, No. 25 (June 12, 1996).
6.      Ex Parte Motion Under Rule 220-11 For Motion To Expedite Hearing On Defendants' Motion To Extend Production Request Response Time, No. 26 (June 12, 1996).
7.      Memorandum In Support of Defendants' Motion to Extend Product Request Response Time, No. 27 (June 12, 1996).
8.      Certificate of Counsel Under Rule 220-11, No. 28 (June 12, 1996) (attorney stating that he is counsel for plaintiff in his individual and official capacity).
9.      Stipulation, Re: Confidentiality Agreement, No. 35 (July 26, 1996).
10.     Notice of Deposition of Plaintiff Robert A. Bisom, No. 37 (Sept. 6, 1996).
11.     Notice of Deposition of the Disciplinary Committee of the Commonwealth of the Northern Marianas Bar Association, No. 39 (Sept. 30, 1996).
12.     Notice of Deposition of Stanley Tudela Torres, No. 40 (Sept. 30, 1996).
13.     Notice of Motion and Motion For Judgment on the Pleadings and For Summary Judgment, No. 45 (Oct. 4, 1996).
14.     Notice of Motion and Motion in Limine to Exclude Matson Letter, No. 50 (Oct. 18, 1996).
15.     Reply Memorandum of Points and Authorities In Support of Motion For Judgment on the Pleadings and For Summary Judgment, No. 54 (Oct. 24, 1996).
16.     Request To Schedule Oral Discovery Motion, No. 57 (Oct. 28, 1996).
17.     Memorandum of Points and Authorities In Support of Opposition To Plaintiff's Motion In Limine To Admit Matson Letter, No. 58 (Oct. 25, 1996).
18.     Memorandum of Points and Authorities In Opposition To Motion To Compel; Declaration of Robert B. Dunlap II, No. 62 (Oct. 31, 1996).

*Bisom v. Commonwealth*, CV-96-0052 (D.N. Mar. I. 1997)

19.     Defendants' Reply to Plaintiff's Opposition to Motion to Require Plaintiff to File A Bond For Costs, No. 13 (Mar. 10, 1997).

20.   Defendants' Memorandum of Points and Authorities in Opposition To Plaintiff's Motion to Remand, No. 12 (Mar. 7, 1997).

21.   Declaration of Loren A. Sutton In Support of Defendants' Opposition To Plaintiff's Motion to Disqualify, No. 11 (Mar. 7, 1997).

22.   Defendants' Memorandum of Points and Authorities In Opposition To Plaintiff's Motion to Disqualify, No. 10 (Mar. 7, 1997).

23.   Order Re: Hearing Schedule, No. 7 (Feb. 7, 1997).

24.   Notice of Motion and Motion to Require Plaintiff to File A Bond For Costs, No. 6 (Feb. 6, 1997).

*Bisom v. Commonwealth*, CV-98-0002 (D. N. Mar. I. 1998)

25.   Defendants' Notice of Motion and Motion to Amend Notice of Removal of Action, No. 17 (Mar 5, 1998).

26.   Ex Parte Motion For Leave to Exceed the Page Limits For A Reply Brief, No. 16 (Mar. 3, 1998).

27.   Defendants' Reply to Plaintiff's Opposition to Motion to Dismiss, No. 14 (Feb. 27, 1998).

28.   Defendants' Memorandum of Points and Authorities in Opposition To Plaintiff's Motion to Remand, No. 9 (Feb. 20, 1998).

29.   Defendants' Notice of Motion and Motion to Dismiss For Lack of Personal Jurisdiction and Failure to State A Claim, No. 3 (Jan. 23, 1998) (specifically arguing for Bradshaw).

*Bisom v. Commonwealth,* No. 96-1320 (N. Mar. I. Commw. Super. Ct. 2000)

30.   Notice of Motion and Motion For More Definite Statement (May 9, 1997) (specifically arguing claims against Bradshaw).

31.   Defendants' Notice of Motion and Motion to Dismiss for Lack of Subject Matter Jurisdiction, Failure to State A Claim, and Insufficiency of Process (May 9, 1997) (specifically arguing about claims against Bradshaw in both his official and individual capacity).

32.   Notice of Motion and Motion to Require Plaintiff to File A Bond For Costs (May 9, 1997).

33.   Defendants' Notice of Motion and Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State A Claim (June 26, 1997).

34.   Notice of Motion and Motion For More Definite Statement (June 26, 1997)

35.   Stipulation for Extension of Time to File Opposition (July 9, 1997).

36.   Defendants' Reply to Plaintiff's Opposition to Motion to Dismiss For Lack of Personal Jurisdiction and Failure to State A Claim (July 17, 1997).

37.   Defendants' Reply to Plaintiff's Opposition to Motion For More Definite Statement (July 17, 1997).

38.   Memorandum of Points and Authorities, Re: Entitlement of Plaintiff to the Protections of the Civil Service System.

39.   Reply to Plaintiff's Brief, Re: Coverage Under Civil Service System (Aug. 20, 1997).

40.   Defendant's Notice of Non-Opposition to Plaintiff's Motion For Leave to File Third Amended Complaint (Dec. 10, 1997).

41.   Notice of Substitution of Party (Dec. 11, 1997) (specifically identifying Bradshaw in his official capacity).

42.   Notice of Plaintiff of Removal to Federal Court (Jan. 23, 1998).

43.   Defendants' Memorandum in Support of Motion for Reconsideration (Dec. 7, 1998).

44.   Defendant's Motion for Reconsideration of Decision (Dec. 10, 1998).

45.   Reply to Opposition to Motion For Reconsideration (Dec. 28, 1998).

46.   Unopposed Motion to Enlarge Time (Aug. 18, 1999).

# CHAPTER 3.
# Public Employee Legal Defense and Indemnification Act. § 2301

§ 2301. Short Title and Purpose.
§ 2302. Purpose.
§ 2303. Definitions.
§ 2304. Request for Defense; Payment of Defense, Settlement or Judgment; Implied Right of Indemnification; Findings Required.
§ 2305. General Rule: Indemnification of Employee by Public Entity Required.
§ 2306. General Rule: Indemnification of Public Entity by Employee Not Required.
§ 2307. Application of Chapter.

