1

William M. Fitzgerald, Esq.
LAW OFFICE OF WILLIAM M. FITZGERALD

2

2nd Floor, Macaranas Building
Post Office Box 500909

3

Saipan MP  96950

4

Telephone: (670) 234-7241
Facsimile: (670) 234-7530

5

6

Kathleen V. Fisher, Esq.
CALVO & CLARK, LLP

7

1st Floor, Macaranas Building
PMB 951 Box 10001

8

Saipan, MP  96950
Telephone: (670) 233-2045

9

Facsimile: (670) 233-2776

10

*Attorneys for Bank of Saipan, Inc, Defendant Intervenors*

11

12

13

**IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS**

14

15

**RANDALL T. FENNELL,**

16

**Plaintiff,**

17

18

**vs.**

19

**MATTHEW T. GREGORY, former Attorney
General, GREGORY BAKA, Acting Attorney
General, ANTHONY WELCH, Assistant
Attorney General, TOM J. SCHWEIGER,
Assistant Attorney General, and DOES 1-20, in
their official and individual capacities,**

20

21

22

23

**Defendants.**

24

25

26

27

28

CIVIL CASE NO. CV 09-0019

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
MOTION TO INTERVENE**

Date: _____

Time: _____

The Bank of Saipan, Inc. (the "Bank") hereby moves the Court for permission to intervene in this action for the purpose of seeking dismissal or, in the alternative, to stay the proceedings until the CNMI Superior Court has determined Plaintiff Randall T. Fennell's ("Fennell") entitlement to any certification and any immunity or indemnity under the CNMI Supreme Court mandate in *Bank of Saipan, Inc. v. Atalig*, 2005 MP 3 ¶10 and as reiterated in *Bank of Saipan v. Camacho*, Appeal No. 05-0025-GA, (May 24, 2006 Order Vacating the October 14 "Spending Cap Order" at ¶¶ 4, 21)(Per Curiam) Ex. 27. Fennell and the Bank have put these issues squarely before the Superior Court in *The Bank of Saipan, Inc. v. Fennell*, CNMI Civ. No. 04-0449A. See, Request for Judicial Notice Pursuant to Federal Rules of Evidence 201 ("RJN") filed concurrently herewith Ex. 1 (the "Lawsuit"). The Bank has an interest in litigating these issues fully and fairly as they fundamentally impact its rights at issue in the Lawsuit. It asks to intervene to seek a dismissal or in the alternative, to stay this action.

## I.      INTRODUCTION

The CNMI Supreme Court has held that Mr. Fennell is not entitled to indemnity or immunity for his acts as the Bank's receiver without a full factual "plenary hearing" before the Superior Court. Mr. Fennell has filed this action to end run the Bank's lawsuit that alleges wrongful conduct for destroying the Bank's business and reputation and harming countless numbers of depositors, employees, customers and shareholders.

The Complaint is all about the Lawsuit that is *pending* before the Superior Court and the issues before it.

First, Mr. Fennell demands relief under the U.S. Constitution for his failure to obtain "representation" and "indemnity" from the Government under a local law PL 15-22 (and/or the former PELDIA under 7 CMC § 2301) in the Lawsuit. The Superior Court has before it Fennell's "Petition for Certification" based on P.L. 15-22/PELDIA. RJN Exs. 2 and 3. He asks that the Superior Court certify that Fennell was an "employee" of the CNMI and thus that he be "dropped out of the case ***entirely*** and the ***CNMI Government becomes a defendant in his place***." RJN Ex. 2 ¶ 1 (emphasis added) even though Fennell has been sued by the CMNI Government in the

1

1   Superior Court action. The Bank has opposed this motion. Mr. Fennell seeks the same relief here

2   but has cloaked it as a constitutional right. The Bank has an important interest in this issue.

3       Second Superior Court also has before it the Bank and the Government's request to set the

4   plenary hearing required by the CNMI Supreme Court (*Atalig and Camacho*). RJN Exs. 4, 5-8.

5   The plenary hearing will determine whether Fennell has any right to claim indemnity or

6   immunity. Mr. Fennell has opposed the setting of this Motion at every turn. RJN Exs. 3, 9-14.

7       Third, if Fennell believes that the Attorney General is conflicted, the Superior Court is

8   best suited to determine whether it is competent to appear in the suit. Yet, Mr. Fennell has never

9   moved to disqualify the Attorney General from the Lawsuit.

10      Finally, Mr. Fennell has sought to malign the Bank and mischaracterize the facts that the

11  Courts, US Government and Independent Receiver have determined concerning the receivership,

12  its cause and the role of the Bank and its Board of Directors. The real judicially noticeable facts

13  undermine Fennell's complaint and it should therefore be dismissed under *Bell Atlantic Corp. v.*

14  *Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937 (2009)

15  (FRCP 8(a)(2) calls for sufficient factual matter, accepted as true, to "state a claim to relief that is

16  plausible on its face," id., at 570.)

17      The Bank's interest in this action is obvious. It wants to have its day in court on the case

18  it filed in the Superior Court almost five years ago. Mr. Fennell has taken action to disrupt or

19  delay that action and in the process siphoned $1 million in bank-paid insurance to fund his

20  defense. The Bank asks that this case be dismissed or stayed until the Superior Court case is

21  resolved. In order to make such a request, the Bank hereby moves the Court for permission to

22  intervene in this action. It respectfully requests the Court to grant this Motion.

23  **II.    FACTS**

24      The CNMI Supreme Court summarized the underlying receivership proceedings as

25  follows: "The Bank, and more importantly its depositors, have had to weather a legal typhoon

26  that consisted of two receivers, possible liquidation, rehabilitation, and protracted and prodigious

27  litigation. When placed into receivership, the Receivership Court appointed Randall T. Fennell

28

the receiver for the Bank.  For various reasons, the Receivership Court removed Fennell and replaced him with Mr. Antonio S. Muna.  Subsequently, the Bank set off on a course of rehabilitation." *Camacho* at ¶ 2.

The Receivership was initially caused by the "cold, calculating" crimes of Bert Douglas Montgomery, former Bank President Tomas B. Aldan and other conspirators.  On April 24, 2002, just prior to the receivership, the United States Government indicted and a federal jury convicted Montgomery and his cohorts. RJN Ex. 15.  *See, U.S. v. Montgomery,* Criminal Case No. 02-00010 (returning conviction and sentenced to 240 months for the "cold, calculating" crime perpetrated on the Bank of Saipan that "resulted in direct injury to thousands of bank depositors, including the Commonwealth government, all of whom lost access to their savings." RJN Ex. 16 at 4 (Order Denying Motion of Defendant Montgomery to Be Re-Sentenced filed Jan. 5, 2007).) The District Court found that "the indirect injury caused to the families of individual account holders and to the creditors of business account holders was significant and still reverberates in the community as the Bank has continued in receivership since May of 2002."

Over Fennell's objection and threats, the Bank remained in receivership during 2005 and 2006.  Fennell made his wrongful purpose explicit in a December 8, 2005 *ex parte* letter to Presiding Judge Naraja (in his so called administrative capacity), where he stated: "It is very much in my interest that the receivership continue." RJN Ex. 17.  Fennell's objection to termination was based solely on whether the Bank would agree to give up on the Lawsuit against him.  The Bank did not and Fennell litigated an appeal from a spending cap order imposed by the Receivership court at the request of Mr. Fennell and others.  In vacating the spending cap, the Supreme Court (*Camacho*) found that the "Spending Cap Order coupled with Fennell's assertion that '[n]o one is more affected by the determination off these issues than Fennell' indicate that the Spending Cap Order isn't crafted to protect depositors, but *rather the Fennell Defendants*.  While a plenary hearing may indicate that the Fennell Defendants are entitled to protection, no such determination has yet been made." *Camacho* at ¶ 17 (emphasis added).  In August 2006, the Superior Court terminated the receivership again over Fennell's objection.  Following a series of

1   recusals of judges in the Lawsuit, the CNMI Supreme Court appointed Judge Pro Tem.  Arthur

2   Barcinas to preside over the case. [Appointment Order]. RJN Ex. 18

3          Randall Fennell's acrimony toward the Bank, attorney David J. Lujan and the Bank's

4   major shareholders resulting from the Hillblom Estate played out in a particularly ugly manner in

5   2002.  On April 30, 2002, the CNMI Government nominated Fennell to serve as a temporary

6   receiver of the Bank for 30 days.  Bank First Amended Complaint ("Bank FAC") ¶¶ 10-11.  RJN

