William M. Fitzgerald, Esq.
LAW OFFICE OF WILLIAM M. FITZGERALD
2nd Floor, Macaranas Building
Post Office Box 500909
Saipan MP 96950
Telephone: (670) 234-7241
Facsimile: (670) 234-7530

Kathleen V. Fisher, Esq.
CALVO & CLARK, LLP
1st Floor, Macaranas Building
PMB 951 Box 10001
Saipan, MP 96950
Telephone: (670) 233-2045
Facsimile: (670) 233-2776

*Attorneys for Bank of Saipan, Inc., Defendant Intervenors*

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| RANDALL T. FENNELL,<br><br>Plaintiff,<br><br>vs.<br><br>MATTHEW T. GREGORY, former Attorney General, GREGORY BAKA, Acting Attorney General, ANTHONY WELCH, Assistant Attorney General, TOM J. SCHWEIGER, Assistant Attorney General, and DOES 1-20, in their official and individual capacities,<br><br>Defendants. | CIVIL CASE NO. CV 09-0019<br><br>[PROPOSED MOTION]<br>THE BANK OF SAIPAN'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY<br><br>Date: _____<br>Time: _____ |

Pursuant to FRCP 24(c), the Bank of Saipan, Inc. lodges its proposed Motion to Dismiss, or in the Alternative, to Stay in conjunction with the Bank's Motion to Intervene filed concurrently herewith.

Respectfully submitted this 28th day of August, 2009.

                                            **LAW OFFICE OF WILLIAM FITZGERALD**
                                            **CALVO & CLARK, LLP**
                                            *Attorneys for Bank of Saipan, Inc.,*
                                            *Defendant Intervenors*

                        By: _____/s/_____
                             William M. Fitzgerald

William M. Fitzgerald, Esq.
LAW OFFICE OF WILLIAM M. FITZGERALD
2nd Floor, Macaranas Building
Post Office Box 500909
Saipan MP 96950
Telephone: (670) 234-7241
Facsimile: (670) 234-7530

Kathleen V. Fisher, Esq.
CALVO & CLARK, LLP
1st Floor, Macaranas Building
PMB 951 Box 10001
Saipan, MP 96950
Telephone: (670) 233-2045
Facsimile: (670) 233-2776

*Attorneys for Bank of Saipan, Inc., Defendant Intervenors*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN MARIANA ISLANDS

| | |
|---|---|
| RANDALL T. FENNELL,<br><br>**Plaintiff,**<br><br>vs.<br><br>MATTHEW T. GREGORY, former Attorney General, GREGORY BAKA, Acting Attorney General, ANTHONY WELCH, Assistant Attorney General, TOM J. SCHWEIGER, Assistant Attorney General, and DOES 1-20, in their official and individual capacities,<br><br>**Defendants.** | CIVIL CASE NO. CV 09-0019<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE BANK OF SAIPAN'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY**<br><br>Date: _____<br><br>Time: _____ |

1  The Bank of Saipan, Inc. (the "Bank") hereby moves the Court to dismiss this action or, in
2  the alternative, to stay the proceedings until the CNMI Superior Court has determined Plaintiff
3  Randall T. Fennell's ("Fennell") entitlement to any certification and any immunity or indemnity
4  under the CNMI Supreme Court mandate in *Bank of Saipan, Inc. v. Atalig*, 2005 MP 3 ¶10 and as
5  reiterated in *Bank of Saipan v. Camacho*, Appeal No. 05-0025-GA, (May 24, 2006 Order
6  Vacating the October 14 "Spending Cap Order" at ¶¶ 4, 21)(Per Curiam). Fennell and the Bank
7  have put these issues squarely before the Superior Court pending in *The Bank of Saipan, Inc. v.
8  Fennell*, CNMI Civ. No. 04-0449A.

## I.   INTRODUCTION

On June 12, 2009, Randall Fennell served the past and present CNMI Government Attorneys with a Complaint here in Federal Court. The Bank of Saipan, Inc. ("Bank"), Fennell and the Government (and other parties) have been litigating the core issues in the Complaint for years. Further, Mr. Fennell has brought factual allegations that are contradicted by multiple court decisions -- indeed one of his Exhibits (a government report) was *vacated* by the CNMI Superior Court. Mr. Fennell has litigated just about every core issue in the Superior and Supreme Courts of the CNMI.

