# EXHIBIT 1

MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
Suite 801 Pacific News Bldg.
238 A.F.C. Flores St.
Hagatna, Guam 96910
Telephone: (671) 472-2089/2090
Facsimile: (671) 477 5206

CALVO AND CLARK, LLP
MH II Building
Marina Heights Business Park
PMB 951 Box 10001
Saipan, MP 96950
Telephone: (670) 323-2045
Facsimile: (670) 323-2276

Attorneys for The Bank of Saipan, Inc.

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| THE BANK OF SAIPAN, INC., ) | CIVIL ACTION NO. 04-449A |
| ) | |
| Plaintiff, ) | |
| ) | |
| -v- ) | |
| ) | |
| RANDALL T. FENNELL; RICHARD ) | **FIRST AMENDED COMPLAINT** |
| PIERCE; WHITE, PIERCE, MAILMAN, ) | **AND DEMAND FOR JURY TRIAL** |
| & NUTTING; DAVID W. AXELROD; ) | |
| SCHWABE, WILLIAMSON, & WYATT; ) | |
| AND DOES 1 20 ) | |
| ) | |
| Defendants. ) | |
| ) | |

COMES NOW, the Bank of Saipan, Inc. (hereinafter "Bank of Saipan" or the

"Bank"), which for its First Amended Complaint against Defendants Randall T. Fennell, Richard

Pierce, White, Pierce, Mailman & Nutting, David W. Axelrod, Schwabe, Williamson & Wyatt, and

Does 1-20 alleges as follows:

## JURISDICTION AND PARTIES

    1.      This Court has jurisdiction over this matter pursuant to the N.M.I.

Constitution, Article IV, Section 2, 1 C.M.C. § 3202.

    2.      Plaintiff Bank of Saipan is a CNMI corporation, currently in receivership,

duly-licensed and authorized to engage in retail banking activities in the Commonwealth.

    3.      Upon information and belief, Defendant Randall T. Fennell ("Fennell") is a

resident of the Commonwealth of the Northern Mariana Islands who served as the receiver of the

Bank from April 30, 2002 to September 27, 2002.

    4.      Defendant Richard Pierce ("Pierce") is a resident of the Commonwealth of

the Northern Mariana Islands.

    5.      At all relevant times herein, Defendant White, Pierce, Mailman, & Nutting

("White, Pierce") was a CNMI law firm.

    6.      Defendant David W. Axelrod ("Axelrod") is, on information and belief, a

resident of Portland, Oregon.

    7.      Defendant Schwabe, Williamson, & Wyatt ("Schwabe") is, on information

and belief, a Portland, Oregon law firm.

    8.      Except as described herein, the true names of the defendants sued as Does

1 through 20, inclusive, are unascertained to the Bank which therefore sues these defendants by such

fictitious names. The Bank will amend this Complaint to allege their true names and capacities when

ascertained. These fictitiously named defendants were involved in the design, implementation,

approval, and furtherance of the transactions complained of herein or received benefits from those

transactions. These defendants aided or abetted, or participated with the other defendants and

others in the wrongful acts and course of conduct, or otherwise caused the damages sought herein

and are responsible for the acts, occurrences and events alleged in this Complaint.

9.      The named and Doe defendants in this action are sometimes referred to

herein as ""Defendants."

## OPERATIVE FACTS

10.     On or about April 30, 2002, the CNMI Government filed an ex parte

petition in the CNMI Superior Court for the appointment of a receiver for Plaintiff Bank of Saipan,

pursuant to a Commonwealth statute, 4 CMC §6105, in the case Acting Secretary of Commerce

Fermin M. Atalig v. Bank of Saipan, Civ. Action No. 02-0268B.

11.     At the hearing on the petition, held that same date, April 30, 2002, the

Government for the first time identified Defendant Randall T. Fennell as the individual to be

appointed receiver. The Bank reserved the right to object to Fennell's appointment; but on said date

the Bank was ordered into receivership and Fennell was appointed as temporary receiver for 30

days. The April 30 Order set forth Fennell's limited powers as temporary receiver.

12.     In obtaining his appointment, Fennell deliberately and repeatedly failed to

disclose material information that he was bound to disclose to the appointing court and the Bank

3

regarding his conflicts of interest and hostility against the Bank, its major shareholders and certain of its directors. Such nondisclosures were intentional, deliberate, or reckless.

