13. After that donation, the Walsworth Firm and Mr. Mendiola became participants, along with Justice Castro, in the formation and funding of the HMF, and participated in the *ex parte* contacts with Justice Castro concerning the same. A luncheon was held on May 12, 2000 to which those of the Estate involved with the HMF were invited by Justice Castro. See invitation letter Exhibit 20, and, on information and belief, pictures taken at the gathering. See Exhibit 21.

14. I was not notified of these ex parte contacts between Justice Castro and other attorneys for parties in the Hillblom Estate litigation, although I was counsel for an heir claimant.

15. The original drafts and correspondence attached hereto indicate that the HMF as originally anticipated would, at Mr. Lujan's request, have Justice Castro as a permanent board member and give him discretion over dispersing a certain pool of money in the HMF. For example, see Mr. Lujan's letter to the SRA and Justice Castro dated May 22, 2000. See Exhibit 26, and early drafts of the HMF.

16. The early drafts also provide for the board members to hire staff and be reimbursed for expenses such as travel.

17. The Articles and Bylaws of the HMF as finally filed in September of 2000 do not follow the earlier drafts. On information and belief the earlier drafts linking Board membership to donations and making Justice Castro a permanent board member would have rendered the HMF ineligible for non-profit or charitable foundation tax status. The goal of the HMF remains to support the activities of the law library and the judiciary. See Exhibit 1.

18. Current Board members of the HMF are former Hillblom Estate Special Administrator Diego Mendiola, former Hillblom Estate Special Master Pedro Atalig, and David Lujan, based on records file with the CNMI. Exhibit 1.

19. I believe that working so hard and long with Mr. Lujan in establishing the HMF has biased Justice Castro in favor of David Lujan and the JLH Trust. The Exhibits showing communication between Mr. Lujan and Justice Castro exhibit Mr. Lujan's attempts to influence Justice Castro by providing funding for a matter obviously of great concern to Justice Castro, the law library.

20. I certainly do not fault Justice Castro for wanting to promote the law library. However, the canons of ethics for lawyers and the Code of Judicial Conduct are meant to uphold and protect the objectivity and independence of the legal profession and of the judiciary. These rules are meant to apply even if the goal being sought is worthy and charitable. Having such close contact with a counsel who is donating a client's money to create a court sponsored charity during ongoing litigation can only lead to the appearance of bias, and may create bias on the part of a judge, even if subconsciously.

21. On information and belief, David J. Lujan donated $200,000.00 to charity on Guam upon the request of a judge, and subsequently, the judge, with urging from an appalate court, recused himself from a proceeding in *EIE Guam Corp. v. The Long Term Credit Bank of Japan, Ltd. et al., U.S. D.C. (D.G. Guam), Civ. Action No. 00-0009*, which Mr. Lujan was counsel of record for a party.

22. I further believe that Justice Castro has exhibited this bias in several manners.

23. Mr. Lujan notes in his affidavit in the lower court (Exhibit 39) which was filed not as part of any motion nor on behalf of an identifiable party, that his client, Junior, received "millions" more than my client from the Hillblom Estate. That two children sharing an estate equally would receive awards differing by millions of dollars shows bias towards Mr. Lujan and the JLH Trust by Justice Castro,

24. Any fair reading of the April 8, 2000 transcript certainly shows the esteem in which Justice Castro holds Mr. Lujan, who at that time was scheduled to be a board member along with Justice Castro on the HMF.

25. Justice Castro's actions in this case can be explained only by his continued friendship and close relationship with Mr. Lujan. Justice Castro issued an order removing me as Receiver and removing my counsel within hours of the Bank of Saipan's unilateral petition to this Court for an extraordinary writ. Justice Castro did so without affording the Receiver, as the representative of CNMI Superior Court Judge Edward Manibusan and responsible for protecting the depositors of the Bank of Saipan, any meaningful opportunity to present a case. Justice Castro did not afford the Receiver any opportunity to be heard at argument or to present evidence before he ruled. Justice Castro did not permit the Receiver any meaningful opportunity to present the law that clearly establishes that I have conducted the office of Receiver appropriately in all respects and only with Judge Manibusan's direct supervision as his representative. Justice Castro cited no law and no facts that justify his actions which served to protect his friends and the major donor to his pet charity.

