# EXHIBIT 9

1  REXFORD C. KOSACK
   GLENN A. JEWELL
2  LAW OFFICES OF REXFORD C. KOSACK
   Bank of Hawaii Bldg., Third Floor
3  P.O. Box 410
   Saipan, MP 96950
4  Telephone: (670) 322-8800

5  Attorneys for Defendant
   Randall T. Fennell

6

7            IN THE SUPERIOR COURT OF THE COMMONWEALTH
                OF THE NORTHERN MARIANA ISLANDS
8

9  THE BANK OF SAIPAN, INC.          )      Civil Action No. 04-0449A
                                     )
10              Plaintiff,           )
                                     )
11      vs.                          )      **OPPOSITION TO SO-CALLED
                                     )      "THRESHOLD MOTION" AND
12                                   )      REQUEST FOR HEARING ON
   RANDALL T. FENNELL; RICHARD       )      IMMUNITY ISSUE**
13 PIERCE; WHITE, PIERCE, MAILMAN,   )      Judge   Honorable Juan T. Lizama
   & NUTTING; DAVID W. AXELROD;      )      Date:   November 8, 2005
14 SCHWABE, WILLIAMSON & WYATT,      )      Time:   9:00 a.m.
   AND DOES 1-20,                    )
15                                   )
                Defendants.          )
16                                   )
                                     )
17 _____ )

18                        **INTRODUCTION**

19      Hard-bitten newspaper reporters think they have seen everything.  They believe there is

20 nothing new in the news.  But, occasionally they are surprised by the rare story that is unlike any

21 before.  They call these "man bites dog" stories.

22      Well, the Directors of the Bank of Saipan, Inc. (the "Directors") have filed a "man bites dog"

23 motion.  It is indeed new to see a motion where:

24      •   the plaintiff asserts a defense for the defendants,

25      •   the plaintiff seeks to then schedule a hearing on the defendants' defense,

26      •   the plaintiff seeks to have a defense heard and determined before the defendants have

27          even filed an answer to the complaint, and

28      •   the plaintiff seeks to have a "jury hearing" in the case before the complaint is

1    finalized, the answer filed, and the issues thereby joined.

2    It is no surprise that the Bank is unable to cite a single case where this has been done before. There

3    is no precedent for this deviation from the Commonwealth Rules of Civil Procedure.

4    There are some things which the parties can agree on. First, we agree that Fennell can assert

5    a good faith immunity defense in this case. Second, we agree that the issue of qualified immunity

6    is decided at the threshold of the case.

7    What we do not agree on is *when* that threshold is reached. The Directors believe it is now

8    – at a point when the First Amended Complaint is under attack on at least three different fronts: 1)

9    by the Order of October 14, 2005 Concerning the Court's Order of November 16, 2004 which

10   requires the Bank to provide proof of fee agreements, cost controls, and a $2,000,000 third party

11   guaranty of costs (which may bring this case to a conclusion), 2) by the Statute of Limitations motion

12   (which may bring this case to a conclusion), and 3) by a Rule 12(b)(6) motion which may result in

13   a dismissal of the case, or the filing of an entirely new complaint with new causes of action. The

14   Directors' argument makes no sense.

15   The qualified immunity determination is properly made after the pleading motions are all

16   finally determined, an answer is filed, a third party complaint and/or counterclaims are filed, and an

17   answer and/or reply are filed to these pleadings. Only at that point do we know what causes of action

18   are going to be heard, what facts are admitted, what facts are disputed, and what defenses are raised.

19   At that point, and no earlier, the issues are "joined." At that point, Fennell makes a summary

20   judgment motion which then raises his good faith immunity defense for determination. As

21   recognized by the U.S. Supreme Court, *that* is the "threshold" when the issue of qualified immunity

22   is considered – at summary judgment.

23   We will show in this memorandum that this is how cases proceed under the Rules of Civil

24   Procedure, that the Bank has admitted this is the correct procedure in their prior arguments, that the

25   cases they cite provide them with no support, that the U.S. Supreme Court's rulings support

26   following the procedure we have just detailed, that the Commonwealth Supreme Court in *Atalig v.*

27

28   2

1    *Bank of Saipan* envisioned our process, and that to try to put this case before a jury at this time
2    would be impossible and a waste of time.

3        There is one final issue. The Bank has stated that qualified immunity is to be determined by
4    a jury, not by this Court. We disagree. The normal rule is that the court makes the determination.
5    We will show that; however, the Court does not need to make that determination at this time, since
6    it is clear that the Directors' motion should be denied for two essential reasons – they are not the
7    proper party to raise our defense, and to seek a qualified immunity hearing at this time is premature.
8    When we raise the defense by motion and request a hearing – which we certainly will want to do
9    once the issues are properly joined – the Court can hear arguments from the Bank that this case is
10   the exception and that a jury should determine immunity.

11                                                    **I.**

12   **THE COURT SHOULD FOLLOW THE ACCEPTED PATH FOR ADDRESSING THE**
13   **IMMUNITY DEFENSE, NOT THE NOVEL PATH THE DIRECTORS SUGGEST**

14       The Directors act as if they are representing to the Court the *proper* way for the defense of
15   qualified immunity to be decided by the Court. They could not be more wrong when they suggest
16   that the Court may impanel a jury to decide the defense of qualified immunity, before motions to
17   dismiss have been decided, before a final complaint and answer have been filed, before Fennell has
18   asserted the affirmative defense of qualified immunity, and before Fennell has had an opportunity
19   to move for an order that he is entitled to application of the immunity from suit.

20       There is a normal progression of events for the affirmative defense of qualified immunity.
21   It has been recognized by hundreds, if not thousands, of courts all over the country. It has also been
22   recognized by the United States Supreme Court numerous times.

23       First, obviously, the plaintiff first files and serves a complaint. Com. R. Civ. P. 4(c), 7.

24       Second, the defendant must respond to the complaint. If he believes it is subject to dismissal
25   for failure to state a claim upon which relief can be granted, he may bring a motion to dismiss the
26   complaint and not file an answer. Com. R. Civ. P. 12(b)(6).

27

28                                                    3

Third, if the motion to dismiss is denied, the defendant must file an answer. Com. R. Civ. P. 12(a)(3).

Fourth, with the answer, the defendant may assert "affirmative defenses." Com. R. Civ. P. 8(c). There is no question that "qualified immunity" is an affirmative defense. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) ("[q]ualified or 'good faith' immunity *is an affirmative defense that must be pleaded by a defendant official*") (emphasis added).

Fifth, if the defendant wishes, he may move for summary judgment on the issue of qualified immunity. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) ("on summary judgment, the judge may determine" whether the defense of qualified immunity applies).

Sixth, although the United States Supreme Court has declared that "ordinarily" the issue of qualified immunity should be decided by the Court and not by a jury,[1] in some limited circumstances (*e.g.* failure of summary judgment) it is conceivable that certain specific factual disputes relating to qualified immunity may require resolution by a jury at trial.

That is, *if* there is a jury, the jury might be called upon to resolve certain factual disputes relating to qualified immunity at *the* trial, not at some made-up immunity "jury hearing"[2] that the Directors have requested. Here, we have a pending motion to strike the jury demand. So, we do not yet know whether there will be a jury to determine *any* issue, let alone whether there will be a jury to resolve factual disputes relating to qualified immunity. In addition, we do not know whether there will be any factual disputes with respect to qualified immunity. Take for example the issue of *ex parte* contacts. There will likely be no factual dispute with respect to them, just a pure "question of law" as to whether Fennell acted in accordance with the Court's orders. *Cf. Elder v. Holloway*, 510 U.S. 510 (1994) (whether a federal right was clearly established for purposes of qualified immunity determination is a "question of law, not one of 'legal facts'"). But, we will not know where the factual disputes will be until after we have a final complaint, the answer and affirmative defenses

---

[1] *Hunter v. Bryant*, 502 U.S. 224, 227-28 (1992).

[2] Directors' Memorandum, p. 5, ln. 1.

4

1   have been filed, and Fennell's summary judgment motion on qualified immunity has been filed.

2                                              **II.**

3       **THE DIRECTORS KNOW THAT THE ACCEPTED PATH IS THE RIGHT PATH**

4           We have now shown that there is an ordinary and accepted path for resolution of the issue

5   of qualified immunity. It requires, at a minimum, that there be a final complaint, an answer, and

6   assertion of affirmative defenses before the qualified immunity may be addressed. The Directors are

7   inviting the Court to commit error by wandering off the accepted path.

