# EXHIBIT 12

1   RICHARD W. PIERCE
    LAW OFFICE OF RICHARD W. PIERCE
2   P.O. Box 503514
    Saipan, MP 96950-3514
3   Telephone:   (670) 235-3425
    Facsimile:   (670) 235-3427
4

5

6

7                    IN THE SUPERIOR COURT
                          FOR THE
8       COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

9                                    )
10  THE BANK OF SAIPAN, INC.,        )
                                     )   Civil Action No. 04-0449A
11                  Plaintiff,       )
                                     )   **RICHARD W. PIERCE'S JOINDER IN**
12          vs.                      )   **THE OPPOSITIONS TO PLAINTIFF'S**
                                     )   **THRESHHOLD MOTION FOR SETTING**
13  RANDALL T. FENNELL; RICHARD      )   **HEARING DATE FOR IMMUNITY**
    PIERCE; WHITE, PIERCE, MAILMAN & )
14  NUTTING; DAVID W. AXELROD;       )
    SCHWABE, WILLIAMSON & WYATT;     )   **Time:**    9:00 a.m.
15  AND DOES 1-20,                   )   **Date:**    November 8, 2005
                                     )   **Judge:**   Honorable Juan T. Lizama
16                  Defendants.      )
                                     )
17  ─────────────────────────────── )

18

19         Richard W. Pierce joins in the oppositions, filed this date, to Plaintiff's Threshold Motion

20  and Request for Hearing on Issue of Immunity.  The oppositions are filed by Randall T. Fennell,

21  David W. Axelrod and Schwabe, Williamson & Wyatt.

22
           Submitted this October 21, 2005.
23

24                                       LAW OFFICE OF RICHARD W. PIERCE

25

26                                       RICHARD W. PIERCE
                                         CNMI Bar No. F0165
27

28

1

# EXHIBIT 13

1  REXFORD C. KOSACK
   GLENN A. JEWELL
2  LAW OFFICES OF REXFORD C. KOSACK
   Bank of Hawaii Bldg., Third Floor
3  P.O. Box 410
   Saipan, MP 96950
4  Telephone: (670) 322-8800

5  Attorneys for Defendant
   Randall T. Fennell
6

7         IN THE SUPERIOR COURT OF THE COMMONWEALTH
               OF THE NORTHERN MARIANA ISLANDS
8

9  THE BANK OF SAIPAN, INC.          )    Civil Action No. 04-0449A
                                     )
10              Plaintiff,           )    **JOINDER IN AXELROD AND**
                                     )    **SCHWABE'S OBJECTION TO**
11     vs.                           )    **EVIDENCE FILED IN SUPPORT**
                                     )    **OF DIRECTORS' SO-CALLED**
12                                   )    **THRESHOLD MOTION**
   RANDALL T. FENNELL; RICHARD       )    Judge: Honorable Juan T. Lizama
13 PIERCE; WHITE, PIERCE, MAILMAN,   )    Date:
   & NUTTING; DAVID W. AXELROD;      )    Time:
14 SCHWABE, WILLIAMSON & WYATT,      )
   AND DOES 1-20,                    )
15                                   )
                Defendants.          )
16                                   )
                                     )
17 _____)

18         Defendant Randall T. Fennell hereby joins in and incorporates by reference "Defendants

19 David Axelrod and Schwabe, Williamson & Wyatt's Objection to Evidence Filed and

20 Referenced in Support of the Bank Directors of Saipan's Threshold Motion and Request for

21 Hearing on the Issue of Immunity" filed October 21, 2005 (the "Objection").  In the Objection,

22 Axelrod and Schwabe object to seven of the 10 documents attached to the "Declaration of

23 Rodney J. Jacob in Support of Addendum to Threshold Motion and Request for Hearing on Issue

24 of Immunity."  Fennell joins in and incorporates by reference the Objection in its entirety and

25 states that the referenced documents should be stricken and placed under seal for the reasons

26 stated therein.

27         Fennell also objects to Exhibit 6 to Mr. Jacob's declaration on the grounds that it is

28 protected by the attorney-client privilege and/or work product doctrine and should be stricken

CALVO & CLARK LLP
MH II Building  Marina Heights Business Park
PMB 951, Box 10001
Saipan, MP 96950

1   and placed under seal for the reasons stated in the Objection.

2   Dated: November 3, 2005.

3                           Respectfully submitted,

4

5

6   REKFORD C. KOSACK
    GLENN A. JEWELL

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                              - 2 -

# EXHIBIT 14

1  REXFORD C. KOSACK
   GLENN A. JEWELL
2  LAW OFFICES OF REXFORD C. KOSACK
   Bank of Hawaii Bldg., Third Floor
3  P.O. Box 410
   Saipan, MP 96950
4  Telephone: (670) 322-8800

5  Attorneys for Defendant
   Randall T. Fennell
6

7              IN THE SUPERIOR COURT OF THE COMMONWEALTH
                    OF THE NORTHERN MARIANA ISLANDS
8

9  THE BANK OF SAIPAN, INC.           )   Civil Action No. 04-0449A
                                      )
10               Plaintiff,           )
                                      )   **OBJECTION TO EVIDENCE**
11      vs.                           )   **FILED IN SUPPORT OF**
                                      )   **DIRECTORS' SO-CALLED**
12                                    )   **THRESHOLD MOTION**
   RANDALL T. FENNELL; RICHARD        )   Judge: Honorable Juan T. Lizama
13 PIERCE; WHITE, PIERCE, MAILMAN,    )   Date:
   & NUTTING; DAVID W. AXELROD;       )   Time:
14 SCHWABE, WILLIAMSON & WYATT,       )
   AND DOES 1-20,                     )
15                                    )
                 Defendants.          )
16                                    )
   _____ )
17

18      Defendant Randall T. Fennell hereby makes the following objections to the following

19 exhibits attached to the "Declaration of Rodney J. Jacob in Support of Threshold Motion and

