# EXHIBIT 17

1  CALVO & CLARK, LLP
   1st Floor, Macaranas Building
2  PMB 951 Box 10001
   Saipan, MP 96950
3  Telephone:   (670) 233-2045
   Fax:           (670) 233-2776
4
   LAW OFFICE OF WILLIAM M. FITZGERALD
5  2nd Floor, Macaranas Building
   Post Office Box 500909
6  Saipan MP 96950
   Telephone:   (670) 234-7241
7  Fax:           (670) 234-7530
8
   STEWART SOKOL & GRAY, LLC
9  2300 SW First Avenue, Suite 200
   Portland, OR 97201-5047
10 Telephone: (503) 221-0699
   Facsimile: (503) 223-5706
11
   *Attorneys for Plaintiff The Bank of Saipan, Inc.*
12
13                IN THE SUPERIOR COURT
                       FOR THE
14     COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
15
   THE BANK OF SAIPAN, INC.,                    Civ. Act. No. 04-0449A
16
                   Plaintiff,
17
                      v.
18                                              **RENEWED REQUEST BY THE BANK
                                                OF SAIPAN FOR CERTIFICATION TO
19 RANDALL T. FENNELL; RICHARD                  THE CHIEF JUSTICE OF THE
   PIERCE; WHITE, PIERCE, MAILMAN &             SUPREME COURT FOR
20 NUTTING; DAVID AXELROD;                      APPOINTMENT OF PRO TEM JUDGE**
   SCHWABE, WILLIAMSON & WYATT,
21 AND DOES 1-2O,
22
                 Defendants.
23
24
25
26
27
28

The purpose of this renewed request is for the Superior Court to certify to the Chief Justice a request to have a pro tem judge appointed as soon as possible to hear this lawsuit, *Bank of Saipan v. Fennell*, N.M.I. Superior Ct. Civ. Act. No. 04-0449A, which was filed close to four years ago on September 27, 2004.

Nearly two years ago, on October 30, 2006, the assigned judge, Judge Lizama, recused himself after certain appellate proceedings. (Tab 1). Presiding Judge Naraja, and Associate Judges Wiseman, Govendo and Manglona also have all recused themselves due to conflicts. (*See* Tab 6 at 2 (Presiding Judge Naraja recusing himself and confirming all other judges had recused themselves); Tabs 3-5 (recusals by Judges Wiseman, Manglona, and Govendo)). ***Thus, for these last two years, the case has been without an assigned judge despite multiple request for appointments of an unconflicted Superior Court Judge or certification to the Chief Justice of the Supreme Court for the appointment of a judge pro tem.***

Accordingly, Plaintiff Bank of Saipan now renews its request to have this matter certified to the Supreme Court for appointment of a pro tem judge. Plaintiff renews its request because the case has continued to languish without a judge, and because there is no non-conflicted CNMI Superior Court judge left to be appointed in this case.

Most recently, the Honorable Presiding Judge Naraja recused himself from this matter citing his conflicts (*see* Tab 6 at 2). In doing so, he stated, "[t]he Court is cognizant of the fact that all five (5) judges of this Court have recusals entered in this matter." He nonetheless ordered that he would hear briefing on whether to apply the rule of necessity. (*See* Tab 2 at 2-10). The Bank of Saipan objected to this procedure because Presiding Judge Naraja's disclosed conflicts and recusal prevented him from hearing the matter, especially given additional conflicts created by ex parte

1

communications by defendant Fennell with the Presiding Judge with regard to issues in dispute in the case.[1] (*See* Tab 7 (objection raising the conflict); Tab 8 (further briefing by Bank of Saipan on this issue)). The Bank renewed its December 2007 certification request at the March 26, 2008 Status Conference (Tab 2 at 3:19-25 & 4:1-8) and again in its written submissions to the Court. (Tabs 2, 8, 9 & 11). Further, the Bank argued that the rule of necessity was inapplicable because an unconflicted pro tem judge could be appointed.

However, as directed by the Presiding Judge, on May 1, 2008 the parties submitted briefing regarding the rule of necessity, in which briefing Bank of Saipan repeated its request that the Presiding Judge certify this matter to the Supreme Court for appointment of a judge pro tem under 1 C.M.C. § 3305(g). (*See* Tabs 9-10 (the parties' May 1 briefs on the rule of necessity)). Argument was then heard on May 14, 2008, and the matter taken under advisement. This task only became more difficult when Judge Lizama resigned, further limiting the pool of (already conflicted) judges.

Since that hearing, no order has issued, and this case-filed four years ago-is now at its two year anniversary since it had an assigned judge. Further, as stated, all regular sitting judges are conflicted, hence appointment of a pro tem judge under 1 C.M.C. § 3305(g) is the only way to have a non-conflicted judge hear this matter. Accordingly, Bank of Saipan is most respectfully asking that the Superior Court take action to obtain appointment by the Supreme Court under 1 C.M.C. § 3305(g) by requesting a pro tem judge in this case. This request is made in the interests of justice

---

[1] These ex parte contacts occurred in the context of Fennell arguing that the Presiding Judge should agree to indemnify him as the former receiver for the Bank of Saipan and – Fennell argued – an "employee" of the court system. Similar issues exist in the litigation, causing these conflicts to give rise to disqualification. *See* 48A C.J.S. Judges § 244 (extrajudicial contacts with judge that could result in adverse judicial opinion are disqualifying contacts).

1  and judicial efficiency, as it benefits neither the parties nor the court system to have this case

2  continue to languish without a judge.

3      Respectfully submitted this 8th day of September, 2008.

4                             CALVO & CLARK, LLP

5                             *Attorneys for The Bank of Saipan, Inc.*

6

7      By:           _____

8                   RODNEY J. JACOB (F0186)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TAB 7

December 8, 2005

Honorable Robert C. Naraja
Presiding Judge
Commonwealth Superior Court
House of Justice, Guma Husticia Building
Saipan, MP  96950

Re:   **Payment of Defense of Former Receiver in Bank of Saipan Lawsuit Reconsidered**

Dear Presiding Judge Naraja:

On August 26, 2005, I was informed by Attorney General Pamela Brown that you had authorized my indemnification in the lawsuit of *The Bank of Saipan, Inc. v. Randall T. Fennell, Richard Pierce, White, Pierce, Mailman & Nutting, David W. Axelrod, Schwabe, Williamson & Wyatt*, CNMI Superior Court Civil Action No. 04-449A. The same letter indicates that with respect to my request for defense costs, you denied this request as conflicts do not prevent the Attorney General from representing me in this matter. I believe that as this case has developed over the past three months, conflicts have begun to arise that were not anticipated before. For that reason, I am asking that you reconsider your denial and grant my request for private counsel.

