# EXHIBIT 20

1  REXFORD C. KOSACK
   GLENN A. JEWELL
2  LAW OFFICES OF REXFORD C. KOSACK
   Bank of Hawaii Building, 3rd Floor
3  P.O. Box 410
   Saipan, MP  96950
4  Tel: (670) 322-8800
   Fax: (670) 322-7800
5
   Attorneys for Former Temporary Receiver
6  Randall T. Fennell

7
                IN THE SUPERIOR COURT OF THE COMMONWEALTH
8                    OF THE NORTHERN MARIANA ISLANDS

9                                          )    Civil Action No. 02-0268B
                                           )
10                                         )
                                           )    **RENEWED INDEMNIFICATION**
11                                         )    **CLAIM OF RANDALL T.**
     In Re: The Matter of The Bank of Saipan  )  **FENNELL**
12                                         )
                                           )    Judge: Hon. Juan T. Lizama
13                                         )    Date:  Not Yet Set
                                           )
14  _____)

15                              **Introduction**

16         Randall T. Fennell is the former Temporary Receiver in this matter. On September 27, 2004

17  he was sued by the Directors of the Bank of Saipan, Inc. (the "Bank"), the company in receivership.[1]

18  On October 18, 2005, Fennell filed a document entitled "Indemnification Claim of Randall T.

19  Fennell" (attached hereto as Exhibit "1").

20         More recently, on June 7, 2006, a so-called "Stipulation to Terminate Receivership

21  Proceedings" (the "Stipulation") was lodged with this Court. The Stipulation was signed by counsel

22  for the Bank, the current Receiver, and the Secretary of Commerce. At no point does the Stipulation

23  address Fennell's indemnification claim let alone explain how the receivership can be terminated

24  given Fennell's pending claim.

25

26

27  _____

28      [1]*The Bank of Saipan, Inc. v. Randall T. Fennell; Richard Pierce; White, Pierce, Mailman
    & Nutting; David W. Axelrod; Schwabe, Williamson, & Wyatt; and Does 1-20*, Commonwealth
    Superior Court Civil Action No. 04-449A.

# I.

## FENNELL'S INDEMNIFICATION CLAIM

In his indemnification claim, Fennell pointed out that "[a]s a receiver, he is entitled to indemnification of his attorney fees and costs from such litigation, depending on the outcome of the matter." Exhibit 1, p. 2. He further clarified that he was "filing this claim so that it will not be waived and ask[ed] the Court to retain jurisdiction over the matter so it may be resolved at the appropriate time." *Id.* (footnote omitted). To ensure there was no confusion regarding his position, Fennell concluded by stating:

> Mr. Fennell has taken all acts necessary to ensure that his claim for indemnification is preserved. Now he is filing his claim formally with this Court to be heard at the hearing on the final accounting of the Receiver to ensure that *should the receivership be terminated that the receivership court retains jurisdiction to hear his indemnification claim for attorney fees, costs, and any eligible judgment at the proper time.*

*Id.* at p. 3 (emphasis added).

Fennell asks that the Court acknowledge his indemnification claim and, regardless of whatever else it may do, hold the receivership open at least for the purpose of retaining jurisdiction to hear his indemnification claim at the appropriate time. (The appropriate time will be at the conclusion of the case the Bank's directors have filed against Fennell.)

# II.

## THE RELIEF SOUGHT IS CONSISTENT WITH THE SUPREME COURT'S RULING

Fennell cannot help but anticipate that the Bank's directors will attempt to argue that the Supreme Court's ruling[2] somehow prevents the granting of the relief requested. We will take a moment to show how misguided any such argument would be.

The Supreme Court's ruling analyzed this Court's "Order Concerning the Court's Order of November 16, 2004" issued on October 14, 2005 (what the Supreme Court called the "Spending Cap Order"). The Spending Cap Order had two primary components. First, it sought to limit the amount that could be spent by the Bank's directors in their suit against Fennell. Second, it required that the

---

[2] The "Order Vacating the October 14th 'Spending Cap Order,'" issued by the Supreme Court on May 24, 2006 (the "Supreme Court's ruling").

1  Bank post a bond of sorts to protect against the liability the Bank might incur as a result of bringing

2  suit against Fennell.  Order, p. 3.

3      The Supreme Court ruled that the second part of the Spending Cap Order, the "bond," was

4  ordered in error.  The Supreme Court did *not* rule that cost controls were error; in fact, it did the

5  opposite – it ruled that spending controls were entirely appropriate.  "Cost controls placed on an

6  entity in receivership are a necessary and legitimate measure for a receivership court to take."

7  Supreme Court ruling, ¶ 11.

8      Furthermore, the Supreme Court did *not* rule that the receivership had to be terminated.

9  Indeed, it specifically declined the Bank directors' request to order the termination of the

10  receivership.

11      Although the instant appeal was from the Spending Cap Order, the Directors and
        their attorneys have used the appeal to request all manner of remedies.  For example,
12      the Bank requests that this Court . . . terminate the receivership. . . . The Bank has
        requested remedies that are unavailable and untimely, and thus we decline any
13      invitation to go beyond our jurisdiction or intrude in matters that are not properly
        before us.

14      Thus, the Supreme Court's ruling does not in any way prevent this Court from holding the

15  receivership open for the purpose of ruling on Fennell's indemnity claim (or from issuing a spending

16  cap order without a bond requirement).

17                          **Conclusion**

18      For these reasons, Fennell asks that the Court acknowledge his indemnification claim and

19  hold the receivership open at least for the purpose of retaining jurisdiction to hear that claim at the

20  appropriate time.

