F I L E D
Clerk
District Court

SEP 2 8 2009

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| RANDALL T. FENNELL, | ) | Civil Action No. 09-0019 |
| | ) | |
| Plaintiff | ) | |
| | ) | ORDER DENYING IN PART |
| v. | ) | AND GRANTING IN PART |
| | ) | DEFENDANTS' MOTION |
| MATTHEW T. GREGORY, *et al.*, | ) | TO DISMISS FOR FAILURE |
| | ) | TO STATE A CLAIM, WITH |
| Defendants | ) | LEAVE TO AMEND |
| _____ | ) | |

THIS MATTER came before the court on Thursday, September 10, 2009, for

hearing of defendants' Federal Rules of Civil Procedure 12(b)(6) motion to dismiss

for failure to state a claim. Plaintiff appeared by and through his counsel, Mark B.

Hanson; named Commonwealth defendants appeared by and through their counsel,

Commonwealth Assistant Attorney General Braddock J. Huesman.

AO 72
(Rev. 08/82)

THE COURT, having considered the written and oral arguments of counsel, grants in part and denies in part the motion to dismiss.[1]

On July 31, 2009, Commonwealth defendants moved to dismiss plaintiff's entire complaint for failure to state a claim. Fed.R.Civ.P. 12(b)(6). Secondarily, they argue that defendants Gregory and Baka are absolutely immune from suit and that the other Commonwealth Assistant Attorneys General are entitled to qualified immunity.

On a motion to dismiss, the court must accept as true all allegations in the complaint and construe them in the light most favorable to the non-moving party. *Roe v. City of San Diego*, 356 F.3d 1108, 1112 (9th Cir. 2004). Generally, the court's review is limited to the contents of the complaint and any exhibits attached to it. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).[2] Where, as here,

---

[1]

Complicating the instant motion is the fact that a civil lawsuit was filed in the Commonwealth Superior Court several years ago which at least peripherally and perhaps integrally involve some of the issues raised in this lawsuit. This court is aware of its obligations to honor the jurisdiction of the Commonwealth Superior Court and to attempt to avoid the possibility of inconsistent findings or judgments. However, all parties to this action agree that motions have been pending in the Superior Court for more than four years and that absolutely nothing has been done for more than a year by the off-island judge to whom the case has been assigned, despite the pleas of all parties for rulings on the pending motions and a status conference. Given these circumstances, and the fact that the parties are present before this court and actively pursuing and defending, the court will proceed, as a matter of due process.

[2]

Pursuant to Fed.R.Civ.P. 12(d), if the court considers extrinsic matters outside the complaint, it must treat the motion as a motion for summary judgment under

the complaint alleges violation of plaintiff's civil rights, vague and conclusory allegations are insufficient to withstand a motion to dismiss. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Dismissal of the complaint is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle plaintiff to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *No. 84 Employer-Teamster Joint Council v. American West Holding Corp.*, 320 F.3d 920, 931 (9th Cir.), *cert. denied*, 124 S.Ct. 433 (2003).

## The Claims for Relief

Plaintiff's June 12, 2009, complaint alleges four claims for relief. The first is brought pursuant to 42 U.S.C. § 1983 and accuses defendants of depriving him of the constitutional rights guaranteed under the First, Fifth, and Fourteenth Amendments of the U.S. Constitution. The second claim alleges a conspiracy against him by all defendants to obstruct the course of justice, in violation of 42 U.S.C. § 1985(2), thereby violating the same constitutional rights. The third claim is brought pursuant to 42 U.S.C. § 1985(3) and alleges that the defendants conspired against plaintiff to deprive him of the constitutional rights afforded him by the First, Fifth, and Fourteenth Amendments. The last claim for relief alleges a violation of 42 U.S.C. § 1986; specifically, that the named defendants knew of the conspiracy to deprive

---

Fed.R.Civ.P. 56. In deciding this motion, the court has not considered extrinsic matters.

plaintiff of his constitutional rights and did nothing to prevent or aid in the prevention of the deprivation.