### § 2301.   Short Title.

This chapter may be cited as the Public Employee Legal Defense and Indemnification Act of 1986.

Source: PL 5-12, § 1.

Commission Comment: PL 5-12 took effect June 24, 1986.

### § 2302.   Purpose.

The public employees of the Commonwealth government, including its governors, legislators, doctors, attorneys, and public safety officers, have been increasingly sued under federal and Commonwealth law for injuries arising out of acts that arise out of the scope of their employment. In the private sector, businesses pay for the defense and often for the liability insurance of their employees against such claims. The legislature finds that the expense of purchasing liability insurance against such claims would be prohibitive and that, accordingly, the government should self-insure its employees against such claims. It is the purpose of this chapter to provide protection to government employees against the high cost of the legal defense and the judgments for injuries arising out of actions occurring within the scope of their employment. This chapter is based upon statutes from the states of California and Washington.

Source: PL 5-12, § 1.

### § 2303.   Definitions.

As used in this chapter:

(a) "Act" includes any omissions or failure to act.

(b) "Claim" includes any civil action.

(c) "Claim or judgment" includes any portion of a claim or judgment.

(d) "Employee" means an officer, elected or appointed official, exempted service, classified or unclassified employee, or servant of a public entity, whether or not compensated, but does not include an independent contractor of a public entity. Employee includes former employees of a public entity.

(e) "Employment" includes office of employment.

(f) "Injury" means death, injury to a person, damage or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, or such nature that would be actionable if inflicted by a private person. For purposes of this section, a person includes a corporation or other legal person.

(g) "Public entity" means any governmental legal entity that is capable of suing or being sued, within the executive, legislative or judicial branches of the government of the Northern Mariana Islands. Public entity includes government corporations, independent agencies, and the Public Auditor.

(h) "Settlement" includes any compromise.

**Source:** PL 5-12, § 2; amended by PL 9-68, § 6.

**Commission Comment:** PL 9-68 that amended subsection (g) of this section took effect on October 31, 1995.

## § 2304.   Request for Defense; Payment of Defense, Settlement or Judgment; Implied Right of Indemnification; Findings Required.

(a)   *General Rule for Public Defense of an Action.*   At the public entity's discretion, either a public entity shall pay for an employee's defense by an attorney accepted by the employee and the Attorney General or his designee, or the public entity shall defend the employee, and the public entity shall pay any settlement (to which the public entity has agreed) or any judgment, if:

(1)   The employee requests the public entity to pay for his defense or to defend him against any claim against him for an injury arising out of an act that he reasonably and in good faith believes has occurred within the scope of his employment as an employee of the public entity (whether or not the employee is sued in an official or private capacity);

(2)   The employee has not acted because of actual fraud, actual malice, or willful criminal misconduct;

(3)   The employee reasonably cooperates in good faith in the defense of the claim; and

(4)   The employee makes his request in writing to the public entity not less than five days before an answer must be filed; provided, that an employee against which a claim is pending on June 24, 1986, shall have 60 days within which to make his written request.

The acceptance of an attorney under this subsection (a) of this section shall not be unreasonably withheld by the Attorney General or his designee.

(b)   *Public Entity's Implied Right of Indemnification.*   If a request is made under subsection (a) of this section, and if there is a potential conflict of interest between the defense of the public entity and the employee, the employee shall be notified of the potential conflict of interest, and both parties may waive the potential conflict of interest.   The public entity shall be deemed to have reserved the right to seek indemnification against the employee under subsection (a) of this section after settlement of or judgment upon any claim.

(c)   *Public Entity's Right to Seek Indemnification Defined.*   If a public entity pays any defense fees or any claim or judgment either itself or against any employee, for an injury arising out of an act of the employee, the public entity may recover from the employee the amount of its payment

only if:

(1)   The employee's liability did not arise out of his employment as an employee of the public entity (whether or not the employee is sued in an official or private capacity);

(2)   The employee acted because of actual fraud, actual malice, or willful criminal misconduct; or

(3)   The employee willfully failed or refused to conduct the defense of the claim in good faith.

(d)   *Findings of Fact Required.* Prior to the entry of judgment upon any claim coming under subsection (a) of this section, any party may request the court to determine if:

(1)   The employee has acted within the scope of his employment; and

(2)   The employee has acted because of actual fraud, actual malice, or willful criminal misconduct.

Source: PL 5-12, § 3.

### § 2305.   General Rule: Indemnification of Employee by Public Entity Required.

If an employee pays any claim or judgment against him that the public entity is required to pay under 7 CMC § 2304 and for which the public entity has no right of indemnification against the employee under 7 CMC § 2304, the employee may recover the amount of such payment from the public entity.

Source: PL 5-12, § 4.

### § 2306.   General Rule:

### Indemnification of Public Entity by Employment Not Required.

Except as provided in 7 CMC § 2304, if a public entity pays any claim or judgment against itself or against an employee for an injury arising out of an act of the employee, the employee is not liable to indemnify the public entity.

Source: PL 5-12, § 5.

### § 2307.   Application of Chapter.

(a)   This chapter shall not apply to criminal actions.

(b)   This chapter shall apply to every claim that is not settled or reduced to final judgment.

Source: PL 5-12, § 6.