7   Ex. 1 Without disclosing conflicts to the Court, Fennell was supposedly appointed for the purpose

8   of protecting the depositors and rehabilitating the Bank.  Bank FAC ¶¶ 11, 12, 13 and 14.  The

9   Bank's complaint and the plenary hearing motion and supporting documents submitted to the

10  Superior Court assert that Fennell hired his old teammates from the Hillblom case to savage the

11  Bank to settle old scores.  Bank FAC ¶¶ 13-14; Motion for Plenary Hearing at 3-4.  The Fennell

12  group misused their authority in secret, off the record, *ex parte* and *in camera* proceedings. Bank

13  FAC. Ex. 1 ¶¶ 15-18.

14         Despite his duties and obligations as a receiver to protect the Bank, Fennell engaged in a

15  media campaign to ruin the Bank and advertised the futility of rehabilitation.  RJN Ex. 4 (at

16  attachment A at Ex. 7).  Fennell's actions were so extreme that billings by Mr. Fennell's legal

17  team reveal a payment to one of the CNMI Supreme Court's former law clerks in the Hillblom

18  Estate for information in order to disqualify a sitting Justice. RJN Ex. 4 at Attachment A at 3 ¶ 7

19  and Ex.1 (to the attachment) at 26.  U.S. District Court Chief Judge Frances Tydingco-Gatewood,

20  sitting as a Justice Pro Tem, found disqualification warranted but in doing so held "that" the

21  Court is troubled by the Receiver's [Fennell] unsubstantiated and aggressive attacks on Justice

22  Castro's actions during the Hillblom probate proceedings.  "This Court declines to make any

23  pronouncement as to what went on during those proceedings, and emphasizes only that there is

24  absolutely nothing in the record which indicates any impropriety by Justice Castro.  Furthermore,

25  the Receiver's attempt to liken Justice Castro's involvement with the Fund to criminal conduct

26  borders on sanctionable." RJN Ex. 19 ¶ 43.

27

28

4

While the Court finds itself in the midst of a case that is yet another litigation tactic to avoid the pending Lawsuit in the Superior Court, it is important to note that:

- Mr. Fennell has Petitioned the Superior Court to dismiss him from the case and replace him with the CNMI Government as a defendant under PELDIA or P.L. 15-22 and his petition asserts that he was an "employee" of the CNMI; RJN Exs. 2 & 3.

- Mr. Fennell filed an "Indemnification Claim of Randall T. Fennell" on October 18, 2005 and on August 1, 2006 in the Receivership proceedings.  Ex. 20 (and attachment thereto).  The Bank refused this demand. *Id.*  Fennell never appealed from the Order terminating the receivership (RJN Ex. 25) to claim indemnity or submitted to a plenary hearing to establish his entitlement to the same;

- Mr. Fennell has objected to a plenary hearing (which is required to determine his entitlement to immunity and indemnification) since the Bank first requested one in 2005 and the Superior Court needs only to hold such hearing;

- Mr. Fennell has not moved to disqualify the Attorney General in the Superior Court proceedings and is free to do so.  He chose instead to argue to Presiding Judge Naraja in an *ex parte* letter dated December 8, 2005 that the Attorney General interests were not aligned with his own. RJN Exs. 17, 28 (docket sheet).

## III.   THE DISTRICT COURT FENNELL COMPLAINT

### A.   The Fennell Complaint And Its Core Issues Are All Before The Superior Court Of The CNMI – A Forum Where the Lawsuit is At Issue and the Bank can Participate

First, Mr. Fennell's Complaint is all about the Lawsuit.  Cmpt. ¶¶ 43, 45, 46, 47, 54, 55 (a) – (i), 56, 57, 60, 61, Prayer for Relief at 4.  The Lawsuit was brought by the Bank.  Its interests should be considered.  Moreover, the Superior Court has all of the issues that are at the heart of the Complaint before it.

Second, Mr. Fennell demands relief for his failure to obtain "representation" and "indemnity" from the Government under PELDIA and successor legislation in the Lawsuit.  Cmpt. ¶¶ 44, 45, 46, 55(e)-(f), 56.  However, Mr. Fennell has affirmatively placed this issue before the CNMI courts.  The Superior Court has before it Fennell's Petition for Certification based on PELDIA's successor law P.L. 15-22 and has requested statutory protection as an "employee" of the Commonwealth.  RJN Exs. 2 and 3.  Mr. Fennell has asked for his dismissal under his Petition and to substitute the Government in his place.  RJN Ex. 2.  The ultimate

5

consequence to the Bank is that the Government will be substituted in Fennell's stead. (RJN Exs. 2 and 3 Fennell's Petition). The Bank has opposed this attempt. Further, the Superior Court has before it requests to set the plenary hearing mandated by *Atalig* and *Camacho*. Exs. 4, 5-8. Fennell and his co-defendants have opposed any such hearing. RJN Exs. 3, 9-14. He also filed formal claims for Indemnity in the Receivership proceedings (that the Bank denied) (RJN Ex. 20), and never filed an appeal with respect to those requests. The Bank has a material interest in whether Fennell is given any immunity, indemnity or "employee" status under the *Atalig* and *Camacho* decisions or PELDIA/P.L. 15-22.

Third, Mr. Fennell's core assertion is that the Attorney General is conflicted and should have no part in the Lawsuit. Cmpt ¶¶ 44-46, Prayer for Relief at 4 (injunction against AG from "representing parties in or otherwise participating in the Lawsuit."); Ex. H (the purpose of this letter is to, again, point out the conflict of interest possessed by your office . . . "). Yet, Mr. Fennell has never moved to disqualify the Attorney General. RJN Ex. 28 (docket sheet). If necessary, the Superior Court is best suited to determine this issue as well.

## B.   The Fennell Complaint Mischaracterizes the Record of the Bank and its Rehabilitation

The Bank's other interest is in ensuring that the record of Mr. Fennell's alleged wrongful acts as Receiver are fully and fairly litigated and that it has the ability to meaningfully participate in a public determination of the record. That was the point of *Atalig.  Camacho* at ¶ 4 ("With its *Atalig* decision, this Court made it clear that Fennell could be entitled, as all receivers are, to immunity and indemnification. But, he is *only so entitled after a plenary hearing* on the matter that determines if his acts were done honestly, in [] good faith, and in the exercise of the authority derived from his appointment.") (emphasis added).

Mr. Fennell's one-sided maligning of the Bank and its representatives is built on mischaracterized allegations that bear no resemblance to facts and holdings of the Courts, US Government and Independent Receiver who have considered the Bank's receivership, its causes and the criminal acts underlying the same. *See* e.g., Cmpt . ¶ 41, ¶ 57 (a), Ex. E (claiming that Bank Board is subject to criminal and civil liability and was "derelict" in its oversight of

6

1   management attaching a government report that the CNMI Superior Court vacated RJN Ex. 23

2   (Order re: Petition for Judicial Review (Apr. 6, 2005), *Bank of Saipan, Inc. v. Atalig,* Civil Action

3   No. 02-0376E ).  This one-sided attack is not only unfair and but is also cause to dismiss

4   Fennell's complaint under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)*,* and recently in

5   *Ashcroft v. Iqbal,* __ U.S. ___, 129 S.Ct. 1937 (2009).   (FRCP 8(a)(2) calls for sufficient factual

6   matter, accepted as true, to "state a claim to relief that is plausible on its face," id., at 570.).  The

7   Bank wishes to join the Defendants motion to dismiss to raise these issues or in the alternative to

8   stay pending the Superior Court's determination.  The Bank has submitted its motion to dismiss

9   pursuant to Rule 24(c).

10              **1.      Independent Findings Undermining Complaint**

11         Below is a summary of critical independent determinations of the Courts and the Receiver

12   that have considered the issues involving the Bank and its receivership.  Mr. Fennell claims that

13   the Bank's Board of Directors, its major shareholders, their attorney, MPLA and its attorney

14   caused the receivership Comp. ¶ 42  Many Courts  and the successor Receiver's and decisions

15   have found otherwise.  Indeed, the circumstances that led to the receivership were caused by a

16   mastermind criminal and insiders who intended to defraud the Bank, its Board and depositors.

17   Fennell took advantage of a crippled Bank and then sought to kill it off rather than save it for no

18   legitimate purpose but rather to settle old scores at the expense of the Bank's depositors,

19   employees and customers as well as their families.