Mr. Fennell's claim that he was not been afforded due process makes a mockery of our Constitution given that the Courts have heard him and in some cases, decided against him. He has put the issue of PELDIA (7 CMC §2301 and its successor legislation P.L. 15-22) and whether he was or was not an employee of the CNMI entitled to statutory protections directly in issue before the Superior Court, and that issue remains pending. He has litigated and lost the issue of whether he receives *carte blanche* indemnification and immunity for his alleged wrongful acts as the former Bank receiver. *See Bank of Saipan, Inc. v. Atalig*, 2005 MP 3, at ¶ 10 ("Fennell and the Secretary of Commerce have cited no legal authority in which any court granted immunity prior to a suit filed against the receiver. Whether or not a receiver is entitled to immunity is 'to be resolved at a plenary hearing with sworn witnesses and documentary proof, so that the question of law as to whether the Receiver breached any duty owing a fiduciary may be fairly resolved.'");

*Bank of Saipan Inc. v. Camacho*, Appeal No. 05-0025-GA, (May 24, 2006 Order Vacating the October 14 "Spending Cap Order" at ¶¶ 13, 14) (Per Curiam). Fennell has objected to the plenary hearing that the Bank has demanded take place before the Superior Court in the "Lawsuit"[1].

Finally, after maligning the Bank, contrary to the record of the courts and independent receiver who took over and presided over the receivership and the "cold, calculating" crime that caused it, Mr. Fennell complains bitterly about the purported conflict of the Attorney General's office. Yet, he never once moved to disqualify that Office from the Lawsuit. Following a series of recusals of judges in the Lawsuit, the CNMI Supreme Court appointed Judge Pro Tem. Arthur Barcinas, who now presides over the case.

Because the factual allegations in this case cannot be accepted as true, the Complaint should be dismissed, or, in the alternative, stayed in favor of the parallel proceedings in the Superior Court. Mr. Fennell's action in relitigating issues here that he either lost or is litigating in the Superior Court action manifests utter disregard for this Court's time and judicial resources (as well as for the Superior Court's and Supreme Court's): "Such disregard for judicial time and resources should not, and need not, be tolerated." *Baseline Sports, Inc. v. Third Base Sports*, 341 F.Supp.2d 605, 610 (E.D.Va. 2004). In bringing this motion, the Bank joins the Government Defendants motion to dismiss and raises other reasons for dismissal.

### III.  ARGUMENT

#### A.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim for which relief can be granted. Dismissal under Rule 12(b)(6) "is warranted where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory." *Hofschneider v. Demapan-Castro*, 2005 WL 817710, *1 (D. N.M.I. 2005). The Supreme Court recently clarified the requirements of Rule 8(a) in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Aschroft v.*

---

[1] The "Lawsuit" is the Complaint's term for *Bank of Saipan v. Fennell*, CNMI Super. Ct. Civ. Act. 04-049A as described in Cmpt. ¶ 43.

*Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009). The *Iqbal* Court stated: To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.
*Iqbal*, 129 S.Ct. at 1949 (citations omitted).

### B. The Claims Should Be Dismissed Because They Are Not Plausible Under Twombly and Ashcroft

Mr. Fennell's one-sided maligning of the Bank and its representatives is built on mischaracterized allegations that bear little resemblance to the findings and decisions of various courts and the conclusions of the successor receiver, Antonio S. Muna. Mr. Fennell's one-sided attack is not only unfair but is also cause to dismiss Fennell's complaint under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and recently in *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009).

The Complaint's allegations are simply not plausible in light of the record facts that establish otherwise and cannot form the basis of the causes of action in the Complaint. *See e.g.,* Cmpt . ¶ 41, ¶ 57 (a), Ex. E (claiming that Bank Board is subject to criminal and civil liability and was "derelict" in its oversight of management attaching a government report that the CNMI Superior Court vacated Petition for Judicial Review (Apr. 6, 2005), *Bank of Saipan, Inc. v. Atalig*, Civil Action No. 02-0376E ) (Wiseman, J.). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. "Factual allegations must be enough to raise a right to relief above a speculative level ...ON THE ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (capitalization in original). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw upon its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citation omitted).