13.     In connection with his appointment, Fennell retained Pierce, White, Pierce, Axelrod, and Schwabe (collectively, the "Receivership Attorneys") to act as his counsel. The Receivership Attorneys also failed to disclose material information about their conflicts of interest and how said conflicts would adversely affect their representation of the Bank's court-appointed receiver. Pierce and White, Pierce had concurrently represented the Bank since 1997 and Pierce never disclosed or obtained consent to his representation of Fennell.

14.     Once appointed and retained, Fennell and the Receivership Attorneys owed fiduciary duties to the Bank, including, without limitation, the duty to conduct the receivership in the best interests of the Bank, to avoid harming the Bank, to disclose all material information affecting the receivership, and to place the interests of the Bank above their own personal interests. At all relevant times to this action, Fennell and the Receivership Attorneys were motivated by, and conducted the receivership consistent with, a hidden agenda to destroy rather than rehabilitate the Bank, to the detriment of the Bank, its depositors and shareholders. Fennell and the Receivership Attorneys exercised the receivership powers in a manner inconsistent with the best interests of the Bank.

15.     Fennell precipitated and engaged in ex parte communications with the Court off-the-record, with no recording. On or about May 8, 2002, without notice to the Bank and without giving the Bank an adequate opportunity to object, Fennell filed an ex parte petition for

4

"Clarification of Order Granting Petition for Appointment of Receiver." The Court granted Fennell's petition on May 10, 2002 and the Order greatly expanded Fennell's powers as receiver and extended his receivership indefinitely. Notwithstanding this expansion of powers, Fennell exceeded the scope of his powers before and after this order.

16.     During his tenure as receiver, Fennell deliberately and maliciously harmed the Bank, its depositors, employees, customers, directors and shareholders by, inter alia, attempting to destroy the Bank instead of working to rehabilitate it. Fennell ignored requests from Bank depositors for information concerning their deposits. Fennell actively endeavored to prevent the Bank from participating in discussions and proceedings directly related to the Bank's continued existence and rehabilitation. Fennell's practice of excluding the Bank from such ex parte proceedings that were conducted off-the-record and with no recording was unlawful and inappropriate; and said practice deprived the Bank of due process of law during the course of the receivership proceedings, in breach of Fennell's fiduciary duty to the Bank.

17.     Although Fennell had fiduciary duties not to damage the Bank, or its depositors, and to act fairly towards its employees, shareholders, and employees, he publicly denigrated the Bank while serving as receiver, calling it, inter alia, a "failed institution." Such conduct undermined pubic confidence in the Bank at a critical point in its existence and endangered and retarded the Bank's subsequent rehabilitation efforts.

18.     Fennell's engaged in one or more "private briefings" with the Court which were normally "off-the-record" and with no recording, for the purpose of advancing his wrongful and

damaging agenda, as he knew it would be difficult if not impossible for the Bank to obtain meaningful

and timely judicial review of what Fennell and the Receivership Attorneys said or submitted to the

court.

19.     Fennell repeatedly refused to meet or cooperate with the Bank's Directors

or counsel in furtherance of efforts to rehabilitate the Bank.  Fennell's refusal to work with the

Directors at critical times was in breach of his duty to work with the Bank to avoid liquidation and

achieve the best possible results for the Bank, its shareholders, depositors, employees, and

customers.

20.     Fennell reopened the Bank during his tenure, without any rehabilitation plan

in place, allowing depositors to withdraw a large percentage of the Bank's deposits and precipitating

a "run" on the Bank, seriously eroding the Bank's financial status and endangering its ability to

become rehabilitated.

21.     Fennell acted as receiver for the Bank from April 30, 2002 until he was

removed by order from the Supreme Court of the Commonwealth of the Northern Mariana Islands

on May 29, 2002. The Supreme Court stayed the May 29 Order on May 31 and reinstated Fennell

as temporary receiver but limited his powers to those provided by law and specifically ordered that

Fennell could not liquidate the Bank's assets. On September 27, 2002, Fennell was permanently

removed and replaced as receiver. During this period, Fennell sought to be exonerated from "any

and all claims" which might result from his acts or omissions as receiver. Fennell moved and the

receivership court granted on September 27, 2002 and thereafter on December 31, 2002, his

6

request that the Bank defend and indemnify him for any and all claims arising from his actions as

receiver. During this period, Fennell exceeded the scope of his authority as receiver by engaging in

the conduct described herein and failed to disclose the improper actions alleged herein in obtaining

the receivership court's order.