26. I am also informed and believe that Justice Castro is a close personal friend and confidant of Joe Lifoifoi, who was a director of the Bank of Saipan during relevant times. The Bank's directors all face potential liability for the failure of the bank. Mr. Lifoifoi will certainly be called as a witness in any litigation involving the actions of the bank's directors. Mr. Lifoifoi was appointed by Justice Castro to serve as liquidating trustee for the Hillblom Estate until March 8, 2002, after which Mr. Lifoifoi became a director of the Bank of Saipan. To demonstrate the high respect and friendship Mr. Lifoifoi and Justice Castro share, I would point to the Order Approving Termination of Liquidating Trust, filed with the Superior Court on March 8, 200. Attached, See Exhibit 38 see page 14. Despite the fact this was an order implementing a negotiated agreement between the parties, Justice Castro interliniated the $150,000 fee agreed to as compensation for Mr. Lifoifoi, and hand wrote in "$350,000" without notice or hearing. Certainly this reasonably brings into question whether Justice Castro can be impartial toward Mr. Lifoifoi or the Bank on which Mr. Lifoifoi served as director with David Lujan.

27. Justice Castro's selection of Guam Superior Court Judge Lamorena to provide second vote on the CNMI Supreme Court is further evidence of Justice Castro's bias in favor of, and his close relationship with, Mr. Lujan and the JLH Trust. Justice Castro knows of Judge Lamorena's relationship with Mr. Lujan, because, as Justice Castro knows from the Hillblom probate, Judge Lamorena is the guardianship court judge for Mr. Lujan's client, the JLH Trust. Judge Lamorena approved the formation of the JLH Trust and Mr.Lujan's representation of the JLH Trust. On information and belief, Justice Lamorena has continued oversight authority of the

JLH Trust. The JLH Trust is a potential defendant for its unlawful receipt of Bank of Saipan Funds.

28. I am informed and believe, and on that basis state, that David Lujan's sister is, and at material times has been, the chambers clerk of Judge Lamorena prior to and during these Receivership proceedings.

29. Judge Lamorena's close relationship with Mr. Lujan is so well established that he has previously recused himself from matteres involving Mr.Lujan. See Motion to Recuse Presiding Judge Albert C. Lamorena dated June 14, 2002. In this case, Justice Castro immediately selected Judge Lamorena to rule on matters initiated by Mr.Lujan and the Bank of Saipan.

30. Mr. Lujan's naked affidavit which was not accompanied by a motion or other pleading submitted in the lower court in this proceeding is full of misrepresentations and false statements, including the statements he attributes to me. It is true that I have no respect for Mr. Lujan's tactics in the Hillblom probate and the actions that he took, as described in this affidavit, to influence Justice Castro to favor Mr. Lujan and Mr. Lujan's client. Those actions bring disrespect to the CNMI judicial system.

31. My opinion of Mr. Lujan has no effect, however, upon my performance of the responsibilities of the Receiver for the Bank of Saipan. Neither the Receiver nor the Superior Court that appoints the Receiver and to whom the Receiver reports for guidance and direction will serve as the fact-finder in any claim that might be brought on behalf of the Bank of Saipan to remedy the frauds and other wrongful conduct that led to the Bank's collapse and the Bank's inability to pay innocent depositors the funds that they placed in trust with the Bank. The CNMI Superior Court

may conclude that actions need to be brought against Mr. Lujan and the JLH Trust and those persons acting in concert with Mr. Lujan who received millions of dollars from the Bank of Saipan shortly before its collapse. The Superior Court may conclude that there is substantial evidence that the actions by Mr. Lujan and the JLH Trust, in concert with others, knowingly defrauded the Bank and led to the events which saw millions of trust dollars leave the Bank at the expense of depositors, including the CNMI government. If the Superior Court reaches those conclusions, the Superior Court who appoints the Receiver will not sit in judgment, but those cases will be assigned to a different court for an independent determination. Thus, Mr. Lujan has nothing to fear but the truth.

32. The truth regarding the role Mr. Lujan played or did not play in the collapse of the Bank of Saipan should be determined by independent judicial officers. Justice Castro is directly tied to Mr. Lujan in conduct which persists to this day and which violates clear canons of judicial independence and propriety. Accordingly, Justice Castro must be disqualified from hearing matters affecting Mr. Lujan's interest or the interests of his client, the JLH Trust. All actions taken by Justice Castro, including his appointment of Mr. Lujan's admitted friend or associate, Judge Lamorena, should be vacated and independent judicial officers appointed judicial officers to hear all further proceedings in this case.

33. In summary, Mr. Lifoifoi and Mr. Lujan are or were directors of the Bank of Saipan. The directors of the bank may face civil liability for the collapse of the bank. Mr. Lifoifoi will almost certainly be called as a witness if this matter goes to trial. These gentlemen are personal friends of Justice Castro. The JLH Trust may face liability for the wrongful removal of funds from the Bank of Saipan. The JLH Trust is the major past donor and is expected to donate further to the

HMF, of which Justice Castro is one of the founding fathers. Justice Castro should not be involved in decisions deciding the fate of these parties.