8           The Directors say they want the Court to have a *jury* decide the issue of qualified immunity

9   *before* there is a final complaint, *before* there is an answer, and *before* qualified immunity has been

10  asserted as an affirmative defense. And, they say *they*, as the plaintiff, can assert the issue. Worse

11  than the Directors making this argument is the fact that *they know it is wrong.*

12          How can we say the Directors know their argument has no merit? By looking at the

13  Directors' Reply Brief in the *Atalig* case. That brief was filed by Mair, Mair, Spade & Thompson

14  and Calvo & Clark, LLP, and signed by Randall Todd Thompson on behalf of David A. Mair. When

15  the Directors and their lawyers filed that brief, they obviously were not thinking that some day they

16  would argue that *they* had the power to raise the issue of qualified immunity and a *jury* would have

17  to decide whether it applied. Back then – in August of 2003 – before this case was filed, in that brief

18  the Directors candidly admitted that:

19          If and when Fennell is sued, **he is certainly entitled to raise immunity as an
            affirmative defense** and to **move the Court for dismissal on that basis**. At such
20          time, **the court**, applying the law to the allegations of the Complaint, **will make a
            determination** as to whether immunity should hold. . . . [T]he **Commonwealth
21          courts must carefully weigh** the facts and law at hand when immunity is raised as
            a defense. . . .

22  Appellant's Reply Brief, p. 20 (emphases added; citation omitted) (copies of the relevant pages are

23  attached hereto as Exhibit "A").[3]

24          But, that is not the Directors' only admission on the topic. As if to drive the point home, they

25

26          [3] Fennell asks the Court to take judicial notice of the relevant pages of the Directors'

27  Reply Brief pursuant to Com. R. Evid. 201.

28                                              5

go on to say:

> What Fennell seeks in this case is to be clothed with a species of immunity far beyond that to which even judges and justices are entitled. If a judge or justice is sued, he or she must – **like every other <u>defendant</u> – respond to the complaint** and thereafter **move to dismiss it based on ground of immunity**. At that point, **the <u>court</u> hearing the matter examines the allegations and facts at hand and makes a determination** as to whether the particular complaint at hand is barred by immunity.

*Id.*, p. 21 (emphases added).

So, taken together, what are the Directors admitting in the quoted language? They are admitting that:

1. Fennell, as the <u>defendant</u>, must "respond to the complaint." (Second quote.) This necessarily means that first there must be a final, settled complaint.

2. With his answer, <u>Fennell</u> "is certainly entitled to raise immunity as an affirmative defense." (First quote.)

3. After answering and raising immunity as an affirmative defense, <u>Fennell</u> is entitled to "move the Court for dismissal on that basis." (First quote.)

4. Once <u>Fennell</u> has moved the Court for dismissal on the basis of qualified immunity, "[a]t such time, <u>the court</u>, applying the law to the allegations of the Complaint, will make a determination as to whether immunity should hold." (First quote) (emphasis added).

Thus, the Directors have previously *acknowledged* everything we are arguing here, and have *refuted* the propriety of everything they are asking for here.

### III.

### THE DIRECTORS' PROPOSAL WOULD WASTE TIME AND MONEY

It is clear from our first section, above, that a matter must progress to a sixth step (the trial) before there is any chance a jury could decide any issues relating to qualified immunity. We are currently only at step two (consideration of motions to dismiss). Why would the Court want to skip steps three (filing an answer), four (filing affirmative defenses), and five (filing a qualified immunity motion), and go straight to step six? The Court should not, and we expect would not, want to.

The Court has a duty to conserve judicial resources. Com. R. Civ. P. 1. The Court should

1  adopt a course of conduct that will conserve, as opposed to waste, resources.

2      The motions to dismiss have already been briefed and argued. This case may be resolved on
3  the motions to dismiss. The statute of limitations motion may dispose of the case entirely. The Rule
4  12(b)(6) pleading motion could remove entire causes of action. For example, the Court may agree
5  that Fennell had no fiduciary duty to the Bank, and/or that fraud has not been plead with the
6  necessary particularity or has caused no damages. As a result, there could be a Second Amended
7  Complaint, or even a Third Amended Complaint. As immunity applies to allegations in specific
8  causes of actions, we need to know what those allegations are and what those causes of action are
9  before we take up the issue of qualified immunity. Thus, instead of causing a conservation of judicial
10 resources, the Directors' motion would waste judicial resources, and the parties' resources, by having
11 the parties prepare for and engage in a lengthy hearing that may prove totally unnecessary because
12 causes of action are removed.

13     Even if the case is not dismissed with prejudice as a result of the motions to dismiss, the
14 Directors may be given leave to re-plead. Any re-pleading may *also* be subject to a motion to
15 dismiss. Even if the Directors prevail and ultimately file a proper complaint, issues must be joined
16 by Fennell's filing of an answer. It is only at that time that affirmative defenses will be asserted.

17     In their motion papers, the Directors impliedly recognize that it is too early to consider the
18 issue of qualified immunity. They argue: "Qualified immunity is a threshold issue that must be
19 determined at the outset of every case *in which it is asserted as a defense*." Memorandum, p. 2
20 (emphasis added). Qualified immunity has not yet been asserted as a defense. Why not? *Because*
21 *we are not yet at the defense pleading stage*. When will that be? *When we file affirmative defenses*
22 *with the answer*.

23     As indicated in the Court's Order of October 14, 2005 in the receivership proceeding, cost
24 continues to be an issue of major concern. *See* "Order Concerning the Court's Order of November
25 16, 2004." It seems clear that generating further fees and costs at this time, when it may later prove
26 that such fees and costs were totally unnecessary, would not be the prudent way to proceed.

27

28                                         7

# IV.

## A HEARING ON IMMUNITY NOW WOULD BE ENTIRELY UNWORKABLE

Above, we showed that a hearing on immunity now would be a waste of time and money. Even if the Court could hear the qualified immunity issue now, which it cannot, how would that work? Quite simply, it would not work.

Fennell would argue that he is entitled to qualified immunity, but qualified immunity for what acts? The eight instances of conduct alleged in the First Amended Complaint? Well, one or more of those acts may not survive the motions to dismiss. The new acts raised in oral argument by the Directors that are not even in the First Amended Complaint? Clearly, that would be improper. How can a defendant be expected to seek qualified immunity for acts that have never been alleged in a complaint, where issues have not been joined by an answer, where the affirmative defense has not been asserted, and where he has not sought resolution of the case on that basis? Quite clearly, he cannot and it would be error for any Court to order otherwise.

Even if the Court, for some reason, wanted to have a hearing on Fennell's affirmative defense of qualified immunity, it would be error for the Court to attempt to force such a hearing at this time. Indeed, the Directors have not cited a single case in which a court has forced a defendant to assert and have an evidentiary hearing on a affirmative defense that has not yet been pled.

The Directors' "Addendum to Memorandum of Points and Authorities in Support of Threshold Motion and Request for Hearing on Issue of Immunity" (filed October 6, 2005) only shows how ridiculous their position is. In that document they raise a number of issues that they say they "intend[] to raise" at the requested hearing. P. 1, ln. 4; p. 2, ll. 10-19. Of course, none of the issues are pled in the First Amended Complaint. Again, how and why is Fennell going to seek immunity for alleged conduct that has not even made its way into a complaint yet? This just shows that the Directors seek to put the cart before the horse, or, in this case, quite literally the trial before the filing of the Answer! We must, obviously, know what the final version of the complaint will look like, if there is one at all, and what the Answer will look like, before we can know what acts Fennell will need to seek qualified immunity for. This is only logical.

## V.

## THERE IS NO SUPPORT FOR THE DIRECTORS' PROPOSED "JURY HEARING"

In the previous section, we showed that any sort of hearing on immunity at this time would be unworkable and improper. In this section, we will show that a *jury* "hearing," in particular, cannot be held and would violate law.

### A.     There Can Be No "Jury Hearing" on Qualified Immunity

As mentioned several times above, qualified immunity is an affirmative defense. *Harlow*, 457 U.S. at 815. It is not merely a defense to liability, but an immunity from suit. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (qualified immunity "is an *immunity from suit* rather than a mere defense to liability") (emphasis in original; citation and quotation marks omitted).