20 Request for Hearing on Issue of Immunity" filed September 26, 2005.   Fennell objects to

21 Exhibits 1 and 14 on the grounds that they are protected by the attorney-client privilege and/or

22 work product doctrine.  These documents should be stricken and placed under seal on the

23 grounds stated in "Defendants David Axelrod and Schwabe, Williamson & Wyatt's Objection to

24 Evidence Filed and Referenced in Support of the Bank Directors of Saipan's Threshold Motion

25 and Request for Hearing on the Issue of Immunity" filed October 21, 2005, which reasoning

26 Fennell hereby incorporates by this reference.

27

28

GALVO & CLARK LLP
NMI II Building   MARINA HEIGHTS BUSINESS PARK
PMB 951, Box 10001
Saipan, MP 96950

1   Dated: November 3, 2005.

2                     Respectfully submitted,

3

4

5                     REXFORD C. KOSACK
                     GLENN A. JEWELL

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                           - 2 -

# EXHIBIT 15

COPY of;
Original Filed
on this date

AUG 1 4 2002

Clerk
District Court
For The Northern Mariana Islands

UNITED STATES DISTRICT COURT

NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 02-00010 |
| Plaintiff, | SUPERSEDING INDICTMENT |
| v. | Title 18, U.S.C., §§ 371, 1343 and 1346 - Conspiracy to Commit Wire Fraud; |
| BERT DOUGLAS MONTGOMERY, DUSEAN BERKICH and TOMAS B. ALDAN, | Title 18, U.S.C. § 1343 -Wire Fraud; Title 18, U.S.C. §§ 1343 and 1346- Wire Fraud: Deprivation of Honest Services; Title 18, U.S.C. § 1956(h) - Money Laundering Conspiracy; |
| Defendants. | Title 18, U.S.C. § 1956(a)(1)(A)(i) - Money Laundering; Title 18, U.S.C. § 2-Aiding and Abetting; Title 18, U.S.C. § 981(a)(1)(C) and Title 28, U.S.C. § 2461(c)) - Forfeiture |

THE GRAND JURY CHARGES THAT:

## COUNT ONE

### CONSPIRACY TO COMMIT WIRE FRAUD

#### Relevant Persons and Entities

1        At all times relevant to this Indictment, The Bank of Saipan (the "Bank") was a bank organized under the laws of the Commonwealth of the Northern Mariana Islands ("CNMI"). The Bank maintained its headquarters in Chalan Kanoa, Saipan, CNMI. The Bank was in the business principally of accepting deposits from customers and extending loans to businesses and individuals. Pursuant to the Bank's loan procedures, all loans in excess of $250,000 required the approval of the Bank's Board of Directors.

076073

EXHIBIT 33
Page 1 of 17

2.      From in or about December 2001 until in or about February 2002, the "International Affairs Department" of the Bank purported to further the interests of the Bank in connection with loans to customers who were non-residents of the CNMI and in establishing the Bank as a settlement bank for credit card transactions. At no time did the Bank's Board of Directors authorize the creation of an "International Affairs Department," approve the establishment of executive positions in the "International Affairs Department" to exercise managerial control of the Bank, or ratify the actions of the "International Affairs Department."

3.      At all times relevant to this Indictment, Sweven Systems, LLC. ("Sweven Systems") was a limited liability corporation organized under the laws of the State of Texas that represented itself as a credit card processing company. Sweven Systems represented that it maintained its principal place of business in Plano, Texas.

4.      On or about December 21, 2001, Sweven Group, LLC, ("Sweven Group") was organized as a limited liability corporation under the laws of the State of Texas. Sweven Group represented that it maintained its principal place of business in Plano, Texas. Sweven Group was an entity separate and distinct from Sweven Systems.

5.      At all times relevant to this Indictment, BERT DOUGLAS MONTGOMERY, the defendant, represented himself as a wealthy and experienced businessman who sought to purchase a majority interest in the Bank. As of in or about late September 2001, MONTGOMERY periodically represented himself as Chairman of the Board of the Bank. As of in or about December 2001, MONTGOMERY assumed the position of president of the Bank's "International Affairs Department." At no time was MONTGOOMBRY a member of the Bank's Board of Directors, nor was he ever elected Chairman of the Board, nor appointed by the Board to any executive office at the Bank.

6.      At all times relevant to this Indictment, DUSEAN BERKICH, the defendant, was a business partner of BERT DOUGLAS MONTGOMERY, the defendant, and worked with him in their effort to purchase a majority interest of the Bank. As of in or about December 2001, BERKICH assumed the position of senior vice president of the "International

-2-

EXHIBIT 33
Page 2 of 17

1    Affairs Department." At no time was BERKICH a member of the Bank's Board of Directors,

2    nor was he appointed by the Board to any executive office at the Bank.

3          7.     At all times relevant to this Indictment, TOMAS B. ALDAN, the

4    defendant, was the Chief Executive Officer and the Chairman of the Board of Directors of the

5    Bank. As an officer and director of the Bank, ALDAN had a duty to disclose all transactions to

6    the Bank's Board of Directors.

7          8.     At all times relevant to this Indictment, Michael T. Wilson, a co-

8    conspirator not named as a defendant herein, controlled Sweven Systems and Sweven Group.

9          9.     At certain times relevant to this Indictment, United Forex Exchange held

10   itself out as an investment firm that purported to invest client funds in foreign exchange

11   transactions.

12                   THE SCHEME TO DEFRAUD

13   A.    The Scheme's Unlawful Purposes

14          10.    In or about August 2001, BERT DOUGLAS MONTGOMERY and

15   DUSEAN BERKICH, the defendants, together with others known and unknown, fraudulently

16   sought to obtain control of the Bank through MONTGOMERY's purchase of the majority of the

17   Bank's common stock. MONTGOMERY, BERKICH and others deceived the Bank and the

18   CNMI Commissioner of Banking with respect to MONTGOMERY's status as a _bona fide_

19   purchaser of the Bank by: (a) misrepresenting MONTGOMERY's source of funds for the stock

20   purchase transactions; (b) concealing their plan to use the Bank's assets to pay for a portion of

21   the acquisition costs; (c) misrepresenting both MONTGOMERY'S financial position and

22   MONTGOMERY'S experience in the banking industry; and (d) concealing their plan to exploit

23   their control of the Bank by enriching themselves and others through fraudulent loans and other

24   transactions.