I recognize that the decision whether to provide a defense through the Attorney General or through separate counsel is committed to the entity that was the employer by the PELDIA statute. 7 CMC § 2304(a) ("at the public entity's discretion"). This discretion, however, must be guided by the ethical rules governing lawyers addressing actual and potential conflicts of interest which may arise in the course of representing multiple clients. Rule 1.7 of the Model Rules of Professional Conduct provides that a lawyer should not engage in multiple representation of

Honorable Robert C. Naraja
December 8, 2005
Page 2

clients if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client" unless "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client" and "each affected client gives informed consent, confirmed in writing." See also, *Eriks v. Denver*, 824 P.2d 1207, 1212 (Wash. 1992).

The potential conflict of interest in this case arises from the Attorney General's representation of the Secretary of Commerce, the plaintiff who petitioned the Bank of Saipan into receivership, presently and for the past 3 ½ years. Initially, I was willing to accept your decision based upon the belief that there would be no potential conflict in the same office representing both the Secretary and myself. Since then, conflicts have begun to arise between the Secretary's position and mine on several issues. In particular, a critical issue in this case has been whether the receivership of the Bank should continue or be terminated. The position of the Secretary of Commerce, acting as the Director of Banking, on this issue is crucial, particularly since the Secretary is the plaintiff in the receivership. This issue has been repeatedly reevaluated by the Secretary. We are informed that as Secretary Andrew Salas has recently returned to the job, this issue is once again being examined.

It is very much in my interest that the receivership continue. In receivership, the Bank Directors' decision to use the Bank to sue me is subject to the review and authorization of the receivership court. In fact, this issue was raised as one of the first issues we raised. On October 14, 2005, Judge Lizama, sitting as the receivership judge, ordered that the prosecution could continue only once the Directors comply with certain cost restrictions in order to protect the

Honorable Robert C. Naraja
December 8, 2005
Page 4

subject to closer scrutiny under the appearance-of-propriety standard than non-governmental attorneys." *In re Petition for Review*, 507 A.2d 233, 238 (N.J. 1986). In sum, I believe that my representation by the same office which represents and advises the Secretary of Commerce is not acceptable.

I understand the government's legitimate desire to avoid the financial burden of my private representation. For the very same reason, I also desire to avoid that burden. I agreed to assist the government in an emergency by acting as a temporary receiver for only one month. Due to motions and writs brought by the Directors, I was forced to remain as receiver for five months. I now find myself being sued for my service. I have a policy of insurance which pays for my defense, but its fund will soon be depleted. At that point, I only have PELDIA and a claim against the Bank for indemnification if I prevail in my defense, as I believe I ultimately will. The PELDIA statute was passed into law to ensure that persons who serve the government are not required to exhaust their own resources defending themselves against lawsuits based upon alleged acts done while government servants.

I ask that you reconsider your decision to not pay for my defense based upon recent events which have now created conflicts and make future conflicts much more likely. I also ask that you consider these facts in granting my PELDIA request for the new MPLA intervention in this lawsuit.

Thank you very much for your kind consideration. I look forward to your reply.

Very truly yours,

Randall T Fennell

cc Attorney General

December 8, 2005

Honorable Robert C. Naraja
Presiding Judge
Commonwealth Superior Court
House of Justice, Guma Husticia Building
Saipan, MP  96950

Re:     <u>Payment of Defense and Indemnification of Former Receiver in MPLA Lawsuit</u>

Dear Presiding Judge Naraja:

As you know, I was sued by the directors of the Bank of Saipan for my acts as the Superior Court's Receiver in the receivership of the Bank of Saipan, Inc. In *The Bank of Saipan, Inc. v. Randall T. Fennell, Richard Pierce, White, Pierce, Mailman & Nutting, David W. Axelrod, Sewabe, Williamson & Wyatt,* CNMI Superior Court Civil Action No. 04-449A.  On August 26, 2005, I was informed by the Attorney General that my request for indemnification and representation under the Public Employees Legal Defense and Indemnification Act ("PELDIA"), 7 CMC § 2301, *et seq.*, had been granted by you subject to certain conditions.  A copy of that letter is attached.

On October 12, 2005, the Board of the Marianas Public Land Authority and the Marianas Public Land Authority, after being permitted to intervene in the same case, filed a complaint stating essentially the same causes of action from the viewpoint of a depositor, but adding new facts, against the same defendants.  A copy of their Complaint and Demand for Jury Trial is attached.  We have moved to strike the complaint as being filed in violation of the rules for intervention, which motion we believe to meritorious (as MPLA submitted a proposed complaint

Honorable Robert C. Naraja
December 8, 2005
Page 2

with their motion to intervene, but then actually filed a different complaint once intervention was granted). Until that motion is ruled upon, there is no due date for an answer. Hence, our request is timely.

This letter is to request that the Superior Court provide PELDIA coverage for the claims filed by MPLA and its Board against me. The MPLA claims, like those of the Bank, are based on alleged acts which occurred within the scope of my employment by the Superior Court as a receiver. As this is not a new lawsuit, but only an intervention in the prior lawsuit for which you have already granted PELDIA coverage, I think it is probably unnecessary to make this request. Nevertheless, I am making this request out of an abundance of caution.

I hereby request that the Commonwealth Superior Court pay for my defense, and pay any agreed settlement or any judgment in the lawsuit pursuant to the Public Employee Legal Defense and Indemnification Act of 1986. 7 CMC § 2304(a).

I am represented in this matter by the Law Offices of Rexford C. Kosack. Mr. Kosack has represented me for over one year in this case and is very familiar with the issues of receivership law and the complex history of the receivership. I would like to continue to use his firm for my defense as I am confident in the quality of the representation he brings to this litigation.

Thank you for your careful consideration of my request.

Very truly yours,

Randall T. Pennell

cc:    CNMI Attorney General (w/o attachments)

# EXHIBIT 18



E-FILED
CNMI SUPERIOR COURT
E-filed: Sep 25 2008  2:32PM
Clerk Review: N/A
Filing ID: 21677255
Case Number: 04-0449-CV
N/A

## IN THE SUPERIOR COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

BANK OF SAIPAN, INC.,

v.