21  Dated: August 1, 2006.

22                  Respectfully submitted,

23

24

25                  Rexford C. Kosack, Bar No. F0140

26

27

28

                          - 3 -

EXHIBIT
1

1  REXFORD C. KOSACK
   GLENN A. JEWELL
2  LAW OFFICES OF REXFORD C. KOSACK
   Bank of Hawaii Building, 3rd Floor
3  P.O. Box 410
   Saipan, MP  96950
4  Tel: (670) 322-8800
   Fax: (670) 322-7800
5
   Attorneys for Former Temporary Receiver
6  Randall T. Fennell

RECEIVED
RAMON K. QUICHOCHO
Attorney At Law
Date: 10/8/05   Time: 3:46 PM
By: Leslie Ada
☒ Delivery   ☐ Mail   ☐ Fax

7

8            IN THE SUPERIOR COURT OF THE COMMONWEALTH
                 OF THE NORTHERN MARIANA ISLANDS
9
                                    )        Civil Action No. 02-0268B
10                                  )
                                    )        INDEMNIFICATION CLAIM
11                                  )        OF RANDALL T. FENNELL
   In Re: The Matter of The Bank of Saipan  )
12                                  )        Judge: Hon. Juan T. Lizama
                                    )        Date:  To be heard at Final
13                                  )               Accounting of Receiver
14  _____)

15         Randall T. Fennell served in this receivership as the Temporary Receiver from April 30,

16  2002 to September 27, 2002.  On September 27, 2004, he was sued by the Directors of the Bank

17  of Saipan, Inc. (the "Bank"), the company in receivership.  *The Bank of Saipan, Inc. v. Randall T.*

18  *Fennell; Richard Pierce; White, Pierce, Mailman & Nutting; David W. Axelrod; Schwabe,*

19  *Williamson, & Wyatt; and Does 1-20,* Commonwealth Superior Court Civil Action No. 04-449A.

20  He was sued in Count I for breach of fiduciary duty, in Count II for participation in breach of

21  fiduciary duty by others, in Count III for tortious interference with business relation, in Count IV

22  for fraud, in Count V for conspiracy to defraud, in Count VI for conversion, and in Count VIII

23  for negligence.  All acts were alleged to have been done by him in his capacity as Temporary

24  Receiver.  Exhibit "A," hereto.

25         On November 19, 2004, the Bank filed a First Amended Complaint ("FAC").  In that

26  complaint, he is currently being sued in Count III for participation in breach of fiduciary duty, in

27  Count IV for fraud, in Count V for conduct in excess of court orders, in Count VI for breach of

28  fiduciary duty, in Count VII for tortious interference with business relation, and in Count VIII for

Law Offices
O'Connor Berman Dotts & Banes
RECEIVED
By: Jhen Paurish

CALVO & CLARK LLP
MH II BUILDING   MARINA HEIGHTS BUSINESS PARK
PMB 951, BOX 10001

1   REXFORD C. KOSACK
    GLENN A. JEWELL
2   LAW OFFICES OF REXFORD C. KOSACK
    Bank of Hawaii Building, 3rd Floor
3   P.O. Box 410
    Saipan, MP  96950
4   Tel: (670) 322-8800
    Fax: (670) 322-7800
5
    Attorneys for Former Temporary Receiver
6   Randall T. Fennell

7

8         IN THE SUPERIOR COURT OF THE COMMONWEALTH
             OF THE NORTHERN MARIANA ISLANDS

9                       )    Civil Action No. 02-0268B

10                    )

11                    )    **INDEMNIFICATION CLAIM**
                      )    **OF RANDALL T. FENNELL**
    In Re: The Matter of The Bank of Saipan  )

12                    )    Judge: Hon. Juan T. Lizama
                   )    Date:  To be heard at Final
13                    )             Accounting of Receiver
                   )
14   _____)

15         Randall T. Fennell served in this receivership as the Temporary Receiver from April 30,

16   2002 to September 27, 2002. On September 27, 2004, he was sued by the Directors of the Bank

17   of Saipan, Inc. (the "Bank"), the company in receivership. *The Bank of Saipan, Inc. v. Randall T.*

18   *Fennell; Richard Pierce; White, Pierce, Mailman & Nutting; David W. Axelrod; Schwabe,*

19   *Williamson, & Wyatt; and Does 1-20,* Commonwealth Superior Court Civil Action No. 04-449A.

20   He was sued in Count I for breach of fiduciary duty, in Count II for participation in breach of

21   fiduciary duty by others, in Count III for tortious interference with business relation, in Count IV

22   for fraud, in Count V for conspiracy to defraud, in Count VI for conversion, and in Count VIII

23   for negligence.  All acts were alleged to have been done by him in his capacity as Temporary

24   Receiver. Exhibit "A," hereto.

25         On November 19, 2004, the Bank filed a First Amended Complaint ("FAC").  In that

26   complaint, he is currently being sued in Count III for participation in breach of fiduciary duty, in

27   Count IV for fraud, in Count V for conduct in excess of court orders, in Count VI for breach of

28   fiduciary duty, in Count VII for tortious interference with business relation, and in Count VIII for

1 conspiracy. All of the acts described in the FAC were alleged to have been done by Mr. Fennell
2 in his capacity as Temporary Receiver. Exhibit "B," hereto.

3 Mr. Fennell has been required to hire legal counsel to defend him and to pay for the
4 expenses of such defense. As a receiver, he is entitled to indemnification of his attorney fees and
5 costs from such litigation, depending upon the outcome of the matter. Mr. Fennell is filing this
6 claim so that it will not be waived and asks the Court to retain jurisdiction over the matter so it
7 may be resolved at the appropriate time.[1]

8 Mr. Fennell requested indemnification from the Receiver by a letter sent on May 3, 2005.
9 Exhibit "C," hereto. The Receiver's counsel, S. Joshua Berger, responded on May 10, 2005,
10 indicating that the Receiver believes the Bank should pay for such fees and costs because "there
11 are strong public policy reasons for this position, and that this ruling is not conditioned upon the
12 outcome of the recent Supreme Court decision." Exhibit "D," hereto. As a second basis for
13 recommending to the receivership court that "all of Mr. Fennell's fees and costs should be paid
14 by the Bank," Mr. Berger noted that this Court ruled on December 20, 2004 "that Mr. Fennell's
15 reasonable attorney fees should be paid by the Bank in situations such as this, he made it clear
16 that 'future fees and costs' would also be paid, apparently anticipating the prosecution of *Civil*
17 *Action 04-449*."

18 On September 16, 2005, Mr. Fennell wrote to Mr. Berger to ask how the Receiver plans
19 to preserve Mr. Fennell's right to reimbursement for his defense costs and his time if the
20 receivership terminates before the conclusion of the litigation. Exhibit "E," hereto. On
21 September 22, 2005, Mr. Jacob of Calvo & Clark responded instead of Mr. Muna or Mr. Berger.
22 Exhibit "F," hereto. He unequivocally stated: "The Bank is not going to indemnify Mr. Fennell .
23 . . ." He attached a declaration from Mr. Berger drafted by Calvo & Clark that attempted to back
24 out of his previous commitment, arguing that the Supreme Court's denial of the rehearing of its
25 opinion somehow changed things – even though it is clear that the basis for his earlier
26
27
28

[1] It is conceivable that there could be a judgment which is eligible for indemnification and
Mr. Fennell claims his right to indemnification for any such judgment as well.