The Facts Alleged in the Complaint

According to plaintiff, his claims arise out of his duties as the Commonwealth Superior Court-appointed temporary receiver, beginning in 2002, in a case involving the Bank of Saipan. *Complaint*, ¶¶ 20-24. He alleges that both the Commonwealth Attorney General's Office and the Secretary of Commerce approached him and asked him to act as receiver, due to his previous experience as receiver in a prior bank receivership. *Id.*, ¶ 21. Plaintiff alleges that his investigation into the activities of the Bank, its attorneys, and its directors and shareholders and their various company attorneys, uncovered a labyrinthine scheme to perpetrate a fraud to enrich themselves at the expense of ordinary shareholders and depositors of the Bank. *Id.*, ¶¶ 20-41. During the relevant time period, Benigno Fitial (later elected Governor of the Commonwealth, the position he still holds) was Acting President, Chief Executive Officer, and Chairman of the Bank's Board of Directors. *Id.*, ¶ 30. Fitial was also employed at the same time by the Tan Group, which was a major shareholder of the Bank. *Id.*, ¶ 32. Defendant Gregory (later Commonwealth Attorney General) was attorney for the Tan Group and also attorney for the Marianas Public Land Authority ("MPLA"), a Commonwealth agency. *Id.*, ¶ 33-34.

Up to that point in time, plaintiff alleges that he had been "working closely

with the Attorney General and various attorneys from that office[.]" *Id.*, ¶ 27. However, plaintiff alleges that when the major shareholders of the Bank of Saipan and MPLA and its attorney, Mr. Gregory, learned that he was transmitting his findings to the Superior Court, they began a conspiracy to "discredit the Office of the Attorney General, Mr. Fennell, and Presiding Judge Edward Manibusan of the Commonwealth Superior Court." *Id.*, ¶ 42. This alleged conspiracy found its first public expression in the filing of a lawsuit against plaintiff: *The Bank of Saipan v. Mr. Fennell, et al.*, Commonwealth Superior Court Civil Action No. 04-049A (the "BoS lawsuit").

When the BoS lawsuit was filed, plaintiff requested representation and indemnification from the Commonwealth under the Public Employees Legal Defense and Indemnification Act (PELDIA"), 7 CMC § 2301 *et seq. Id.*, ¶ 44.[3] His request was approved by the Presiding Judge, and then-Attorney General Pamela Brown assigned an Assistant Attorney General to represent plaintiff.[4] *Id.*, ¶ 45. Crucially,

---

[3]

Although neither party has raised the precise issue, the court questions whether the drafters of PELDIA ever contemplated that it would be used in an internecine dispute such as this one; that is, the Office of Attorney General representing a "government employee" (the Superior Court had deemed plaintiff an employee of the judiciary in his capacity as court-appointed receiver) while simultaneously representing a government agency that takes the opposite side of the dispute.

[4]

PELDIA was repealed and replaced by the Commonwealth Employees' Liability Reform and Tort Compensation Act of 2006 ("CELRTA"). Commonwealth

plaintiff alleges that he "met and conferred on several occasions with Attorney General Brown and other assistant attorneys general and provided them with confidential information relating to his defenses in the Lawsuit." *Id.*, ¶ 46.

In August of 2005, MPLA, through its attorney, Gregory, was allowed by the Superior Court to intervene in the BoS lawsuit and MPLA then filed a separate complaint against plaintiff Fennell and others. *Id.*, ¶¶ 47-48.

In January 2006, Benigno Fitial was elected Governor of the Commonwealth of the Northern Mariana Islands (a position he still holds). Later that month he nominated defendant Gregory as Attorney General. *Id.*, ¶¶ 52. As noted above, prior to his election Fitial was an executive of Tan Holdings Corporation, a major shareholder of the Bank of Saipan, and also served as the Bank's Chairman of the Board, President, and Chief Executive Officer. Attorney Gregory was attorney for both MPLA and Tan Holdings Corporation.