20                      **a.   The Indictment and Conviction**

21         The US Attorney issued an indictment against Montgomery and his criminal cronies for

22   their bad acts against the Bank.   The Superseding Indictment (Aug. 14, 2002), indicts

23   Montgomery, the former Bank president and others for crimes including, among others, depriving

24   the Bank of Honest Services, Wire Fraud, and Money Laundering.  The Superseding Indictment

25   states: Montgomery and Aldan "concealed" all relevant transactions from the Bank's Board of

26   Directors and engaged in a "fraudulent" scheme to strip the bank of money and did so by

27   depriving the Bank of the "honest services" of the Bank president.  RJN Ex. 15

28

7

On June 30, 2003, a federal jury convicted Montgomery, Aldan and their co-conspirators on almost all counts. The 9th Circuit summarized the convictions as follows:

> Bert Montgomery was involved in a complex fraud scheme that led to the temporary closing of the Bank of Saipan and millions of dollars of loss. Montgomery, along with his business partner DuSean Berkich, endeavored to purchase a controlling interest in the Bank of Saipan. To accomplish this, they convinced Tomas Aldan, the CEO and Chairman of the Board of the Bank of Saipan, to serve as their "inside man" by promising him lucrative benefits and kickbacks. The three then attempted, by various fraudulent means, to acquire Bank of Saipan stock. Montgomery's fraud resulted in a loss of over five million dollars to the Bank of Saipan. As a result of the fraud, the Bank of Saipan was temporarily closed and was placed in receivership, a scandal that was highly publicized in Saipan. As Montgomery acknowledges in his brief, the actions of Montgomery and his co-conspirators are alleged to have disrupted "banking and business operations in the Commonwealth ... and the region in general."

*U.S. v. Montgomery*, 462 F.3d 1067 (9th Cir. 2006)(remanding for sentencing).

This Court found after remand:

> Th[e] defendant's primary role in the intentional fraud perpetrated on the Bank of Saipan resulted in direct injury to thousands of bank depositors, including the Commonwealth government, all of whom lost access to their savings. The indirect injury caused to the families of individual account holders and to the creditors of business account holders was significant and still reverberates in the community as the Bank has continued in receivership since May of 2002. The cold, calculating nature of the crime and the financial losses and inconvenience caused to so many victims warranted the sentence imposed.

Ex. 16 (Order Denying Motion of Defendant Montgomery to Be Re-Sentenced filed Jan. 5, 2007).

### b. The Bank's Rehabilitation Plan

In February 2003, the Superior Court approved the Bank's rehabilitation plan which directed that the Bank aggressively pursue claims against "wrongdoers" of the Bank. RJN Exs. 22 and 23 (Rehabilitation Plan at 9, approved by CNMI Court Feb. 13, 2003). The Bank ultimately determined that Fennell was one such wrongdoer. *Camacho* at ¶ 3.

### c. The CNMI Supreme Court Receivership Opinions: Fennell not Entitled to Immunity/Indemnity without Plenary Hearing

In two decisions issued by the Supreme Court in the receivership proceeding (a

proceeding that is now closed), the Supreme Court established that Fennell was not entitled to immunity *per se*, and that instead an initial threshold determination should be made in this civil lawsuit as to whether the receiver is entitled to immunity. *See Bank of Saipan, Inc. v. Atalig,* 2005 MP 3, at ¶ 10 ("Fennell and the Secretary of Commerce have cited no legal authority in which any court granted immunity prior to a suit filed against the receiver. Whether or not a receiver is entitled to immunity is 'to be resolved at a plenary hearing with sworn witnesses and documentary proof, so that the question of law as to whether the Receiver breached any duty owing a fiduciary may be fairly resolved.'"); *Bank of Saipan Inc. v. Camacho* Appeal No. 05-0025-GA, (May 24, 2006 Order Vacating the October 14 "Spending Cap Order" at ¶¶ 13, 14)(Per Curiam) ("Upon a plenary hearing, a determination can be made in the Fennell Lawsuit regarding the Fennell Defendants', immunity if any."; *"AS THIS COURT HAS PREVIOUSLY RULED, INDEMNIFICATION SHOULD ONLY TAKE PLACE AFTER THE FENNELL COURT HOLDS A PLENARY HEARING ON THE MATTER."*)(footnote omitted).

Thus, consistent with the Supreme Court's rulings, the Bank has a pending motion in the Superior Court to set a fact-finding hearing for this threshold immunity issue and asks that the scheduling of this hearing and the scheduling of pre-hearing discovery be among the first acts the Superior Court takes to place the case on schedule. (*See* RJN Exs. 5-8, Plaintiff's Threshold Motion on Issue of Immunity (filed 9/26/05)). Mr. Fennell's complaint fails to mention these operative holdings that are central to the issues in this action.

### d. Fennell's Lack of Candor in Complaint: Vacated Atalig Findings

Mr. Fennell also misrepresents the record to this Court. His efforts to malign the Bank continue without regard to his obligations of candor. Fennell alleges that Ex. E (May 28, 2002 Report of Acting Secretary of Commerce) "reflect[s] a long history of patent neglect, self-dealing and misappropriations by the Bank's Board of Directors and Major Shareholders that hugely impacted the Bank's financial stability to the substantial detriment to the Bank's depositors and the Bank's minority shareholders" supposedly "recognizing the 'significant' potential civil and criminal liability of the Bank's Board of Directors." Cmpt ¶ 41, Ex. E. This determination was

1   *vacated* by the CNMI Superior Court.  Order re: Petition for Judicial Review (Apr. 6, 2005), *Bank*

2   *of Saipan, Inc. v. Atalig,* Civil Action No. 02-0376E.  RJN Ex. 23

3         The fact that Fennell did not mention the matter was vacated is unsurprising given that it

4   completely undermines the foundation of his Complaint.  The Superior Court held:

5       **The Court sees no justification or rationale for the May Letter.**  The May

6       Letter was issued subsequent to findings that had already met statutory
    requirements to invoke the Receivership, and the Bank had already been placed in

7       Receivership.  The May Letter served little purpose **other than providing**
    **superfluous and derogatory statements which    were unnecessary** and made

8       without the Bank having the opportunity to reply to the allegations, as required by

9       1 CMC § 9108, 4 CMC § 6110 and 6111.  As such, the Letter could not be issued
    absent a hearing and proper notice in which the Bank had an opportunity to

10      contest the findings.  The Bank was never given that opportunity.

11      The Superior Court's decision is now final.

12            e.  *Bank of Saipan v. Montgomery* **04-0088C (Summary Judgment)**

13      On November 27, 2007, the CNMI Superior Court granted judgment in favor of

14  the Bank against Montgomery.  (RJN Ex. 24).  The CNMI Superior Court found, among other

15  factual findings, that:

16        •  "According to [Governor] Fitial, the Bank was not aware of the truth and

17          reasonably relied on Aldan's attestment of Montgomery's credibility.  The Bank
    suffered substantial losses to its assets and reputation, and ultimately went into

18          receivership.  Accordingly, summary judgment . . . on Plaintiff's claim for
    fraudulent misrepresentation is GRANTED."  Order at 13.[1]

19

20        •  "The information Montgomery concealed was material to the Bank, because, had it
    been disclosed, the Bank would not have endorsed the sale of the majority of its

21          shares to Montgomery, issued Montgomery a loan to buy these shares, or issued
    the loan to Sweven."  (Granting summary judgment on Bank's claim for fraudulent

22          concealment).  *Id.* at 13 -14.

23        •  "Without Aldan's active assistance, Montgomery's plan to defraud the Bank could

24          not have succeeded.  As a result of Aldan's breach of fiduciary duty, and
    Montgomery's aid and encouragement thereof, the Bank sustained substantial

25          damages."  (Granting summary judgment against Montgomery on aiding and
    abetting Aldan's breach of fiduciary duty).  *Id.* at 18.

26

27

28      [1] Contrast this finding with Fennell's threat against Governor Fitial if Fennell is forced to bring this action.  AG
    Motion to Dismiss Ex. 5 (Seimer email).

1

              **f.   *Termination of Receivership***

2          In August 2006, the Court ended the receivership of the Bank, despite Fennell's objection.

3  RJN Ex. 25.  The successor Receiver, Antonio S. Muna, concluded in his Final Accounting dated

4  October 12, 2005: "The Bank as managed by its BOD, its CEO – Mr. Jon Bargfrede, and its staff

5  along with the advice and counsel of a team of Legal and Financial experts have **earned** it.