On a motion to dismiss, the Court may take judicial notice of matters of public record outside the pleadings. *Mack v. South Bay Beer Distributors*, 798 F.2d 1279 (9th Cir.1986); *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir.1956); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). On a motion to dismiss, "a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment." *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986); *Padilla v. Yoo*, 2009 WL 1651273, *8 (N.D.Cal.). The court may consider matters of public record, including pleadings, orders, and other papers filed with the court. *Id.* The Bank has submitted a Request for Judicial Notice ("RJN") in support of this Motion. In his Complaint, Mr. Fennell assertions and innuendo that the Bank's Board of Directors, its representatives, shareholders, MPLA and others essentially caused the receivership is contrary to findings of the courts and the successor receiver of the Bank. *See,* Cmpt. ¶¶ 41, 42.

### 1. The Indictment and Conviction

The US Attorney issued an indictment against Montgomery and his criminal cronies for their bad acts against the Bank. The Superseding Indictment (Aug. 14, 2002), indicts Montgomery, the former Bank president and others for crimes including, among others, depriving the Bank of Honest Services, Wire Fraud, and Money Laundering. The Superseding Indictment states: Montgomery and Aldan "concealed" all relevant transactions from the Bank's Board of Directors and engaged in a "fraudulent" scheme to strip the bank of money and did so by depriving the Bank of the "honest services" of the Bank president. Request for Judicial Notice filed concurrently herewith ("RJN") Ex. 15.

On June 20, 2003, a federal jury convicted Montgomery, Aldan and their co-conspirators on these counts. The 9th Circuit summarized the convictions as follows:

> Bert Montgomery was involved in a complex fraud scheme that led to the temporary closing of the Bank of Saipan and millions of dollars of loss. Montgomery, along with his business partner DuSean Berkich, endeavored to purchase a controlling interest in the Bank of Saipan. To accomplish this, they convinced Tomas Aldan, the CEO and Chairman of the Board of the Bank of Saipan, to serve as their "inside man" by promising him lucrative benefits and kickbacks. The three then attempted, by various fraudulent means, to acquire

> Bank of Saipan stock. Montgomery's fraud resulted in a loss of over five million dollars to the Bank of Saipan. As a result of the fraud, the Bank of Saipan was temporarily closed and was placed in receivership, a scandal that was highly publicized in Saipan. As Montgomery acknowledges in his brief, the actions of Montgomery and his co-conspirators are alleged to have disrupted "banking and business operations in the Commonwealth ... and the region in general."

*U.S. v. Montgomery*, 462 F.3d 1067, 1068 (9th Cir. 2006)(remanding for sentencing).

This Court found after remand:

> Th[e] defendant's primary role in the intentional fraud perpetrated on the Bank of Saipan resulted in direct injury to thousands of bank depositors, including the Commonwealth government, all of whom lost access to their savings. The indirect injury caused to the families of individual account holders and to the creditors of business account holders was significant and still reverberates in the community as the Bank has continued in receivership since May of 2002. The cold, calculating nature of the crime and the financial losses and inconvenience caused to so many victims warranted the sentence imposed.

RJN Ex. 16 (Order Denying Motion of Defendant Montgomery to Be Re-Sentenced filed Jan. 5, 2007).

### 2. The Bank's Rehabilitation Plan

In February 2003, the Superior Court approved the Bank's rehabilitation plan which directed that the Bank aggressively pursue claims against "wrongdoers" of the Bank. RJN Exs. 21 & 22 (Rehabilitation Plan at 9, approved by CNMI Court Feb. 13, 2003). The Bank ultimately determined that Fennell was one such wrongdoer. *Camacho* at ¶ 3.

### 3. The CNMI Supreme Court Receivership Opinions: Fennell not Entitled to Immunity/Indemnity without Plenary Hearing

In two decisions issued by the Supreme Court in the receivership proceeding (a proceeding that is now closed), the Supreme Court established that Fennell was not entitled to immunity *per se*, and that instead an initial threshold determination should be made in this civil lawsuit as to whether the receiver is entitled to immunity. *See Bank of Saipan, Inc. v. Atalig*, 2005 MP 3, at ¶ 10 ("Fennell and the Secretary of Commerce have cited no legal authority in which any court granted immunity prior to a suit filed against the receiver. Whether or not a receiver is entitled to immunity is 'to be resolved at a plenary hearing with sworn witnesses and documentary proof, so that the question of law as to whether the Receiver breached any duty

owing a fiduciary may be fairly resolved.'"); *Bank of Saipan Inc. v. Camacho*, Appeal No. 05-0025-GA, (May 24, 2006 Order Vacating the October 14 "Spending Cap Order" at ¶¶ 13, 14)(Per Curiam) ("Upon a plenary hearing, a determination can be made in the Fennell Lawsuit regarding the Fennell Defendants, if any."; **"As this Court previously ruled, indemnification should only take place after the Fennell Court holds a plenary hearing on the matter."**)(footnote omitted).