22.     On September 27, 2002, and December 31, 2002, the Honorable Edward

Manibusan issued Orders exonerating the former Receiver. Thereafter, on January 27, 2003, the

Bank of Saipan filed a proposed Rehabilitation Plan with the Court. In this Rehabilitation Plan, the

Bank specifically noted that the former Receiver's actions had been wrongful and had caused harm

to the Bank:

> Original Receiver's actions adversely affected loan collections and
> generated negative images regarding the possibility of rehabilitation
> and reorganization of the Bank of Saipan.

23.     The Rehabilitation Plan stated that one of the solutions to the Bank of

Saipan's problems was to aggressively pursue claims against wrongdoers:

> Outlined below are a series of proposed solutions to the Bank's
> problems:
>
> *Aggressively* seek to recover fraudulent loans and pursue claims
> against wrongdoers.

24.     On February 13, 2003, the Honorable Edward Manibusan "approved" the

"Rehabilitation Plan presented to the Court." In this same Order, the Court vacated any prior

Orders inconsistent with the Rehabilitation Plan proposed by the Bank:

7

> To the extent that all previous Orders of this Court are inconsistent with the rehabilitation of the Bank, they are superceded and vacated.

25.      Inasmuch as the "aggressive" pursuit of claims against wrongdoers is mandated by the Rehabilitation Plan, and this is expressly identified as one of the "solutions" to the Bank's problems, then the pursuit of such claims by definition is consistent with the rehabilitation of the Bank. All prior Orders of the Court "inconsistent with the rehabilitation of the Bank," which must include the Orders barring the pursuit of claims against wrongdoers, were superceded when the Court approved to the Rehabilitation Plan.

26.      At all times herein, through the ex parte hearings conducted off-the-record and with no recording, the failure to produce requested information that they were bound to disclose, and other means, Defendants have sought to fraudulently conceal from the Bank the fact that it has causes of action against Defendants and has thereby deprived the Bank of a reasonable opportunity to discover such causes of action until some time after Fennell was permanently removed as the receiver and a full investigation could be undertaken. Even then, continuing non-cooperation has hindered that investigation and acted to further fraudulently conceal the causes of action.

27.      The Bank, by and through its Board of Directors, took a timely appeal from the receivership court's orders granting Fennell's exoneration motions and requests for immunity, indemnification and defense. That appeal, Consolidated Appeals Nos. 02-0029GA and 03-0008GA, remains pending in the Supreme Court of the Commonwealth of the Northern Mariana Islands.

8

28.     At all relevant times herein, defendants were aware of each other's conduct,

assisted, participated in, furthered, aided, abetted, comforted, and encouraged each other in such

conduct and acted in concert with one another.

## FIRST CAUSE OF ACTION
## MALPRACTICE/BREACH OF FIDUCIARY DUTY
### (PIERCE AND WHITE, PIERCE)

29.     The Bank of Saipan hereby realleges and incorporates by this reference as

if fully set forth herein the allegations contained in paragraphs 1 through 28 of the Complaint.

30.     Pierce and White, Pierce owed the Bank the fiduciary duties that an attorney

owes a client. Specifically, Pierce and White, Pierce owed the Bank duties of undivided loyalty,

candor, confidentiality and good faith.

31.     At the time Pierce and White, Pierce agreed to represent Fennell, Pierce and

White, Pierce were concurrently representing the Bank.

32.     Pierce's and White, Pierce's representation of Fennell's interest was directly

adverse to the interests of the Bank and Pierce and White, Pierce did not disclose this conflict of

interest or obtain consent to their representation of Fennell, nor could they have obtained consent

under applicable law.