                                         */s/ signature*

                               RANDALL T. FENNELL
                               RECEIVER FOR BANK OF
                               SAIPAN

# EXHIBIT 9

number: 42577

| Doc No. | Doc Type | Grantor | Grantee | Bk | Page | Description |
|---|---|---|---|---|---|---|
| 0-1985 | WD | Castro, Alfredo Quichocho | Borja, Antonio H | 10 | 132 | Lot 254 T 22 (964m2) Plat 254 T 02 |
| 0-1985 | WD | Castro, Alfredo Quichocho | Borja, Antonio H | 10 | 132 | Lot 254 T 21 (977m2) Plat 254 T 02 |
| 0-1986 | WD | Castro, Alfred Q | Borja, Antonio H | 10 | 131 | Lot 254 T 21 (977m2) |
| 0-2496 | WD | Castro, Alexandro Cruz | Manglona, Henry C | 10 | 144 | Lot 2, Block 9 |
| 1-0327 | QC | DPL | Castro, Allen Kumangal | 11 | | Lot 045 A 162 (946m2) |
| 1-0712 | WD | Manglona, Henry Castro | Castro, Alexandro Cruz | 11 | 19 | Lot 343 R 01 (1,858m2) |
| 1-1827 | AQC | BPL | Castro, Allen Kumangai | 11 | 48 | Lot 045 A 162 (01-0327)(Amended Quitclaime d |
| 2-0630 | WD | Castro, Alfred Q | Villagomez, Edward A | 11 | 92 | Lot 002 T 54 (332m2) |
| 379 | L | Demapan, Margarita A. | Castro, Alexandro C. | 1 | 10 | S-GP; no data. |
| 379 | L | Demapan, Margarita A. | Castro, Alexandro C. | 1 | 10 | S-GP; no data. |
| 5252A | D.G. | Castro, Joaquin V., heirs | Castro, Alexandro C. C. | 8 | 44 | R-SS; Lot 2, Blk. 9; 511 m2 |
| 5252A | D.G. | Castro, Segundo C. | Castro, Alexandro C. C. | 8 | 44 | R-SS; Lot 2, Blk. 9; 511 m2 |
| 5252A | D.G. | Castro, Joaquin V., heirs | Castro, Alexandro C. | 8 | 44 | R-SS; Lot 2, Blk. 9; 511.97 m2 |
| 5252A | D.G. | Castro, Segundo C. | Castro, Alexandro C. | 8 | 44 | R-SS; Lot 2, Blk. 9; 511.97 m2 |
| 5-0379 | L | DEMAPAN, MARGARITA A. | CASTRO, ALEXANDRO C. | 1 | 10 | NO DATA |
| 5-5252A | DG | CASTRO, JOAQUIN V., HEIRS | CASTRO, ALEXANDRO C. | 8 | 44 | L2, BLK. 9 |
| 5-5252A | DG | CASTRO, JOAQUIN V., HEIRS | CASTRO, ALEXANDRO C.C. | 8 | 44 | L2, BLK. 9 |
| 5-5252A | DG | CASTRO, SEGUNDO C. | CASTRO, ALEXANDRO C.C. | 8 | 44 | L2, BLK. 9 |
| 5-5252A | DG | CASTRO, SEGUNDO C. | CASTRO, ALEXANDRO C. | 8 | 44 | L2, BLK. 9 |
| 4-1322 | Q.C. | Manglona, Justin S. | Castro, Alexandro M., Jr. | 1 | 45 | S-AL; Tract 21714-I-6; 1539 m2 |
| 4-1322 | QC | MANGLONA, JUSTIN S. | CASTRO, ALEXANDRO M., JR. | 1 | 45 | T21714-1-6 |
| 5-2568 | QC | MPLC | Castro, Alfredo & Mar | 1 | 146 | Lot 006 T 110 (976m2) |
| 5-2568 | QC | MPLC | Castro, Alfredo & Mar | 1 | 146 | Lot 006 T 110 (976m2) |
| 5-2568 | QC | MPLC | CASTRO, ALFREDO & MARGARI | 1 | 146 | L006T110 |
| 7-0293 | DG | Duenas, George & Margarita | Castro, Alexandro C | 2 | 23 | Tract 22713-2-1 (929m2) |
| 7-0293 | DG | Duenas, George & Margarita | Castro, Alexandro C | 2 | 23 | Tract 22713-2-1 (929m2) |
| 7-0293 | DG | Duenas, George & Margarita | Castro, Alexandro C | 2 | 23 | Tract 22713-2-1 (929m2) |
| 7-0293 | DG | DUENAS, GEORGE & MARGARITA | CASTRO, ALEXANDRO C. | 2 | 23 | T22713-2-1 |
| 7-0293 | DG | DUENAS, MARGARITA & GEORGE | CASTRO, ALEXANDRO C. | 2 | 23 | T22713-2-1 |
| 7-3094 | D.G. | Duenas, Margarita A. | Castro, Alexandro C. | 2 | 90 | S-NH; Tract E.A. 445-5-3-RI; 929 m2 |
| 7-3094 | DG | Duenas, Margarita A | Castro, Alexandro C | 2 | 90 | EA 445-5-3-R1 (929m2) |
| 7-3094 | DG | Duenas, Margarita A | Castro, Alexandro C | 2 | 90 | EA 445-5-3-R1 (929m2) |
| 7-3094 | DG | DUENAS, MARGARITA A. | CASTRO, ALEXANDRO C. | 2 | 90 | EA445-5-3-R1 |
| 7-3095 | D.G. | Castro, Alexandro C. | Duenas, Margarita A. | 2 | 90 | S-NH; Tract 22713-2-I; 929 m2 |
| 7-3095 | DG | Castro, Alexandro C | Duenas, Margarita A | 2 | 90 | Tract 22713-2-1 (929m2) |
| 7-3095 | DG | CASTRO, ALEXANDRO C. | DUENAS, MARGARITA A. | 2 | 90 | T22713-2-1 |
| 7-3279 | QC | MPLC | Castro, Alexandro C | 2 | 94 | Lot 345 R 186 (986m2) |
| 7-3279 | QC | MPLC | CASTRO, ALEXANDRO | 2 | 94 | L345R186 |