This protects the government official from harassing litigation at least until it is decided whether he is entitled to immunity. *Id.* ("[o]ne of the purposes of immunity . . . is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit"). In fact, the desire to protect public officials from harassing litigation is so great that denials on legal bases of motions for summary judgment on grounds of qualified immunity are immediately appealable. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

Over the years there has been a debate regarding whether qualified immunity primarily is an issue to be decided by the judge or by the jury. The Supreme Court resolved this debate when it said, "Immunity ordinarily should be decided *by the court* long before trial." *Hunter*, 502 U.S. at 228 (emphasis added). Thus, we know that immunity is "ordinarily" to be decided by the Court, but when? *After a defendant has pled the affirmative defense of qualified immunity.*

> *Once a defendant pleads a defense of qualified immunity, **on summary judgment**, the judge appropriately may determine [whether the defense applies]. Until this threshold immunity question is resolved, discovery should not be allowed.*

*Siegert*, 500 U.S. at 232 (emphases added).[4]

---

[4] Even though the threshold is not crossed until summary judgment, many courts – including the Supreme Court – have held that until the issue of qualified immunity is decided, no discovery should be allowed. *Siegert*, 500 U.S. at 232 (until the "immunity question is resolved,

9

Thus, the Directors were right when they claimed that there is a "threshold" issue. They were just wrong about when that threshold is crossed. As the Supreme Court has directed, the "threshold" is crossed "on **summary judgment**." The question in the Supreme Court has been whether the threshold is at summary judgment, with discovery allowed, or at summary judgment, with discovery not allowed. The Supreme Court has said it is at summary judgment without discovery allowed. In addition, the Supreme Court has made clear it is the *defendant's* right to an early resolution of the qualified immunity issue, not the plaintiff's right. *Mitchell*, 472 U.S. at 526 ("**a defendant *pleading* qualified immunity** is entitled to dismissal before the commencement of discovery") (emphases added).

The "threshold" cannot be now when we do not even have a final complaint, and we do not have an answer with affirmative defenses. And, the Court can rest assured that, if we get that far in the case, Fennell will follow his Answer and affirmative defenses with a motion for summary judgment on qualified immunity as quickly as possible.

**B.     The Ruling in *Atalig* Does Not Require, or Support, a "Jury Hearing"**

The Directors try to suggest that the ruling in *Atalig* somehow changes the analysis and requires a "jury hearing" at this time. It does not.

The Directors claim that: "THE SUPREME COURT'S MANDATE REQUIRES A PLENARY *JURY HEARING*". Memorandum, p. 5, ln. 1. Does the Supreme Court's ruling in *Bank of Saipan, Inc. v. Atalig*, 2005 MP 02, truly require a "plenary *jury* hearing?" No, it does not. Once again, the Directors have overstated their case.

In the *Atalig* ruling, the Supreme Court addressed the issue of immunity. The Court recognized that receivers are entitled to a form of immunity.

> *It is widely supported that receivers are entitled to immunity.* '[R]eceivers are court officers who share the immunity awarded to judges.' That immunity, however, is limited - even judges are not entitled to absolute immunity for their actions.

---

discovery should not be allowed").

1    *Id.* at ¶ 9 (emphasis added; footnotes omitted).

2         1.    *Atalig* Says Immunity is Raised by a *Defendant's* Motion

3         After acknowledging that receivers are entitled to immunity, the Court addressed the manner

4    in which the immunity defense may be asserted:

5         [W]hen judges are sued they can then **move for dismissal based on immunity.**
          Here, however, Fennell did not **move for dismissal based on immunity** because
6         there was no suit filed against Fennell.

7    *Id.* (emphases added).   Thus, quite to the contrary of suggesting that the *plaintiff* may schedule a

8    hearing on immunity, the Supreme Court is recognizing that the proper way to raise the immunity

9    issue is through a "mo[tion] for dismissal based on immunity" *filed by the defendant*.   This decision

10   supports Fennell's argument that he controls when this defense gets asserted, not the Directors.

11        2.    *Atalig* Never Says a Jury Trial is Required to Decide Immunity

12        After making this point, the Supreme Court goes on to address the type of hearing that must

13   be held in order to determine whether Fennell is entitled to immunity.

14        Whether or not a receiver is entitled to immunity is "to be resolved at a plenary
          hearing with sworn witnesses and documentary proof, so that the question of law as
15        to whether the Receiver breached any duty owing a fiduciary may be fairly resolved."
          Perhaps Fennell is entitled to some sort of immunity should a subsequent suit be filed
16        against him, but that is to be determined by analysis of the facts before the court
          hearing that suit.

17
     *Id.* at ¶ 10 (footnote omitted).
18
          Thus, in no way does *Atalig* support the Directors' argument that a jury must decide the issue
19
     of qualified immunity.   It does not even support the argument that a jury *may* decide the issue of
20
     qualified immunity.   It merely says there must be a hearing with witnesses and documentary proof.[5]
21
     **C.    The Directors Are Not Entitled to An Expedited Trial Setting**
22
          The Directors blithely ask for a "hearing in November before a jury to resolve all disputed
23
     factual questions related to the issue of Mr. Fennell's qualified immunity[.]" Memorandum, p. 6.
24
     But, the Directors give no thought or attention to the logistics of staging such a "jury hearing."
25

26
          [5] This hearing could be a summary judgment hearing, with the Court deciding whether to
27   accept affidavits under Com. R. Civ. P. 56, or requiring live testimony.

28                                          11

1  Let's be clear what they are asking for. When they say they want a "jury hearing," what they

2  are really asking for is a *trial*. And, this would be no "mini" trial. It would be a full-blown trial.

3  The issues that would be addressed in an "jury hearing" on whether Fennell is entitled to

4  qualified immunity could mirror much of the issues that would be addressed in a trial on the merits

5  in the case. That is to say, the hearing will take, at a minimum, one to two weeks, and very possibly

6  longer. There is a normal processing for setting matters down for jury trial and the Directors' have

7  shown no suitable basis for expediting that process.

8  As can be seen, even if there *could* be a "jury hearing" before the motions to dismiss have

9  been decided, and before the final complaint has been filed, and before Fennell has answered, and

10  before Fennell has asserted his affirmative defenses, and before Fennell has had an opportunity to

11  bring a motion on his affirmative defense, the idea of a "jury hearing" on the issue of qualified

12  immunity is entirely impractical.

13  **D.  The Directors' Cases Do Not Support the Result They Ask For**

14  The Directors cite six cases in their Memorandum. None of them support their argument that

15  the Court may schedule a "jury hearing" on immunity at this time.

16  •  *Bank of Saipan v. Atalig*, 2005 MP 3. We have already shown that the Supreme Court's

17  decision actually supports *Fennell's* argument that immunity must be decided on a motion

18  filed by Fennell.

19  •  *Hunter v. Bryant*, 502 U.S. 224 (1991); *Anderson v. Creighton*, 483 U.S. 635 (1987). We

20  have already shown that when the U.S. Supreme Court talks about a "threshold" issue and

21  resolving qualified immunity "at the earliest possible stage" of a case, they are talking about

22  resolution on a motion filed by the defendant. They say this to prevent insubstantial cases

23  from going to the jury. They do not mean that qualified immunity should be decided at a

24  time when the pleadings have not even been settled and issue has not been joined.

25  •  *Thompson v. Mahre*, 110 F.3d 716, 719 (9th Cir. 1997); *Sova v. City of Mount Pleasant*, 142

26  F.3d 898 (6th Cir.). These cases merely stand for the proposition that a motion for summary

27  judgment on the issue of qualified immunity may be defeated by the existence of a genuine

28  12

1   issue of material fact. We do not know whether we will have a genuine issue of material fact

2   on summary judgment, because we do not yet have a summary judgment motion. Because

3   they recognize that summary judgment is the proper time to consider the issue of qualified

4   immunity, they support Fennell's position and not the Directors' position.

5   •   *Arthur Young & Co. v. District Court*, 549 F.2d 686 (9th Cir. 1977). This class action case

6       merely stands for the proposition that under Rule 42(b) and Rule 23, a court may bifurcate

7       *the* trial (*i.e.* the one that comes at the end of the case) into two phases. It in no way stands

8       for the proposition that a court may schedule a "jury hearing" on the affirmative defense of

9       qualified immunity, before the final complaint and an answer have been filed.

## CONCLUSION

11      The Directors are inviting the Court to do something that, to our knowledge, has never been

12  done before. At the very least, the Directors are inviting the Court to do something that no Court

13  they have cited has done. And, they are inviting the Court to do something that is contrary to what

14  they argued on appeal with respect to how the issue of immunity should be handled. Namely, the

15  Directors are asking the Court to ignore the normal rules of procedure and interrupt the case to have

16  a "jury hearing" on an affirmative defense held by a defendant, when the pleadings are not settled

17  and no affirmative defenses have as of yet been asserted. The Court should decline the Directors'

18  "creative" invitation because it is an invitation for disaster.