25          11.    To facilitate their plan to fraudulently obtain the Bank's money and

26   property, BERT DOUGLAS MONTGOMERY and DUSEAN BERKICH, the defendants, sought

27   to and did deprive the Bank of the honest services of TOMAS B. ALDAN, the defendant, by

28   secretly offering ALDAN money and other things of value, including a higher salary, quarterly

-7-

EXHIBIT 33
Page 3 of 17

1   bonuses, part ownership of the Bank, part ownership of a company controlled by

2   MONTGOMERY and BERKICH, and arranging an unauthorized and illegal loan from the Bank

3   in the amount of $504,666. In return, ALDAN authorized, on behalf of the Bank, numerous

4   transactions for MONTGOMERY and BERKICH that were necessary to carry out the scheme,

5   and concealed those transactions from the Bank's Board of Directors. As of early November

6   2001, both through ALDAN, and through the establishment of the "International Affairs

7   Department," MONTGOMERY and BERKICH controlled the Bank.

8          12.    Upon gaining control of the Bank, BERT DOUGLAS MONTGOMERY

9   and DUSEAN BERKICH, the defendants, and others, with the assistance of TOMAS B.

10  ALDAN, the defendant, planned to and did obtain the Bank's money and property for themselves

11  and others, including Michael T Wilson, by causing the Bank to make fraudulent loans,

12  including $5 million in loans to Sweven Systems and a $260,000 loan to MONTGOMERY.

13         13.    In addition to defrauding the Bank through fraudulent loans, after gaining

14  control of the Bank, BERT DOUGLAS MONTGOMERY, DUSEAN BERKICH, the defendants,

15  and others, with the assistance of TOMAS B. ALDAN, the defendant, further exploited such

16  control by, among other things, defrauding a customer of the Bank (the "Bank Customer") out

17  of approximately $209,980, and defrauding the Bank out of an additional $240,000 in connection

18  with transactions relating to the Bank Customer.

19         14.    BERT DOUGLAS MONTGOMERY, DUSEAN BERKICH and TOMAS

20  B. ALDAN, the defendants, Michael T. Wilson, and others, in carrying out their scheme to

21  defraud, unlawfully obtained money and property from the Bank and the Bank Customer totaling

22  at least approximately $10.1 million.

23      B.    Fraudulent Representations and Transactions To Acquire Control Of The Bank

24         15     Despite repeated representations that BERT DOUGLAS

25  MONTGOMERY, the defendant, was an extremely wealthy businessman, MONTGOMERY and

26  DUSEAN BERKICH, the defendant, as of late November 2001, lacked the cash to close on the

27  purchase of the Bank's stock. In order to induce the Bank to provide funding for the stock

28  purchase transaction, MONTGOMERY, BERKICH and others falsely represented that

-4-

EXHIBIT 33
Page 4 of 17

1    MONTGOMERY owned a brokerage account in the name of United Forex Exchange (the "UFX

2    Brokerage Account"). MONTGOMERY and BERKICH purported to cause the UFX Brokerage

3    Account to be assigned to the Bank, and further represented that, upon liquidation, the assets in

4    the UFX Brokerage Account would be sufficient to reimburse the Bank for funds it advanced to

5    pay for MONTGOMERY's purchase of the Bank's stock from the selling shareholders.

6           16.    On or about December 3, 2001, the Bank, in transactions authorized by

7    TOMAS B. ALDAN, the defendant, advanced $3,587,886 to several of the selling shareholders.

8    These advances permitted BERT DOUGLAS MONTGOMERY and DUSEAN BERKICH, the

9    defendants, to use the Bank's funds to pay for the stock purchase in the absence of any loan

10   agreement, without the approval of the Bank's Board of Directors, and without providing the

11   Bank with sufficient funds or security to ensure that the Bank would be made whole on the

12   transaction.

13          17.    The liquidation of the UFX Brokerage Account yielded $2.8 million.

14   BERT DOUGLAS MONTGOMERY and DUSEAN BERKICH, the defendants, and others,

15   caused only $2.6 million of those proceeds to be transferred to the Bank to repay the advances to

16   the selling shareholders. After transferring to the Bank another $500,000 that MONTGOMERY

17   and BERKICH obtained from the Bank Customer, as alleged more fully in paragraphs 29--32,

18   below, the Bank was left with a shortfall between the advances to the selling shareholders and the

19   funds repaid by MONTGOMERY and BERKICH of approximately $487,000.

20          18.    In or about mid-December 2001, following the transfer of $3,587,886 of

21   the Bank's money to several selling shareholders, BERT DOUGLAS MONTGOMERY and

22   DUSEAN BERKICH, the defendants, knowing that the Bank would submit information about

23   MONTGOMERY's background and finances to the CNMI Commissioner of Banking for review

24   and approval, caused false and fraudulent information to be provided to the Bank and the CNMI

25   Commissioner of Banking. Among other things, MONTGOMERY and BERKICH, fraudulently

26   concealed the transactions described in paragraphs 15--17 above, including the fact that

27   MONTGOMERY was indebted to United Forex Exchange in the amount of approximately $2.8

28   million as a result of the liquidation of the securities in the UFX Brokerage Account.   In

-5-

EXHIBIT 33
Page 5 of 17

1   addition, MONTGOMERY and BERKICH falsely represented that MONTGOMERY had

2   substantial experience in the banking industry and that he had previously served on the board of

3   directors of a bank.

4           19.    In or about early February 2002, in an effort to repay United Forex

5   Exchange, BERT DOUGLAS MONTGOMERY and DUSEAN BERKICH, the defendants, and

6   others, fraudulently sought to use the Bank's assets to secure a loan for their personal benefit.