RANDALL T. FENNELL, et al.,

CIVIL ACTION NO. 04-0449A

ORDER APPOINTING JUDGE
PRO TEM

¶ 1     Due to recusal or unavailability of one or more sitting judges of the Superior Court, a judge pro tem is required in this matter.  Under the authority of Article IV Section 9D of the Constitution of the Northern Mariana Islands, and in furtherance of the prompt and efficient dispatch of Court business, the Chief Justice may designate judges pro tem as necessary.

¶2     THEREFORE, it is ORDERED:

   a.     Honorable ARTHUR R. BARCINAS, Judge of the Superior Court of Guam, is hereby designated and appointed to serve as Judge Pro Tem in this matter.

   b.     The designated Judge Pro Tem or any party shall notify the Clerk of the Superior Court in writing no later than 15 days from the date of this order of any cause or reason why the designated person should not serve as Judge Pro Tem in this matter.

¶3     Unless good cause be shown otherwise, the designated person shall have full authority to serve as Judge Pro Tem in this matter and shall carry out the duties and powers inherent in the appointment.

     ORDERED this 24th day of September 2008.

MIGUEL S. DEMAPAN
Chief Justice

# EXHIBIT 19

ORIGINAL ACTION NO. 02-002

## IN THE SUPREME COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

---

**BANK OF SAIPAN,**

Petitioner,

v.

**SUPERIOR COURT OF THE**
**COMMONWEALTH OF THE**
**NORTHERN MARIANA ISLANDS,**

Respondent,

**RANDALL T. FENNELL,**
Temporary receiver for the Bank
of Saipan; **SECRETARY OF**
**COMMERCE FERMIN M. ATALIG**
in his Official Capacity as the CNMI
DIRECTOR OF BANKING
pursuant to 4 CMC § 6105(a),

Respondents-Real Parties in Interest.

---

## ORDER GRANTING MOTION TO DISQUALIFY
## JUSTICE ALEXANDRO C. CASTRO

Cite as: *Bank of Saipan v. Superior Court (Disqualification of Castro)*, 2002 MP 16

Hearing held July 30, 2002
Decided August 16, 2002

BEFORE:      Frances TYDINGCO-GATEWOOD, Justice *Pro Tempore*

TYDINGCO-GATEWOOD, Justice *Pro Tempore*:

¶1          This matter comes before the Court upon the Real Party in Interest Randall T. Fennell's motion to

disqualify Justice Alexandro C. Castro from presiding over the above-captioned matter. The Petitioner

Bank of Saipan filed an opposition to the motion, challenging the motion on procedural and substantive

grounds. The Court heard arguments on July 30, 2002, and now issues its decision granting the motion.

### A. Procedural History.

¶2          On April 30, 2002, Secretary of Commerce and Director of Banking Fermin M. Atalig [hereinafter

Banking Director] filed, in the Superior Court, an *ex parte* petition to appoint a receiver for the Bank of

Saipan. *See* Emergency Petition for Writ of Mandamus (May 28, 2002) at 7. In response, the Superior

Court appointed Real Party in Interest Randall Fennell [hereinafter Receiver] to act as receiver for a

thirty-day period. *Id.* On May 17, 2002, the Petitioner Bank of Saipan [hereinafter Bank] filed, in the

Superior Court, an emergency motion to replace Mr. Fennell on the ground that Fennell's participation as

receiver presented a conflict of interest.

¶3          On May 28, 2002, the Bank filed a Motion for Stay and Petition for Writ of Mandamus in this

Court, seeking to have the Court compel the lower court to remove Mr. Fennell as temporary receiver for

the Bank, vacate all orders heretofore entered in the Superior Court, and appoint a new, non-conflicted

receiver for the Bank. Justices Alexandro C. Castro, Marty Taylor (*Pro Tempore*), and Alberto C.

Lamorena, III (*Pro Tempore*), were assigned to decide the Petition.

¶4          On June 18, 2002, the Banking Director filed a motion to disqualify Justice *Pro Tempore*

Lamorena from participating in this case, and the Receiver joined in the motion. The Receiver thereafter

withdrew his joinder. On June 20, 2002, the Receiver filed the instant motion to disqualify Justice Castro from participating in this matter. The Receiver bases his motion to disqualify Justice Castro on 1 CMC § 3308. The Court conducted a hearing on the motion on July 30, 2002, and held the matter under advisement.

### B. Rules Governing Disqualification.

¶5        "The disqualification of a judge [or justice] may be mandated statutorily, by the Commonwealth Code of Judicial Conduct, or constitutionally, under the Fifth and Fourteenth Amendments." *Commonwealth v. Kaipat*, 4 N.M.I. 292, 293 (1995). The grounds for disqualification of a justice are set forth identically in 1 CMC § 3308 and Canon 3(C) of the Commonwealth Code of Judicial Conduct. Those sections provide in pertinent part:

> (a) A justice or judge of the Commonwealth shall disqualify himself or herself in any proceeding in which his or her impartiality might reasonably be questioned.
> (b) A justice or judge shall also disqualify himself or herself in the following circumstances:
>> (1) Where he or she has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
>> . . . .
>> (4) He or she, individually or as a fiduciary, or his or her spouse or minor child residing in the household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

1 CMC § 3308 and Com. C. Judic. Cond. Canon 3(C) (citing and mirroring the language of 1 CMC § 3308).

¶6        The procedure for disqualification is set forth in both 1 CMC § 3309 and Commonwealth Code of Judicial Conduct Canon 3(D). Section 3309(b) and Canon 3(D)(b) provide: "[w]henever a party to any

proceeding in a court of the Commonwealth believes that there are grounds for disqualification of the justice or judge before whom the matter is pending, that party may move for disqualification of the justice or judge, stating specifically the grounds for such disqualification."  Canon 3(D)(c) further provides:

> If the ground for disqualification is that the justice or judge has a personal *bias or prejudice* against or in favor of any party, an affidavit shall accompany the motion. Such justice or judge shall proceed no further therein, but another justice or judge shall be assigned to hear said motion.
> The affidavit shall state the facts and reasons for the belief that bias or prejudice exists, and the motion and affidavit shall be filed in sufficient time not to delay any proceedings unless the moving party can show he or she had no reason to previously question the justice' s or judge' s bias or prejudice or the proceeding was just recently assigned the justice or judge.
> A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating it is made in good faith.

Com. C. Judic. Cond. Canon 3(D)(c) (emphasis added).