- 2 -

1  recommendation had been public policy, this Court's December 20 ruling, and *not* the Supreme

2  Court's opinion. (Perhaps his change in position was due to the fact that on August 15, 2005 the

3  Receiver and Mr. Berger signed the Termination and Release Agreement with the Bank, Calvo &

4  Clark, and the Mair firm requiring them to "not in any manner directly or indirectly cooperate

5  with or assist any person . . . asserting a . . . defense against the Bank in any litigation in which

6  the Bank is a party . . . ." § 4.4.)

7       Therefore, Mr. Fennell has taken all acts necessary to ensure that his claim for

8  indemnification is preserved. Now he is filing his claim formally with this Court to be heard at

9  the hearing on the final accounting of the Receiver to ensure that should the receivership be

10  terminated that the receivership court retains jurisdiction to hear his indemnification claim for

11  attorney fees, costs, and any eligible judgment at the proper time.

12  Dated: October 18, 2005.

Respectfully submitted,

Rexford C. Kosack, Bar No. F0140

- 3 -

EXHIBIT

A

MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
Suite 801 Pacific News Bldg.
238 A.F.C. Flores St.
Hagatna, GU 96910
(671) 472-2089/2090
(671) 477 5206 (fax)

CALVO AND CLARK, LLP
MH II Building
Marina Heights Business Park
PMB 951 Box 10001
Saipan, MP 96950
(670) 323-2045
(670) 323-2276 (fax)

Attorneys for The Bank of Saipan, Inc.

IN THE SUPERIOR COURT FOR THE COMMONWEALTH
OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| THE BANK OF SAIPAN, INC., | ) | CIVIL ACTION NO. 04-0449A |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT AND DEMAND** |
| | ) | **FOR JURY TRIAL** |
| RANDALL T. FENNELL; RICHARD | ) | |
| PIERCE; WHITE, PIERCE, | ) | |
| MAILMAN, & NUTTING; DAVID | ) | |
| W. AXELROD; SCHWABE, | ) | |
| WILLIAMSON, & WYATT; | ) | |
| AND DOES 1-20 | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW, the Bank of Saipan, Inc. (hereinafter "Bank of Saipan" or the "Bank"), which for its complaint against Defendants Randall T. Fennell, Richard Pierce, White, Pierce, Mailman, & Nutting, David W. Axelrod, Schwabe, Williamson, & Wyatt, and Does 1-20 alleges as follows:

### Jurisdiction and Parties

1.     This Court has jurisdiction over this matter pursuant to The N.M.I. Constitution, Article IV, Section 2, 1 CMC § 3202.

2.     Plaintiff Bank of Saipan is a CNMI corporation. currently in receivership, duly-licensed and authorized to engage in retail banking activities in the Commonwealth.

3.     Upon information and belief, Defendant Randall T. Fennell ("Fennell") is a resident of the Commonwealth of the Northern Mariana Islands who, at all times relevant to this action, served as the court-appointed receiver of the Bank.

4.     Defendant Richard Pierce ("Pierce") is a resident of the Commonwealth of the Northern Mariana Islands who, at all times relevant to this action, served as the counsel to Fennell in his capacity as receiver of the Bank.

5.     Defendant White, Pierce, Mailman, & Nutting ("White, Pierce") was, at the time alleged herein, a law firm located in the CNMI that, at all times relevant to this action, served as the counsel to Fennell in his capacity as receiver of the Bank. All references to White, Pierce include predecessor and successor law firms.

2

6.  Defendant David W. Axelrod is, on information and belief, a resident of Portland, Oregon who, at all times relevant to this action served, as the counsel to Fennell in his capacity as Receiver of the Bank.

7.  Defendant Schwabe, Williamson, & Wyatt is, on information and belief, a Portland Oregon law firm that, at all times relevant to this action, served as the counsel to Fennell in his capacity as Receiver of the Bank.

8.  Except as described herein, the true names of the defendants sued as Does 1 through 20, inclusive, are unascertained to the Bank which therefore sues these defendants by such fictitious names. The Bank will amend this Complaint to allege their true names and capacities when ascertained. These fictitiously named defendants were involved in the design, implementation, approval, and furtherance of the transactions complained of herein or received benefits from those transactions. These defendants aided or abetted, or participated with the other defendants and others in the wrongful acts and course of conduct, or otherwise caused the damages sought herein and are responsible for the acts, occurrences and events alleged in this Complaint.

9.  The named and Doe defendants in this action are sometimes referred to herein as "Defendants."

## Operative Facts

10.  On or about April 30, 2002, the CNMI Government filed an *ex parte* petition in the CNMI Superior Court for the appointment of a receiver for Plaintiff Bank of Saipan,

3

pursuant to a Commonwealth statute, 4 CMC §6105, in the case styled as <u>Acting Secretary of Commerce Fermin M. Atalig v. Bank of Saipan</u>, Civ. Action No. 02-0268B.

11.    At the hearing on the petition, held that same date, April 30, 2002, the Government for the first time identified Defendant Randall T. Fennell as the individual to be appointed receiver.  The Bank reserved the right to object to Fennell's appointment; but on said date the Bank was ordered into receivership and Defendant Fennell was appointed receiver for 30 days, with limited powers, as set forth in an order of said date.

12.    In connection with his appointment, Fennel retained Mr. Pierce, the White, Pierce firm, Mr. Axelrod, and Schwabe, Williamson, & Wyatt (collectively, the "Receivership Attorneys") to act as his counsel. The Receivership Attorneys owed fiduciary duties to the Bank, including, without limitation, the duty to conduct the receivership in the best interests of the Bank, to avoid harming the Bank, to disclose all material information affecting the receivership, and to place the interests of the Bank above the own personal interests and the interests of Fennell.

13.    Once appointed Receiver, Fennel and the Receivership Attorneys owed fiduciary duties to the Bank, including, without limitation, the duty to conduct the receivership in the best interests of the Bank, to avoid harming the Bank, to disclose all material information affecting the receivership, and to place the interests of the Bank above his own personal interests.

14.    In obtaining his appointment, Fennell and the Receivership Attorneys deliberately and repeatedly failed to disclose material information that they were bound to disclose to the appointing court and the Bank. On information and belief, such nondisclosures were

4

intentional, deliberate, or reckless. The non-disclosures included, *inter alia*, conflicts of interest and hostility against the Bank, its major shareholders, and certain of its directors.