Plaintiff's allegations indicate that the conspiracy to deny him his constitutional rights gained momentum, given the positions of public power both Fitial and Gregory now held. He alleges a dramatic shift in the attitude and cooperation of the Attorney General's Office, because Fitial had been implicated in plaintiff's investigation and because plaintiff felt that Gregory had a conflict of interest in the Bank of Saipan

---

Pub. L. 15-22. The change does not affect the court's analysis.

matters when, during his private practice, he acted as attorney for both Tan Holdings and MPLA.[5]   Plaintiff had refused to deal with him at that time until the conflict was resolved.

The Office of the Attorney General, now led by Gregory, took over representation of MPLA, previously a semi-autonomous Commonwealth government agency (which Gregory had represented as a private attorney in the BoS lawsuit), even though the Office was already representing plaintiff under PELDIA as a "government employee."  Plaintiff alleges that defendant Gregory, acting in concert with other named defendants, has conspired to take numerous actions (and omit to timely take action when required), all to his detriment.  *Id.*, ¶ 55, a-i.

In sum, as stated by plaintiff in his August 27, 2009, opposition to the motion to dismiss: "Mr. Fennell is claiming that Defendants' various actions and inaction were intentional and concerted efforts by Defendants (1) to deny Mr. Fennell independent, conflict-free counsel, (2) to frustrate and to hinder Mr. Fennell's exercise of his First Amendment rights to free speech and the right to access to the courts, and (3) to retaliate against Mr. Fennell for his actions in defending himself in the Bank Lawsuit which also implicates Mr. Fennell's First and Fourteenth

---

[5]

In February, 2006, MPLA was dissolved and its powers and duties transferred to the Commonwealth Department of Public Lands ("DPL"), an agency of the executive branch on the CNMI government.

AO 72
(Rev. 08/82)

Amendment rights to Free Speech and due process of law."

Analysis

As an initial matter, it is settled law that the Commonwealth of the Northern Mariana Islands ("CNMI"), its governmental entities, and officials sued in their official capacities are not "persons" within the meaning of § 1983 and cannot be held liable under the statute. *See Ngiraingas v. Sanchez*, 495 U.S. 182, 191-192 (1990); *DeNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir. 1992); *Magana v. CNMI*, 107 F.3d 1436, 1447 (9th Cir. 1997). There is but one exception to the general rule that the CNMI, its governmental entities, and officials sued in their individual capacities are not "persons" within the meaning of 42 U.S.C. §1983: An official of a state or territory, when sued for prospective injunctive relief in his or her official capacity, is considered a "person" for § 1983 purposes. *Guam Soc. of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1371 (9th Cir.), *cert. denied*, 506 U.S. 1011 (1992). This is because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

Accordingly, all claims for damages against the named Commonwealth defendants in their official capacities are dismissed with prejudice.

Claim under 42 U.S.C. § 1983

A.    First Amendment Violation

To prevail on a § 1983 free speech claim, plaintiff must show that (1) he

engaged in constitutionally-protected speech, (2) government officials took adverse

action against him as a result of his speech, and that (3) his speech was a "substantial

and motivating factor" for the adverse action. *See Board of County Comm'rs, Wabaunsee*

*County, Kan. v. Umbehr*, 518 U.S. 668, 675 (1996). The burden is on plaintiff to show

he engaged in constitutionally-protected conduct. *Mt. Healthy City Sch. Dist. Bd. of*

*Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

It is also unlawful for state actors to hinder one's right to access to the courts.

*See e.g. Boddie v. Connecticut*, 401 U.S. 371 (1971); *Soranno's Gasco, Inc. V. Morgan*, 874

F.2d 1310, 1314 (9th Cir. 1989) (right of access to the courts is subsumed under the

First Amendment right to petition the government for redress of grievances).

Plaintiff has alleged that defendant Gregory, as a state actor when acting as

attorney for MPLA, a Commonwealth government agency, and continuing upon his

assumption of the position of Attorney General, and the other named defendants,

acting in their capacities as assistant attorneys general, conspired to deprive him of his

right to free speech. Here, the constitutionally-protected speech was plaintiff acting

as receiver for the Bank of Saipan and transmitting allegedly damaging information to

the Superior Court, some of which was about persons who would later become

Commonwealth elected and appointed officials. First, defendants allegedly tried to

silence plaintiff by initiating unfounded attacks against him in the Bank of Saipan

lawsuit, by filing unmeritorious pleadings intended to delay the proceedings and

obfuscate the role of certain parties in the Bank of Saipan lawsuit. The second alleged

deprivation of plaintiff's right to free speech was defendants' dual failure to act as his

counsel without a conflict of interest and the delay in the certification that he was

entitled to representation under CELRTA. Plaintiff alleges that he was effectively

silenced by these two stratagems, thus violating his right to access to the courts.