6  Congratulations are in order to the Shareholders, BOD, Management, staff and advisors.  A job

7  well done."  RJN Ex. 26 at 4.  Further, the Receiver reported:  "As advised by the Supreme Court

8  decision dated 3/07/05 vacating the Court's order exonerating Mr. Fennell, Mr. Fennell (as would

9  I if subject to a lawsuit for alleged misconduct while Receiver) would best be served to seek a

10  plenary hearing to determine if he is entitled to immunity at the soonest possible time.   The

11  Secretary's action to hold the Receivership hostage will not get Mr. Fennell immunity.   Mr.

12  Fennell should be held personally accountable for costs incurred in delaying the scheduling of a

13  plenary hearing." *Id* at 5.[2]

14          For years, Mr. Fennell and his well-financed legal team spent their efforts to outrun the

15  plenary hearing required by the CNMI Supreme Court mandate.  However, the plenary hearing is

16  about to be set by Superior Court, Arthur Barcinas, Judge Pro Tem.   Mr. Fennell knows this and

17  thus has brought this action to evade this determination by and getting this Court to Order the

18  CNMI Government to pay for his private defense and to force his removal as a defendant in the

19  Superior Court case by operation of law.

20          Intervention is warranted here for the Bank to seek dismissal or in the alternative, a stay.

21  **IV.   ARGUMENT**

22
23      **1.   RULE 24 (A)(2) PERMITS THE BANK TO INTERVENE IN THIS ACTION
            AS A MATTER OF RIGHT**

24  Rule 24 of the Rules of Civil Procedure states, in pertinent part:

25      **Rule 24.  Intervention.  (a)  Intervention of Right**. Upon  timely  application

26
   [2] Notwithstanding the CNMI Supreme Court's rulings and mandate, Fennell's lawyers have provisionally
27  "indemnified" themselves by securing payment from the Bank's insurance company for his extensive efforts to evade
   the plenary hearing.  Such self-help by Fennell and his current attorneys, of course has wanted the coverage that
28  should be available to Mr. Muna should he be sued for his term as Receiver and secure approval through a plenary
   hearing for immunity and indemnity.

anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties . . . .

To intervene as a matter of right under Rule 24(a)(2), the Bank must establish (1) that it has made a timely motion, (2) it has an interest relating to the property or transaction that is the subject matter of the action, (3) an impairment of that interest may occur without intervention, and (4) that the Bank's interest is not adequately represented by the other parties to the litigation. The rule is construed broadly in favor of applicants for intervention. *Ghazarian v. Wheeler*, 177 F.R.D. 482 (C.D. Cal 1997) (*citing Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993)).

### A.    The Bank's Motion is Timely

In determining whether the applicant has made a timely motion to intervene, courts consider the following three factors: (1) the stage of the proceeding at which the applicant seeks to intervene; (2) the prejudice to the other parties; and (3) the reason for and length of delay in filing the motion to intervene. *United States v. State of Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). In this case, no significant motions have been determined or pleadings filed and discovery has yet to proceed. *See, South Yuba River Citizens League and Friends of the River v. Nat'l Marine Fisheries Serv.*, 2007 WL 3034887, *12 (E.D. Cal. 2007) ("[e]ven when a case in still in the pretrial stage, if significant substantive rulings have been made, intervention may not be appropriate"). Thus, this action is still in the pleading stage and the rights of the parties have not been determined.

Accordingly, the parties will suffer no prejudice as a result of The Bank's intervention in this matter. No substantive rulings have been made by the court nor has this case proceeded beyond initial disclosures, Fennell will not be prejudiced by the Bank's intervention. Mere delay in the proceedings will not suffice to show prejudice. *Natural Resources Defense Council v. Gutierrez*, 2007 U.S. Dist. LEXIS 40895 (N.D. Cal. 2007)). *Id.* at 13.

### B.    Interest Relating to the Subject of this Action

Whether an applicant for intervention as of right has a "significantly protectable interest,"

12

sufficient to support the application is a "practical, threshold inquiry." *Greene* at 976; *Northwest Forest Resource v. Glickman*, 82 F.3d at 837 (9th Cir. 1996).  No specific legal or equitable interest need be established.  However, the interest asserted must be (1) protectable under some law, and (2) there must be a relationship between the protected interest and the claims at issue. *Northwest Forest Resource* at 837; *Sierra Club v. U.S. Environmental Protection Agency*, 995 F.2d 1478, 1484 (9th Cir. 1993).

Here, the Bank's interest is in ensuring it can assert its claims against Fennell for harm caused to the Bank.  Fennell's efforts to seek advantage in the Bank's Superior Court proceeding by seeking PELDIA-type determinations in the District Court rather than pursuant to a plenary hearing required by the Supreme Court (and ultimately seeking to substitute the Government into the Superior Court action through a favorable determination here) will cause prejudice to the Bank.

Therefore, the Bank has a "sufficiently protectable interest" and should be allowed to intervene.

### C.    The Bank's Interest May be Impaired

In deciding whether a party's ability to protect its interest would be impaired if intervention is denied, the Court is guided by practical considerations.  *United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986).

> This provision contemplates that the person having the right of intervention should have a legal interest in the property in the custody of the court, and it has been stated that the law is well settled that to authorize an intervention under this provision the intervenor must have an interest in the subject matter of the litigation of such a nature that he will gain or lose by the direct legal operation of the judgment. An application to intervene under this provision will be denied if applicant has no interest in the subject matter of the litigation, or if applicant does not establish that he will be adversely affected by the disposition of the property.

*Waters v. Jolly,* 582 So.2d 1048, 1057 (Ala. 1991) (*citing* 35A C.J.S. *Federal Civil Procedure* § 135 (1960)) (emphasis added) (italic in original).  The Attorney General is not directly aligned with the Bank's interest.  The Attorney General's interests are in resolving Mr. Fennell's constitutional allegations in their favor.  The Bank's interest is to ensure that Mr. Fennell does not

13

1   impede or undermine its action in the Superior Court, including claims preserving its claims

2   against Mr. Fennell (and not against the Government through a substitution under the law Mr.

3   Fennell has asserted). Should the court determine that any part of Mr. Fennell's allegations are

4   true, the Bank's lawsuit would be impaired as the allegations are at issue in the local court

5   lawsuit, which has been pending for almost 5 years. The Bank has satisfied the requirement that

6   its interest may be impaired if it is denied intervention here.

### D.   The Bank's Interest is not Adequately Represented by the Existing Parties

9   The Supreme Court of the United States has held that an applicant seeking to intervene

10  need only show that the representation of his interest *may be* inadequate. *Trbovich v. United*

11  *Mine Workers*, 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 636 n.10 (1972). The burden of making

12  such a showing is *minimal*. *Id.* In the instant action, the Bank and the AG's interest may be

13  aligned but they are distinct as noted above.

14  Having met the requirements of Rule 24(a)(2), The Bank should be permitted to intervene

15  as a matter of right.

### 2.   <u>RULE 24 (b)(2) PERMITS THE BANK TO INTERVENE</u>

17  Rule 24 (b)(2) states in pertinent part:

18  (b) **Permissive Intervention**. Upon timely application anyone may be permitted
    to intervene in an action: . . . (2) when an applicant's claim or defense and the
19  main action have a question of law or fact in common. . . . In exercising its
    discretion the court shall consider whether the intervention will unduly delay or
20  prejudice the adjudication of the rights of the original parties . . . .

22  Permission to intervene under this rule should properly be granted when: "the applicant's

23  claim or defense and the main action have a question of law or a question of fact in common, the

24  motion to intervene is timely, and the court has independent grounds for jurisdiction." *South Yuba*

25  *River Citizens League and Friends of the River*, 2007 WL 3034887 at *15 (*citing Beckman*

26  *Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)). "Whether there is a common

27  question of law or fact is liberally construed by the courts." *South Yuba,* at *15 (*citing Kootenai*

28  *Tribe of Idaho v. Veneman,* 313 F.3d 1094, 1111 (9th Cir. 2002)).

14

1       The Bank meets all the requirements for permissive intervention.  First, The Bank's

2   claims against Fennell in the Superior Court case involve the same central questions of law and

3   fact as are those alleged by plaintiff in this action.  Second, as discussed *supra*, The Bank's

4   motion is timely.  Third, as stated *supra*, the Bank has a legally protectable interest at issue here.

5   **V.      CONCLUSION**

6       Based on the foregoing, the Bank has met the requirements to intervene as a matter of

7   right in the instant action.  Accordingly, The Bank's motion should be granted.  In the alternative,

8   The Bank also satisfies the requirements for permissive intervention and should be permitted to

9   intervene.  Finally, pursuant to Rule 24 (c), it has filed a proposed motion to dismiss, or in the

10  alternative, to stay these proceedings concurrently herewith.