Thus, consistent with the Supreme Court's rulings, the Bank has a pending motion in the Superior Court to set a fact-finding hearing for this threshold immunity issue and asks that the scheduling of this hearing and the scheduling of pre-hearing discovery be among the first acts the Superior Court takes to place the case on schedule. (*See* Plaintiff's Threshold Motion on Issue of Immunity (filed 9/26/05), RJN Ex. 5). Mr. Fennell's complaint fails to recognize, much less mention, these operative holdings that are central to the issues in this action.

4. **Fennell's Lack of Candor in Complaint: Vacated Atalig Findings**

Mr. Fennell also misrepresents the record to this Court. His efforts to malign the Bank continue without regard to his obligations of candor. Fennell alleges that Exhibit E to his Complaint (May 28, 2002 Report of Acting Secretary of Commerce) "reflects a long history of patent neglect, self-dealing and misappropriations by the Bank's Board of Directors and Major Shareholders that hugely impacted the Bank's financial stability to the substantial detriment to the Bank's depositors and the Bank's minority shareholders" supposedly "recognizing the 'significant' potential civil and criminal liability of the Bank's Board of Directors. Cmpt ¶ 41, Ex. E. This determination was *vacated* by the CNMI Superior Court's Order re: Petition for Judicial Review (Apr. 6, 2005), *Bank of Saipan, Inc. v. Atalig*, Civil Action No. 02-0376E (Wiseman, J.).

The fact that Fennell did not mention the matter was vacated is unsurprising given that it completely undermines the foundation of his Complaint. The Superior Court held:

> **The Court sees no justification or rationale for the May Letter.** The May Letter was issued subsequent to findings that had already met statutory requirements to invoke the Receivership, and the Bank had already been placed in Receivership. The May Letter served little purpose **other than providing**

**superfluous and derogatory statements which were unnecessary** and made without the Bank having the opportunity to reply to the allegations, as required by 1 CMC § 9108, 4 CMC § 6110 and 6111. As such, the Letter could not be issued absent a hearing and proper notice in which the Bank had an opportunity to contest the findings. The Bank was never given that opportunity.

The Superior Court decision is now final.

### 5. Bank of Saipan v. Montgomery 04-0088C (Summary Judgment)

On November 27, 2007, the CNMI Superior Court granted judgment in favor of the Bank against Montgomery. (RJN Ex. 24). The CNMI Superior Court found, among other factual findings, that:

- "According to [Governor] Fitial, the Bank was not aware of the truth and reasonably relied on Aldan's attestment of Montgomery's credibility. The Bank suffered substantial losses to its assets and reputation, and ultimately went into receivership. Accordingly, summary judgment . . . on Plaintiff's claim for fraudulent misrepresentation is GRANTED." Order at 13.

- "The information Montgomery concealed was material to the Bank, because, had it been disclosed, the Bank would not have endorsed the sale of the majority of its shares to Montgomery, issued Montgomery a loan to buy these shares, or issued the loan to Sweven." (Granting summary judgment on Bank's claim for fraudulent concealment). *Id.* at 13 -14.

- "Without Aldan's active assistance, Montgomery's plan to defraud the Bank could not have succeeded. As a result of Aldan's breach of fiduciary duty, and Montgomery's aid and encouragement thereof, the Bank sustained substantial damages." (Granting summary judgment against Montgomery on aiding and abetting Aldan's breach of fiduciary duty). *Id.* at 18.

### 6. Termination of Receivership

In August 2006, the Court ended the receivership of the Bank, despite Fennell's objection. RJN Ex. 25. The successor Receiver, Antonio S. Muna, concluded in his Final Accounting dated October 12, 2005: "The Bank as managed by its BOD, its CEO – Mr. Jon Bargfrede, and its staff along with the advice and counsel of a team of Legal and Financial experts have **earned** it. Congratulations are in order to the Shareholders, BOD, Management, staff and advisors. A job well done." RJN Ex. 26 at 4. Further, the Receiver reported: "As advised by the Supreme Court decision dated 3/07/05 vacating the Court's order exonerating Mr. Fennell, Mr. Fennell (as would I if subject to a lawsuit for alleged misconduct while Receiver) would best be served to seek a

plenary hearing to determine if he is entitled to immunity at the soonest possible time. The Secretary's action to hold the Receivership hostage will not get Mr. Fennell immunity. Mr. Fennell should be held personally accountable for costs incurred in delaying the scheduling of a plenary hearing." *Id at 5*.[2]

The conclusory and incorrect statements set out in Mr. Fennell's complaint are not sufficient. *See Iqbal*, \_\_U.S. \_\_, 129 S.Ct. 1937, 1949-1950 ("[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that *is plausible on its face*.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added)).