33.     Among other things, Pierce and White, Pierce disclosed the Bank's

confidential information without the knowledge, consent or participation of the Bank which was

designed to harm the Bank's interest, its depositors, employees, customers and shareholders. Pierce

9

and White, Pierce intentionally and maliciously failed to faithfully execute service or otherwise provide notice to the Bank of said disclosures.

34.    Through the conduct complained of herein, Pierce and White, Pierce breached their duties as attorneys to the Bank.

35.    As a direct and proximate result of Pierce's and White, Pierce's conduct detailed above and in other respects, the Bank has been damaged in an amount to be proved at trial.

### SECOND CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
### (THE RECEIVERSHIP ATTORNEYS)

36.    The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 35 of the Complaint.

37.    The Receivership Attorneys owed strict fiduciary duties to the Bank.

38.    The Receivership Attorneys were required at all times, honestly and in good faith with a view to the best interests of the Bank, to exercise care, skill and diligence that a reasonably prudent person would exercise in comparable circumstances.

39.    The Receivership Attorneys breached these duties by among other things, failing to act in the Bank's best interest, failing to loyally represent the Bank, failing to hold the Bank's confidences inviolate, and failing to disclose material facts to the court and the Bank, including, but not limited to conflicts of interests and breaches of fiduciary duty by other Defendants.

40.    As a direct and proximate result of this conduct, the Bank has suffered damages in an amount to be proven at trial.

10

### THIRD CAUSE OF ACTION
### PARTICIPATION IN BREACH OF FIDUCIARY DUTY
### (ALL DEFENDANTS)

41.     The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 40 of the Complaint.

42.     Pierce knew or should have known of White, Pierce and Fennell's breaches of fiduciary duties and actively participated in their breaches by implementing, directing, assisting, approving and otherwise furthering their scheme through the unlawful, improper, fraudulent and self-dealing actions alleged herein.

43.     Schwabe and Axelrod knew or should have known of Pierce, White, Pierce and Fennell's breaches of fiduciary duties and actively participated in their breaches by implementing, assisting, directing, approving and otherwise furthering their scheme through the above-pled unlawful, improper, fraudulent and self-dealing actions.

44.     Fennel knew or should have known of the breaches of fiduciary duty by the other Defendants and actively participated in their breaches by implementing, assisting, approving and otherwise furthering their scheme through the above-pled unlawful, improper, fraudulent and self-dealing actions.

45.     As a direct and proximate result of Defendants' participation in breaches of fiduciary duty detailed herein and in other respects, the Bank has been damaged in an amount to be proved at trial.

11

### FOURTH CAUSE OF ACTION
### FRAUD
### (FENNELL AND THE RECEIVERSHIP ATTORNEYS)

46.    The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 45 of the Complaint.

47.    Fennell and the Receivership Attorneys owed the Bank fiduciary duties of loyalty, due care, confidentiality and full disclosure.

48.    Fennell and the Receivership Attorneys intentionally, knowingly, or otherwise culpably concealed or suppressed by means of written and oral communications, and by conduct, from the Bank that their true intent was to destroy the Bank so as to be able to retaliate against the Bank's shareholders, directors and attorneys.

49.    Fennell and the Receivership Attorneys fraudulently concealed or suppressed material facts that he was bound to disclose or, in the alternative, told the Bank and the Court facts to mislead the Bank and the Court from discovering the concealed or suppressed facts.

50.    Fennell and the Receivership Attorneys fraudulently and actively concealed material facts with the intent to deceive and defraud the Bank and the Court.

51.    The Bank was unaware of the concealed or suppressed facts and would have taken action had it known the true facts.

52.    The omissions and representations of Fennell and the Receivership Attorneys were material, false and misleading, and Fennell and the Receivership Attorneys knew they were

12

false and misleading at the time they were made, and they were made for the purpose of inducing

the Bank and the Court to rely upon them and to act or to refrain from acting in reliance thereon.

53.     The Bank reasonably and justifiably relied upon untruthful representations,

statements and omissions and acted in accordance thereof.

54.     As a direct and proximate result of Fennell and the Receivership Attorneys'

conduct detailed above and in other respects, the Bank has been damaged in an amount to be

proved at trial.