# EXHIBIT 10

CompuServe Mail - Message View                                                                 Page 1 of 2



New Mail: Message    Old Mail    Sent Mail                                    Help | Sign Off

Get Mail | Create Mail | Address Book | Reply | Reply All | Forward | Keep As New | Delete

**Subject:** Fax                                                           « Previous | Next »
**Date:** Tue, 11 Jun 2002 17:56:35 -0700
**From:** "Becker, Julie" <JBecker@SCHWABE.com>
**To:** "Randall T. Fennell Esq. (E-mail)" <rtfennell@cs.com>

I am going to stay tonight until I hear that you have received everything. Can you please email me as soon as the fax is complete? Don't call, because our voice mail message system is down for upgrades.
Here is what I faxed:

* My three Excel sheets of payments to Mendiola, Atalig and Walsworth

* Appendix I to Petition... This is the report covering estate expenses 5/95-7/31/99. The document is a total of 81 pages; the last page of the statement itself is numbered 79.
* Declaration of Aguilar (2 pages), with Exhibit D (24 pages). Exhibit D is the report covering estate expenses 8/1/99-1/31/00.
* Declaration of Jacob (2 pages), with Exhibit A (13 pages). Exhibit A is the report covering estate expenses 2/1/00-3/31/00.
* Report Regarding Executor's Compliance with Final Distribution Order (10 pages), with Exhibit L (8 pages). Exhibit L is the report covering estate expenses from 4/1/00-4/28/00.

* Petition for Partial Final Accounting and Approval of Potential Waiver of Conflicts (7 pages), with Declaration of David Mair (2 pages), with Exhibit 1 (5 pages), Exhibit 2 (9 pages), Exhibit 3 (8 pages), Exhibit 4 (9 pages), Exhibit 5 (8 pages), Exhibit 6 (5 pages), and Exhibit 7 (7 pages). Exhibits 1-7 are the reports covering Liquidating Trust expenses 4/1/00-12/31/01.
* Supplemental Petition... (3 pages), with Exhibit A (5 pages), Exhibit B (4 pages), Exhibit C (2 pages), and Exhibit D (2 pages). Lifoifoi's Notice of Joinder (2 pages) is included; you can discard this. Exhibits A-D are the reports covering Liquidating Trust expenses January and February 2002.
* Petition for Final Accounting... (5 pages), with Exhibit A (8 pages). Exhibit A is the report covering Liquidating Trust expenses 3/1/02-4/8/02.

* Order Granting Approval of Compensation to SA... (3 pages). This covers the Carlsmith settlement proceedings.

* Atalig's 12/23/99 Recommendation on Tax Allocation.

Hope to hear from you soon.

http://csmail.compuserve.com/msgview.adp?folder=SU5CT1g=&uid=3763370                  6/12/02