19      The far better course is to follow the tried and true rules of court and follow the recognized

20  route. By doing so, the case will proceed in an orderly progression: the dispositive motions will be

21  decided first so we know whether the case is going forward at all; if the dispositive motions are not

22  granted with prejudice, we will have to see whether the Directors are able to state a claim upon

23  which relief can be granted; only then will the Defendants answer; in Fennell's answer he will assert

24  the *affirmative defense* of qualified immunity. At that time, and only at that time, the issue of

25  qualified immunity will be ripe for hearing.

26      The Directors are trying to argue, basically, that "look, Fennell wants qualified immunity and

27  that could resolve the case, so why not decide it now and shorten the process?" There are many

28

1  problems with this approach. Fennell has many defenses besides qualified immunity. He has a right
2  to have his dispositive motions decided first. He has a right to file an answer first. He has a right
3  to assert affirmative defenses first. Fennell has a right to do all of these things *before* he is forced
4  to go to the time and expense of having any sort of hearing on the issue of qualified immunity. Why
5  should he have to go to the time and expense of preparing for and participating in a hearing which
6  may prove to be totally unnecessary? Why shouldn't he be allowed to assert his own defenses in his
7  own manner and at the time he chooses?

8       The Directors' argument fails to take into consideration the proper procedures of the Court.
9  They could just as easily say, "well, Fennell wants a trial on the merits, so why not have the trial on
10 the merits now and shorten the process?" Yes, Fennell does want a trial on the merits, but not until,
11 and only if, all of his other rights have been exhausted.

12      The Directors' "man bites dog" motion must be denied. The Court should rule that: (1) the
13 plaintiff has no standing to raise our defense; (2) that it is premature to consider the issue of qualified
14 immunity at this time; (3) that the Court will entertain the issue once a defendant has made a motion
15 asserting the defense; and, (4) at that time, the Court will determine the exact nature of the hearing
16 to be held on the motion.

17                     Respectfully submitted,

18

19

20           Rexford C. Kosack, Bar No. F0140
           Glenn A. Jewell, Bar No. FO176

21

22

23

24

25

26

27

28                  14



EXHIBIT
A

CLERK OF COURT
CNMI SUPREME COURT
DATE/TIME
BY:

APPEALS NOS. 02-0029-GA and 03-0008-GA
(Consolidated)

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

ACTING SECRETARY OF COMMERCE FERMIN M. ATALIG
in his official capacity as the CNMI DIRECTOR OF
BANKING under 4 CMC § 6105(a),

Petitioner/Appellee,

vs.

BANK OF SAIPAN, INC.,

Respondent/Appellant.

Civil Action No. 02-0268B

## APPELLANT'S REPLY BRIEF

MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
Suite 4-B, Horiguchi Building, Garapan
P.O. Box 7917, S.V.R.B.
Saipan, MP  96950
Telephone:      (670) 233-2089
Facsimile:      (670) 233-5206

CALVO AND CLARK, LLP
HSBC Building
Marina Heights Business Park
PMB 951, Box 10001
Saipan, MP  96950
Telephone:      (670) 323-2045
Facsimile:      (670) 323-2776

Counsel for Respondent-Appellant Directors of The Bank of Saipan, Inc.

RECEIVED

raised, and make a determination whether immunity applies.  Contrary to Fennell's assertion, there is no pre-suit invocation of immunity; immunity is determined on a case-by-case basis. *See* 149 Clinton Ave. N. Inc. v. Grassi, 382 N.Y.S.2d 185, 188 (App. Div. 1976); Thompson Prods., Inc. v. Tool-A-Matic Mach. Co., 91 F. Supp. 328, 329 (D.N.J. 1950).  If and when Fennell is sued, he is certainly entitled to raise immunity as an affirmative defense and to move the Court for dismissal on that basis.  At such time, the court, applying the law to the allegations of the Complaint, will make a determination as to whether immunity should hold.  But that is not for this Court to decide today.  Neither should the trial court have undertaken to make such a call, in the absence of any particular such suit.

What Fennell seeks is to have the Court endorse the position that he is immune from any and all suits whatsoever, as a matter of law, even before such suits are filed.  Not surprisingly, Fennell cites no case for the proposition that receivers are entitled to conclusive, absolute immunity of this species.  In fact, the Commonwealth courts must carefully weigh the facts and law at hand when immunity is raised as a defense.  *See* Rayphand v. Tenorio, 2003 MP 12, ¶¶ 65-82 (finding qualified immunity for some, but not all, acts of Governor, but only after exhaustively examining allegations and law).

It is well settled, as the Ninth Circuit opined in Lebbos, that court-appointed receivers act under color of state law for purposes of Section 1983 actions.  *Id.*, 883 F.2d at 818, n. 10.  If, as Fennell maintains, receivers are automatically shielded from any and all liability whatsoever, then why are there cases which establish that receivers are subject to § 1983 actions?  Judicial immunity is tested on a case-by-case basis based on the facts and

issues at hand. *See* Johnson v. Zurz, 596 F. Supp. 39 (N.D. Ohio 1984) (state action found in

Section 1983 suit allowed for suit against judge who failed to advise indigent of his right to

appointed counsel); Grant v. Johnson, 757 F. Supp. 1127 (D. Or. 1991) (judge's ex parte order

constituted state action sufficient for purposes of allowing Section 1983 case to proceed).

Indeed, even judges, who are entitled to inherent immunity from suit, can

sometimes be sued. Immunity is dependent on a variety of different factors including the

jurisdiction of the court and good faith, among other factors. What Fennell seeks in this case

is to be clothed with a species of immunity far beyond that to which even judges and justices

are entitled. If a judge or justice is sued, he or she must--like every other defendant--respond

to the complaint and thereafter move to dismiss it based on grounds of immunity. At that

point, the court hearing the matter examines the allegations and facts at hand and makes a

determination as to whether the particular complaint at hand is barred by immunity.

The question of whether a party acts under the color of state law for purposes

of a 1983 action presents a question of fact.[28] The U.S. Supreme Court has made it plain that

in determining whether a government official is immune from a Section 1983 suit, immunity

is not automatic but is tested against Congress' intention in promulgating Section 1983. In

---

[28] *See* Watertown Equipment Co. v. Norwest Bank, 830 F.2d 1487 (8th Cir. 1987), *cert. denied and app. dismissed*, 486 U.S. 1001, 100 L.Ed.2d 188, 108 S.Ct. 1723 (1988); *see also* Dennis v. Sparks, 449 U.S. 24, 56 L.Ed.2d 185, 101 S.Ct. 183 (1980) (private persons who conspire with state judge in connection with official act are acting "under color of state law" pursuant to Section 1983 despite finding that judge is immune from the action;" Smith v. Winter, 782 F.2d 508 (5th Cir. 1986) (private citizen who conspires with county clerk *in* falsely certifying names on recall petition acts under color of state law); Taylor v. First Wyoming Bank, N.A., 707 F.2d 388, 389 (9th Cir. 1983) (action taken by private person may be under color of state law if it constitutes the exercise of some power delegated to him which is traditionally exclusively reserved to the state).

exoneration order. Fennell has cited no such case because there simply is none. What the trial court did in this case simply finds no precedent in the case law.

## CONCLUSION

The trial court's two orders contained unprecedented and untenable grants of immunity and indemnity as against "any and all claims." Neither those orders nor the fact of Fennell's discharge relieves Fennell from being held accountable for alleged personal liability for intentional torts, breach of fiduciary duty or other wrongful misconduct. Any inherent immunity Fennell enjoys is to be tested, on a case by case basis, against particular allegations at hand. It is contrary to public policy to indemnify and defend Fennell, at the Bank's expense, as against such allegations. The two subject orders should be vacated.

Respectfully submitted this _____9TH_____ day of August, 2003.