7   Specifically, MONTGOMERY, BERKICH and others caused the Bank, in transactions

8   authorized by TOMAS B. ALDAN, the defendant, to transfer assets from the Bank's existing

9   investment account to a new brokerage account at D.A. Davidson & Co., a broker-dealer.

10  MONTGOMERY, BERKICH and others then attempted to use that account as security for a loan

11  to MONTGOMERY from a lender in Dallas, Texas.   At no time did the Bank's Board of

12  Directors approve the establishment of a new brokerage account at D.A. Davidson & Co., nor

13  any pledge of the Bank's assets to secure a personal loan to MONTGOMERY.

14          C.     The Fraudulent Sweven Systems Loans

15          20.    In or about October 2001, BERT DOUGLAS MONTGOMERY and

16  DUSEAN BERKICH, the defendants, Michael T. Wilson, and others presented to TOMAS B.

17  ALDAN, the defendant, and certain other employees of the Bank a loan proposal for Sweven

18  Systems, pursuant to which, the Bank would loan Sweven Systems $5 million, purportedly for

19  the purpose of Sweven Systems' acquisition of two additional companies to expand its existing

20  credit card processing business.  In addition, pursuant to this proposal, the Bank and Sweven

21  Systems would enter into a business arrangement where the Bank would act as "settlement bank"

22  and according to MONTGOMERY, BERKICH, Wilson and others, earn substantial revenue

23  from its relationship with Sweven Systems.   The Bank's activities as a credit card processing

24  settlement bank were to be administered by the newly formed "International Affairs

25  Department."  Neither the loan proposal, nor the related business agreement, was ever presented

26  to or approved by the Bank's Board of Directors.

27          21.    In early November 2001, BERT DOUGLAS MONTGOMERY and

28  DUSEAN BERKICH, the defendants, urged TOMAS B. ALDAN, the defendant, and certain

-6-

EXHIBIT 33
Page 6 of 17

1  other employees of the Bank to fund $500,000 of the Sweven Systems loan for the purpose of

2  enabling Sweven Systems to go forward with its acquisition of two credit card processing

3  companies. To induce the Bank to make this $500,000 loan to Sweven Systems,

4  MONTGOMERY, BERKICH and Michael T. Wilson falsely represented that the loan would be

5  secured by $600,000 in cash owned and controlled by Sweven Systems on deposit at another

6  credit card processing company. In addition, MONTGOMERY fraudulently assured a loan

7  officer of the Bank that ALDAN had authorized disbursement of $500,000 in loan proceeds in

8  the absence of documentation ordinarily required for a commercial loan. Further, while

9  ALDAN had not initially authorized the disbursement, he later ratified it without first obtaining

10  the proper documentation. ALDAN concealed this $500,000 loan from the Board of Directors,

11  at no time seeking its approval.

12      22.    On or about November 8, 2001, the Bank wired $500,000 to Sweven

13  Systems' bank in Plano, Texas. Shortly thereafter, Michael T. Wilson fraudulently caused

14  Sweven Systems to disburse the majority of these funds to pay for a variety of expenses unrelated

15  to the acquisition of credit card processing companies.

16      23.    On or about December 26, 2001, Michael T. Wilson caused Sweven

17  Group rather than Sweven Systems, the borrower on the loans and the entity obligated to repay

18  the Bank, to enter into a transaction in which Sweven Group acquired an indirect interest in two

19  credit card processing companies

20      24.    In or about early January 2002, BERT DOUGLAS MONTGOMERY and

21  DUSEAN BERKICH, the defendants, and others, urged TOMAS B. ALDAN, the defendant, and

22  certain other officers of the Bank to loan an additional $4.5 million to Sweven Systems so that it

23  could complete its acquisition of two credit card processing companies. For the purpose of

24  inducing the Bank to make this second loan to Sweven Systems, MONTGOMERY, BERKICH,

25  Wilson and others, among other things:

26      a.    Submitted false and fraudulent documentation to the Bank,

27  including a fabricated Sweven Systems tax return and a fictitious Sweven Systems financial

28  statement;

-7-

EXHIBIT 33
Page 7 of 17

b.     Falsely represented that Sweven Systems owned and controlled
$8.5 million on deposit with another credit card processing company, and that $5.6 million of
such funds was available to be assigned as collateral for the loan;

c.     Falsely represented that Sweven Systems would use the proceeds
of the $4.5 million loan from the Bank to acquire two credit card processing companies, when, in
fact, some of the funds were applied instead for the benefit of Sweven Group's acquisition of an
indirect interest in two credit card processing companies, with Sweven Systems acquiring no
interest whatsoever in any credit card processing companies; and

d.     Fraudulently concealed that Wilson had misapplied the majority of
the $500,000 in loan proceeds that had been disbursed on or about November 8, 2001, and
planned to use that portion of the $4.5 million that was not fraudulently converted for Sweven
Group's benefit for similar expenses unrelated to the acquisition of credit card processing
companies

25.     On or about January 11, 2002, TOMAS B. ALDAN, the defendant,
approved the additional $4.5 million loan to Sweven Systems, and caused the funds to be
transferred by wire from the Bank to the escrow account of Sweven System's attorneys in Plano,
Texas. At ALDAN's direction, this second $4.5 million loan to Sweven Systems was never
presented to the Bank's Board of Directors for approval.

D.     The Fraudulent $260,000 Loan To BERT DOUGLAS MONTGOMERY

26     In or about early February 2002, BERT DOUGLAS MONTGOMERY, the
defendant, applied for a $260,000 loan from the Bank.   TOMAS B. ALDAN, the defendant,
approved this loan and, at ALDAN's direction, it was never presented to the Bank's Board of
Directors for approval.   Among other false and fraudulent representations, MONTGOMERY
submitted a materially misleading financial statement that grossly overstated his assets and
omitted his $2.8 million liability to United Forex Exchange.  On or about February 8, 2002, at
ALDAN's direction, the Bank transferred $260,000 to an account at the Bank in Montgomery's
name.