¶7        Section 3308 (and corresponding Canon 3(C)) models the language of the federal recusal statute, codified as 28 U.S.C. § 455.  Canon 3(D)(c) models the affidavit procedure for disqualification set forth in 28 U.S.C. § 144. *See Saipan Lau Lau Dev., Inc. v. Superior Court (San Nicolas)* Orig. Action 00-001 (N.M.I. Sup. Ct. Sept. 8, 2000) (Order Denying Motion for Disqualification of Justice *Pro Tempore* Alberto C. Lamorena, III at 2-3).  Therefore, federal cases interpreting these sections may be relied upon in deciding the instant motions. *Id.*

### C.  The Parties' Arguments.

¶8        The Receiver seeks the disqualification of Justice Castro under 1 CMC §§ 3308(a) and 3308(b)(1). The Receiver identifies several facts to show that Justice Castro's impartiality may reasonably be questioned and that Justice Castro is biased in favor of the Bank, including Justice Castro's involvement, during the Hillblom probate proceedings, with the creation of the Hillblom Memorial Fund [hereinafter

Fund], a charitable foundation which benefits the Judicial Law Library; Justice Castro's close personal friendship with David Lujan and Joe Lifoifoi, both of whom were members of the Bank's Board at relevant times; and Justice Castro's prior rulings in this and related matters.

¶9        The Bank counters the Receiver's motion, contending that: (1) the Receiver lacks standing to seek disqualification; (2) the motion is untimely and allegations of impropriety during the Hillblom estate litigation should have been raised then, therefore, the instant arguments should be deemed waived; (3) the motion violates the "one affidavit rule"; (4) the motion is more properly decided by Justice Castro himself; and (5) the factual allegations set forth in the motion and affidavit do not support disqualification.

¶10       The Court rejects the Bank's challenges to the instant motion and finds that disqualification is warranted under 1 CMC § 3308(a).

### D. Discussion.

#### 1) Standing.

¶11       The Bank argues that a receiver is not an interested party in a receivership action; therefore, the Receiver lacks standing to seek disqualification.

¶12       Section 3309(b) and Canon 3(D)(b) of the Commonwealth Code of Judicial Conduct allow "a party to any proceeding" to file a motion for disqualification. *See* 1 CMC § 3309(b); Com. C. Judic. Cond. Canon 3(D)(b). Thus, under the plain language of the rule, only parties are allowed to seek disqualification. The underlying petition for mandamus relief seeks to remove Fennell as the Receiver for the Bank. Fennel is named as a real party in interest in this action. As a named party, he is allowed to file a disqualification motion. 1 CMC § 3309(b); Com. C. Judic. Cond. Canon 3(D)(b).

#### 2) Waiver.

¶13       The Bank asserts that the Receiver's failure to initiate charges for judicial impropriety at the time

of the Hillblom probate proceedings constitutes a waiver of all instant arguments implicating impropriety in Justice Castro's actions in soliciting and accepting money for the Fund from the bench. The Bank has not cited to any legal authority for this waiver argument, and the Court has found none. Accordingly, we reject the argument.

¶14   The Bank further argues that the instant motion should be dismissed because the Receiver has waived any objection to Justice Castro's participation in this matter. The underlying matter consists of the Bank's Petition for Writ of Mandate and Motion for Stay. Justice Castro granted the Bank's Motion for Stay in an Order filed on May 29, 2002. However, the Receiver objected to the Order, alleging that the parties were not afforded the opportunity to be heard on the motion, (*see* Mot. to Disqualify Justice Alexandro C. Castro (June 20, 2002) at 17-18), and the Court held a hearing on May 31, 2002, to discuss the objection. *See* Motion to Disqualify Justice Alexandro C. Castro (June 20, 2002) at 17-18. The Bank argues that, at the May 31, 2002 hearing, Justice Castro asked all parties, including the Receiver, whether they had any objection to his presiding for the Court as a "single justice" over the matter. Petitioner's Opposition to Receiver's Mot. for Disqualification of Justice Alexandro C. Castro (June 27, 2002) at 4. No party objected. The Bank argues that the Receiver's failure to object to Justice Castro's participation at that time constitutes a waiver.

¶15   The Receiver cites both sections 3308(b)(1) and 3308(a) as grounds for disqualification. Disqualification under either section requires that the movant seek disqualification in a timely manner. Specifically, motions made under section 3308(b)(1) must comply with the affidavit requirement in Canon 3(D)(c). *See* Com. C. Judic. Cond. Canon 3(D)(c). Canon 3(D)(c) instructs that if a motion to disqualify is grounded on allegations of "bias or prejudice," i.e., motions brought under section 3308(b)(1), then the party must file the motion and corresponding affidavit *"in sufficient time not to delay any proceedings*

unless the moving party can show he or she had no reason to previously question the justice's . . . bias or prejudice or the proceeding was just recently assigned the justice . . . ." Com. C. Judic. Cond. Cannon 3(D)(c) (emphasis added); *see also Sablan v. Iginoef,* 1 N.M.I. 190, 206 (1990) (*citing* Canon 3(D)(c)).

¶16        Canon 3(D)(c) requires that a motion be filed in time so as not to *delay* proceedings. A disqualification motion filed after the proceedings have commenced or just shortly before a motion is to be heard are deemed untimely, especially where the proceedings are so far along that the grant of recusal and assignment of a new judge would delay the proceedings. *Sablan*, 1 N.M.I. at 206 (determining that because the summary judgment motion was already heard, and because the plaintiffs failed to show that they only learned of the basis for disqualification after the hearing, then granting the recusal motion would serve to "delay[ ] the resolution of the summary judgment motion since it would have to be re-argued before a different judge, who would have to first acquaint[ ] himself with the case"); *Santos v. Santos*, 3 N.M.I. 39, 56 (1992) (finding that the motion was untimely because the plaintiff filed the motion to recuse "the day after the motion for summary judgment was scheduled to be heard").

¶17        In the instant case, the underlying Petition for Writ of Mandamus has been fully briefed but has not yet been argued. Therefore, the delay aspect present in *Sablan* and *Santos* is not present in the instant case. Accordingly, the Court finds that the Receiver's challenge, under section 3308(b)(1), to Justice Castro's participation has not been waived.