15.     At all relevant times to this action, Fennell and the Receivership Attorneys were motivated by, and conducted the receivership consistent with, a hidden agenda to destroy rather than rehabilitate the Bank, and to retaliate against certain of the Bank's directors and major shareholders, to the detriment of the Bank, its depositors and shareholders.

16.     Fennell and the Receivership Attorneys exercised the receivership powers in a manner inconsistent with the best interests of the Bank.

17.     At all relevant time to this action, the Receivership Attorneys and Fennell knew or should have known of the forgoing breaches of fiduciary duty, failed to disclose such breaches, aided and abetted such breaches, and otherwise participated in such breaches.

18.     On or about May 10, 2002, without notice to the Bank and without giving the Bank an adequate opportunity to object, Fennell filed an *ex parte* petition for "Clarification of Order Granting Petition for Appointment of Receiver," which was granted by the Court on that same date. The May 10 petition and order greatly expanded Fennell's powers as receiver and extended his receivership indefinitely. Notwithstanding this expansion of powers, Fennell exceeded the scope of his powers before and after this order, including , inter alia, by answering the complaint for receivership by admitting key allegations when neither the complaint nor answer were served on the Bank.

5

19.     Fennell acted as receiver for the Bank from April 30, 2002 until discharged, over the Bank's objection. on September 27, 2002.  During the course of Fennell's tenure as Receiver, Fennell precipitated and engaged in numerous *ex parte* communications with the Court without the knowledge, consent or participation of the Bank; and Fennell actively endeavored to prevent the Bank from participating in discussions and proceedings directly related to the Bank's continued existence and rehabilitation. The Receivership Attorneys knew or should have known of the forgoing breaches of fiduciary duty, failed to disclose such breaches, aided and abetted such breaches, and otherwise participated in such breaches.

20.     Fennell also precipitated and or engaged in *ex parte* communications with the court which, and failed to disclose other material matters, resulting in court orders expanding Fennell's powers as receiver, as well as discharge orders granting him unqualified exoneration, immunity, indemnification and defense at the Bank's expense.  The Receivership Attorneys knew or should have known of the forgoing breaches of fiduciary duty, failed to disclose such breaches, aided and abetted such breaches, and otherwise participated in such breaches.

21.     During his tenure as receiver, Fennell deliberately and maliciously harmed the Bank, its directors and shareholders by, *inter alia*, attempting to destroy the Bank instead of working to rehabilitate it. The Receivership Attorneys knew or should have known of the forgoing breaches of fiduciary duty, failed to disclose such breaches, aided and abetted such breaches, and otherwise participated in such breaches.

6

22.     Fennell also undermined public confidence in the Bank by publicly and falsely alleging that certain of the Bank's directors or major shareholders were guilty of negligence and other wrongdoing in the management of the Bank, and stating or insinuating that they were somehow involved in wrongdoing that had resulted in the Bank being defrauded by certain third parties. The Receivership Attorneys knew or should have known of the forgoing breaches of fiduciary duty, failed to disclose such breaches, aided and abetted such breaches, and otherwise participated in such breaches.

23.     Fennell's *ex parte* communications, including one or more "private briefings" with the Court were normally "off-the-record," making it difficult if not impossible for the Bank to ascertain what Fennell and the Receivership Attorneys said or submitted to the court and when communications were made, and to obtain meaningful and timely judicial review thereof. Fennell's practice of repeatedly excluding the Bank from such *ex parte* proceedings was unlawful and inappropriate; and said practice deprived the Bank of due process of law during the course of the receivership proceedings, in breach of Fennell's fiduciary duty to the Bank. The Receivership Attorneys knew or should have known of the forgoing breaches of fiduciary duty, failed to disclose such breaches, aided and abetted such breaches, and otherwise participated in such breaches.

24.     Fennell repeatedly refused to meet or cooperate with the Bank's Directors or counsel in furtherance of efforts to rehabilitate the Bank. Fennell's refusal to work with the Directors at critical times was in breach of his duty to work with the Bank to avoid liquidation and achieve the best possible results for the Bank, its shareholders, depositors, employees, and

7

customers. The Receivership Attorneys knew or should have known of the forgoing breaches of fiduciary duty, failed to disclose such breaches, aided and abetted such breaches, and otherwise participated in such breaches.

25.     Fennell reopened the Bank during his tenure, without any rehabilitation plan in place, thus allowing depositors to withdraw a large percentage of the Bank's deposits and precipitating a "run" on the Bank, seriously eroding the bank's equity position and endangering its ability to become rehabilitated. The Receivership Attorneys knew or should have known of the forgoing breaches of fiduciary duty, failed to disclose such breaches, aided and abetted such breaches, and otherwise participated in such breaches.

26.     Fennell filed numerous court reports *ex parte* and sealed them from public view. Fennell also ignored requests from Bank depositors for information concerning their deposits. Such conduct is entirely inappropriate for a bank receiver. The Receivership Attorneys knew or should have known of the forgoing breaches of fiduciary duty, failed to disclose such breaches, aided and abetted such breaches, and otherwise participated in such breaches.

27.     On several occasions, Fennell sought to be exonerated from "any and all claims" which might result from his acts or omissions as receiver, and he persuaded the receivership court on September 27, 2002 and thereafter on December 31, 2002, to issue his requested blanket orders of immunity, indemnification and defense, at the Bank's expense, even in the absence of any particular claim or suit and without any obligation to reimburse the Bank in the event of Fennell were to be adjudged to have acted in bad faith, with malice or in breach of his fiduciary duties.

8

28.   Seeking and securing such an unprecedented pre-suit grant of immunity and indemnification is itself a breach of Fennell's fiduciary duty as receiver because it placed Fennell's interests above that of the Bank and constitutes a wrongful attempt to protect Fennell from his own wrongdoing at the Bank's expense, contrary to the law and public policy.  The Receivership Attorneys knew or should have known of the forgoing breaches of fiduciary duty, failed to disclose such breaches, aided and abetted such breaches, and otherwise participated in such breaches.

29.   The Bank, by and through its Board of Directors, took a timely appeal from the receivership court's orders granting Fennell's exoneration motion and requests for immunity, indemnification and defense.  That appeal, Consolidated Appeals Nos. 02-0029GA and 03-0008-GA, remains pending in the Supreme Court of the Commonwealth of the Northern Mariana Islands.

30.   Fennell exceeded the scope of his authority as receiver by engaging in the conduct described herein and failed to disclose the improper actions alleged herein in obtaining the receivership court's order.