Accepting all these allegations as true, the court concludes that plaintiff has

made out a colorable claim under 42 U.S.C. § 1983 for violation of his First

Amendment right to free speech and unfettered access to the courts. Plaintiff has

alleged a conspiracy to file a lawsuit against him to silence him and that the

conspiracy continued when Gregory became Attorney General and refused to

recognize a conflict of interest or seek guidance from the court. Defendants' motion

to dismiss the First Amendment claim is denied.

B.    Fourteenth Amendment Violation

Section 1983 was designed in part to prevent the states from violating an

individual's right to due process, applicable to the states through the Fourteenth

Amendment. *See e.g. Carey v. Piphus*, 435 U.S. 247 (1978). State law may, in limited

circumstances, create an entitlement interest—a property interest—that is protected

by the Due Process Clause of the United States Constitution. *See Town of Castle Rock v.

Gonzales*, 545 U.S. 748, 768 (2005). "The Fourteenth Amendment's procedural

protection of property is a safeguard of the security of interests that a person has

already acquired in specific benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70

(1972). "These interests—property interests— may take many forms." *Id.* at 576.

"To have a property interest in a benefit, a person clearly must have more than an

abstract need or desire for it.  He must have more than a unilateral expectation of it.

He must, instead, have a legitimate claim of entitlement to it." *Id.* at 576.

As the court reads the allegations in the complaint, plaintiff claims that, as a

"government employee,"  he had a legitimate claim of entitlement to his "property

interest" in the Commonwealth-created right to legal representation by the

Commonwealth (via PELDIA).  Necessarily included in that right is that his legal

representative be without a conflict of interest.

Plaintiff alleges that defendant Gregory, while Attorney General of the

Commonwealth, together with the other named assistant attorneys general, acted in

their official and personal capacities to deprive plaintiff of this Commonwealth law-

created right. As noted earlier, the alleged conflict arose upon Gregory's appointment

as Attorney General, because he had represented government agency MPLA as a

private attorney when it intervened in the Bank of Saipan lawsuit and because the

Office of Attorney General then substituted in for MPLA as attorney of record.

C.    Due Process

Fourteenth Amendment violations actionable under 42 U.S.C. § 1983 also

include violations of substantive due process.  In *Daniels v. Williams*, 474 U.S. 327

(1986), the Supreme Court held that the Due Process Clause requires for its violation, whether in procedural or substantive due process cases, some abuse of governmental power.

The complaint alleges that defendant Gregory deprived plaintiff of a substantive due process right by failing, as Attorney General, not only to acknowledge the conflict, but to actively thwart plaintiff's ability to defend against the Bank of Saipan lawsuit by using confidential information plaintiff had already shared with the attorneys at the Office of the Attorney General, by refusing to make a timely decision on his request for non-conflicted counsel, and by continuing, as Attorney General, the spurious lawsuit Gregory had filed on behalf of MPLA as its attorney when he was in private practice.

Although the issue arises in an unusual and novel context, the court is persuaded that plaintiff has sufficiently alleged a violation of plaintiff's rights to free speech, equal protection of the laws, and substantive due process. Accepting plaintiff's allegations as true, he has alleged a conspiracy by defendants, one part of which was to denigrate him by filing spurious pleadings in an attempt to effectively silence him by diverting attention from the malfeasance of those involved with the Bank of Saipan and the other of which was to ignore a patent conflict of interest and by refusing to timely respond to his requests that his conflict concerns be addressed. Accordingly, defendants' motion to dismiss plaintiff's § 1983 claim is denied.