11      Respectfully submitted this 28th day of August, 2009.

12                                      **LAW OFFICE OF WILLIAM FITZGERALD**
13                                      **CALVO & CLARK, LLP**
                                        *Attorneys for Bank of Saipan, Inc,*
14                                      *Defendant Intervenors*

15

16                          By:     _____/s/_____
17                                  William M. Fitzgerald

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT A

IN THE
## SUPREME COURT
OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

### BANK OF SAIPAN, INC.,
**Appellant,**

v.

### ACTING SECRETARY OF COMMERCE FERMIN M. ATALIG,
**in his official capacity as the COMMONWEALTH OF THE NORTHERN
MARIANA ISLANDS DIRECTOR OF BANKING,
pursuant to 4 CMC § 6105(a),**
Appellee,

and

### RANDALL T. FENNELL, in his official capacity as
### FORMER RECEIVER FOR THE BANK OF SAIPAN,
**Real Party in Interest.**

SUPREME COURT APPEAL NOS. 02-029-GA & 03-008-GA
SUPERIOR COURT CIVIL ACTION NO. 02-0268B

### OPINION

Cite as: *Bank of Saipan, Inc. v. Atalig*, 2005 MP 3

Saipan, Northern Mariana Islands
Submitted November 12, 2003
Decided March 7, 2005

**FOR PUBLICATION**

Counsel for Bank of Saipan:

Mair, Mair, Spade & Thompson
Suite 4-B, Horiguchi Building, Garapan
P.O. Box 7917, S.V.R.B.
Saipan, MP 96950

Calvo and Clark, LLP
HSBC Building
Mariana Heights Business Park
PMB 951
P.O. Box 10001
Saipan, MP 96950

Counsel for Randall T. Fennell:

Richard W. Pierce
Law Office of Richard W. Pierce
2nd Floor, Alexander Building, San Jose
P.O. Box 503514
Saipan, MP 96950

Counsel for Sec. of Comm. Fermin M. Atalig:

Benjamin I. Sachs, Assistant Attorney
General
James D. Livingstone, Assistant
Attorney General
Office of the Attorney General
2nd Floor, Juan A. Sablan Memorial
Building, Capitol Hill
Caller Box 10007
Saipan, MP 96950

BEFORE:   VIRGINIA SABLAN ONERHEIM, MICHAEL J. BORDALLO, and JESUS C. BORJA, Justices *Pro Tempore*

VIRGINIA SABLAN ONERHEIM, Justice *Pro Tempore*:

¶ 1         Appellant Bank of Saipan, Inc. ("Bank") seeks to vacate the trial court's orders granting immunity and indemnification to the temporary receiver for the Bank of Saipan, Randall T. Fennell ("Fennell"). This Court has jurisdiction over judgments and orders of the trial court pursuant to Article IV, Section 3 of the Northern Mariana Islands Constitution and Title 1 Section 3102(a) of the Commonwealth Code.[1] After careful consideration this Court finds that these orders of immunity and indemnification were prematurely issued and are hereby REVERSED.

## I.

¶ 2         The issues presented before this Court are: (1) whether the trial court erred when it issued its September 27, 2002 and December 31, 2002 orders exonerating Fennell and conferring immunity and indemnification upon him where there was no live suit or controversy against Fennell and (2) whether the extent of the immunity granted was excessive. The standard of review for whether the trial court erred in granting immunity is *de novo*.[2]

## II.

¶ 3         On April 30, 2002, the Acting Secretary of Commerce Fermin M. Atalig ("Secretary of Commerce"), in his official capacity as the CNMI Director of Banking, filed an *Ex Parte Petition for Appointment of Receiver for Bank of Saipan Under 4 CMC § 6106(f)* ("Petition") in the trial court. On the same day, the trial court appointed Fennell as temporary receiver for the

---

[1] Appellant Bank of Saipan asserted that the "collateral order" doctrine may alternatively be applied. Because these orders are final and appealable, the application of the "collateral order" doctrine is unnecessary. Furthermore, Fennell and the Secretary of Commerce conceded this point. "The Order discharging and exonerating Mr. Fennell was final and appealable." *Joint Opposition Brief of Appellees Acting Secretary of Commerce Fermin M. Atalig and Randall T. Fennell* at 1.

[2] *Rayphand v. Tenorio*, 2003 MP 12 ¶¶ 2-3.

Bank with restricted powers for a "limited duration not to exceed thirty days."[3]  On May 10, 2002, the trial court: (1) extended the duration of Fennell's term "until such time as [the Secretary of Commerce] or the Receiver moves the Court to substitute a new receiver or to terminate the receivership" and (2) expanding his powers beyond those initially granted by the trial court's April 30, 2002 order.[4]

¶ 4        Fennell served as receiver for the Bank of Saipan from April 30, 2002 to September 27, 2002. The Bank alleged that during the course of Fennell's term as receiver, Fennell and the trial court engaged in improper *ex parte* communications.  In addition, the Bank alleged that Fennell was a conflicted receiver due to hostility lingering from previous litigation in which Fennell represented a client having adversary interests to those of the Bank.   The Bank filed *Respondent's Emergency Motion to Replace Temporary Receiver* on May 17, 2002, in the trial court.[5]  The CNMI Government separately sought Fennell's replacement and through the office of the Attorney General, it filed a *Motion for Substitution of Receiver* on May 24, 2002 in the trial court. The trial court eventually replaced Fennell as receiver with Antonio S. Muna on September 27, 2002.[6]

---

[3] *Order Granting Petition for Appointment of Receiver*, issued on April 30, 2002.

[4] *Clarification of Order Granting Petition for Appointment of Receiver*, issued on May 10, 2002.

[5] In addition, proceedings on similar issues were simultaneously ongoing in this Court. On May 28, 2002, the Bank filed a *Petition for Writ of Mandamus* in this Court to remove Fennell from the receivership and appoint a new receiver, reassign the case to another judge, and vacate certain orders issued by the trial court in this case. After oral arguments on this matter, the parties negotiated a stay and submitted a *Stipulation and Order for Stay of Proceeding* on November 7, 2002. Pursuant to this Stipulation, this Court ordered a stay of the proceedings on November 13, 2002. A status conference was held on August 12, 2003, in which the parties requested leave to file additional briefing in this matter. Such leave was granted and on August 26, 2003, the Court lifted the stay. The writ was denied by this Court on August 12, 2004 due to changed circumstances after this stay by the parties ended. *Bank of Saipan v. Superior Court*, 2004 MP 15. In particular, a new receiver was in place, a new judge was assigned to the case, and no *ex parte* communications were taking place in the trial court. *Id.*

[6] *Order Appointing Antonio S. Muna as Receiver*, issued September 27, 2002.

¶ 5        While Fennell was the receiver, he filed a request to exonerate himself on August 9,

2002, in the trial court.[7]  On September 24, 2002, the trial court held a hearing on Fennell's

request for exoneration. On September 27, 2002, the trial court issued an *Order Granting the*

*Receiver's Request for Exoneration* ("Exoneration Order"), which gave Fennell full judicial

immunity from suits arising out of Fennell's duties as Receiver.  In addition, the Exoneration

Order provided that the Bank must indemnify Fennell in any such suit.  In that Exoneration

Order, the court made the following findings:

> 1.     On April 30, 2002, this court appointed Randall Fennell ("Mr. Fennell")
> as Temporary Receiver for the Bank.
>
> 2.     Upon appointment, Mr. Fennell, acting as an officer of this court and in
> full accordance with this court's orders, performed all the necessary and required
> duties of Receiver.  At all times during his tenure as Receiver, Mr. Fennell acted
> in the best interests of the Bank and its depositors.  Mr. Fennell provided reports
> this court [sic] as to the Bank's condition.
>
>        The court finds that Mr. Fennell did an exceptionally good job in the face
> of an exceptionally difficult undertaking. The court also finds that Mr. Fennell's
> actions in preserving assets and protecting the depositors of the Bank of Saipan
> were done in a professional and exemplary manner.
>
> 3.     In releasing Mr. Fennell from this court's service, the court exonerates and
> confers full judicial immunity upon Mr. Fennell.  "As court-appointed officers,
> receivers enjoy protections when following courts' orders . . . 'Court appointed
> receivers act as arms of the court and are entitled to share the appointing judge's
> absolute immunity provided that the challenged actions are taken in good faith
> and within the scope of the authority granted to the receiver." *INF Enter v.*
> *Donnellon*, 729 N.E.2d 1221, 1222 (Ohio Ct. App. 1999) (quoting Davis v.
> Bayless, 70 F.3d 367, 373 (5th Cir. 1995)); *see also Hervey v. Dyer*, 972 P.2d 42,
> 45 (Okla. Civ. App. 1998) (stating that it is well recognized that a receiver
> appointed by and acting on behalf of the court shares the court's immunity from
> liability). It is further ordered that the Bank and the Receivership shall indemnify
> Mr. Fennell for any and all claims arising from Mr. Fennell's actions as Receiver.
>
> 4.     Mr. Fennell is ordered to submit his billings and invoices for approval and

---

[7] *Memorandum in Support of Request to Exonerate Receiver*, filed on August 9, 2002.  The Bank filed a
*Memorandum in Opposition to Request to Exonerate Receiver* on August 23, 2002. Fennell filed *Receiver's Reply*
*to Opposition to Exoneration for Receiver* on August 30, 2002.

payment.[8]

These are all of the findings of the trial court in the Exoneration Order.