Mr. Fennell's doesn't want due process; he wants to use (or abuse) the process to force or threaten his way into the immunity and indemnity he has be unable to get from the CNMI Courts. See e.g., Ex. 5 to Defendant Attorney General's Motion to Dismiss (Fennell's threat against Governor Fitial to bring this action unless his attorneys fees were paid); RJN Ex. (Fennell letter to Presiding Judge Naraja: RJN Ex. 17 ("It is very much in my interest that the receivership continue."). The Complaint's allegations and supporting documents are not sufficient to sustain Mr. Fennell's Complaint for lack of due process or violation of any federal or Constitutional rights. For these reasons, the Complaint should be dismissed.

C.  **In the Alternative, the Complaint Here Should Be Dismissed or Stayed In Light of the Pending Superior Court Action**

While the Court finds itself in the midst of a case that is in itself another litigation tactic to avoid the pending Lawsuit in the Superior Court, it is important to note that:

- Mr. Fennell has Petitioned the Superior Court to dismiss him from the case and replace him with the CNMI Government as a defendant under PELDIA or P.L. 15-22 and his petition asserts that he was an "employee" of the CNMI (RJN Exs. 2 & 3);

---

[2] Notwithstanding the CNMI Supreme Court's rulings and mandate, Fennell's lawyers have provisionally "indemnified" themselves by securing payment from the Bank's insurance company for his extensive efforts to evade the plenary hearing. Such self-help by Fennell and his current attorneys, of course has wanted the coverage that should be available to Mr. Muna should he be sued for his term as Receiver and secure approval through a plenary hearing for immunity and indemnity.

- Mr. Fennell filed an "Indemnification Claim of Randall T. Fennell" on October 18, 2005 and on August 1, 2006 in the Receivership proceedings. (RJN Ex. 20 & Ex. 1 of said Indemnification Claim attached thereto). The Bank refused this demand. *Id.* Fennell never appealed from the order terminating the receivership to claim indemnity or submitted to a plenary hearing to establish his entitlement to the same;

- Mr. Fennell has objected to a plenary hearing under *Atalig and Camacho* (which is required to determine his entitlement to immunity and indemnification) since the Bank first requested one in 2005 and the Superior Court needs only to hold such hearing (RJN Exs. 3, 9-14);

- Mr. Fennell has not moved to disqualify the Attorney General in the Superior Court proceedings (RJN Ex. 28 (Lawsuit Docket)).

Although the Court should dismiss the complaint, *Colorado River Water Conservation District v. United States*, 242 U.S. 800 (1976) and *Younger v. Harris*, 401 U.S. 37, 41 (1971) provide additional grounds for the Court to dismiss, or stay, this action.

As this Court has previously found, "abstention is the exception and not the rule" and, "federal courts have 'a virtually unflagging obligation' to exercise jurisdiction vested in them by Congress. *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Bank of Saipan*, 2003 WL 22997231, *2 (D. N.M.I. July 9, 2003) (quoting *Colorado River*, 424 U.S. at 813). But this duty is not absolute. In certain circumstances, a federal court may stay or even dismiss its proceedings in deference to pending state court proceedings. *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989). Indeed, wide discretion is given to the district court in deciding whether it shall entertain a duplicative action. *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655 (1978).

### 1. *Colorado River*

In *Colorado River*, the Supreme Court examined four factors to determine whether to dismiss a federal case in deference to parallel state court proceedings: (1) whether either court has assumed jurisdiction over a *res*; (2) the relative convenience of the forums; (3) the order in which the forum obtained jurisdiction; and (4) the desirability of avoiding piecemeal litigation. 424 U.S. at 818. Other factors the Supreme Court and Ninth Circuit have examined are whether state or federal law controls; whether the state proceeding is adequate to protect the parties' rights and whether forum shopping, or some other untoward motive is involved. *Fireman's Fund Ins. Co. v.*

*Quackenbush*, 87 F.3d 290, 297 (9th Cir. 1996). No one factor is determinative; rather, all factors should be considered in rendering a decision. *Colorado River*, 424 U.S. at 818-19.