## FIFTH CAUSE OF ACTION
**CONDUCT BEFORE APPOINTMENT AS RECEIVER;
CONDUCT IN EXCESS OF APRIL 30, 2002 ORDER;
CONDUCT IN EXCESS OF MAY 10, 2002 ORDER;
CONDUCT IN EXCESS OF MAY 29, 2002 ORDER;
CONDUCT IN EXCESS OF MAY 31, 2002 ORDER;
CONDUCT IN EXCESS OF SEPTEMBER 27, 2002 ORDER
(FENNELL)**

55.     The Bank of Saipan hereby realleges and incorporates by this reference as

if fully set forth herein the allegations contained in paragraphs 1 through 54 of the Complaint.

56.     Fennell's powers as receiver are clearly set forth in the Court's orders of

April 30, 2002, May 10, 2002, and September 27, 2002 and the Supreme Court's Orders of May

29, 2002 and May 31, 2002.

57.     Before his appointment and during his tenure as receiver, Fennell

intentionally, willfully and maliciously acted in excess of these powers to the detriment of the Bank.

13

58.     As a direct and proximate result of Fennell's conduct detailed above and in other respects, the Bank has been damaged in an amount to be proved at trial.

## SIXTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
### (FENNELL)

59.     The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 58 of the Complaint.

60.     Fennell owed strict fiduciary duties to the Bank. Fennell was required at all times honestly and in good faith with a view to the best interests of the Bank to exercise care, skill and diligence that a reasonably prudent person would exercise in comparable circumstances.

61.     Fennell failed to fulfill his obligations to the Bank, failed to faithfully execute service, and breached his duties to the Bank in various ways, including, without limitation, the acts and omissions alleged herein.

62.     As a direct and proximate result of Fennell's breach of fiduciary duty detailed above and in other respects, the Bank has been damaged in an amount to be proved at trial.

## SEVENTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH BUSINESS RELATION
### (FENNELL)

63.     The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 62 of the Complaint.

64.     Fennell intentionally and willfully injured the Bank by publicly disparaging the Bank, seeking to destroy the Bank, prematurely reopening the Bank without a Rehabilitation Plan

14

and causing a "run" on the Bank, inducing the Bank's customers to withdraw their funds from the Bank while precluding them from doing other forms of business with the Bank, refusing to cooperate and respond to depositor requests in a prudent manner and by other conduct that disparaged, neglected or harmed the Bank's customers and depositors.

65.    By reason of the foregoing conduct, Fennell interfered with the Bank's business relations with certain of its customers, and willfully, purposefully, maliciously and oppressively caused general, special and consequential damages to the Bank in an amount to be proved at trial.

66.    As a direct and proximate result of Fennell's conduct detailed above and in other respects, the Bank has been damaged in an amount to be proved at trial.

### EIGHTH CAUSE OF ACTION
### CONSPIRACY
### (ALL DEFENDANTS)

67.    The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 66 of the Complaint.

68.    Defendants formed an unlawful agreement to engage in the conduct set forth herein, including but not limited to, breaching their fiduciary duties to the Bank and interfering with the Bank's business relations.

69.    Defendants each agreed to participate and did participate in the conspiracy, in furtherance of their own financial gain.

15

70.     As a direct and proximate result of their conspiracy and acts taken in furtherance of the conspiracy, the Bank has been damaged in an amount to be proven at trial.

### PUNITIVE DAMAGES

71.     The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 70 of the Complaint.

72.     Because of the willful, wanton, vile, and intentional nature of Defendants' conduct as alleged herein, and their conscious disregard and abuse of a position of trust, Defendants are liable for punitive damages, in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, the Bank of Saipan prays for judgment against the Defendants as follows:

1.     General damages against all Defendants, jointly and severally, in an amount to be proven at trial;

2.     Punitive damages in an amount appropriate to punish Defendants and set an example to others;

3.     Disgorgement of all costs and fees paid by the Bank to the Defendants;

4.     An award of attorney's fees and costs incurred in this action; and

16

5.      For other such relief as the Court may deem proper.

Dated this ____ day of November, 2004.

> **MAIR, MAIR, SPADE & THOMPSON**
> **CALVO AND CLARK, LLP**
> Attorneys for The Bank of Saipan, Inc.
>
> By:_____
>       DAVID A. MAIR


## DEMAND FOR JURY TRIAL

The Bank of Saipan hereby demands a trial by jury of all issues triable of right by

jury.