**MAIR, MAIR, SPADE & THOMPSON**
A Professional Corporation

**CALVO AND CLARK, LLP**
Attorneys for The Bank of Saipan, Inc.

By_____
        DAVID A. MAIR

P03791.RTT

25

# EXHIBIT 10

1  LAW OFFICES OF SEAN E. FRINK, LLC
   Macaranas Building, Second Floor
2  P.O. Box 10003, PMB 161
   Saipan, Mariana Islands 96950
3  Telephone: (670) 233-2889
   Facsimile: (670) 234-3230
4  Sean.Frink@Saipan.Com

5  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
6  Los Angeles, California 90071-3197
   Telephone: (213) 229-7000
7  Facsimile: (213) 229-7520

8  Attorneys for Defendants
   DAVID W. AXELROD and SCHWABE,
9  WILLIAMSON & WYATT

10           IN THE SUPERIOR COURT

11  FOR THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

12

13  THE BANK DIRECTORS OF SAIPAN, INC.,          Civil Action No. 04-0449 A

14              Plaintiff,                        **DEFENDANTS DAVID AXELROD AND
                                                  SCHWABE, WILLIAMSON & WYATT'S
15         v.                                     OPPOSITION TO BANK DIRECTORS'
                                                  THRESHOLD MOTION AND REQUEST
16  RANDALL T. FENNELL; RICHARD PIERCE;           FOR HEARING ON ISSUE OF IMMUNITY**
    WHITE, PIERCE, MAILMAN & NUTTING;
17  DAVID W. AXELROD; SCHWABE,
    WILLIAMSON & WYATT; AND DOES 1-20,
18                                                Judge:      The Hon. Juan T. Lizama
                Defendants.                       Date:
19                                                Time:

20

21

22

23

24

25

26                                               C A L V O  &  C L A R K  LLP

27                                               MH II BUILDING   MARINA HEIGHTS BUSINESS PARK
                                                 PMB 951, BOX 10001   4:52 pm  mr
28                                               SAIPAN, MP 96950   10/21/04

Defendants Schwabe, Williamson & Wyatt and David Axelrod ("the Schwabe Firm") submit this memorandum in opposition to the motion by the Bank of Saipan's Board of Directors ("the Bank Directors") requesting a plenary hearing before a jury on the issue of whether the defense of judicial immunity applies in this case.

## I.    OVERVIEW

Ostensibly to avoid "unnecessary costs," the Bank Directors seek to impose upon this Court and all parties an expensive, lengthy, and unnecessary trial of their entire case in the guise of a plenary hearing. They want to do this before the Schwabe Firm or any other defendant has even filed an answer. The request should be denied for many reasons:

1.     The proposed trial would force the Schwabe Firm and the other defendants to undergo extensive litigation proceedings which are in clear violation of the policies underlying immunity and are inappropriate before resolution of the Schwabe Firm's motion to dismiss and the other defendants' dispositive motions.

2.     Because the Bank Directors have not alleged any facts that defeat immunity, the proposed trial is inappropriate, impermissible, and unnecessary. The matter can be resolved simply based on the pleadings.

3.     Because immunity is a defense, the Defendants should determine (subject of course to Court approval) when that issue, if even were one, should be addressed by a trier of fact.

4.     The Bank Directors claim in their Opposition to the defendants' motions to dismiss that Defendants are not entitled to immunity as a matter of law. If that were the case, then likewise there would be no need for the proposed trial, as the case should simply proceed as any other case.

5.     Even if immunity remained an open issue upon adjudication of the motions to dismiss and other dispositive motions, the Bank Directors' request is still premature because the Court has prohibited further expenditures of the Bank's assets for this litigation until the Bank Directors have satisfied this Court regarding the issue of costs, inasmuch as the proposed trial would be lengthy and very expensive.

Consequently the proposed trial violates public policy and this Court's Order, is premature, is wasteful of everyone's time and expenses, and is unnecessary. There are simply too many other

---

1

1  dispositive items that this Court should focus on before considering the Bank Directors' request for a

2  trial.  Their ill-advised tactical maneuver should be rejected.

3                                **II.    ARGUMENT**

4          The proposed extensive trial flies in the face of the immunity doctrine.  "Immunity is not

5  merely a defense to liability; it is also an immunity *from suit*." *Sawyer v. County of Creek*, 908 F.2d

6  663, 665 (10th Cir. 1990); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Its purpose is to

7  "protect the public interest by encouraging public officials to act independently and without fear of

8  consequences."  Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 3914.10.

9  Without the promise of immunity, the "risks of trial . . . may distract officials from their duties,

10  inhibit wise action, and deter able people from accepting public office." *Id.*; *see also Harlow*, 457

11  U.S. at 816.

12          These policies are particularly strong in the case of judicial immunity, which sweeps more

13  broadly than general qualified immunity.  *See Forrester v. White*, 484 U.S. 219, 224 (1988)

14  (distinguishing between judicial immunity for judicial acts and lesser qualified immunity for a judge's

15  administrative tasks); *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978) (holding judicial immunity

16  applies "even when [their] acts are in excess of their jurisdiction, and are alleged to have been done

17  maliciously or corruptly.").  Judicial immunity is necessary to assure "principled and fearless

18  decisionmaking." *Meek v. County of Riverside*, 183 F.3d 962, 965 (9th Cir 1999).

19          Because receivers act as judicial officers and, like judges, must make controversial decisions

20  fearlessly, the CNMI Supreme Court recognized that this broad judicial immunity extends to

21  receivers like Mr. Fennell. *Bank of Saipan, Inc. v. Atalig*, 2005 MP 3 ¶ 9 ("It is widely supported that

22  receivers are entitled to immunity.  '[R]eceivers are court officers who share the immunity awarded to

23  judges.'" (quoting *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1303 (9th Cir. 1989));

24  *Property Management & Invest., Inc. v. Lewis*, 752 F.2d 599, 602-03 (11th Cir. 1985); *Kermit Contr.*

25  *v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976).

26          Lawyers for a court-appointed receiver such as the Schwabe Firm are also covered by the

27  receiver's judicial immunity. *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993);

28  *Honigman, Miller, Schwartz & Cohn v. Weitzman*, 155 B.R. 521, 525 (B.A.P. Fed. App. 1993).

DEFENDANTS DAVID AXELROD AND SCHWABE, WILLIAMSON & WYATT'S OPPOSITION TO BANK
DIRECTORS' THRESHOLD MOTION AND REQUEST FOR HEARING ON ISSUE OF IMMUNITY

Because immunity is a shield from suit, courts should "resolv[e] immunity questions at the earliest possible stage." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Early resolution "protects a defendant from discovery, trial, and the other burdens of litigation." *Sawyer v. County of Creek*, 908 F.2d 663, 6565 (10th Cir 1990).[1] The Bank Directors do not dispute that early resolution of this issue is important, yet they still ask for a costly jury trial.[2] The Bank Directors ignore that: (a) the Court can determine the immunity issue on a motion to dismiss as a matter of law based upon their allegations; (b) even issues of bad faith – assuming they are relevant – can be decided as a matter of law here; and (c) the CNMI Supreme Court's ruling does not require a plenary hearing if there are no disputed issues of fact such that a motion to dismiss or summary judgment is proper.

First, when it appears on the face of a complaint that the defendant is entitled to immunity, a court may grant immunity on a motion to dismiss before the defendant files an answer. *Id.*; *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Liberty Mut. Ins. Co. v. La. Dept. of Ins.*, 62 F.3d 115, 117 (5th Cir. 1995). The CNMI Supreme Court has explicitly recognized this. *Bank of Saipan v. Atalig*, 2005 MP 3 ¶ 9 (holding "when judges are sued they can then move for dismissal based on immunity" and that only the lack of a live controversy at that time prevented Fennell from doing the same). At this stage, the Court is merely obliged to accept the alleged facts as true, and then to decide on this basis the legal question of whether immunity applies. *See Melo v. Hafer*, 13 F.3d 736, 744 (3rd Cir. 1994); *Venen v. Sweet*, 758 F.2d 117, 119 (3rd Cir. 1985). To subject an immune defendant to pretrial hearings at the dismissal stage would eviscerate the efficiency engendered by the dismissal procedure, and would foist upon the defendant precisely the "burdens of litigation" that immunity seeks to avoid. *See Mitchell*, 472 U.S. at 526.[3]

---

[1] The Supreme Court "emphasizes that even such pretrial matters as discovery are to be avoided if possible, as inquiries of this kind can be peculiarly disruptive of effective government." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

[2] Although not directly at issue in this motion, to the extent any "plenary hearing" occurs on this or any other issue, the Schwabe Firm does not concede that a jury is the required or appropriate fact finder.

[3] *See also* Am. Jur. Public Official §405 ("[e]ven limited discovery on the issue of qualified immunity must not proceed until the trial court first decides that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity").