-8-

EXHIBIT 33
Page 8 of 17

E.    The Unauthorized And Illegal Loan To TOMAS B. ALDAN

27.    At all times relevant to the Indictment, the laws of the CNMI required that any loan to an officer or director of the Bank be approved by a two-thirds vote of the Bank's Board of Directors, with all interested directors abstaining.

28.    In or about January 2002, TOMAS B. ALDAN, the defendant, applied to the Bank for a loan. On or about January 28, 2002, DOUGLAS B. MONTGOMERY, the defendant, purporting to act on behalf of the Bank, directed that $504,666 in loan proceeds be disbursed to ALDAN. In violation of ALDAN's duty to disclose this transaction, as well as the legal requirement that two-thirds of disinterested directors approve such loan, ALDAN and MONTGOMERY failed to disclose it to the Board, thereby fraudulently concealing a material fact.

F.    The Fraud On The Bank Customer And The Bank

29.    On or about December 4, 2001, BERT DOUGLAS MONTGOMERY and DUSEAN BERKICH, the defendants, and others caused the Bank Customer to wire $500,000 from a bank in Hong Kong, China to an account in MONTGOMERY's name at the Bank. MONTGOMERY and BERKICH then caused this $500,000 to be transferred from MONTGOMERY's account to the Bank to pay back a portion of the funds that MONTGOMERY and BERKICH had fraudulently caused the Bank to advance to the selling shareholders, as alleged in paragraphs 15-17, above.

30.    On or about December 13, 2001, BERT DOUGLAS MONTGOMERY and DUSEAN BERKICH, the defendants, caused $50,000 to be repaid to the Bank Customer.

31.    In or about late December 2001, the Bank Customer demanded repayment of the balance of the Bank Customer's funds. BERT DOUGLAS MONTGOMERY, the defendant, falsely represented to the customer that he would cause $240,000 to be transferred by wire to Hong Kong, and that $209,980 would be deposited into the Bank Customer's savings account at the Bank. Despite the fact that a Bank employee noted a $209,980 deposit in the Bank Customer's savings account passbook, at MONTGOMERY's direction, no such deposit was ever made.

-9-

EXHIBIT 33
Page 9 of 17

32.     On or about January 11, 2002, the Bank Customer again demanded repayment of the $240,000 that BERT DOUGLAS MONTGOMERY, the defendant, had previously promised to pay.   Without any other assurance that such funds would be repaid, MONTGOMERY, with the assistance of TOMAS B. ALDAN, the defendant, then fraudulently caused the Bank to transfer by wire $240,000 of its funds to a bank in Hong Kong.  Among other false statements, MONTGOMERY falsely represented to the Bank that the $240,000 wire transfer was issued pending a loan approval to the Bank Customer.   ALDAN authorized this transaction and concealed it from the Bank's Board of Directors.

## THE CONSPIRACY

33.     From in or about August 2001 continuing to in or about March 2002, in the District of the Northern Mariana Islands, and elsewhere, BERT DOUGLAS MONTGOMERY, DUSEAN BERKICH and TOMAS B. ALDAN, the defendants, together with Michael T. Wilson and others to the Grand Jury known and unknown, unlawfully, wilfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to commit wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

34.     It was a part and object of said conspiracy that the defendants, BERT DOUGLAS MONTGOMERY, DUSEAN BERKICH and TOMAS B. ALDAN, together with Michael T. Wilson and their co-conspirators, unlawfully, wilfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money by means of materially false and fraudulent pretenses, representations and promises, and to deprive the Bank of ALDAN's honest services, would and did cause to be transmitted in interstate and foreign commerce by means of a wire communication, certain writings, signs, signals, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346.

## Means and Methods Of The Conspiracy

35.     Among the means and methods by which BERT DOUGLAS MONTGOMERY, DUSEAN BERKICH and TOMAS B. ALDAN, the defendants, together with

-10-

EXHIBIT 33
Page 10 of 17

1 │ Michael T. Wilson and others known and unknown, would and did carry out the conspiracy were

2 │ the following:

3 │                a.          BERT DOUGLAS MONTGOMERY and DUSEAN BERKICH,

4 │ the defendants, and their co-conspirators, made materially false and fraudulent representations

5 │ and omissions to the Bank and to the CNMI Commissioner of Banking for the purpose of

6 │ acquiring control of the Bank.

7 │                b.          BERT DOUGLAS MONTGOMERY and DUSEAN BERKICH,

8 │ the defendants, and their co-conspirators, offered to and gave TOMAS B. ALDAN, the

9 │ defendant, money and other things of value in return for ALDAN's assistance in gaining control

10 │ of the Bank and concealing their activities from the Bank's Board of Directors, thereby depriving

11 │ the Bank of ALDAN's honest services.

12 │                c.          BERT DOUGLAS MONTGOMERY, DUSEAN BERKICH and

13 │ TOMAS B. ALDAN, the defendants, and their co-conspirators, fraudulently sought to and did

14 │ use the assets of the Bank to pay for the acquisition of the Bank's stock.

15 │                d.          BERT DOUGLAS MONTGOMERY, DUSEAN BERKICH and

16 │ TOMAS B. ALDAN, the defendants, and their co-conspirators, including Michael T. Wilson,

17 │ made materially false and fraudulent representations and omissions to the Bank for the purpose

18 │ of causing the Bank to loan its funds to MONTGOMERY, BERKICH, ALDAN, Wilson and

19 │ persons and entities associated with them.

20 │                e.          BERT DOUGLAS MONTGOMERY and DUSEAN BERKICH,

21 │ the defendants, and their co-conspirators, made false and fraudulent representations to the Bank

22 │ Customer for the purpose of obtaining the Bank Customer's money and property.

23 │                f.          BERT DOUGLAS MONTGOMERY, DUSEAN BERKICH and

24 │ TOMAS B. ALDAN, the defendants, and their co-conspirators, including Michael T. Wilson,

25 │ made and caused to be made false and misleading entries in the books and records of the Bank

26 │ for the purpose of inducing the Bank to advance and disburse funds for their benefit.