¶18        Similarly, a motion to disqualify under section 3308(a) must also be timely. "A party waives the [disqualification] issue by not raising it at the first available opportunity." *Streater v. Woodward*, 7 F. Supp. 2d 1215, 1218 (N.D. Ala. 1998) *(quoting Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 913 (11th Cir. 1998) (applying a timeliness requirement to motions filed under 28 U.S.C. § 455(a) which is modeled by the "impartiality" ground for recusal found in 1 CMC § 3308(a)).

Whether a motion under 3308(a) is timely is determined on a case-by-case basis, considering the following factors: "1) the extent of movant's involvement in the proceeding; 2) whether recusal would result in waste of judicial resources; 3) whether the motion was made after entry of judgment; and 4) whether movant can demonstrate good cause for delay." *In re Diaz*, 182 B.R. 654, 658 (Bankr. P.R. 1995) (*citing In re Cooke*, 160 B.R. 701, 704 (Bankr. Conn. 1993), *Delesdernier v. Porterie*, 666 F.2d 116, 121-23 (5th Cir. 1982)); *cf. Ryals v. Pigott*, 580 So. 2d 1140, 1175 n.1 (Miss. 1991) (reciting similar factors governing motions to recuse).

¶19         Analyzing the above-enumerated factors, we find that the Receiver has not waived his challenge under section 3308(a). We agree that an analysis of certain factors weighs in favor of finding a waiver in this case. First, the Receiver's motion was arguably filed after an adverse judgment was issued in this case. *See* Mot. to Disqualify Justice Alexandro C. Castro (June 20, 2002) at 18 ("Justice Castro clearly displayed his bias in favor of Mr. Lujan and the directors for the Bank of Saipan by *granting their motion for a writ of mandamus under the color of a [sic] order staying proceedings*, without respecting the due process rights of the other parties to the proceedings, including the . . . Receiver . . . ."). Furthermore, the Receiver knew or should have known of many of the facts supporting recusal at the May 31, 2002 hearing. *See Saipan Lau Lau Dev., Inc. v. Superior Court (San Nicolas)*, Orig. Action No. 00-001 (N.M.I. Sup. Ct. Dec. 1, 2000) (Order Denying Second and Third Motions to Disqualify the Panel Members at 7) (finding that the motion to disqualify Justice Atalig was untimely because the factual contentions offered in support of disqualification were easily discoverable at the inception of the original action). However, the Court finds that these facts are outweighed by the fact that disqualification in this case would neither delay proceedings in any substantial way nor result in a waste of judicial resources. Here, the Receiver has been involved in the proceeding, as a real party in interest, since this matter was filed.

Nonetheless, aside from the hearing on the motion for stay of the court's May 29, 2002 Order, there have not been any proceedings in this matter. Moreover, the underlying Petition for Writ of Mandamus was only filed on May 28, 2002 and the Receiver filed his Notice of Intent to file the instant motion in mid- June, 2002. Thus, the case was only two weeks old when the Receiver indicated his intent to disqualify Justice Castro. Furthermore, recusal would not result in a waste of judicial resources in this matter. The underlying writ petition has not yet been heard; therefore, the court would not have to re-conduct any proceedings on the petition. *See In re Diaz*, 182 B.R. at 658 (determining that motions filed substantially after the party knew of the facts, and after an adverse judgment has been made, indicates that recusal would result in a waste of judicial resources).

¶20       Accordingly, we find that the Receiver has not waived his challenge under section 3308(a) to Justice Castro's participation.

### 3) "One Affidavit Rule."

¶21      The Bank also argues that the Receiver's instant motion should be dismissed for failure to comply with the so-called "one affidavit rule." The Court disagrees.

¶22      Motions grounded in an allegation of "bias or prejudice" must be accompanied by an affidavit. Com. C. Judic. Cond. Canon 3(D)(c). Furthermore, "[a] party may file only one such affidavit in any case," *id.*, "no matter how many judges happen to successively preside over the proceeding." *Saipan Lau Lau Dev., Inc. v. Superior Court (San Nicolas)* Orig. Action No. 00-001 (N.M.I. Sup. Ct. Dec. 1, 2000) (Order Denying Second and Third Motions to Disqualify the Panel Members at 6). A party is not permitted to file more than one affidavit because such procedure would allow the movant to "file successive motions and affidavits to disqualify each judge designated to try the case and thereby prevent any disposition of his case." *Id.* at 7.

¶23             In *Saipan Lau Lau Dev., Inc.*, the CNMI Supreme Court denied a party's motion to disqualify Justice Atalig. The Court found that because the party filed previous motions and corresponding affidavits to disqualify four different justices, he "already exhausted his one chance to move for disqualification for bias under Canon 3(D)." *Id.*

¶24             In the instant case, the Receiver filed a joinder in the motion and affidavit in support of the Banking Director's motion to recuse Justice Lamorena. Thereafter, the Receiver filed a withdrawal of his joinder in the motion to disqualify Justice Lamorena. The Receiver subsequently filed a motion and affidavit to recuse Justice Castro. We find that the Receiver's withdrawal of his joinder in the motion to disqualify Justice Lamorena cures any arguable violation of the "one affidavit rule." As the *Saipan Lau Lau Dev., Inc.* Court explained, the purpose behind the limitation is to prevent a party from filing successive motions, which effectively delay a ruling on the merits. *Id.* Where a party seeks to disqualify a member of a panel, withdraws that motion, and files a motion and affidavit seeking to disqualify a different *original* member of a panel, as was done in this case, this Court does not find that doing so was for the purpose of delaying a hearing on the merits.   In effect, the withdrawal results in consideration of only one motion, as distinguished from successive motions. Where a party withdraws a previous motion to disqualify, the harm sought to be prevented by the "one affidavit rule" is not present.

¶25         Moreover, even assuming the one affidavit requirement has been violated, because the requirement applies only to motions under 1 CMC § 3308(b)(1), *see* Com. C. Judic. Cond. Canon 3(D)(c), such violation would only preclude a review of a motion to disqualify under section 3308(b)(1) and not section 3308(a). *See Saipan Lau Lau Dev., Inc. v. Superior Court (San Nicolas)* Orig. Action 00-001 (N.M.I. Sup. Ct. Sept. 8, 2000) (Order Denying Motion for Disqualification of Justice *Pro Tempore* Alberto C. Lamorena, III at 3-4, 7) (distinguishing between motions made on the ground of "bias or prejudice" and

those made under section 3308(a) and determining that the affidavit filed was defective and thereafter reviewing whether the facts supported recusal under section 3308(a)'s "impartiality" provision). Therefore, this Court may analyze the merits of the disqualification motion under section 3308(a), notwithstanding non-compliance with the "one affidavit rule."