31.   Fennell had fiduciary duties not to damage the Bank, or its depositors, and to act fairly towards its employees, shareholders, and employees. Yet, Fennell publicly denigrated the Bank while serving as receiver, calling it, *inter alia*, a "failed institution." Such conduct undermined public confidence in the Bank at a critical point in its existence and endangered and retarded the Bank's subsequent rehabilitation efforts. The Receivership Attorneys knew or should

9

have known of the forgoing breaches of fiduciary duty, failed to disclose such breaches, aided and abetted such breaches, and otherwise participated in such breaches.

32.     At all times herein, through the *ex parte* hearings, the failure to produce requested information that they were bound to disclose, and other means, Defendants have sought to fraudulently conceal from the Bank the fact that it has causes of action against Defendants and has thereby deprived the Bank of a reasonable opportunity to discover such causes of action until some time after Fennell was permanently removed as the receiver and a full investigation could be undertaken. Even then, continuing non-cooperation has hindered that investigation and acted to further fraudulently conceal the causes of action.

## FIRST CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

## (FENNELL AND THE RECEIVERSHIP ATTORNEYS)

33.     The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 32 of the Complaint.

34.     Fennell and the Receivership Attorneys owed strict fiduciary duties to the Bank. Fennell was required at all times honestly and in good faith with a view to the best interests of the Bank and to exercise care, skill and diligence that a reasonably prudent person would exercise in comparable circumstances.

10

35.    Fennell and the Receivership Attorneys failed to fulfill his obligations to the Bank, failed to faithfully execute service, and breached his duties to the Bank in various ways, including, without limitation, the acts and omissions alleged herein.

36.    As a direct and proximate result of Fennell's and the Receivership Attorneys' breaches of fiduciary duties detailed above and in other respects, the Bank has been damaged in an amount to be proved at trial.

37.    Because of the wilful, wanton, and intentional nature of Fennell's and the Receivership Attorneys' conduct, and their abuse of the position of trust, Fennell and the Receivership Attorneys are also liable for exemplary and punitive damages, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## PARTICIPATION IN A BREACH OF FIDUCIARY DUTY

### (ALL DEFENDANTS)

38.    The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 37 of the Complaint.

39.    Defendants were aware of, ratified, cooperated with, and/or received benefits from Fennel's and the Receivership Attorneys' breaches of its fiduciary duties, and acted in furtherance of their own financial gain.

40.    The Defendants knew or should have known of the Fennel's and the Receivership Attorneys' breaches of fiduciary duty and actively participated in their breaches by

11

implementing, directing, approving, and otherwise furthering their scheme through the above-pled unlawful, improper, fraudulent, and self-dealing actions.

41.    As a direct and proximate result of their participation in Fennell's and the Receivership Attorneys' breaches of his fiduciary duties detailed above and in other respects, the Bank has been damaged in an amount to be proved at trial.

42.    Because of the wilful, wanton, and intentional nature of Defendants' conduct, and their abuse of the position of trust, Defendants are also liable for exemplary and punitive damages, in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH BUSINESS RELATION

### (FENNELL)

43.    The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 42 of the Complaint.

44.    By publicly disparaging the Bank, seeking to destroy the Bank, prematurely reopening the Bank and causing a run on the Bank, as detailed above, Fennell intentionally and willfully injured the Bank by scaring the Bank's customers into withdrawing their money and stopping then from doing other forms of business with the Bank.

45.    By reason of the foregoing conduct, Fennell interfered with the Bank's business relations with certain of its customers, and willfully, purposefully, maliciously and

oppressively caused general, special and consequential damages to Ada's Inc. in an amount to be proven at trial.

46.    As a direct and proximate result of Fennell's conduct detailed above and in other respects, the Bank has been damaged in an amount to be proved at trial.

47.    Because of the wilful, wanton, and intentional nature of their conduct, and their abuse of the position of trust, Fennell is also liable for exemplary and punitive damages, in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### MALPRACTICE

### (THE RECEIVERSHIP ATTORNEYS)

48.    The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 47 of the Complaint.

49.    Because they served the court-appointed receiver, the Receivership Attorneys were the attorneys of the Bank or, alternatively, owed the Bank the fiduciary duties that an attorney owes a client through the Receivership Attorneys' duties to Fennell. Specifically, the Receivership Attorneys owed the Bank duties undivided loyalty, candor, confidentiality, and good faith.

50.    Through the conduct complained of herein, the Receivership Attorneys breached their duties as attorneys to the Bank.

13

51.    As a direct and proximate result of the Receivership Attorneys' conduct detailed above and in other respects. the Bank has been damaged in an amount to be proved at trial.

52.    Because of the wilful, wanton, and intentional nature of their conduct, and their abuse of the position of trust, the Receivership Attorneys are also liable for exemplary and punitive damages, in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### FRAUD

### (FENNELL AND THE RECEIVERSHIP ATTORNEYS)

53.    The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 52 of the Complaint.

54.    Fennell and the Receivership Attorneys owed the Bank fiduciary duties of loyalty, due care. confidentiality, and full disclosure.

55.    Fennell and the Receivership Attorneys knew that the Bank would believe that the receiver and his attorneys would act in the best interest of the Bank.

56.    Nevertheless. Fennell and the Receivership Attorneys intentionally. knowingly, or otherwise culpably concealed or suppressed by means of written and oral communications. and by conduct. from the Bank that their true intent was to destroy the Bank so as to be able to retaliate against the Bank's shareholders. directors. and attorneys.

14

57.     Fennell and the Receivership Attorneys concealed or suppressed material facts that they were bound to disclose or, in the alternative, told the Bank and the Court other facts to mislead the Bank and the Court from discovering the concealed or suppressed facts.

58.     Fennell and the Receivership Attorneys fraudulently and actively concealed material facts with intent to deceive and defraud the Bank and the Court.

59.     The Bank was unaware of the concealed or suppressed facts and would have taken action had it known the true facts.

60.     The omissions and representations of Fennell and the Receivership Attorneys were material and were false and misleading, and Fennell and the Receivership Attorneys knew they were false and misleading at the time they were made, and they were made for the purpose of inducing the Bank and the Court to rely upon them and to act or to refrain from acting in reliance thereon.

61.     The Bank reasonably and justifiably relied upon untruthful representations, statements, and omissions and acted in accordance thereof.

62.     As a direct and proximate result of Fennell's and the Receivership Attorneys' conduct detailed above and in other respects, the Bank has been damaged in an amount to be proved at trial.