Plaintiff also makes a claim for "[a] temporary and permanent injunction against the Office of the Attorney General from representing parties in or otherwise participating in the Lawsuit." Such a claim is permissible under 42 U.S.C. § 1983 and, accepting the allegations of the complaint as true, defendants may have a non-curable conflict of interest.

The 42 U.S.C. § 1985(2) and (3) Conspiracy Claims

An element of conspiracy claims under § 1985 is that the defendants were motivated by "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action. The conspiracy. . .must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Griffin v. Breckenridge*, 403 U.S. 88, 103 (1971). Plaintiff has failed to plead that he was a member of such a class. For that reason, the § 1985(2) and (3) claims are dismissed.

The 42 U.S.C. § 1986 Claim

If no valid claim has been pleaded under § 1985, a claim under § 1986 will not lie. *See McCalden v. California Library Ass'n.*, 955 F.2d 1214, 1223 (9th Cir. 1990). Accordingly, plaintiff's 42 U.S.C. § 1986 claim for relief is dismissed.

Absolute and Qualified Immunity

Finally, the court is also confronted with the seemingly mutually-exclusive commands that on a motion to dismiss all facts alleged in the complaint are assumed to be true and that absolute and qualified immunity are to be determined as early in the litigation as practical.

The court can say at this juncture that Commonwealth defendant attorneys general could not be entitled to absolute immunity in the § 1983 claim. Only in "initiating a prosecution and in presenting the State's case" is a prosecutor absolutely immune. *Imbler v. Pachtman*, 424 U.S. 409, 418-424, 96 S.Ct. 984 (1976). Because this lawsuit does not involve a criminal prosecution, none of the Attorney General's Office defendants would be entitled to absolute immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The court must first determine whether the plaintiff has alleged a constitutional violation. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). If a constitutional violation has been properly alleged, then the court must determine whether the conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* A right is clearly established if "[t]he contours of the right [are]

AO 72
(Rev. 08/82)

sufficiently clear that a reasonable official would understand that what he is doing

violates that right.  This is not to say that an official action is protected by qualified

immunity unless the very action in question has previously been held unlawful,

. . . but it is to say that in light of pre-existing due process law the unlawfulness must

be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In *Anderson*, the Court explained that although the "right to due process" is

"clearly established," the contours of that right may not be sufficiently clear

depending on the circumstances of the violation.  *Id.* at 639.  Instead, a court would

need to analyze the objective circumstances of the violation in light of pre-existing

law to determine whether the official should have known that the action was

unconstitutional.  *Id.*  In sum, a public official has qualified immunity unless the law is

clear on its face or a lack of clarity has been elucidated in the case law.

As pleaded, the § 1983 claim for relief indicates that, if proven, attorney

defendants violated, if in a new and novel way, the clearly established constitutional

rights of freedom of speech, substantive due process, and equal protection of the laws

and they would thus not be entitled to qualified immunity.

AO 72
(Rev. 08/82)

In conclusion, defendants' motion to dismiss for failure to state a claim is granted in part and denied in part, as follows:

1. All claims for damages against the named Commonwealth defendants in their official capacities are dismissed with prejudice;

2. The motion to dismiss the claims for relief under 42 U.S.C. § 1983 for violation of plaintiff's rights to free speech, substantive due process, and equal protection of the laws is denied;

3. The motion to dismiss the prayer for injunctive relief to prevent the Commonwealth Office of Attorney General from any further representation of any party in the Superior Court proceedings is denied, subject to being renewed;

4. Defendants' motion to dismiss the claims under 42 U.S.C. § 1985(2) and (3) is granted;

5. Defendants' motion to dismiss the claim under 42 U.S.C. § 1986 is granted;

6. Defendants are not entitled to absolute immunity; and,

7. Defendants are not entitled to qualified immunity based upon the information presently before the court, but may renew their motion after discovery.

Plaintiff shall have fourteen calendar days from the day after entry of this order in which to file an amended complaint, should he so choose. If no amended

complaint is filed, defendants shall have an additional fourteen days in which to file

an answer or other responsive pleading.

DATED this 28th day of September, 2009.


_____
ALEX R. MUNSON
Judge

AO 72
(Rev. 08/82)