¶ 6        The trial court later amended this order on December 31, 2002, with an *Order Granting Randall T. Fennell's Final Billings and Request for Clarification on Order of Exoneration* ("Clarification Order") stating that "[i]t is further ordered that the Bank and the Receivership shall defend and indemnify Mr. Fennell for any and all claims arising from Mr. Fennell's actions as Receiver."[9]  No claims were filed against Fennell when these orders were entered.  The Bank now appeals the Exoneration Order and Clarification Order while the Secretary of Commerce and Fennell argue that the orders should be upheld.

### III.

¶ 7        The Bank argues that immunity conferred upon receivers is qualified and not absolute. Further, the Bank maintains that receivers must act in good faith in order to be immune and this immunity is determined by the court in which the receiver is sued, not the receivership court. The Bank contends that the trial court's grant of immunity to Fennell was unprecedented as it was conferred prior to any live controversy before the court in which Fennell's actions were challenged. The Bank goes on to describe allegations of Fennell's misconduct as receiver. Finally, the Bank argues that its obligation to defend and indemnify Fennell against "any and all claims" is overbroad.

¶ 8        Fennell and the Secretary of Commerce[10] counter by arguing that a receiver's discharge cuts the receiver off from future liability.  They conclude that since the Bank had a chance to sue

---

[8] *Order Granting the Receiver's Request for Exoneration* ("Exoneration Order"), issued September 27, 2002.

[9] *Order Granting Randall T. Fennell's Final Billings and Request for Clarification on Order of Exoneration*, issued December 31, 2002.

[10] Fennell and the Secretary of Commerce filed a joint opposition brief.

Fennell before his discharge and did not, the Bank has waived its right to complain about Fennell's conduct after the trial court has discharged and exonerated him.  They also assert that the receivership may still be sued, albeit with a different receiver.[11]  They challenge the Bank's allegations of misconduct by him as receiver.  Lastly, Fennell and the Secretary of Commerce maintain that the Bank's duty to defend and indemnify Fennell is fair.

¶ 9        It is widely supported that receivers are entitled to immunity.  "[R]eceivers are court officers who share the immunity awarded to judges."[12]  That immunity, however, is limited – even judges are not entitled to absolute immunity for their actions.[13]  Furthermore, when judges are sued they can then move for dismissal based on immunity.  Here, however, Fennell did not move for dismissal based on immunity because there was no suit filed against Fennell.

¶ 10       Fennell and the Secretary of Commerce have cited no legal authority in which any court granted immunity prior to a suit filed against the receiver.  Whether or not a receiver is entitled to immunity is "to be resolved at a plenary hearing with sworn witnesses and documentary proof, so that the question of law as to whether the Receiver breached any duty owing a fiduciary may be fairly resolved."[14]  Perhaps Fennell is entitled to some sort of immunity should a subsequent suit be filed against him, but that is to be determined by analysis of the facts before the court hearing that suit.

---

[11] "The official liability remains with the receivership, but it now lies with [the new receiver], who would be sued, officially, while the property remains in the custody of the trial court. *See McNulta v. Lochridge*, 141 US 327, 332, 12 S.Ct. 11, 13, 35 L.Ed. 796 (1891)." *Joint Opposition Brief of Appellees Acting Secretary of Commerce Fermin M. Atalig and Randall T. Fennell* at 20.

[12] *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1303 (9th Cir. 1989) (*citing Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 2 (1st Cir.1976)); *see also Property Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 602 (11th Cir.1985); *T & W Inv. Co., Inc. v. Kurtz*, 588 F.2d 801, 802 (10th Cir.1978); *Bradford Audio Corp. v. Pious*, 392 F.2d 67 (2nd Cir.1968).

[13] "Judges are afforded absolute immunity when they (1) perform a normal judicial function; unless they are (2) acting in the clear absence of all jurisdiction." *Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995) (*citing Stump v. Sparkman*, 435 U.S. 349, 357-60, 98 S. Ct. 1099, 1105-06, 55 L. Ed. 2d 331, 339 (1978)).

[14] *149 Clinton Ave. N., Inc. v. Grassi*, 382 N.Y.S.2d 185, 188 (N.Y. App. Div. 1976).

¶ 11        The receivership may still be sued even though there is a new receiver, but only for suits against the receiver in his *official* capacity.  Suits may still be forthcoming against Fennell in his *personal* capacity.  "If the receiver exceeds the authority granted by the court or fails to use ordinary care, the general rule is that he or she may be sued in a *personal* capacity."[15]  Immunity is conditioned on the requirements that "the challenged actions are taken in good faith and within the scope of the authority granted to the receiver."[16]  Therefore, receivers may generally be entitled to qualified immunity but they may be held personally liable if they act in bad faith or outside the scope of authority granted by the court.[17]

¶ 12        It was impossible to determine if Fennell met these requirements, however, because there was no case or controversy against Fennell before the trial court.  "The ripeness doctrine prevents courts from deciding theoretical or abstract questions that do not yet have a concrete impact on the parties."[18]  With no live controversy before the trial court, the court could not determine whether "the challenged actions were taken in good faith."

¶ 13        This pre-suit grant of immunity is without statutory or caselaw support in the Commonwealth or in any other jurisdiction.  None of the receivership cases cited by Fennell and the Secretary of Commerce involved immunity conferred in advance. There is no precedent for a trial court ordering such a sweeping grant of immunity before any suit has been initiated before trial.

¶ 14        In addition to the premature confirmation of immunity to Fennell, the obligation of the

---

[15] *INF Ent., Inc. v. Donnellon*, 729 N.E.2d 1221, 1222 (Ohio Ct. App. 1999) (emphasis added).

[16] *Davis*, 70 F.3d at 373 (citations omitted).

[17] *See* 16 FLETCHER CYCLOPEDIA OF PRIVATE CORP. §§ 7864, *et seq*. (2004); 75 C.J.S. *Receivers* § 192 (2002); 65 AM. JUR. 2D *Receivers* § 295 (2001).

[18] *Assiniboine and Sioux Tribes of Fort Peck Indian Reservation v. Bd. of Oil and Gas Conservation of Montana*, 792 F.2d 782, 787-88 (9th Cir.1986) (citations omitted).

Bank to defend and indemnify Fennell for "any and all claims" is patently overbroad. It is appropriate for a court to order indemnification and the obligation to defend for "all cases arising out of acts done or omitted by receivers *honestly and in good faith* in the exercise of the authority derived from their appointment and in an honest endeavor to discharge their duties as officers of the courts."[19]  Here, however, the Exoneration Order and Clarification Order made no mention of the requirement of honesty or good faith. Instead, these Orders simply provide that Fennell is indemnified for "any and all claims," without any prerequisite at all. Consequently, the grant of indemnity here by the trial court is likely too broad and over-reaching. Because the Court finds that the Exoneration and Clarification Orders were prematurely issued, however, the issue of whether the immunity granted was excessive is moot and need not be ruled on by the Court.

## IV.

¶ 15        This Court finds that the trial court's Exoneration Order and Clarification Order granting immunity and indemnification to Fennell are premature. As such, these rulings of the trial court are hereby REVERSED.

        SO ORDERED this 7th day of March, 2005.

                        /s/_____
                            VIRGINIA SABLAN ONERHEIM
                                Justice *Pro Tempore*


        /s/_____           /s/_____
            MICHAEL J. BORDALLO                    JESUS C. BORJA
            Justice *Pro Tempore*                  Justice *Pro Tempore*

_____

[19] *Mo. & K. I. Ry. Co. v. Edson*, 224 F. 79, 83 (8th Cir. 1915) (emphasis added).