### a. The Superior Court and Federal Court proceedings are parallel

In order for the *Colorado River* abstention doctrine to apply, the concurrent Superior Court and District Court proceedings must be parallel. Here, they are.

The Ninth Circuit explains that "exact parallelism: is not required; rather it is enough if the two proceedings are substantially similar. *Nakash*, 882 F.2d at 1416; *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1998) ("the requirement is of parallel suits, not identical suits"). As explained in *Interstate Material Corp.*, cited with approval in *Nakash*, "A suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." 847 F.3d at 1288 (inner quotation and citation omitted). Such is the case here.

This action purports to be about Mr. Fennell's lack of due process that he has and is receiving in the local courts of the CNMI. Mr. Fennell has been an active party to the proceedings in the local courts that concern his liability or purported entitlement to protections against liability (whether through indemnity, immunity, or statutory dismissal). With respect to immunity and indemnity, he lost his case that receivers are entitled to *carte blanche* immunity and indemnity. *See, Atalig and Camacho.* He has vigorously argued and has been heard. Further, Mr. Fennell has a Petition for Certification before the Superior Court under Public Law 15-22 and/or 7 CMC § 2301 et. seq. The dispute between Mr. Fennell, the Bank and the Government and all of the issues here are before the Superior Court. Moreover, the Superior Court is uniquely situated to protect Mr. Fennell from any "conflicts" that may exist between him and the Attorney General's Office through the vehicle of a motion to disqualify. He has not made that motion. Also, if the Superior Court refuses to grant his Petition for Certification and does not believe he is entitled to indemnity or immunity for the Lawsuit, he will have little or no claim here.

### b. The Superior Court has already assumed jurisdiction over Fennell, the Bank, the Attorney General and the CNMI Government in the Lawsuit

"It has been held . . . that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Colorado River*, 424 U.S. at 818. Here, the Supreme and Superior Courts have presided over the issues that Mr. Fennell has raised for years. The Lawsuit (which is the subject of the Complaint) has been pending in the Superior Court for 5 years. The Superior Court has first exercised jurisdiction over Mr. Fennell, the Bank and the other parties.

### c. The forums are equally convenient

Both the Superior Court and this Court are in the Northern Mariana Islands. However, all of the parties that are material to the issues raised by the Complaint are pending in the Superior Court. The Superior Court is more convenient and is undoubtedly more than capable of adjudicating the same claims that Fennell now try to bring before this Court, thereby duplicating efforts and possibly reaching different results and resulting in wasteful litigation. *See, e.g., Enfission, Inc. v. Leaver*, 408 F.Supp.2d 1093, 1099 (W.D.Wash. 2005).

### d. The Lawsuit was filed over almost 5 years before this action

Mr. Fennell, the Bank and the Attorney General have been litigating in the Superior Court for years. The Superior Court has before it a Petition for Certification and a Supreme Court mandate on handling Fennell's immunity and indemnity claims (and a plenary hearing request before it). Because the Superior Court case was filed earlier and is further along, this factor weighs in favor of deference to the Superior Court proceedings.

### e. Not dismissing or staying this case will result in piecemeal litigation

Although all factors are to be considered, the policy of avoiding piecemeal litigation is the most important Colorado River factor. *See Moses H. Cone*, 460 U.S. at 16. Piecemeal litigation arises when different courts consider the same issue, thereby duplicating efforts and possibly reaching different results and resulting in wasteful litigation. *See, e.g., Enfission, Inc. v. Leaver*, 408 F.Supp.2d 1093, 1099 (W.D.Wash. 2005). Here, as in *Enfission*, "the same underlying issues

permeate both state and federal proceedings." *Id.* The Superior Court and this Court would be evaluating much of the same evidence and deciding many of the same issues.

There will be an unnecessary use of judicial resources were the Court not to dismiss or stay this action under *Colorado River*. This Court has previously refused to "review the Orders of the Commonwealth Superior Court." *Bank of Saipan*, 2003 WL 22997231 at -; As this Court concluded, "[d]oing so would be a waste of judicial resources and would create needless friction between the state and federal forums." *Id.* Thus, this factor weighs strongly in favor of declining to exercise jurisdiction over this case.