Dated this ____ day of November, 2004.

> **MAIR, MAIR, SPADE & THOMPSON**
> **CALVO AND CLARK, LLP**
> Attorneys for The Bank of Saipan, Inc.
>
> By:_____
>       DAVID A. MAIR


P042163.rtt

17

# EXHIBIT 2

REXFORD C. KOSACK
GLENN A. JEWELL
LAW OFFICES OF REXFORD C. KOSACK
Bank of Hawaii Bldg., Third Floor
P.O. Box 410
Saipan, MP 96950
Telephone: (670) 322-8800

Attorneys for Defendant
Randall T. Fennell

IN THE SUPERIOR COURT OF THE COMMONWEALTH
OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| THE BANK OF SAIPAN, INC. | ) | Civil Action No. 04-0449A |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RANDALL T. FENNELL; RICHARD | ) | **FORMER TEMPORARY RECEIVER** |
| PIERCE; WHITE, PIERCE, MAILMAN, | ) | **RANDALL T. FENNELL'S** |
| & NUTTING; DAVID W. AXELROD; | ) | **PETITION FOR CERTIFICATION** |
| SCHWABE, WILLIAMSON & WYATT, | ) | **PURSUANT TO P.L. 15-22** |
| AND DOES 1-20, | ) | |
| | ) | Judge: Hon. Arthur Barcinas |
| Defendants. | ) | Date: [To Be Set at a Later Date] |
| | ) | Time: |
| _____ | ) | |
| BOARD OF MARIANAS PUBLIC | ) | |
| LANDS AUTHORITY and MARIANAS | ) | |
| PUBLIC LANDS AUTHORITY, | ) | |
| | ) | |
| Intervenor-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RANDALL T. FENNELL;  RICHARD | ) | |
| PIERCE;  WHITE, PIERCE, MAILMAN | ) | |
| & NUTTING;  DAVID W. AXELROD; | ) | |
| SCHWABE, WILLIAMSON & WYATT; | ) | |
| AND DOES 1-20, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## PETITION FOR CERTIFICATION

1. In August of 2006, the CNMI enacted P.L. 15-22. Public law 15-22 is modeled on the federal "Westfall Act." It calls upon the Attorney General to decide whether a defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arises. When the Attorney General makes this certification under P.L. 15-22, the defendant employee is dropped out of the case entirely and the CNMI government becomes a defendant in his place.

2. Former temporary receiver Randall T. Fennell ("Fennell") applied to the Attorney General for certification under P.L. 15-22 in September of 2006. He requested the Office of the Attorney General to recuse itself on the issue of certification due to its conflict of interest with respect to the issue. The Office of the Attorney General had a conflict because it was already representing a plaintiff in the case. Under the law, if the Attorney General recused himself, the Court would decide the issue. For over two years the Attorney General failed to declare a conflict or take any action of any kind on the matter.

3. Finally, on December 12, 2008, nearly 27 months after Fennell first requested certification, the Attorney General's office filed a document stating that it was declining to issue an opinion on whether Fennell had been a government employee. Thus, the issue of whether, under P.L. 15-22, Fennell should be dropped from this case, and the CNMI made a defendant in his place, is appropriately before this Court.

4. Pursuant to Public Law 15-22 Fennell hereby petitions this Court to certify that the acts alleged against him in this lawsuit, if they occurred, occurred within the scope of his employment as a court-appointed temporary receiver. Therefore, as provided by P.L. 15-22, Fennell asks that the

Court dismiss him from the lawsuit and substitute the CNMI government into the lawsuit as a defendant in his place.

5.  At this time, Fennell is filing this Petition without a memorandum in support.  This is because he filed a motion to dismiss which has already been briefed and argued and which, if granted, would resolve this matter in Fennell's favor fully and finally without the need to decide the Petition.  Fennell has filed this Petition at this time out of an abundance of caution and to ensure no argument is made that he has somehow waived his right to file the Petition.  Fennell will file a memorandum in support of this Petition if and when it becomes necessary, pursuant to any briefing schedule the Court may set.

Dated: January 9, 2009.