DEFENDANTS DAVID AXELROD AND SCHWABE, WILLIAMSON & WYATT'S OPPOSITION TO BANK
DIRECTORS' THRESHOLD MOTION AND REQUEST FOR HEARING ON ISSUE OF IMMUNITY

1    As set forth in the Schwabe Firm's motion to dismiss and reply thereto, immunity applies here
2    based upon the allegations set forth in the First Amended Complaint ("FAC"). The FAC does not
3    allege any acts bringing the suit outside of immunity. In fact, many of the spurious allegations in the
4    motion for a plenary hearing are not even alleged in the FAC and are therefore irrelevant to this
5    proceeding. Other allegations consist of conclusory statements, not facts. The remaining allegations
6    referenced in the Bank Directors' motion were court-approved actions and were therefore clearly
7    within the scope of Mr. Fennell's receivership duties, including *ex parte* filings. And none of the
8    allegations in the motion centers directly upon the Schwabe Firm. In short, the facts alleged in the
9    Bank Directors' motion are either immaterial (in that they are not facts placing the Defendants outside
10   the scope of immunity) or otherwise fail to demonstrate that the Schwabe Firm was not entitled to
11   immunity. The Schwabe Firm therefore is immune as a matter of law from liability for the
12   allegations in the FAC, and no evidentiary hearing is necessary.

13   Second, even if the Court were to conclude that the pleadings are sufficient to avoid dismissal,
14   (and respectfully they are not), evidentiary hearings are required only to settle *disputed* questions of
15   material fact. *See Goldstein v. Moatz*, 364 F.3d 205, 220 (4th Cir. 2004); *Davric Maine Corp. v. U.S.*
16   *Postal Service*, 238 F.3d 58, 66 (1st Cir. 2001). While the Court may go beyond the pleadings when
17   determining whether to grant summary judgment on the grounds of immunity if necessary, "any such
18   discovery should be tailored specifically to the question of [the defendant's] immunity." *Anderson v.*
19   *Creighton*, 483 U.S. 635, 647 n.6 (1987). Even then, to the extent that the alleged facts do not place
20   the defendant outside immunity, or to the extent that the facts are based on indisputable documents,
21   there is no need for an evidentiary hearing before a trier of fact. *See Goldstein*, 364 F.3d at 220;
22   *Gutierrez de Martinez v. DEA*, 111 F.3d 1148, 1155 (4th Cir. 1997). In that instance, the judge must
23   simply decide the question of law whether immunity applies on those facts. *See LaLonde v. County*
24   *of Riverside*, 204 F.3d 947, 953 (9th Cir. 2000); *Sowders v. Damron*, 457 F.2d 1182, 1185 (10th Cir.
25   1972).

26   In fact, the only issues for the Court to resolve are whether the acts alleged were outside the
27   scope of authority granted to the receiver and whether the acts alleged were in bad faith (assuming

28

DEFENDANTS DAVID AXELROD AND SCHWABE, WILLIAMSON & WYATT'S OPPOSITION TO BANK
DIRECTORS' THRESHOLD MOTION AND REQUEST FOR HEARING ON ISSUE OF IMMUNITY

1    bad faith is even relevant).[4]  Contrary to the Bank Directors' assertions, both are questions of law.

2    Courts have acknowledged that "whether the acts complained of were within the agent's scope of

3    duty was a question of law." *Sowders v. Damron*, 457 F.2d 1182, 1185 (10th Cir. 1972); *see*

4    *LaLonde v. County of Riverside*, 204 F.3d 947, 953 (9th Cir. 2000) ("The determination of whether a

5    reasonable officer could have believed his conduct was lawful [and therefore within the scope of his

6    authority] is a determination of law."); *Yalkut v. Gemignani*, 873 F.2d 31, 34 (2nd Cir. 1989);

7    *Molever v. Lindsey*, 289 F. Supp 832, 833 (E.D. Mich. 1968).

8            Although in some cases bad faith may be a question of fact, in the immunity context it is ***not*** a

9    subjective fact determination.  Rather, it is focused on "the objective legal reasonableness of an

10   official's acts," which is a question of law. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982).  After

11   all, a subjective definition of "bad faith" would permit every frivolous immunity challenge such as

12   this one to survive summary judgment and go to trial. *Harlow*, 457 U.S. at 815-16.  This result "has

13   proved incompatible" with the policy noted above of resolving immunity questions early so as to

14   spare officials the burdens of litigation. *Id.* at 816.  Even if bad faith were relevant, the United States

15   Supreme Court has held that "bare allegations of malice should not suffice to subject government

16   officials either to the costs of trial or to the burdens of broad-reaching discovery." *Id.* at 817-18.

17   Instead, government officials "generally are shielded from liability for civil damages," and qualified

18   immunity would be abrogated only when the actor's conduct "violate[s] clearly established statutory

19   or constitutional rights of which a reasonable person would have known." *Id.* at 818.  No such

20   allegations appear here.

21           Third, the CNMI Supreme Court's decision in *Bank of Saipan v. Atalig* does not require a

22   plenary hearing on immaterial and undisputed allegations.  The Court's Opinion focused on the

23

24   [4] Where the receiver's immunity is derived from the judge's absolute immunity, bad faith is not
     relevant. Thus, the inquiry is limited to whether the receiver's actions were within the scope of
25   his authority. *See, e.g., New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1303 (9th Cir.
     1989) (finding "absolute judicial immunity is appropriate" for receiver and that "cases from other
26   circuits have held uniformly that state court-appointed receivers are entitled to absolute
     immunity"); *Property Management & Invest., Inc. v. Lewis*, 752 F.2d 599, 602 (7th Cir. 1985)
27   ("[C]ourt-appointed receivers . . . enjoy judicial immunity for acts within the scope of their
     authority."); *T & W Inv. Co. v. Kurtz*, 588 F.2d 801, 802 (10th Cir. 1978). Even assuming bad
28   faith has any relevance to this proceeding, as set forth herein, it is a question of law, not fact.

DEFENDANTS DAVID AXELROD AND SCHWABE, WILLIAMSON & WYATT'S OPPOSITION TO BANK
DIRECTORS' THRESHOLD MOTION AND REQUEST FOR HEARING ON ISSUE OF IMMUNITY

ripeness doctrine: the Court could not determine whether Mr. Fennell was immune because it lacked any claim to measure against the scope of his immunity. The Court assumed the existence of a viable complaint and disputed issues of material fact when it allowed for the possibility of "a plenary hearing with sworn witnesses and documentary proof" to assist a future court to determine the merits of Mr. Fennell's immunity defense. In fact, the case upon which the Court relied *only* permitted a hearing because it needed to resolve *disputed* questions of material fact. *See 149 Clinton Ave. N., Inc. v. Grassi*, 382 N.Y.S.2d 185, 188 (N.Y. App. Div. 1976). There is no basis for an immediate evidentiary hearing before the Bank Directors can demonstrate any material disputed fact. Accordingly, if and only if the Court determines that immunity cannot be resolved on either a motion to dismiss or on summary judgment should the Court permit the case to go to trial.

Fourth, immunity is a defense. As a defendant, the Schwabe Firm, should determine (with the Court's approval) when immunity should be addressed, not the Bank Directors. In fact, it would defy logic, the immunity policies set forth above, and even the rules of civil procedure if a plaintiff could simply compel an extensive and expensive trial on the immunity issue at the outset of a case.

Moreover having an immediate trial is neither efficient nor practical, especially where it is unclear what the Bank Directors intend to try. To the extent they seek to try their entire case, which it appears they want to do, then the litigation should proceed in an orderly fashion; no expedited trial is necessary. To the extent the Bank Directors claim that different factual issues are to be addressed in each trial, seating multiple juries would be inefficient and costly.

Finally, the unnecessary costs of the proposed trial are particularly unfounded given the receivership court's well-documented concern about the costs of this litigation to the Bank. When the Bank Directors first sought leave to file this action, the Court stated it had significant concerns about the Bank's financial exposure and ordered the Bank to limit that exposure. Despite the Court's November 14, 2004 Order, the Bank Directors proceeded with the litigation without addressing these concerns. As a result, the Court recently froze all litigation in the present action except pending motions. Thus, the requested trial is not only premature due to the pending motions to dismiss and other dispositive motions, but it also would contravene the Receivership Court's October 14, 2005 Order and the Court's concerns stated therein.

DEFENDANTS DAVID AXELROD AND SCHWABE, WILLIAMSON & WYATT'S OPPOSITION TO BANK DIRECTORS' THRESHOLD MOTION AND REQUEST FOR HEARING ON ISSUE OF IMMUNITY

III.   CONCLUSION

For the above stated reasons, the Schwabe Firm hereby requests that the court deny the Bank Directors' request for a "plenary hearing before a jury" to determine the question of immunity.