27 │                g.          BERT DOUGLAS MONTGOMERY, DUSEAN BERKICH and

28 │ TOMAS B. ALDAN, the defendants, and their co-conspirators, including Michael T. Wilson,

11

EXHIBIT 33
Page 11 of 17

1   used facilities of interstate and foreign commerce, including interstate and international wire

2   transmissions, in furtherance of the object of the conspiracy.

3                                    Overt Acts

4           36.     In furtherance of said conspiracy and to effect the illegal objects thereof

5   the defendants and their co-conspirators committed the following overt acts, among others, in the

6   District of the Northern Mariana Islands and elsewhere:

7                   a.      On or about September 30, 2001, BERT DOUGLAS

8   MONTGOMERY, the defendant, tendered a Bank of Saipan employment agreement to TOMAS

9   B. ALDAN, the defendant.

10                  b.      On or about November 6, 2001, DUSEAN BERKICH, the

11  defendant, prepared a collateral assignment that purported to assign $600,000 to the Bank, and

12  caused it to be provided to the Bank at its headquarters in Chalan Kanoa, Saipan, CNMI.

13                  c.      On or about November 6, 2001, Michael T. Wilson executed a

14  collateral assignment that purported to assign $600,000 to the Bank, and caused it to be provided

15  to the Bank at its headquarters in Chalan Kanoa, Saipan, CNMI.

16                  d.      On or about November 8, 2001, BERT DOUGLAS

17  MONTGOMERY, the defendant, at the Bank's headquarters in Chalan Kanoa, Saipan, CNMI,

18  falsely told a Bank loan officer that TOMAS B. ALDAN, the defendant, had authorized the

19  disbursement of $500,000 to Sweven Systems.

20                  e.      On or about November 8, 2001, BERT DOUGLAS

21  MONTGOMERY and DUSEAN BERKICH, the defendants, caused the Bank to transfer by wire

22  $500,000 to Sweven Systems' bank in Plano, Texas.

23                  f.      On or about November 19, 2001, BERT DOUGLAS

24  MONTGOMERY, the defendant, executed stock purchase agreements with several shareholders

25  of the Bank.

26                  g.      On or about December 3, 2001, BERT DOUGLAS

27  MONTGOMERY, DUSEAN BERKICH and TOMAS ALDAN, the defendants, caused the Bank

28  to advance $3,587,886 in Bank funds to the selling shareholders.

                                    -12-

EXHIBIT 33
Page 12 of 17

h.    On or about December 11, 2001, BERT DOUGLAS MONTGOMERY and DUSEAN BERKICH, the defendants, caused false information concerning MONTGOMERY's background and finances to be submitted to the Bank and the CNMI Commissioner of Banking.

i.    On or about January 3, 2002, Michael T. Wilson faxed an assignment of collateral from Plano, Texas to the Bank's headquarters in Chalan Kanoa, Saipan, CNMI.

j.    On or about January 9, 2002, DUSEAN BERKICH, the defendant, at the Bank's headquarters in Chalan Kanoa, Saipan, CNMI, had a conversation with the Bank's accounting manager regarding the availability of cash to fund the Sweven Systems loan.

k.    On or about January 11, 2002, BERT DOUGLAS MONTGOMERY and DUSEAN BERKICH, the defendants, caused the Bank to transfer by wire $4.5 million to the attorney escrow account for Sweven Systems' attorney at a bank in Plano, Texas.

l.    On or about January 11, 2002, BERT DOUGLAS MONTGOMERY and TOMAS B. ALDAN, the defendants, caused the Bank to transfer by wire $240,000 to Hang Seng Bank, Hong Kong, China.

(Title 18, United States Code, Sections 371, 1343 and 1346).

COUNTS TWO THROUGH FOUR

WIRE FRAUD

37.    The grand jury realleges, adopts, and incorporates by reference herein, the allegations contained in paragraphs one (1) through thirty-two (32) as if fully set forth herein.

38.    On or about the dates set forth below, in the District of the Northern Mariana Islands and elsewhere, BERT DOUGLAS MONTGOMERY and DUSEAN BERKICH, the defendants,  unlawfully, wilfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme

-13-

EXHIBIT 33
Page 13 of 17

1  and artifice, knowingly transmitted and caused to be transmitted in interstate and foreign

2  commerce certain signs, writings, signals, pictures, and sounds by means of wire communication,

3  that is, the wire communications in interstate and foreign commerce set forth in each of Counts

4  Two through Four:

| COUNT | DATE | WIRE COMMUNICATION |
|-------|------|--------------------|
| TWO | November 8, 2001 | Wire transfer instructions communicated via interstate wire from the Bank of Saipan, Saipan, CNMI, to the Federal Reserve Bank in San Francisco, California directing the transfer by wire of $500,000 to Legacy Bank of Texas, Plano, Texas |
| THREE | December 20, 2001 | Facsimile transmission of Sweven Systems tax returns from Plano, Texas to the Bank of Saipan, Saipan, CNMI. |
| FOUR | January 11, 2002 | Wire transfer instructions communicated via interstate wire from the from the Bank of Saipan, Saipan, CNMI, to the Federal Reserve Bank in San Francisco, California directing the transfer by wire of $4.5 million to North Dallas Bank, Plano, Texas. |

(Title 18, United States Code, Sections 1343 and 2).

## COUNT FIVE

### WIRE FRAUD: DEPRIVATION OF HONEST SERVICES

39. The grand jury realleges, adopts, and incorporates by reference herein, the allegations contained in paragraphs one (1) through thirty-two (32) as if fully set forth herein.