### 4) Determination of Instant Motion by Justice Castro.

¶26     Finally, the Bank argues that the instant motion is more properly determined by Justice Castro himself, and not another justice. Citing *In re Bernard*, 31 F.3d 842, 843 (9th Cir. 1994), the Bank contends that the rule requiring a legally sufficient affidavit to be ruled upon by another judge applies only to trial judges and not appellate judges. Petitioner's Opposition to Receiver's Mot. for Disqualification of Justice Alexandro C. Castro (June 27, 2002) at 10.

¶27     The Court summarily rejects this argument. As was acknowledged in *In re Bernard*, the federal affidavit requirement and the corresponding rule allowing for a motion to be decided by another judge, applies only to motions filed under 28 U.S.C. § 144. *In re Bernard*, 31 F.3d at 843 n.3. Section 144 only applies to the recusal of *district court* judges, not appellate court judges. *See id.* By contrast, the affidavit rule of Canon 3(D)(c) applies to motions seeking the disqualification of both judges *and justices*. *See* Com. C. Judic. Cond. Canon 3(D)(c). Therefore, it is entirely proper for this Court to rule on the instant motion. *Id.*; *see, e.g., Saipan Lau Lau Dev., Inc. v. Superior Court (San Nicolas)*, Orig. Action 00-001 (N.M.I. Sup. Ct. Sept. 8, 2000) (Order Denying Motion for Disqualification of Justice *Pro Tempore* Alberto C. Lamorena, III) (in which Justice *Pro Tempore* Bellas deciding a motion to disqualify Justice *Pro Tempore* Lamorena).

### 5) Allegations Supporting Disqualification.

¶28     Having rejected the Bank's procedural challenges to the instant motion, the Court must next

determine whether any of the facts alleged by the Receiver support a finding that Justice Castro's impartiality may reasonably be questioned or that Justice Castro is biased in favor of the Bank. The Receiver alleges the following facts supporting recusal under either 1 CMC § 3308(a) or 3308(b)(1): (1) Justice Castro was a founder of the Hillblom Memorial Fund, a charitable foundation which benefits the Judicial Law Library and whose major contributor is the Junior Larry Hillblom Trust [hereinafter JLH Trust] for which David Lujan [hereinafter Lujan] acts as trustee; (2) the JLH Trust is a major shareholder of the Bank, and may be found liable for its participation in the events which led to the Bank's being placed in receivership; (3) Justice Castro is a close personal friend of Lujan and Joe Lifoifoi [hereinafter Lifoifoi], both of whom were members of the Bank's Board at relevant times and may be found liable for the Bank's failure; and (4) Justice Castro made prior rulings in this and related matters which clearly favored the Bank and prejudiced the Receiver.

¶29        As provided earlier, disqualification under section 3308(a) is necessary if "a reasonable person with knowledge of all of the facts would conclude that the judge's impartiality might be questioned." *Commonwealth v. Kaipat*, 1996 MP 20 ¶14, 5 N.M.I. 36, 38 (*citing United States v. Chischilly*, 30 F.3d 1144 (9th Cir. 1994)); 1 CMC § 3308(a); *see also El Fenix de Puerto Rico v.* M/Y Johanny, 36 F.3d 136, 140 n.3 (lst Cir. 1994) ("the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality . . . in the mind of a reasonable person."(citation omitted)). The reasonable person standard is employed to prevent justice-shopping and to ensure that a justice does not, "at the mere sound of controversy," abdicate his duty to preside over cases assigned to him, including the most difficult cases. *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 976 F. Supp. 84, 86 (D. Mass. 1997) (*citing El Felix de Puerto Rico*, 36 F.3d at 141); *Ada v. Gutierrez*, 2000 Guam 22 ¶¶ 15-16 (discussing the standard for disqualification under a statute substantially similar

to section 3308(a)).

¶30        As with an analysis under section 3308(a), the standard for determining a violation of § 3308(b)(1) is an objective standard. *See Rosenberg*, 976 F. Supp. at 87 (*quoting Hook v. McDade*, 89 F.3d 350, 355 (7th Cir. 1996)) (recognizing that the test under 3308(b)(1) is whether "a reasonable person would be convinced that the judge was biased") . "The bias or prejudice must be grounded in some personal animus or malice that the judge harbors . . . of a kind that a fair-minded person could not entirely set aside when judging certain persons or causes." *Id.* (internal quotations and citation omitted). Furthermore, under section 3308(b)(1), the bias or prejudice against a party must derive from an extra-judicial source. *See Liteky v. United States*, 510 U.S. 540, 550, 114 S. Ct. 1147, 1155, 127 L. Ed. 2d 474, 488 (1994) (interpreting the language of the federal recusal statute, 28 U.S.C. § 455 (b)(1), which section 3308(b)(1) mirrors, to be limited to bias or prejudice from an extra- judicial source). Additionally, because motions made under section 3308(b)(1) must comply with the affidavit requirement of Canon 3(D)(c), the affiant must state facts with particularity. *See Saipan Lau Lau Dev., Inc. v. Superior Court (San Nicolas)*, Orig. Action 00-001 (N.M.I. Sup. Ct. Sept. 8, 2000) (Order Denying Motion for Disqualification of Justice *Pro Tempore* Alberto C. Lamorena, III at 3); *Parrish v. Bd. of Comm'rs of the Ala. State Bar*, 524 F.2d 98, 100 (5th Cir. 1975) (enumerating requirements for affidavits of bias submitted under section 144). "The facts must be such that, if true they would convince a reasonable man that a bias exists . . . [and] [t]he facts must show the bias is personal, as opposed to judicial, in nature." *Parrish*, 524 F.2d at 100 (citation omitted); *see also Saipan Lau Lau Dev., Inc. v. Superior Court (San Nicolas)*, Orig. Action 00-001 (N.M.I. Sup. Ct. Sept. 8, 2000) (Order Denying Motion for Disqualification of Justice *Pro Tempore* Alberto C. Lamorena, III at 3).

**a)  Justice Castro's personal relationship with Lujan and Lifoifoi.**

¶31        The Receiver alleges that Justice Castro is a close personal friend of Lujan and Lifoifoi, both of whom were members of the Bank's Board at relevant times and may be found liable for the Bank's failure. The Receiver believes that the friendship will cause a reasonable person to question Justice Castro's impartiality. The Court disagrees. Justice Castro submitted, at the Court's invitation,[1] a declaration admitting that he is a friend of Lifoifoi. Justice Castro also stated that his relationship with Lujan arises only from judicial proceedings, and that his relationship with the Receiver is in fact closer than his relationship with Lujan.