63.     Because of the wilful, wanton, and intentional nature of Fennell's and the Receivership Attorneys' conduct, and their abuse of the position of trust, Fennell and the

15

Receivership Attorneys are also liable for exemplary and punitive damages, in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## CONSPIRACY TO DEFRAUD

## (ALL DEFENDANTS)

64.     The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 63 of the Complaint.

65.     On information and belief, the Defendants each knew that the Bank and the Court were unaware of Fennell's and the Receivership Attorneys' true intent to destroy the Bank as a means of retaliating against its shareholders, directors, and shareholders.

66.     Nevertheless, the Defendants intentionally, knowingly, or otherwise culpably concealed, and continue to conceal, from the Bank and the Court the efforts of Fennell and the Receivership Attorneys to defraud the Bank.

67.     The Defendants each fraudulently and actively concealed these facts with the intent to deceive and defraud the Bank and the Court and with the intention of inducing reliance thereon.

68.     The Defendants suppressed material facts that they were bound to disclose or, in the alternative, told or misrepresented to the Bank or the Court other facts to mislead the Bank and the Court from discovering the concealed or suppressed facts.

16

69.     The Defendants concealed or suppressed these material facts with the intent of furthering their unlawful scheme to destroy the Bank, and with the intention that the Bank would rely thereon. At the time, the Bank was unaware of the concealed or suppressed facts and would have acted to protect its interests had it known the true facts.

70.     The Defendants each agreed and conspired with one another to conceal or suppress these facts from the Bank.

71.     The Defendants each agreed to participate and did participate in the conspiracy, in furtherance of their own financial gain.

72.     The omissions and misrepresentations of the Defendants were material and were false and misleading, and each knew they were false and misleading at the time they were made.

73.     As a direct and proximate result of their participation in Fennell's and the Receivership Attorneys' conduct detailed above and in other respects, the Bank has been damaged in an amount to be proved at trial.

74.     Because of the wilful, wanton, and intentional nature of Defendants' conduct, and their abuse of the position of trust, Defendants are also liable for exemplary and punitive damages, in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

## CONVERSION

## (FENNELL AND THE RECEIVERSHIP ATTORNEYS)

17

75.     The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 74 of the Complaint.

76.     Because they were supposed to be working to benefit the Bank, Fennell and the Receivership Attorneys received fees and other expenses for the time they spent as either the receiver or the receiver's attorneys.  However, Fennell and the Receivership Attorneys were not working to benefit the Bank during this time, but instead were working to achieve their goal of retribution against certain of the shareholders and directors of the Bank.

77.     By reason of the foregoing conduct, Fennell and the Receivership Attorneys committed conversion of the fees and other costs paid for by the Bank and were unjustly enriched.

78.     Because of the wilful, wanton, and intentional nature of their conduct, and their abuse of the position of trust, Fennell and the Receivership Attorneys are also liable for exemplary and punitive damages, in an amount to be determined at trial.

### EIGHTH CAUSE OF ACTION

### NEGLIGENCE

### (ALL DEFENDANTS)

79.     The bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 78 of the Complaint.

80.     The acts and omissions alleged above constitute negligence.

81.    Said negligent acts and omissions were a direct and proximate cause of the injuries, damages, and losses sustained by the Bank; and the Bank is entitled to recover against the Defendants and for damages caused by their negligence, as set forth herein, in an amount to be proved at trial.

82.    Because of the wilful, wanton, and intentional nature of Defendants' conduct, and their abuse of the position of trust, Defendants are also liable for exemplary and punitive damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, the Bank of Saipan prays for judgment against the Defendants as follows:

1.    General damages against all Defendants, jointly and severally, in an amount to be proven at trial;

2.    Exemplary and punitive damages in an amount appropriate to punish Defendants and set an example to others;

3.    Disgorgement of all costs and fees paid by the Bank to the Defendants;

//

//

//

//

19

4.    For costs of suit herein incurred; and

5.    For other such relief as the Court may deem proper.

Dated this ___27th___ day of September, 2004.

> MAIR, MAIR, SPADE & THOMPSON
> A Professional Corporation
>
> By_____
> for  DAVID A. MAIR

20

## DEMAND FOR JURY TRIAL

The Bank of Saipan hereby demands a trial by jury of all issues triable of right by

jury.

Dated this $\underline{27^{R}}$ day of September, 2004.

MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation

By_____
for  DAVID A. MAIR

P03739.RTT

21



MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
Suite 801 Pacific News Bldg.
238 A.F.C. Flores St.
Hagatna, Guam  96910
Telephone: (671) 472-2089/2090
Facsimile: (671) 477 5206

CALVO AND CLARK, LLP
MH II Building
Marina Heights Business Park
PMB 951 Box 10001
Saipan, MP 96950
Telephone: (670) 323-2045
Facsimile: (670) 323-2276

Attorneys for The Bank of Saipan, Inc.

## IN THE SUPERIOR COURT
## FOR THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| THE BANK OF SAIPAN, INC., )<br><br>Plaintiff, )<br><br>-v- )<br><br>RANDALL T. FENNELL; RICHARD )<br>PIERCE; WHITE, PIERCE, MAILMAN, )<br>& NUTTING; DAVID W. AXELROD; )<br>SCHWABE, WILLIAMSON, & WYATT; )<br>AND DOES 1 20 )<br><br>Defendants. ) | CIVIL ACTION NO. 04-449A<br><br><br><br><br><br>**FIRST AMENDED COMPLAINT**<br>**AND DEMAND FOR JURY TRIAL** |

COMES NOW, the Bank of Saipan, Inc. (hereinafter "Bank of Saipan" or the

"Bank"), which for its First Amended Complaint against Defendants Randall T. Fennell, Richard

# ORIGINAL

Pierce, White, Pierce, Mailman & Nutting, David W. Axelrod, Schwabe, Williamson & Wyatt, and Does 1-20 alleges as follows:

## JURISDICTION AND PARTIES

1.     This Court has jurisdiction over this matter pursuant to the N.M.I. Constitution, Article IV, Section 2, 1 C.M.C. § 3202.

2.     Plaintiff Bank of Saipan is a CNMI corporation, currently in receivership, duly-licensed and authorized to engage in retail banking activities in the Commonwealth.

3.     Upon information and belief, Defendant Randall T. Fennell ("Fennell") is a resident of the Commonwealth of the Northern Mariana Islands who served as the receiver of the Bank from April 30, 2002 to September 27, 2002.