FILED
CNMI
SUPREME COURT
DATE: 3-10-05  1:10
BY: _____
CLERK OF COURT

IN THE
SUPREME COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

---

BANK OF SAIPAN, INC.,

*Petitioner-Appellant,*

v.

ACTING SECRETARY OF COMMERCE FERMIN M. ATALIG,
in his official capacity as the COMMONWEALTH OF THE NORTHERN
MARIANA ISLANDS DIRECTOR OF BANKING,
pursuant to 4 CMC § 6105(a),

*Respondent-Appellee,*

and

RANDALL T. FENNELL, in his official capacity as
FORMER RECEIVER FOR THE BANK OF SAIPAN,

*2005 MP 3*

*Real Party in Interest.*

---

SUPREME COURT APPEAL NOS. 02-0029-GA & 03-0008-GA
SUPERIOR COURT CIVIL ACTION NO. 02-0268B

---

ERRATA

CNMI SUPREME COURT
O R I G I N A L
Update
Docket
Scan

¶1        On March 7, 2005, this Court issued its Opinion in the above captioned appeal. It

incorrectly listed the citation as *Bank of Saipan, Inc. v. Atalig*, 2005 MP 2.

¶2        The correct citation is *Bank of Saipan, Inc. v. Atalig*, 2005 MP 3.

SO ORDERED this ___10th___ day of March 2005.


JESUS C. BORJA, *Justice Pro Tempore*

# ATTACHMENT B

APPEAL No. 05-0025-GA



IN THE

SUPREME COURT

OF THE

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

---

THE BANK OF SAIPAN, INC.,
*Appellant-Defendant,*

v.

ACTING SECRETARY OF COMMERCE DANIEL L. CAMACHO,
in his official capacity as the
CNMI DIRECTOR OF BANKING, under 4 CMC § 6105(a),
*Appellee-Plaintiff.*

---

**Supreme Court No. 05-0025-GA**
**Superior Court Case No. 02-0268B**

---

**ORDER VACATING THE OCTOBER 14TH**
**"SPENDING CAP ORDER"**

CNMI SUPREME COURT
ORIGINAL

| | |
|---|---|
| Update | |
| Docket | |
| Scan | |

BEFORE: MIGUEL S. DEMAPAN, *Chief Justice;* ALEXANDRO C. CASTRO, *Associate Justice;* JOHN A. MANGLONA, *Associate Justice.*

*PER CURIAM:*

¶ 1        This case is an appeal from an order in a receivership case,' *Acting Secretary of Commerce Daniel L. Camacho v. Bank of Saipan, Inc.,* Civil Action No. 02-0268B (the lawsuit will be referred to as the "Receivership Lawsuit" while the court will be referred to as the "Receivership Court"). The Receivership Court issued an order that required, among other things, the Bank to secure indemnification pledges in the amount of $2,000,000 in private property. Because there has been no plenary hearing, as mandated by this Court's *Atalig* decision, and it is unclear whether, and to what extent, the Fennell Defendants enjoy immunity, the Receivership Court abused its discretion when it ordered the Bank to procure *$2,000,000* worth of private property indemnification.

¶2        The Bank, and more importantly its depositors, have had to weather a legal typhoon that consisted of two receivers, possible liquidation, rehabilitation, and protracted and prodigious litigation. When placed into receivership, the Receivership Court appointed Randall T. Fennell the receiver for the Bank. For various reasons, the Receivership Court removed Fennell and replaced him with Mr. Antonio S. Muna. Subsequently, the Bank set off on a course of rehabilitation.

---

[1]        The groups involved in the instant appeal, are the Bank of Saipan (the "Bank"), its directors (the "Directors"), former receiver Randall T. Fennell (sometimes hereinafter referred to as "Fennell"), David Axelrod and the law firm of Schwabe, Williamson & Wyatt (hereinafter collectively referred to as the "Schwabe Firm") (Fennell and the Schwabe Firm will be collectively referred to as the "Fennell Defendants.") The ancillary lawsuit, *Bank of Saipan v. Randall T. Fennell, et al.,* Civil Action No. 04-*0449A* suit will be referred to as the "Fennell Lawsuit" or "Fennell Litigation" and its court as the "Fennell Court."

¶3          As with most receiverships, it is possible for the entity in receivership, in this case

the Bank, to pursue persons who wronged it.  At some point, the Bank directors identified

the Fennell Defendants as potential wrongdoers and decided to bring suit.  Any suit against

a former receiver, however, could prove potentially costly due to a receiver's qualified

immunity.

¶4          Originally, Fennell received blanket judicial immunity from a lower court for his

actions taken while receiver.  This Court held that such blanket immunity was improper.

> In addition to the premature confirmation of immunity to Fennell,
> the obligation of the Bank to defend and indemnify Fennell for
> 'any and all claims' is patently overbroad. It is appropriate for a
> court to order indemnification and the obligation to defend for 'all
> cases arising out of acts done or omitted by receivers *honestly* and
> in *goodfaith* in the exercise of the authority derived from their
> appointment and in an honest endeavor to discharge their duties
> as officers of the courts. Here, however, the Exoneration Order
> and Clarification Order made no mention of the requirement of
> honesty or good faith. Instead, these Orders simply provide that
> Fennell is indemnified for "any and all claims," without any
> prerequisite at all. Consequently, the grant of indemnity here by
> the trial court is likely too broad and over-reaching[2]

With its Atalig decision, this Court made it clear that Fennell could be entitled, as all

receivers are, to immunity and indemnification.  But, he is only so entitled after a plenary

hearing on the matter that determines if his acts were done honestly, in a good faith, and in

the exercise of the authority derived from his appointment.

¶5          Receiver Muna, while not vetoing the idea of a lawsuit against Fennell, had concerns

regarding the costs of a suit against Fennell.   Additionally, the Receivership Court had the

same concerns.[3] The Receivership Court issued an order on November 16 ("November 16"

---

[2]      *Bank of Saipan v. Atalig,* 2005 MP 02, ¶ 14 (2005).

[3]      See ER 307 ll. 1-3

Order") the purpose of which, both the Bank and the Fennell Defendants agree, was to control the costs of any suit against the Fennell Defendants. The Court ordered the Directors and Receiver Muna to :

> ...meet in the next 45 calendar days to discuss methods of limiting exposure. In conducting their negotiations, the [Directors] and Receiver should be aware that the Court will be reluctant to allow expenditure of Bank funds exceeding $200,000 total - including the costs of defending against counterclaims and paying damages on successful counterclaims. Should the Board and Receiver fail to agree, the Court will intervene after the 45-day period has elapsed and upon request.[4]

¶6        The ambiguity in this order coupled with animus that exists between the Bank and the Fennell Defendants produced a situation where it is simultaneously possible for: (1) the Bank, its directors, and Receiver Muna to agree upon sufficient cost controls without going before the Receivership Court; and (2) the Bank directors filing a lawsuit not sanctioned by the Receivership Court because it failed to follow the Receivership Court's November 16th Order.

¶7        On its face, the November 16" Order puts the onus on the Receivership Court to make sure the Bank complied rather than on the Bank itself. By its own terms, if the Bank and the Receiver agree, the Receivership Court did not have to intervene. Not surprisingly, the Bank and the Fennell Defendants have conflicting interpretations on the November 16th Order. Since the onus was on the Receivership Court and "the Court neither expressly authorized the lawsuit nor expressly denied permission to continue[]", it seems reasonable that the Receivership Court, the Bank and the Fennell Defendants could all be correct in their respective interpretations. Such confusion necessitated the order at issue in this appeal.

_____

¶8        Although the Bank's Directors and their lawyers arranged for some cost controls, the Receivership Court was not impressed with these efforts. Thus, the Receivership Court ordered that the Bank: (1) couldn't expend additional corporate funds to support the Fennell Litigation; (2) must, within forty-five days, submit a new cost control plan that met certain requirements; and (3) must submit indemnification agreements from individuals and/or corporations regarding expenses related to the Fennell Litigation. Additionally, the individuals or corporations that agreed to indemnification must pledge $2,000,000 in real or personal property in the event the costs came due (the "Spending Cap Order").[5] The Spending Cap Order is the only subject of the instant appeal.