### f. State law controls

Mr. Fennell's complaint is based on federal statutes; however, the claims are based on a state law Lawsuit, involving strictly CNMI law – Fennell's entitlement to indemnity and immunity (as formulated by the CNMI Supreme Court in *Atalig*) and any protection under CNMI statutes such as PELDIA (or PELDIA's successor legislation). Mr. Fennell's rights have been or will be determined in pending Superior Court litigation. This factor should favor dismissal or stay under *Colorado River*.

### g. The Superior Court proceeding is adequate to protect the parties' rights

The Bank is aware of nothing to suggest that the Superior Court cannot adequately protect the rights of Mr. Fennell. Thus, this factor also supports dismissal or stay.

### h. Mr. Fennell is forum shopping

The Ninth Circuit instructs that "forum-shopping can in some cases justify Colorado River abstention." *Quackenbush*, 87 F.3d at 297. Similarly, the Supreme Court notes that "the vexatious or reactive nature of either the federal or state litigation may influence the decision whether to defer to a parallel state litigation" under *Colorado River*. *Moses. H. Cone*, 460 U.S. at 17-18 n. 20. Here, both forum-shopping and the vexatious and reactive nature of this litigation are evident.

After over five years of litigating in the Superior Court and Supreme Courts – Fennell has filed here -- all the while continuing to pursue affirmative relief in the Superior Court action.

So why did Mr. Fennell rush to file a complaint in a new Court containing the exact issues he is pursuing or could pursue in the in Superior Court?

Federal courts do not look fondly on parties trying to sidestep another court's jurisdiction and reserve the roles of the parties, or parties hoping that they may have been luck with a new court. *See, e.g., Baseline Sports, Inc.*, 341 F.Supp.2d at 610 (finding that a stay or dismissal would be warranted as a means to deter vexatious use of the courts" if the filing of federal action was to "sidestep" the state court's jurisdiction and "reserve the roles of the parties") (inner citations and quotation omitted). The Ninth Circuit has explicitly stated that it has "no interest in encouraging this practice." *Nakash*, 882 F.2d at 1411, 1417. Therefore, this factor weighs strongly in favor of abstention under *Colorado River*.

### i. This is an exceptional case under *Colorado River* and should be dismissed.

All applicable factors support the finding that this is an "exceptional case" and, therefore, the Court should dismiss or stay this action pursuant to *Colorado River*. Mr. Fennell's disregard for judicial time and resources should not be tolerated or rewarded.

### 2. *Younger*

The Court may properly decline to exercise jurisdiction based on *Younger* abstention if the following three elements are met: "(1) state judicial proceedings are ongoing; (2) the state judicial proceedings implicate an important state interest; and (3) the state proceedings offer the federal plaintiff an adequate opportunity to litigate constitution issues. *Bank of Saipan*, 2003 WL 22997231 at 2; *see also Moore v. Sims*, 442 U.S. 415, 423 (1979) (noting that abstention under *Younger* is "applicable to civil proceedings in which important state interests are involved").

There is no dispute that the first factor is met. (*See,* the Lawsuit.)  The second factor is also met. The CNMI Courts have defined the rights of a receiver to indemnity and immunity. The Superior Court is set to apply the law to facts that are ripe in the Lawsuit. The CNMI has an important interest in determining these state law issues in the local courts. The third factor is met. The Superior Court will afford Mr. Fennell all of the opportunity to litigate his rights (both constitutional and otherwise) before it, including any conflict issues.

Because the factors are met, abstention pursuant to *Younger* is proper here and provides grounds for the Court to dismiss this case. *See Bank of Saipan*, 2003 WL 22997231 at 2.

## V. CONCLUSION

For the foregoing reasons, the Bank respectfully requests that the Court dismiss the complaint against it for failure to state a claim upon which relief can be granted. Alternatively, the Bank respectfully requests that this Court decline to exercise its jurisdiction over this duplicative action and dismiss or stay the case under *Colorado River* or *Younger*.

Respectfully submitted this 28th day of August, 2009.

**LAW OFFICE OF WILLIAM FITZGERALD**
**CALVO & CLARK, LLP**
*Attorneys for Bank of Saipan, Inc.,*
*Defendant Intervenors*

By: _____/s/_____
William M. Fitzgerald