Respectfully submitted,


___/s/_____
Rexford C. Kosack, CNMI Bar No. F0140
Attorney for Defendant Randall T. Fennell

3

# EXHIBIT 3

REXFORD C. KOSACK
GLENN A. JEWELL
LAW OFFICES OF REXFORD C. KOSACK
Bank of Hawaii Bldg., Third Floor
P.O. Box 410
Saipan, MP 96950
Telephone: (670) 322-8800

Attorneys for Defendant
Randall T. Fennell

IN THE SUPERIOR COURT OF THE COMMONWEALTH
OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| THE BANK OF SAIPAN, INC. | ) | Civil Action No. 04-0449A |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RANDALL T. FENNELL; RICHARD | ) | **FORMER TEMPORARY RECEIVER** |
| PIERCE; WHITE, PIERCE, MAILMAN, | ) | **RANDALL T. FENNELL'S** |
| & NUTTING; DAVID W. AXELROD; | ) | **RESPONSE TO THE BANK OF** |
| SCHWABE, WILLIAMSON & WYATT, | ) | **SAIPAN'S REPLY TO HIS COMMENTS** |
| AND DOES 1-20, | ) | **ON REQUEST FOR SCHEDULING** |
| | ) | **CONFERENCE** |
| Defendants. | ) | |
| | ) | Judge: Hon. Arthur R. Barcinas |
| | ) | Date: |
| | ) | Time: |
| BOARD OF MARIANAS PUBLIC | ) | |
| LANDS AUTHORITY and MARIANAS | ) | |
| PUBLIC LANDS AUTHORITY, | ) | |
| | ) | |
| Intervenor-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RANDALL T. FENNELL;  RICHARD | ) | |
| PIERCE;  WHITE, PIERCE, MAILMAN | ) | |
| & NUTTING;  DAVID W. AXELROD; | ) | |
| SCHWABE, WILLIAMSON & WYATT; | ) | |
| AND DOES 1-20, | ) | |
| | ) | |
| Defendants. | ) | |

The Bank of Saipan has now filed a reply on the subject of a scheduling conference and David W. Axelrod and the Schwabe law firm have filed a response to that reply. Former temporary receiver Randall T. Fennell files this response to the Bank's reply and does so to briefly address new matters.

First, the Bank is correct that we have received the Attorney General's "Notice of Declination to Act on Defendant Fennell's Request for Certification." This "Declination" was filed on December 12, 2008.

Second, we have now filed Fennell's "Petition for Certification Pursuant to P.L. 15-22." As explained in the Petition, it was filed without a memorandum in support. This is because we believe Fennell's motion to dismiss should be decided first. The motion to dismiss has already been briefed and argued and, if granted, would resolve this matter in Fennell's favor fully and finally without the need to address the Petition. (If it later becomes necessary, Fennell will file a memorandum in support of the Petition pursuant to any briefing schedule the Court may set.)

Finally, in its Reply, the Bank suggests that there is a close relationship between the issue of whether Fennell's Petition for Certification should be granted and whether immunity should be granted. The Bank wants the Court to conduct a so-called "plenary hearing" on the subject of immunity and have the Petition for Certification dealt with at the same time.[1] These are, and should

---

[1]There are innumerable problems with the Bank's request for this "plenary hearing," not the least of which are: the fact that the sufficiency of the complaint has not been ruled on, no answer has been filed, and no defendant has yet asserted the affirmative defense of qualified immunity. For a more complete discussion of the problems with the Bank's call for a "plenary hearing," please see Fennell's "Opposition to So-Called 'Threshold Motion' and Request for Hearing on Immunity Issue" which was attached as Exhibit "A" to Defendants Axelrod and Schwabe's "Response to the Bank of Saipan's Reply to the Defendants' Response to its Request for Scheduling Conference," filed December 24, 2008.

be treated as, separate issues.  Whether Fennell, as a former employee of the Court, should be granted certification under P.L. 15-22 and dismissed from the case will be decided based on whether or not his alleged acts fell within the scope of his employment, not whether he is entitled to qualified or other immunity for his conduct.  These two independent issues should not be conflated.

Dated: January 9, 2009.

Respectfully submitted,

_____/s/_____
Rexford C. Kosack, CNMI Bar No. F0140
Glenn A. Jewell, CNMI Bar No. F0176