Respectfully submitted,

LAW OFFICES OF SEAN E. FRINK, LLC

and

GIBSON, DUNN & CRUTCHER LLP


By: _____
          Sean E. Frink
          CNMI Bar No. F0212

Attorneys for Defendants DAVID W. AXELROD and
SCHWABE, WILLIAMSON & WYATT

DEFENDANTS DAVID AXELROD AND SCHWABE, WILLIAMSON & WYATT'S OPPOSITION TO BANK
DIRECTORS' THRESHOLD MOTION AND REQUEST FOR HEARING ON ISSUE OF IMMUNITY

# EXHIBIT 11

1  LAW OFFICES OF SEAN E. FRINK, LLC
   Macaranas Building, Second Floor
2  P.O. Box 10003, PMB 161
   Saipan, Mariana Islands 96950
3  Telephone: (670) 233-2889
   Facsimile:  (670) 234-3230
4  Sean.Frink@Saipan.Com

5  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
6  Los Angeles, California 90071-3197
   Telephone: (213) 229-7000
7  Facsimile: (213) 229-7520

8  Attorneys for Defendants
   DAVID W. AXELROD and SCHWABE,
9  WILLIAMSON & WYATT

10                 IN THE SUPERIOR COURT

11      FOR THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

12

13  THE BANK DIRECTORS OF SAIPAN, INC.,        Civil Action No. 04-0449 A

14          Plaintiff,                         **DEFENDANTS DAVID AXELROD AND
                                               SCHWABE, WILLIAMSON & WYATT'S
15      v.                                     OBJECTION TO EVIDENCE FILED AND
                                               REFERENCED IN SUPPORT OF THE
16  RANDALL T. FENNELL; RICHARD PIERCE;        BANK DIRECTORS OF SAIPAN'S
    WHITE, PIERCE, MAILMAN & NUTTING;          THRESHOLD MOTION AND REQUEST
17  DAVID W. AXELROD; SCHWABE,                 FOR HEARING ON ISSUE OF IMMUNITY**
    WILLIAMSON & WYATT; AND DOES 1-20,
18
            Defendants.
19                                             Judge:    The Hon. Juan T. Lizama
                                               Date:
20                                             Time:            .

21

22

23

24

25

26                                    C A L V O  &  C L A R K  LLP
                                      MH II BUILDING   MARINA HEIGHTS BUSINESS PARK
27                                    PMB 951, BOX 10001   4:52 pm MK2
                                      SAIPAN, MP 96950        10/21/05
28

DEFENDANTS DAVID AXELROD AND SCHWABE, WILLIAMSON & WYATT'S OBJECTION TO EVIDENCE
FILED AND REFERENCED IN SUPPORT OF THE BANK DIRECTORS OF SAIPAN'S THRESHOLD MOTION
AND REQUEST FOR HEARING ON ISSUE OF IMMUNITY

Defendants Schwabe, Williamson & Wyatt and David W. Axelrod ("the Schwabe Firm") object to consideration by the Court of certain documents submitted by the Directors of the Bank of Saipan, Inc., ("Bank Directors") with the Declaration of Rodney J. Jacob in Support of Addendum to Threshold Motion and Request for Hearing on Issue of Immunity ("Jacob Decl. re Immunity"). Mr. Jacob filed a declaration that includes ten exhibits. Several of these now publicly-filed exhibits consist of privileged communications between Randall T. Fennell, the former receiver for the Bank, and his attorneys, the Schwabe Firm. They also consist of the Schwabe Firm's work-product.

The Schwabe Firm specifically objects to Exhibits 1, 2, 3, 4, 5, 7, and 10, which include memoranda and correspondence exchanged between the Schwabe Firm and its client, Mr. Fennell, containing legal advice and attorney impressions. *See Shannon v. Superior Court*, 217 Cal. App. 3d 986, 993-94 (1990) (attorney-client privilege applies to communications between the receiver and counsel engaged to assist with the receivership); *Wells Fargo Bank v. Superior Court*, 22 Cal. 4th 201, 206, 214 (2000) (documents prepared by attorneys for the receiver are protected by the work-product privilege and receiver's communications with counsel are privileged, "regardless of subject matter"); *Huie v. DeShazo*, 922 S.W. 2d 920 (Tex. 1996); *see also Lasky, Haas, Cohler & Munter v. Superior Court*, 172 Cal. App. 3d 264 (1985) (public policy underlying full disclosure by trustee does not overcome work-product privilege, even where attorney is compensated from trust corpus); *Resolution Trust Corp. v. Massachusetts Mut. Life Ins. Co.*, 200 F.R.D. 183 (W.D.N.Y. 2001) (legal memorandum assessing legal options for solving underfunding problem prepared by counsel for failed bank's appointed receiver deemed protected by work-product privilege against actuary for bank's pension plan).

In light of the obviously privileged nature of these documents, upon discovery, the Bank Directors' attorneys were legally and ethically obligated to promptly notify and return the documents to Mr. Fennell and the Schwabe Firm and to refrain from using the documents in this or any other proceeding. *See* ABA Model Rule 4.4(b); ABA Committee on Ethics and Professional Responsibility Formal Opinion 92-368 (1992). The Schwabe Firm therefore objects to the use of these documents and requests the Court strike them from the record and place them under seal.

DEFENDANTS DAVID AXELROD AND SCHWABE, WILLIAMSON & WYATT'S OBJECTION TO EVIDENCE
FILED AND REFERENCED IN SUPPORT OF THE BANK DIRECTORS OF SAIPAN'S THRESHOLD MOTION
AND REQUEST FOR HEARING ON ISSUE OF IMMUNITY

The Schwabe Firm's specific objections are as follows:

| EVIDENCE | OBJECTIONS TO EVIDENCE |
|---|---|
| **1.** Sept. 26, 2002 fax from David W. Axelrod of Schwabe, Williamson & Wyatt, P.C. to Randall T. Fennell and Richard W. Pierce of White, Pierce, Mailman & Nutting. Jacob Decl. re Immunity, Exhibit 1. | **1.** The document is protected by the attorney client privilege. (Commonwealth Rules of Evidence ("Com. R. Evid.") § 501; Fed. R. Evid. § 501; *Clarke v. American Commerce National Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *Shannon v. Superior Court*, 217 Cal. App. 3d 986, 993-94 (1990); Cal. Evid. Code § 954.) Randall T. Fennell, in his role as the court-appointed receiver, retained Schwabe, Williamson & Wyatt, P.C. to act as legal counsel on his behalf. The document was drafted by retained counsel as part of the representation and transmitted during the representation in confidence by a means which disclosed the information to no other third person other than those who were included to further the interest of the client in the representation or to whom the disclosure was reasonably necessary for the transmission of the information or for the accomplishment of the representation.

The document is also protected by the attorney work product doctrine. (Fed. R. Civ. P. § 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S. Ct. 385, 393-394 (1947); *Wells Fargo Bank v. Superior Court*, 22 Cal. 4th 201, 214 (2000); Cal. Code of Civ. Proc. § 2018.030.) The writing reflects an attorney's impressions, conclusions, opinions or legal research or theories and is, therefore, protected from disclosure by law. |
| **2.** Letter dated June 19, 2002 from David W. Axelrod of Schwabe, Williamson & Wyatt, P.C., subject "Confidential and Privileged," to Cindy Adams of the Law Offices of White, Pierce, Mailman & Nutting with copy to Randall T. Fennell. Jacob Decl. re Immunity, Exhibit 2. | **2.** The document is protected by the attorney client privilege. (Com. R. Evid. § 501; Fed. R. 501; *Clarke v. American Commerce Offices of Brian W. McMahon and Richard W. National Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *Shannon v. Superior Court*, 217 Cal. App. 3d 986, 993-94 (1990); Cal. Evid. Code § 954.) Randall T. Fennell, in his role as the court-appointed receiver, retained Schwabe, Williamson & Wyatt, P.C. to act as legal counsel on his behalf. The document was drafted by Mr. Fennell and sent to retained counsel as part of the representation and transmitted during the representation in confidence by a means which disclosed the information to no other third person other than those who were included to further the interest of the client in the representation or to whom the disclosure was reasonably necessary for the transmission of the information or for the accomplishment of the representation. |