40. On or about January 11, 2002, in the District of Northern Mariana Islands and elsewhere, BERT DOUGLAS MONTGOMERY and TOMAS B. ALDAN, the defendants, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, namely, a scheme and artifice to deprive the Bank of ALDAN's honest services, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, and sounds for the purpose of executing such scheme and artifice, namely, wire transfer instructions communicated via interstate wire

- 14 -

EXHIBIT 33
Page 14 of 17

1  from the Bank of Saipan, Saipan, CNMI, to the Federal Reserve Bank in San Francisco,

2  California directing the transfer by wire of $240,000 to Hang Seng Bank, Hong Kong, China.

3              (Title 18, United States Code, Sections 1343, 1346 and 2).

4                   COUNT SIX

5            MONEY LAUNDERING CONSPIRACY

6        41.    The grand jury realleges, adopts, and incorporates by reference herein, the

7  allegations contained in paragraphs one (1) through thirty-two (32) as if fully set forth herein.

8        42.    From in or about October 2001 continuing to in or about March 2002, in

9  the District of the Northern Mariana Islands, and elsewhere, BERT DOUGLAS

10  MONTGOMERY and DUSBAN BERKICH, the defendants, together with others to the Grand

11  Jury known and unknown, knowing that the property involved in financial transactions

12  represented the proceeds of some form of unlawful activity, did knowingly and intentionally

13  conspire to conduct such financial transactions affecting interstate and foreign commerce, which

14  transactions in fact involved the proceeds of specified unlawful activity, namely, wire fraud, in

15  violation of Title 18, United States Code, Section 1343, and securities fraud, in violation of Title

16  15, United States Code, Sections 78j(b) and 78ff, committed in connection with the fraudulent

17  operation of United Forex Exchange, and with the intent to promote the carrying on of specified

18  unlawful activity, namely, the wire fraud scheme described in Count One of this Indictment.

19               (Title 18, United States Code, Section 1956(h)).

20            COUNTS SEVEN THROUGH NINE

21              MONEY LAUNDERING

22        43.    On or about the dates set forth below, in the District of the Northern

23  Mariana Islands, and elsewhere, BERT DOUGLAS MONTGOMERY and DUSBAN BERKICH,

24  the defendants, together with others to the Grand Jury known and unknown, knowing that the

25  property involved in financial transactions, namely, the financial transactions set forth below in

26  Counts Seven through Nine, represented the proceeds of some form of unlawful activity, did

27  knowingly and intentionally conduct and attempt to conduct such financial transactions affecting

28  interstate and foreign commerce, which in fact involved the proceeds of specified unlawful

-15-

EXHIBIT 33
Page 15 of 17

DEC 16 2002 11:36 FR AIU                                    TO 011442076801132   P.

1    activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, and

2    securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, committed

3    in connection with the fraudulent operation of United Forex Exchange, and with the intent to

4    promote the carrying on of specified unlawful activity, namely, the wire fraud scheme described

5    in Count One of this Indictment:

6    | COUNT | DATE | FINANCIAL TRANSACTION |
     |-------|------|------------------------|

7    SEVEN     November 28, 2001      Wire transfer of $1.8 million from Southwest Securities,
                                      Dallas, Texas to the Bank of Saipan, Saipan, CNMI via
8                                     the Federal Reserve Bank in San Francisco, California.

9    EIGHT     December 4, 2001       Wire transfer of $300,000 from Southwest Securities,
                                      Dallas, Texas to the Bank of Saipan, Saipan, CNMI via
10                                    the Federal Reserve Bank in San Francisco, California.

11   NINE      December 10, 2001      Wire transfer of $700,000 from Southwest Securities,
                                      Dallas, Texas to the Bank of Saipan, Saipan, CNMI via
12                                    the Federal Reserve Bank in San Francisco, California.

13                   (Title 18, United States Code, Sections 1956(a)(1)(A)(i)and 2).

14

15                              FORFEITURE ALLEGATION

16           44.     The grand jury realleges, adopts, and incorporates by reference herein, the

17   allegations contained in paragraphs one (1) through thirty-two (32) as if fully set forth herein.

18           45.     Upon conviction of one or more of the offenses alleged in Counts

19   One through Five of this Indictment, defendants BERT DOUGLAS MONTGOMERY,

20   DUSEAN BERKICH, and TOMAS B. ALDAN shall forfeit to the United States pursuant to

21   Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section

22   2461(c), any property constituting or derived from proceeds traceable to said violations,

23   including but not limited to a sum of money not less than $10.1 million in United States

24   currency, representing the amount of proceeds obtained as a result of the offenses, namely the

25   conspiracy to commit wire fraud charged in Count One, and the wire frauds charged in Counts

26   Two through Five, for which the defendants are jointly and severally liable, which sum includes,

27   but is not limited to all right, title and interest of the aforementioned defendants in:

28

                                          -16-

EXHIBIT 33
Page 16 of 17

1  it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as

2  incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other

3  property of said defendants up to the value of the forfeitable property described above.

4  (Title 18, United States Code, Section 981(a)(1)(C) and
   Title 28 United States Code, Section 2461(c))

5

6  DATED this 14th day of August, 2002.

7

8                                         A TRUE BILL

9

10                                        Foreperson

11
   FREDERICK A. BLACK
12  United States Attorney
    District of Guam and CNMI
13

14  By:

15  PATRICK J. SMITH
    Assistant United States Attorney
16

17

18

19

20

21

22

23

24

25

26

27

28

                            -18-

++ TOTAL

EXHIBIT 33
Page 17 of 17

# EXHIBIT 16

F I L E D
Clerk
District Court

JAN - 5 2007

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 02-00010 |
| | ) | |
| Plaintiff | ) | |
| | ) | ORDER DENYING |
| v. | ) | MOTION OF DEFENDANT |
| | ) | MONTGOMERY TO BE |
| BERT DOUGLAS MONTGOMERY, | ) | RE-SENTENCED |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

THIS MATTER was remanded by the U.S. Court of Appeals for the Ninth

Circuit on August 29, 2006, with directions that this court "obtain the views of

counsel before it decides whether <u>Ameline</u> re-sentencing is warranted." <u>United States</u>

<u>v. Montgomery</u>, No. 05-10587 (9th Cir. Aug. 29, 2006). Final judgment was entered

September 20, 2006, and received by this court on September 28, 2006.