¶32        Allegations of friendship do not generally form grounds for recusal under either the bias or prejudice test under section 3308(b)(1) or the impartiality test under section 3308(a). *See Parrish*, 524 F.2d at 104 (deciding that allegations of bias based on the fact that a judge was an acquaintance or friend of a witness and defense counsel fails under section 455(a) because the allegations "do[ ] not exceed what might be expected as background or associational activities with respect to the usual district judge"); *Carter v. W. Publ'g Co.*, No. 99-11959-EE, 1999 WL 994997, at * 5-6 (11th Cir. Nov. 1, 1999) (denying a motion to recuse under section 455(a) based on arguments that the judge was friends with officers of the defendant corporation in years prior); *Sewer Alert Comm. v. Pierce County*, 791 F.2d 796, 798 (9th Cir. 1986) ("The facts alleged here are not legally sufficient to support recusal. Friendship with defendants and residence in the county would not lead a reasonable person to conclude that the judge's impartiality might reasonably be questioned."); *Sexson v. Servaas*, 830 F. Supp. 475, 479 (S. D. Ind. 1993) ("If merely

---

[1] Although the disqualification statute does not specifically allow for the submission of a declaration by a justice, it does not disallow such a procedure. The Court requested a declaration from Justice Castro specifically because allegations offered in support of disqualification are generally within the knowledge of the justice in question. Notwithstanding the Court's request, the decision rendered herein is not dependent upon Justice Castro's declaration.

knowing or being associated with important people were enough to require a judge to disqualify herself from a case, there would be few judges to hear cases, excepting those who were political and social eunuchs."); *Sears v. Georgia*, 426 S.E.2d 553, 555 (Ga. 1993) (discussing a recusal statute similar to section 3308(a), and finding that "[r]ecusal generally has not been mandated simply because the judge knew socially one or more of the parties or their attorneys.").

¶33        "In taking the oath of office as a judge, a person does not agree to be a hermit removed from the world," *Carter*, 1999 WL 994997, at * 4 (citation omitted), and "a judge's acquaintanceships 'are more than common; they are desirable,' as long as they do not create an appearance of impropriety." *Id.* at * 7 (citation omitted) (denying a motion to recuse himself under section 455(a) because the allegations of a friendship with high officials in the defendant corporation was "a 'chain of reasoning' that is simply too 'speculative' to require . . . disqualification."). "Where it is reasonable to question impartiality based on the nature of the relationship between a judge and another interested party, recusal is warranted." *In re Diaz*, 182 B.R. at 659. "Under the general impartiality standard of [section 3308(a)], . . . a judge might consider himself disqualified if he had a long association with a party as counsel, even on matters not involved in the proceedings." 13A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3544 n.4 (2d ed. 1984). "However, the mere fact that a relationship exists, without more, does not *per se* require disqualification." *In re Diaz*, 182 B.R. at 659. When a recusal motion is based on allegations of friendship, the court must examine "the nature and extent" of the relationship, and make a judgment call "concerning just how close and how extensive (and how recent) these associations are or have been." *Sears*, 426 S.E.2d at 505 (discussing a recusal statute similar to section 3308(a)).

¶34        In the instant case, the Receiver simply alleges that Justice Castro and Lifoifoi are close friends. This fact, standing alone, does not rise to the level of creating an appearance of lack of impartiality. In small legal

communities, "it is not uncommon and inevitable that relationships exists [sic] between its members and/or that members know each other at least by reputation." *In re Diaz*, 182 B.R. at 660; *see also Medley v. Mississippi,* 600 So. 2d 957, 961 (Miss. 1992) (determining that in rural areas where it is expected that a judge has known many residents for a long period of time, disqualification on this ground is undesirable because it would preclude the judge from presiding over the vast majority of cases). In such communities, "the knowledgeable observer is **less likely** to perceive partiality arising from those common circumstances; because the circumstance is so common, the appearance is less significant within the confines of the [reasonable person] test." *In re Diaz*, 182 B.R. at 660 (citation omitted).

¶35        The Receiver further contends that Justice Castro increased Lifoifoi's fee for working as Liquidating. Trustee in the Hillblom probate case. The Receiver argues that this shows that Justice Castro favors Lifoifoi.  First, the Court notes that this allegation was adequately refuted by the Bank's explanation that the fee increase was due to the stipulation of the parties in that case. Furthermore, assuming the Court does not adopt the Bank's explanation, the Court finds the Receiver's allegation regarding Justice Castro's actions in the Hillblom probate case to be mere "speculation" and thus not sufficient to satisfy disqualification under either section 3308(a) or 3308(b)(1).  *See Carter*, 1999 WL 994997, at * 7.

¶36        As for Justice Castro's relationship with Lujan, the same roles apply. Notably, Justice Castro admits he is a friend of Lujan, but that such friendship arises only from judicial proceedings. As the cases discussed above reflect, "[i]n today's legal culture friendships among judges and lawyers are common." *Sexson*, 830 F. Supp. at 479 (citation omitted). The Receiver also contends that Justice Castro's prior rulings favoring Lujan indicate that he is biased. However, under the bias or prejudice test, "[t]he fact that one of the parties before the court is known to and thought well of by the judge is not sufficient to show bias." *Reeves v. Alabama*, 580 So. 2d 49, 51 (Ala. Crim. App. 1990) (discussing the rules of Alabama's

disqualification statute, which models the language of section 3308(b)(1)). Moreover, judicial decisions do not generally raise an appearance of bias. *See In re Diaz*, 182 B.R. at 660-61; *United States v. Morris*, 988 F.2d 1335, 1337 (4th Cir. 1993).

¶37       Overall, the Receiver's claims regarding Justice Castro's friendship with Lujan and Lifoifoi do not sufficiently show that Justice Castro is biased in favor of the Bank and against the Receiver or that Justice Castro's impartiality may reasonably be questioned.