4.     Defendant Richard Pierce ("Pierce") is a resident of the Commonwealth of the Northern Mariana Islands.

5.     At all relevant times herein, Defendant White, Pierce, Mailman, & Nutting ("White, Pierce") was a CNMI law firm.

6.     Defendant David W. Axelrod ("Axelrod") is, on information and belief, a resident of Portland, Oregon.

7.     Defendant Schwabe, Williamson, & Wyatt ("Schwabe") is, on information and belief, a Portland, Oregon law firm.

8.     Except as described herein, the true names of the defendants sued as Does 1 through 20, inclusive, are unascertained to the Bank which therefore sues these defendants by such

2

fictitious names. The Bank will amend this Complaint to allege their true names and capacities when ascertained. These fictitiously named defendants were involved in the design, implementation, approval, and furtherance of the transactions complained of herein or received benefits from those transactions. These defendants aided or abetted, or participated with the other defendants and others in the wrongful acts and course of conduct, or otherwise caused the damages sought herein and are responsible for the acts, occurrences and events alleged in this Complaint.

9.    The named and Doe defendants in this action are sometimes referred to herein as ""Defendants."

## OPERATIVE FACTS

10.    On or about April 30, 2002, the CNMI Government filed an ex parte petition in the CNMI Superior Court for the appointment of a receiver for Plaintiff Bank of Saipan, pursuant to a Commonwealth statute, 4 CMC §6105, in the case Acting Secretary of Commerce Fermin M. Atalig v. Bank of Saipan, Civ. Action No. 02-0268B.

11.    At the hearing on the petition, held that same date, April 30, 2002, the Government for the first time identified Defendant Randall T. Fennell as the individual to be appointed receiver. The Bank reserved the right to object to Fennell's appointment; but on said date the Bank was ordered into receivership and Fennell was appointed as temporary receiver for 30 days. The April 30 Order set forth Fennell's limited powers as temporary receiver.

12.    In obtaining his appointment, Fennell deliberately and repeatedly failed to disclose material information that he was bound to disclose to the appointing court and the Bank

3

regarding his conflicts of interest and hostility against the Bank, its major shareholders and certain

of its directors. Such nondisclosures were intentional, deliberate, or reckless.

13. In connection with his appointment, Fennell retained Pierce, White, Pierce,

Axelrod, and Schwabe (collectively, the "Receivership Attorneys") to act as his counsel. The

Receivership Attorneys also failed to disclose material information about their conflicts of interest and

how said conflicts would adversely affect their representation of the Bank's court-appointed receiver.

Pierce and White, Pierce had concurrently represented the Bank since 1997 and Pierce never

disclosed or obtained consent to his representation of Fennell.

14. Once appointed and retained, Fennell and the Receivership Attorneys owed

fiduciary duties to the Bank, including, without limitation, the duty to conduct the receivership in the

best interests of the Bank, to avoid harming the Bank, to disclose all material information affecting

the receivership, and to place the interests of the Bank above their own personal interests. At all

relevant times to this action, Fennell and the Receivership Attorneys were motivated by, and

conducted the receivership consistent with, a hidden agenda to destroy rather than rehabilitate the

Bank, to the detriment of the Bank, its depositors and shareholders. Fennell and the Receivership

Attorneys exercised the receivership powers in a manner inconsistent with the best interests of the

Bank.

15. Fennell precipitated and engaged in ex parte communications with the Court

off-the-record, with no recording. On or about May 8, 2002, without notice to the Bank and

without giving the Bank an adequate opportunity to object, Fennell filed an ex parte petition for

4

"Clarification of Order Granting Petition for Appointment of Receiver." The Court granted Fennell's petition on May 10, 2002 and the Order greatly expanded Fennell's powers as receiver and extended his receivership indefinitely. Notwithstanding this expansion of powers, Fennell exceeded the scope of his powers before and after this order.

16.     During his tenure as receiver, Fennell deliberately and maliciously harmed the Bank, its depositors, employees, customers, directors and shareholders by, inter alia, attempting to destroy the Bank instead of working to rehabilitate it. Fennell ignored requests from Bank depositors for information concerning their deposits. Fennell actively endeavored to prevent the Bank from participating in discussions and proceedings directly related to the Bank's continued existence and rehabilitation. Fennell's practice of excluding the Bank from such ex parte proceedings that were conducted off-the-record and with no recording was unlawful and inappropriate; and said practice deprived the Bank of due process of law during the course of the receivership proceedings, in breach of Fennell's fiduciary duty to the Bank.

17.     Although Fennell had fiduciary duties not to damage the Bank, or its depositors, and to act fairly towards its employees, shareholders, and employees, he publicly denigrated the Bank while serving as receiver, calling it, inter alia, a "failed institution." Such conduct undermined pubic confidence in the Bank at a critical point in its existence and endangered and retarded the Bank's subsequent rehabilitation efforts.

18.     Fennell's engaged in one or more "private briefings" with the Court which were normally "off-the-record" and with no recording, for the purpose of advancing his wrongful and

5

damaging agenda, as he knew it would be difficult if not impossible for the Bank to obtain meaningful and timely judicial review of what Fennell and the Receivership Attorneys said or submitted to the court.

19.   Fennell repeatedly refused to meet or cooperate with the Bank's Directors or counsel in furtherance of efforts to rehabilitate the Bank. Fennell's refusal to work with the Directors at critical times was in breach of his duty to work with the Bank to avoid liquidation and achieve the best possible results for the Bank, its shareholders, depositors, employees, and customers.

20.   Fennell reopened the Bank during his tenure, without any rehabilitation plan in place, allowing depositors to withdraw a large percentage of the Bank's deposits and precipitating a "run" on the Bank, seriously eroding the Bank's financial status and endangering its ability to become rehabilitated.

21.   Fennell acted as receiver for the Bank from April 30, 2002 until he was removed by order from the Supreme Court of the Commonwealth of the Northern Mariana Islands on May 29, 2002. The Supreme Court stayed the May 29 Order on May 31 and reinstated Fennell as temporary receiver but limited his powers to those provided by law and specifically ordered that Fennell could not liquidate the Bank's assets. On September 27, 2002, Fennell was permanently removed and replaced as receiver. During this period, Fennell sought to be exonerated from "any and all claims" which might result from his acts or omissions as receiver. Fennell moved and the receivership court granted on September 27, 2002 and thereafter on December 31, 2002, his

6

request that the Bank defend and indemnify him for any and all claims arising from his actions as

receiver. During this period, Fennell exceeded the scope of his authority as receiver by engaging in

the conduct described herein and failed to disclose the improper actions alleged herein in obtaining

the receivership court's order.