## I.

¶9        We have jurisdiction to hear appeals from final judgments and orders from the superior court.[6] Absent the final order rule, a litigant must demonstrate that his appeal fits within an exception. The Bank failed to argue that the Spending Cap Order is a regular final order or that its appeal falls within a recognized exception to the final order doctrine. Since these issues were not argued and the **Bank** offered no support for any such arguments, we will not address these issues.[7] The **Bank,** however, argues that the Spending Cap Order amounts to an injunction, and is therefore **appealable.**[8] The Spending Cap Order requires the Bank to solicit a very large amount of private property for an indemnification that may or may not be necessary, and it requires this before the Bank may proceed with its suit. Without

---

[5]    *See Re: The Matter of The Bank of Saipan, No.* 02-0268; (Order Concerning the Court's Order of November 16, 2004, signed October 14, 2005).

[6]    N.M.I. Const., art. **IV, § 3.**

[7]    *See, e.g. Tyler v. Runyon, 70* F.3d 458, 464-65 (7th Cir. 1995) (deeming argument waived because litigant and attorney failed to cite case law or statutory authority).

[8]    *See Villanueva v. Tinian Shipping* & *Transp., Inc.,* 2005 *MP* 12, ¶ 6.

this security, the bank may not move forward with its lawsuit, and because such relief is clearly injunctive in nature, we have jurisdiction for this appeal.

¶10     The Bank contends that the standard of review in this case is *de novo*.[9] While we accept that the Spending Cap Order was injunctive in nature, it is an order in a receivership action. Therefore, the proper standard of review is abuse of discretion.[10]

## II.

¶11     A reading of the Spending Cap Order indicates that the Receivership Court was concerned with the costs that a lawsuit against the Fennell Defendants might impose on the Bank in two forms: (1) the cost of defending the **Bank,** the Board, and the current Receiver against counterclaims; and (2) the expense of Fennell's fees and costs because of his claim of qualified immunity. Cost controls placed on an entity in receivership are a necessary and legitimate measure for a receivership court to take.[11] Indemnification that holds a lawsuit hostage until satisfied is a more drastic remedy. Here, the Receivership Court ordered indemnification even though there is no determination as to the extent the Fennell Defendants enjoy immunity or what actions were taken in good faith.

¶12     Again, "[w]hether or not a receiver is entitled to immunity is to be resolved at a plenary hearing with sworn witnesses and documentary proof . . ."[12] There has been no determination of immunity in the Fennell Litigation because the Fennell Litigation has not progressed to that stage yet. Regardless of this fact, the Receivership Court has issued the

---

[9]     *See* Bank of Saipan's Opening Brief at *22*.

[10]     *See Commodity Futures Trading Comm'n. v. Topworth International, Ltd., 205* F.3d *1107, 115* **(9th Cir.** *1999).*

[11]     *See CLARK ON RECEIVERS,* § 583(a), p. *950.*

[12]     *Bank of Saipan v. Atalig, 2005 MP 02,* ¶ 10*(2005)*

Spending Cap Order which forces the Bank to secure a large amount of private property before it may proceed with the suit. Not only is the $2,000,000 amount cost prohibitive, shutting the Fennell Litigation down by requiring the deposit before a determination of the need for it violates *Atalig.*

¶13        Upon a plenary hearing,[13] a determination can be made in the Fennell Lawsuit regarding the Fennell Defendants' immunity, if any. With this determination, the Receivership Court can then make a decision about the amount of money required for indemnification, if any. All of this, however, assumes that the Receivership is even open at the time of the plenary hearing. That determination, however, is not for this Court.

¶14        While it may be necessary for the Receivership Court to issue a comprehensive order requiring indemnification, it is premature to order one before a plenary hearing on the matter. Cost controls, however, may, **and** can be, separate and apart from any indemnification order. Although the Spending Cap Order does not indemnify the Fennell Defendants per se it's requirements are onerous enough as to operate as a defacto indemnification of the Fennell Defendants. As this Court has previously ruled, indemnification should only take place after the Fennell Court holds a plenary hearing on the matter.

¶15        Further, it is unclear as to what costs the **Bank** would incur in a countersuit. Does the contingency fee agreement include fees incurred in a countersuit? The Fennell Defendants claim that it does not while the Bank claims that it does. There isn't a finding of fact in the Spending Cap Order either way. Without more information it is impossible to determine how much protection the depositors of the Bank need. At this stage, however, $2,000,000

---

[13]        While the Bank appears to be demanding a plenary hearing, the Commonwealth Rules of Civil Procedure allow for **a** resolution of these matters and the lower courts need no instructions on how to follow the procedural rules.

is a prohibitive amount and an abuse of discretion. Further, after reviewing the briefs in this case as well as the record, it becomes difficult to tell who the Spending Cap Order is designed to protect, the depositors of the Bank (and thereby the Bank itself) or the Fennell Defendants.

¶16    In its *amicus* brief, Fennell states that "in determining whether – and, if so, on what conditions – the company in receivership may bring a lawsuit, has nothing to do with whether Fennell is entitled to qualified immunity."[14] We agree with this proposition. Likewise, the Fennell Defendants have nothing whatsoever to do with whether – and, if so, on what conditions – the company in receivership may bring a lawsuit.[15] If the Receivership Court makes a determination that the depositors will be protected that is one thing, but the record and the *amicus* briefs seem to indicate that the Fennell Defendants are the ones being protected by the Spending Cap Order.

¶17    The **Bank** receivership exists for the benefit of the shareholders and depositors.[16] The Spending Cap Order coupled with Fennell's assertion that "[n]o one is more affected by the determination of these issues than Fennell" indicate that the Spending Cap Order isn't crafted to protect the depositors, but rather the Fennell Defendants. While a plenary hearing may indicate that the Fennell Defendants are entitled to protection, no such determination has yet been made. The Spending Cap Order seems crafted to protect the Fennell Defendants primarily and the depositors as an afterthought. Such an order is an abuse of discretion.

---

[14]    *See* Brief of Amicus Randall T. Fennell, p. 38.

[15]    This Court is mindful of the Fennell Defendants' arguments regarding the proper person to bring a suit in a receivership. Without commenting on the defense itself, the Court notes that it is entirely appropriate to raise this issue in the Fennell Court, but doubts the propriety of bringing it in the Receivership Court.

[16]    *See Valley View State Bank v. Owen*, 737 P.2d 35, 38 (Kan.1987).

¶18        The Fennell Defendants have pointed out that the Directors and not Receiver Muna
brought the Fennell Litigation.  They have every right to use this defense in the Fennell
Court, using it in the Receivership Court, however, is a different matter.  The Receivership
Court must protect the Bank's assets, but it must follow the edicts of this Court in *Atalig.*
While the Fennell Defendants are correct and the Bank has no "right" to demand the timing
of a plenary hearing, the Fennell Defendants have no "right" to request the Bank seek
$2,000,000 in indemnification before a plenary hearing on the matter.  Both the Bank and the
Fennell Defendants would do well to remember that the Receivership Court does not exist
to gain an advantage in the Fennell Litigation.

¶19        Although the instant appeal was from the Spending Cap Order, the Directors and their
attorneys have used the appeal to request all manner of remedies.  For example, the Bank
requests that this Court reassign the Receivership and Fennell Litigation, instruct the
Receivership Court on "void" or "vacated" orders, instruct the Fennell Court on the plenary
hearing, issue a show cause order to the Attorney General, and terminate the receivership.
Putting aside the fact that most of these requests are so strikingly premature they could be
sanctioned, proceeding as requested would involve this Court in motions that are currently
pending.  The Bank has requested remedies that are unavailable and untimely, and thus we
decline any invitation to go beyond our jurisdiction or intrude in matters that are not properly
before us.

¶20        Because the Spending Cap Order requires a substantial amount of private property,
before the Bank may proceed with the Fennell litigation, it operates as an injunction.  An
injunction that requires the Bank to indemnify, before a determination that indemnification
is needed, is premature and a violation of the *Atalig* decision.  Therefore, the Spending Cap
Order is premature considering the stage of the Fennell Litigation.

¶21        .For the foregoing reasons, we VACATE the Spending Cap Order, the Receivership Court may issue orders that control costs, but absent a plenary hearing in the Fennell Court, as required by this Court in *Atalig,* it may not require indemnification for immunity that may or may not exist.  All other requests made by the Bank, the Fennell Defendants or the Secretary of Commerce, not herein specifically granted are DENIED.

SO ORDERED this 24th day of May 2006.

MIGUEL **S. DEMAPAN,** Chief Justice

ALEXANDRO C. CASTRO, Associate Justice

JOHN A. MANGLONA, Associate Justice