DEFENDANTS DAVID AXELROD AND SCHWABE, WILLIAMSON & WYATT'S OBJECTION TO EVIDENCE FILED AND REFERENCED IN SUPPORT OF THE BANK DIRECTORS OF SAIPAN'S THRESHOLD MOTION AND REQUEST FOR HEARING ON ISSUE OF IMMUNITY

| EVIDENCE | OBJECTIONS TO EVIDENCE |
|---|---|
| | The document is also protected by the attorney work product doctrine. (Fed. R. Civ. P. § 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S. Ct. 385, 393-394 (1947); *Wells Fargo Bank v. Superior Court*, 22 Cal. 4th 201, 214 (2000); Cal. Code of Civ. Proc. § 2018.030.) The writing reflects an attorney's impressions, conclusions, opinions or legal research or theories and is, therefore, protected from disclosure by law. |
| **3.** June 12, 2002 email from David W. Axelrod of Schwabe, Williamson & Wyatt, P.C. to Randall T. Fennell with copies to Cindy Adams and Richard W. Pierce of White, Pierce, Mailman & Nutting.  Jacob Decl. re Immunity, Exhibit 3. | **3.**  The document is protected by the attorney client privilege. (Com. R. Evid. § 501; Fed. R. § 501; *Clarke v. American Commerce National Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *Shannon v. Superior Court*, 217 Cal. App. 3d 986, 993-94 (1990); Cal. Evid. Code § 954.)  Randall T. Fennell, in his role as the court-appointed receiver, retained Schwabe, Williamson & Wyatt, P.C. to act as legal counsel on his behalf.  The document was drafted by retained counsel as part of the representation and transmitted during the representation in confidence by a means which disclosed the information to no other third person other than those who were included to further the interest of the client in the representation or to whom the disclosure was reasonably necessary for the transmission of the information or for the accomplishment of the representation. |
| | The document is also protected by the attorney work product doctrine.  (Fed. R. Civ. P. § 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S. Ct. 385, 393-394 (1947); *Wells Fargo Bank v. Superior Court*, 22 Cal. 4th 201, 214 (2000); Cal. Code of Civ. Proc. § 2018.030.)  The writing reflects an attorney's impressions, conclusions, opinions or legal research or theories and is, therefore, protected from disclosure by law. |

| EVIDENCE | OBJECTIONS TO EVIDENCE |
|---|---|
| **4.** June 14, 2002 e-mail from David W. Axelrod of Schwabe, Williamson & Wyatt, P.C. to Randall T. Fennell and Richard W. Pierce of White, Pierce, Mailman & Nutting.  Jacob Decl. re Immunity, Exhibit 4. | **4.**  The document is protected by the attorney client privilege.  (Com. R. Evid. § 501; Fed. R. Evid. § 501; *Clarke v. American Commerce National Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *Shannon v. Superior Court*, 217 Cal. App. 3d 986, 993-94 (1990); Cal. Evid. Code § 954.)  Randall T. Fennell, in his role as the court-appointed receiver, retained Schwabe, Williamson & Wyatt, P.C. to act as legal counsel on his behalf.  These documents were drafted by retained counsel as part of the representation and transmitted during the representation in confidence by a means which disclosed the information to no other third person other than those who were included to further the interest of the client in the representation or to whom the disclosure was reasonably necessary for the transmission of the information or for the accomplishment of the representation.

The document is also protected by the attorney work product doctrine.  (Fed. R. Civ. P. § 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S. Ct. 385, 393-394 (1947); *Wells Fargo Bank v. Superior Court*, 22 Cal. 4th 201, 214 (2000); Cal. Code of Civ. Proc. § 2018.030.)  The writing reflects an attorney's impressions, conclusions, opinions or legal research or theories and is, therefore, protected from disclosure by law. |

DEFENDANTS DAVID AXELROD AND SCHWABE, WILLIAMSON & WYATT'S OBJECTION TO EVIDENCE
FILED AND REFERENCED IN SUPPORT OF THE BANK DIRECTORS OF SAIPAN'S THRESHOLD MOTION
AND REQUEST FOR HEARING ON ISSUE OF IMMUNITY

| EVIDENCE | OBJECTIONS TO EVIDENCE |
|---|---|
| **5.** June 11, 2002 e-mail from David W. Axelrod of Schwabe, Williamson & Wyatt, P.C. to Randall T. Fennell with copies to Cindy Adams and Richard W. Pierce of White, Pierce, Mailman & Nutting.  Jacob Decl. re Immunity, Exhibit 5. | **5.**  The document is protected by the attorney client privilege.  (Com. R. Evid. § 501; Fed. R. Evid. § 501; *Clarke v. American Commerce National Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *Shannon v. Superior Court*, 217 Cal. App. 3d 986, 993-94 (1990); Cal. Evid. Code § 954.)  Randall T. Fennell, in his role as the court-appointed receiver, retained Schwabe, Williamson & Wyatt, P.C. to act as legal counsel on his behalf.  These documents were drafted by retained counsel as part of the representation and transmitted during the representation in confidence by a means which disclosed the information to no other third person other than those who were included to further the interest of the client in the representation or to whom the disclosure was reasonably necessary for the transmission of the information or for the accomplishment of the representation. |
| | The document is also protected by the attorney work product doctrine.  (Fed. R. Civ. P. § 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S. Ct. 385, 393-394 (1947); *Wells Fargo Bank v. Superior Court*, 22 Cal. 4th 201, 214 (2000); Cal. Code of Civ. Proc. § 2018.030.)  The writing reflects an attorney's impressions, conclusions, opinions or legal research or theories and is, therefore, protected from disclosure by law. |
| **6.** June 11, 2002 fax from Randall T. Fennell to David W. Axelrod of Schwabe, Williamson & Wyatt, P.C. Jacob Decl. re Immunity, Exhibit 7. | **6.**  The document is protected by the attorney client privilege.  (Com. R. Evid. § 501; Fed. R. Evid. § 501; *Clarke v. American Commerce National Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *Shannon v. Superior Court*, 217 Cal. App. 3d 986, 993-94 (1990); Cal. Evid. Code § 954.)  Randall T. Fennell, in his role as the court-appointed receiver, retained Schwabe, Williamson & Wyatt, P.C. to act as legal counsel on his behalf.  These documents were drafted by retained counsel as part of the representation and transmitted during the representation in confidence by a means which disclosed the information to no other third person other than those who were included to further the interest of the client in the representation or to whom the disclosure was reasonably necessary for the transmission of the information or for the accomplishment of the representation. |

DEFENDANTS DAVID AXELROD AND SCHWABE, WILLIAMSON & WYATT'S OBJECTION TO EVIDENCE
FILED AND REFERENCED IN SUPPORT OF THE BANK DIRECTORS OF SAIPAN'S THRESHOLD MOTION
AND REQUEST FOR HEARING ON ISSUE OF IMMUNITY

| EVIDENCE | OBJECTIONS TO EVIDENCE |
|---|---|
| **7.**  June 11, 2002 e-mail from Julie Becker of Schwabe, Williamson & Wyatt, P.C. to Randall T. Fennell.  Jacob Decl. re Immunity, Exhibit 10. | **7.**  The document is protected by the attorney client privilege.  (Com. R. Evid. § 501; Fed. R. Evid. § 501; *Clarke v. American Commerce National Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *Shannon v. Superior Court*, 217 Cal. App. 3d 986, 993-94 (1990); Cal. Evid. Code § 954.)  Randall T. Fennell, in his role as the court-appointed receiver, retained Schwabe, Williamson & Wyatt, P.C. to act as legal counsel on his behalf.  These documents were drafted by retained counsel as part of the representation and transmitted during the representation in confidence by a means which disclosed the information to no other third person other than those who were included to further the interest of the client in the representation or to whom the disclosure was reasonably necessary for the transmission of the information or for the accomplishment of the representation.  <br><br> The document is also protected by the attorney work product doctrine.  (Fed. R. Civ. P. § 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S. Ct. 385, 393-394 (1947); *Wells Fargo Bank v. Superior Court*, 22 Cal. 4th 201, 214 (2000); Cal. Code of Civ. Proc. § 2018.030.)  The writing reflects an attorney's impressions, conclusions, opinions or legal research or theories and is, therefore, protected from disclosure by law. |

DATED:  October 21, 2005

Respectfully submitted,

LAW OFFICES OF SEAN E. FRINK, LLC

and

GIBSON, DUNN & CRUTCHER LLP

By: _____
                    Sean E. Frink
                    CNMI Bar No. F0212

Attorneys for Defendants DAVID W. AXELROD and SCHWABE, WILLIAMSON & WYATT

6

DEFENDANTS DAVID AXELROD AND SCHWABE, WILLIAMSON & WYATT'S OBJECTION TO EVIDENCE FILED AND REFERENCED IN SUPPORT OF THE BANK DIRECTORS OF SAIPAN'S THRESHOLD MOTION AND REQUEST FOR HEARING ON ISSUE OF IMMUNITY