AO 72
(Rev. 08/82)

On June 18, 2003, defendant Montgomery was convicted by a jury of one count of conspiracy to commit wire fraud, three counts of wire fraud, one count of wire fraud (deprivation of honest services), three counts of money laundering, and one count of conspiracy to launder money.

On December 31, 2003, defendant Montgomery was sentenced to 240 months in prison and ordered to pay restitution, jointly and severally with his co-defendants, to the Bank of Saipan in the amount of $5,273,643.70 and to an individual defraudee in the amount of $209,980.00.

By memorandum opinion dated July 27, 2005, defendant Montgomery's conviction was affirmed, with a limited remand to this court "to allow the district court to determine 'whether the sentence imposed would have been materially different had the district court known that the sentencing guidelines were advisory'. United States v. Ameline 409 F.3d 1073, 1074 (9th Cir. 2005) (*en banc*)."

On August 29, 2005, this court issued an "Order After Limited Remand Denying Resentencing."

In an Opinion filed August 29, 2006, the matter was again remanded by the Ninth Circuit, with the directions quoted in the first paragraph of this order.

On September 29, 2006, the court issued an order "that counsel for plaintiff and defendant shall submit written comments addressing any factors---not only within the advisory sentencing guidelines, but also those encompassed by the goals

and purposes of sentencing as reflected in 18 U.S.C. § 3553(a)---that counsel believes warrants re-sentencing of this defendant." (Docket No. 333).  The court gave the parties until October 20, 2006, to file their submissions.

On October 18, 2006, the parties stipulated to continue this matter for three months, "until after January, 2007."  In an order dated October 19, 2006, the court denied the joint motion to continue for that length of time.  (Docket No. 336)  However, by order dated October 20, 2006, the court granted both counsel a thirty-day extension of time in which to file memoranda addressed to the issue of re-sentencing.  In that order, the court stated that the "motion to set this matter for re-sentencing is taken under advisement until the court has had the opportunity to review and consider the submissions." (Docket No. 338)

Defendant filed his memorandum and attachments on November 19, 2006. (Docket Nos. 339-340)  Plaintiff's submission was filed November 20, 2006.  (Docket No. 341)

The court has read all filings in their entirety and its sentence would not have been different, let alone materially different, had it known at the time of the original sentencing that the sentencing guidelines were advisory.  Likewise, the court concludes that its original sentence took into account, as the court believes every sentence must, those factors set out in 18 U.S.C. § 3553(a).

As the court noted in its order of August 29, 2005, and re-adopts here:

This defendant's primary role in the intentional fraud perpetrated on the Bank of Saipan resulted in direct injury to thousands of bank depositors, including the Commonwealth government, all of whom lost access to their savings. The indirect injury caused to the families of individual account holders and to the creditors of business account holders was significant and still reverberates in the community as the Bank has continued in receivership since May of 2002. The cold, calculating nature of the crime and the financial losses and inconvenience caused to so many victims warranted the sentence imposed.

The court's position remains unchanged as to the justification for its original sentence, which was stated on the record on December 31, 2003.[1] Defendant's claim that no depositor suffered any loss during the time the bank was under receivership is unsupported by any documentation. More important to the court, though, is that the *need* for the receivership was due to the actions of this defendant. The court cannot specifically quantify the harm to the Bank of Saipan's depositors by their inability to access their accounts, or the effect on the Bank's stability and soundness by its having

---

[1]

To the extent that plaintiff is concerned that the court was not precise enough in its findings during sentencing, the court reiterates what it believed it had sufficiently articulated before by its adoption of the pre-sentence report: First, that defendant Montgomery hindered the investigation and prosecution by lying to Federal Bureau of Investigation Agent Hewitt on March 2, 2002, about his personal background, his wealth, his role in the Swevern Systems loan, and his involvement in the loan transactions. Other witnesses confirmed defendant Montgomery's false statements. Second, as set out in the pre-sentence report provided to the court and counsel, defendant Montgomery perjured himself repeatedly during the trial. By adopting the pre-sentence report, the court's intention and belief was that it had found by a preponderance of the evidence that defendant Montgomery had testified falsely under oath about material matters and that his testimony was willful, intentional, and intended to deceive the finders of fact. There was no indication that defendant Montgomery was simply mistaken, that he was confused by events, or that he suffered from a faulty memory.

to expend its limited resources on sizeable attorney's fees, or the lingering reticence of potential customers to make use of the Bank's services.  It should be apparent that great harm was done to the Bank and this community by defendant and his confederates.

As to the factors set out in 18 U.S.C. § 3553(a), the court continues to believe that defendant Montgomery's sentence was sufficient, but not greater than necessary, to meet those factors.  The "nature and circumstances of the offense and the history and characteristics of the defendant" were taken into account by the pre-sentencing report.  The court was fully aware of defendant's age, health, and personal characteristics.  As to defendant's age, the court concluded that society would not be served by applying a sentencing "discount" for this middle-aged criminal.  Medical care will be available to defendant throughout his incarceration.

The sentence imposed reflected the seriousness of the offense in this small community; to have imposed a materially different sentence would not have met the goal of promoting respect for the law and defendant's sentence provided just punishment for the harm inflicted by him.

Defendant's sentence will deter this criminal from committing other acts of fraud and send a strong message to other potential confidence men that the citizens and residents of the Commonwealth will be protected from predators of their kind.

As ordered at sentencing, defendant Montgomery will be required to make use

of at least some of the educational opportunities available during incarceration. As mentioned above, he will receive any medical treatment he requires.

FOR THE FOREGOING REASONS, the court declines to re-sentence defendant Bert Douglas Montgomery. His sentence would not have been materially different had this court known that the sentencing guidelines were advisory at the time of his sentencing.

IT IS SO ORDERED.

DATED this 5th day of January, 2007.


_____
ALEX R. MUNSON
Judge