### b) Justice Castro's prior rulings favoring Lujan and the Bank.

¶38       The Receiver argues that Justice Castro's prior grant, on May 29, 2002, of the Bank's motion to stay in this matter was entered without regard to the due process rights of the opposing parties. The Receiver contends that such action clearly shows that Justice Castro is biased in favor of the Bank and against the Receiver. Additionally, the Receiver argues that in the Hillblom probate matter, which Justice Castro presided over, Justice Castro's favorable treatment to Lujan's client, to the detriment of the other claimants, and Justice Castro's decision to grant his friend Lifoifoi hundreds of thousands of dollars for work as liquidation trustee, shows that Justice Castro is biased in favor of Lujan, Lifoifoi, and the Bank's directors.

¶39       Under either section 3308(a) or 3308(b)(1), the bias or prejudice against a party must derive from an extra-judicial source. *See Liteky,* 510 U.S. at 550, 114 S. Ct. at 1155, 127 L. Ed. 2d at 487 (interpreting the language of the federal recusal statute, 28 U.S.C. § 455(b), from which section 3308(b) derives its language, to be limited to bias or prejudice from an extra-judicial source); *see also United States v. Morris*, 988 F.2d 1335, 1337 (4th Cir. 1993). Bias stemming from a court's decisions during proceedings are not of an extrajudicial nature. *See In re Diaz*, 182 B.R. at 660-61 ("[B]ias or prejudice does not serve as a basis for recusal where adverse opinions or ill disposition toward a party is properly

acquired in the course of the proceedings and the knowledge is gained thereby."). "[T]he source of the appearance of partiality must arise from some source other than the judge's previous involvement with cases that concerned the parties or witnesses in the present case." *Morris*, 988 F.2d at 1337. "[J]udicial rulings alone rarely constitute a valid basis for recusal. Rather, they are properly considered grounds for appeal." *In re Diaz*, 182 B.R. at 661 (citations omitted); *see also Caravalho v. Pugh*, 177 F.3d 1177, 1179 (10th Cir. 1999) (noting that a disagreement with the judge's decision generally does not support recusal).

¶40         Because the alleged bias in the instant case arises from Justice Castro's court rulings, the source is not extra-judicial. Therefore, to support recusal for bias or prejudice, Justice Castro's actions must have "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *See Liteky*, 510 U.S. at 556, 114 S. Ct. at 1158, 127 L. Ed. 2d at 492. The facts as alleged by the Receiver do not rise to that level. Accordingly, the Court rejects the Receiver's allegations as they do not reveal a type of bias or prejudice that requires disqualification.

### c) Justice Castro's participation in the creation of the Hillblom Memorial Fund.

¶41         Finally, the Receiver argues that Justice Castro's participation, as founder of the Hillblom Memorial Fund, creates an appearance of impropriety in the instant case. The Fund is a charitable foundation which benefits the Judicial Law Library and whose major contributor is the JLH Trust. Lujan is the trustee for the JLH Trust. The Receiver argues that Justice Castro's past unethical actions in soliciting money for the Fund from the bench, and his actions that favor Lujan after the JLH Trust donated over $250,000 to the Fund, together indicate that Justice Castro is biased in favor of Lujan and the Bank. The Receiver contends that the appearance of impartiality and bias is further bolstered by the fact that the JLH Trust is a major shareholder of the Bank and may be found liable for its participation in the events which led to the Bank

being placed in receivership. The Receiver argues that because of Justice Castro's involvement with the Fund in which Lujan was an instrumental participant, "Justice Castro should not be involved in decisions deciding the fate of these parties." Mot. to Disqualify Justice Alexandro C. Castro (June 20, 2002) at 20.

¶42         The Bank argues that Justice Castro's involvement with the Fund do not violate the Code of Judicial Conduct because the Code specifically allows a justice to participate in organizations which benefit the judiciary. The Bank further argues that Justice Castro's involvement with the Fund does not in any way benefit Justice Castro personally, and, therefore, his participation would not create an appearance of impropriety.

¶43         First, the Court is troubled by the Receiver's unsubstantiated and aggressive attacks on Justice Castro's actions during the Hillblom probate proceedings. This Court declines to make any pronouncement as to what went on during those proceedings, and emphasizes only that there is absolutely nothing in the record which indicates any impropriety by Justice Castro. Furthermore, the Receiver's attempt to liken Justice Castro's involvement with the Fund to criminal conduct borders on sanctionable.

¶44         In addition, the Court agrees with the Bank that Justice Castro does not receive any direct benefit from the Fund, which would clearly warrant disqualification. *See Commonwealth v. Kaipat*, 4 N.M.I. 292, 294 (1995) (noting that recusal may be warranted if the judge's "direct, personal, substantial, pecuniary" interest is involved) (citation omitted); *see also* 1 CMC § 3308(b)(4). However, it is undisputed that Justice Castro has had a significant involvement in the creation of the Fund, and that this Fund is intricately enmeshed in the affairs of the Bank. Moreover, the money in the Fund is held in the Bank. *See* Declaration of Randall T. Fennell (June 20, 2002) Exhibit 1, Board of Trustees Initial Organizational Meeting at 1 ("[T]he Fund will maintain their bank accounts at the Bank of Saipan."). The underlying Writ Petition involves issues regarding the fate of the Bank. The Court finds that Justice Castro's past

involvement with Fund, and the relationship between the Fund and the Bank, supports a finding that Justice Castro's impartiality may reasonably be questioned in this matter.[2] Thus, disqualification is warranted under section 3308(a).

### E. Conclusion.

¶46        In sum, the Court has the authority, pursuant to Canon 3(D)(c), to rule on this motion. Furthermore, the Court finds that the Receiver has standing to file the instant motion, and that the Receiver has not waived objection to Justice Castro's participation in the underlying Writ Petition. In addition, because the Receiver withdrew his joinder in the Banking Director's Motion to Disqualify Justice Lamorena, the Receiver has not violated the rule, set forth in Canon 3(D)(c), that a party may only file one affidavit to support a motion based on bias or prejudice. Finally, the Court concludes that Justice Castro's direct involvement in the creation of the Hillblom Memorial Fund, and the relationship between the Fund and the Bank, would raise doubts, in the mind ora reasonable person, regarding Justice Castro's impartiality in this matter.

¶47        In accordance with the foregoing, the Receiver's Motion to Disqualify Justice Castro is hereby **GRANTED**.

        **SO ORDERED**, this 16th day of August 2002.

        /s/ Frances Tydingco-Gatewood_____

        FRANCES TYDINGCO-GATEWOOD

        Justice *Pro Tempore*

---

[2] This decision is based exclusively on the circumstances presented to the Court for purposes of this motion, and should not be read to support disqualification in other distinguishable contexts.