22.     On September 27, 2002, and December 31, 2002, the Honorable Edward

Manibusan issued Orders exonerating the former Receiver. Thereafter, on January 27, 2003, the

Bank of Saipan filed a proposed Rehabilitation Plan with the Court. In this Rehabilitation Plan, the

Bank specifically noted that the former Receiver's actions had been wrongful and had caused harm

to the Bank:

> Original Receiver's actions adversely affected loan collections and
> generated negative images regarding the possibility of rehabilitation
> and reorganization of the Bank of Saipan.

23.     The Rehabilitation Plan stated that one of the solutions to the Bank of

Saipan's problems was to aggressively pursue claims against wrongdoers:

> Outlined below are a series of proposed solutions to the Bank's
> problems:
>
> *Aggressively* seek to recover fraudulent loans and pursue claims
> against wrongdoers.

24.     On February 13, 2003, the Honorable Edward Manibusan "approved" the

"Rehabilitation Plan presented to the Court." In this same Order, the Court vacated any prior

Orders inconsistent with the Rehabilitation Plan proposed by the Bank:

7

To the extent that all previous Orders of this Court are inconsistent with the rehabilitation of the Bank, they are superceded and vacated.

25.    Inasmuch as the "aggressive" pursuit of claims against wrongdoers is mandated by the Rehabilitation Plan, and this is expressly identified as one of the "solutions" to the Bank's problems, then the pursuit of such claims by definition is consistent with the rehabilitation of the Bank. All prior Orders of the Court "inconsistent with the rehabilitation of the Bank," which must include the Orders barring the pursuit of claims against wrongdoers, were superceded when the Court approved to the Rehabilitation Plan.

26.    At all times herein, through the ex parte hearings conducted off-the-record and with no recording, the failure to produce requested information that they were bound to disclose, and other means, Defendants have sought to fraudulently conceal from the Bank the fact that it has causes of action against Defendants and has thereby deprived the Bank of a reasonable opportunity to discover such causes of action until some time after Fennell was permanently removed as the receiver and a full investigation could be undertaken. Even then, continuing non-cooperation has hindered that investigation and acted to further fraudulently conceal the causes of action.

27.    The Bank, by and through its Board of Directors, took a timely appeal from the receivership court's orders granting Fennell's exoneration motions and requests for immunity, indemnification and defense. That appeal, Consolidated Appeals Nos. 02-0029GA and 03-0008GA, remains pending in the Supreme Court of the Commonwealth of the Northern Mariana Islands.

8

28.    At all relevant times herein, defendants were aware of each other's conduct,

assisted, participated in, furthered, aided, abetted, comforted, and encouraged each other in such

conduct and acted in concert with one another.

### FIRST CAUSE OF ACTION
### MALPRACTICE/BREACH OF FIDUCIARY DUTY
### (PIERCE AND WHITE, PIERCE)

29.    The Bank of Saipan hereby realleges and incorporates by this reference as

if fully set forth herein the allegations contained in paragraphs 1 through 28 of the Complaint.

30.    Pierce and White, Pierce owed the Bank the fiduciary duties that an attorney

owes a client. Specifically, Pierce and White, Pierce owed the Bank duties of undivided loyalty,

candor, confidentiality and good faith.

31.    At the time Pierce and White, Pierce agreed to represent Fennell, Pierce and

White, Pierce were concurrently representing the Bank.

32.    Pierce's and White, Pierce's representation of Fennell's interest was directly

adverse to the interests of the Bank and Pierce and White, Pierce did not disclose this conflict of

interest or obtain consent to their representation of Fennell, nor could they have obtained consent

under applicable law.

33.    Among other things, Pierce and White, Pierce disclosed the Bank's

confidential information without the knowledge, consent or participation of the Bank which was

designed to harm the Bank's interest, its depositors, employees, customers and shareholders. Pierce

9

and White, Pierce intentionally and maliciously failed to faithfully execute service or otherwise provide notice to the Bank of said disclosures.

34.     Through the conduct complained of herein, Pierce and White, Pierce breached their duties as attorneys to the Bank.

35.     As a direct and proximate result of Pierce's and White, Pierce's conduct detailed above and in other respects, the Bank has been damaged in an amount to be proved at trial.

## SECOND CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
## (THE RECEIVERSHIP ATTORNEYS)

36.     The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 35 of the Complaint.

37.     The Receivership Attorneys owed strict fiduciary duties to the Bank.

38.     The Receivership Attorneys were required at all times, honestly and in good faith with a view to the best interests of the Bank, to exercise care, skill and diligence that a reasonably prudent person would exercise in comparable circumstances.

39.     The Receivership Attorneys breached these duties by among other things, failing to act in the Bank's best interest, failing to loyally represent the Bank, failing to hold the Bank's confidences inviolate, and failing to disclose material facts to the court and the Bank, including, but not limited to conflicts of interests and breaches of fiduciary duty by other Defendants.

40.     As a direct and proximate result of this conduct, the Bank has suffered damages in an amount to be proven at trial.

10

### THIRD CAUSE OF ACTION
### PARTICIPATION IN BREACH OF FIDUCIARY DUTY
### (ALL DEFENDANTS)

41.     The Bank of Saipan hereby realleges and incorporates by this reference as if fully set forth herein the allegations contained in paragraphs 1 through 40 of the Complaint.

42.     Pierce knew or should have known of White, Pierce and Fennell's breaches of fiduciary duties and actively participated in their breaches by implementing, directing, assisting, approving and otherwise furthering their scheme through the unlawful, improper, fraudulent and self-dealing actions alleged herein.

43.     Schwabe and Axelrod knew or should have known of Pierce, White, Pierce and Fennell's breaches of fiduciary duties and actively participated in their breaches by implementing, assisting, directing, approving and otherwise furthering their scheme through the above-pled unlawful, improper, fraudulent and self-dealing actions.

44.     Fennel knew or should have known of the breaches of fiduciary duty by the other Defendants and actively participated in their breaches by implementing, assisting, approving and otherwise furthering their scheme through the above-pled unlawful, improper, fraudulent and self-dealing actions.

45.     As a direct and proximate result of Defendants' participation in breaches of fiduciary duty detailed herein and in other respects, the Bank has been damaged in an amount to be proved at trial.

11